UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE CHEROKEE NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MCKESSON CORPORATION; | ) | Case No. 18-cv-56-RAW |
| CARDINAL HEALTH, INC.; | ) | |
| CARDINAL HEALTH 110, LLC; | ) | (Removal from: Sequoyah County No. |
| AMERISOURCEBERGEN DRUG CORP.; CVS | ) | CJ-2018-11) |
| HEALTH CORPORATION; CVS PHARMACY, | ) | |
| INC.; OKLAHOMA CVS PHARMACY, LLC; | ) | |
| WALGREENS BOOTS ALLIANCE, INC.; | ) | |
| WALGREEN CO.; WAL-MART STORES, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**JOINT STATUS REPORT IN RESPONSE TO
COURT'S ORDER OF MARCH 4, 2020**

The parties, through undersigned counsel, submit this joint status report in response to the Court's March 4, 2020 Order. *See* ECF No. 88.

**A.    NATURE OF THE CASE.**

The Plaintiff in this case is the Cherokee Nation, which asserts it occupies all or part of 14 counties in Eastern Oklahoma and is the largest sovereign Indian Tribe in the United States in terms of population. The Cherokee Nation's current complaint alleges that Defendants oversupplied prescription opioids through wholesale and retail channels, in violation of their alleged legal duties, which harmed the Cherokee Nation in its sovereign capacity, created a nuisance, and that Defendants are responsible for paying damages and abatement.

The Cherokee Nation's current complaint names as Defendants certain distributors and retail pharmacies that distribute prescription opioids and other medicines and supplies at the

1

wholesale or retail level:  McKesson Corporation, Cardinal Health, Inc., Cardinal Health 110 LLC, and AmerisourceBergen Drug Corporation ("Distributor Defendants"), and CVS Health Corporation,[1] CVS Pharmacy, Inc., Oklahoma CVS Pharmacy, L.L.C., Walgreens Boots Alliance, Inc.,[2] Walgreen Co., and Wal-Mart Stores, Inc.[3] ("Pharmacy Defendants"). Plaintiff alleges that these Defendants account for the vast majority of wholesale and retail distribution of prescription opioids in Cherokee Nation.

Defendants contend that the Cherokee Nation's claims are deficient as a matter of law and are unsupported by the facts.

**B.    PROCEDURAL HISTORY.**

Plaintiff Cherokee Nation originally filed suit in the District Court for the Cherokee Nation ("Tribal Court") on April 20, 2017.  Defendants filed a declaratory judgment action in the District Court for the Northern District of Oklahoma on June 8, 2017, seeking a declaratory judgment that, among other things, the Tribal Court lacked jurisdiction to hear the Tribal Court action.  The District Court for the Northern District of Oklahoma issued a preliminary injunction on January 8, 2018, enjoining the Tribal Court action from proceeding until the declaratory judgment action was resolved.  On January 22, 2018, the Cherokee Nation voluntarily dismissed the Tribal Court action.

On January 19, 2018, the Cherokee Nation filed a petition in the District Court of Sequoyah County, State of Oklahoma, alleging public nuisance, negligence, unjust enrichment, and conspiracy claims against all Defendants.  On February 26, 2018, Defendant McKesson

---

[1] Plaintiff has agreed to dismiss CVS Health Corporation without prejudice.

[2] Walgreens Boots Alliance, Inc. ("WBA") intends to file at the appropriate time a motion to dismiss based on lack of personal jurisdiction, and expressly reserves the right to so move.  By joining in this status report, WBA does not consent to jurisdiction or waive its position on jurisdiction in any respect.

[3] Effective February 1, 2018, Wal-Mart Stores, Inc. changed its name to "Walmart Inc."

Corporation removed the case on federal officer grounds pursuant to 28 U.S.C. § 1442, and on February 27, 2018, as required by the Judicial Panel on Multidistrict Litigation ("JPML"), Defendants filed a "tag along" notice seeking transfer of the case to the *In Re National Prescription Opiate* multidistrict litigation ("MDL") presided over by the Honorable Dan Aaron Polster in the United States District Court for the Northern District of Ohio. Cherokee Nation moved to remand the case to state court on March 1, 2018, claiming that McKesson did not qualify as a federal officer. On March 8, 2018, the Defendants moved to stay this Court's decision on the remand issue pending the potential transfer of the case by the JPML. The remand motion and the stay motion were both fully briefed before this Court but no decision was rendered.

On June 6, 2018, the JPML transferred the case to the MDL.  On September 4, 2018, Judge Polster ruled that the case had been properly removed to federal court in accordance with 28 U.S.C. § 1442 and denied Cherokee Nation's motion to remand this matter to the District Court of Sequoyah County.

On November 19, 2019, Judge Polster issued Suggestions of Remand (MDL ECF No. 2941) for the "strategic remand" of certain opioid cases to transferor courts, and identified *Cherokee Nation* as one of those cases.  On November 20, 2019, the JPML entered a conditional remand order, and this case was formally transferred to this Court on February 13, 2020.

Defendants' obligation to file responsive pleadings to the Cherokee Nation's complaint was stayed during the case's pendency in the MDL.  On March 16, 2020, following remand to this Court, Distributor Defendants filed a motion to dismiss Cherokee Nation's complaint in its entirety.  Dkt # 101.  On March 17, 2020, this Court entered an order, *sua sponte*, providing that Cherokee Nation may file an amended complaint by March 27, 2020, and providing that the Distributor Defendants may file a renewed motion to dismiss any amended complaint by April 6,

2020.  Dkt # 102.  On March 20, 2020, over Cherokee Nation's objection, the Court entered an Order staying the Pharmacy Defendants' deadline to file motions to dismiss until Cherokee Nation files its Amended Complaint.  Dkt. # 107.  On March 23, 2020, Cherokee Nation filed an Agreed Motion for an Extension of the Court's March 27, 2020 Deadline to Amend the Complaint.  Dkt. # 109.  On March 26, 2020, this Court granted that motion, providing Cherokee Nation until April 10, 2020, to amend its complaint, providing Defendants 30 days thereafter to answer or move to dismiss, and providing Cherokee Nation 30 days to respond.  As a result, the parties do not expect briefing on renewed motions to dismiss to be completed until late-June 2020.

*Plaintiff's additional statement of the Procedural History:* This case was remanded as part of Judge Polster's strategy for "strategically remanding" certain MDL cases to transferor jurisdictions with the goal of advancing global resolution of the MDL through bellwether trials. On September 26, 2019, plaintiffs and defendants in the MDL attended a hearing before Judge Polster to discuss a process for "strategic remands" of certain opioid cases—including at least one case filed by a sovereign Indian tribe. After the hearing, the MDL Plaintiffs' Executive Committee submitted a position paper asserting that *Cherokee Nation* would be the appropriate tribal case for strategic remand, including because Judge Polster had already issued rulings on issues of Oklahoma law on motions to dismiss in a different tribal case in the MDL, *Muscogee Creek Nation*. Defendants opposed selecting *Cherokee Nation* as a bellwether case. On November 19, 2019, Judge Polster issued Suggestions of Remand (MDL ECF No. 2941) in which he articulated his objectives for the strategic remands, and identified *Cherokee Nation* as the tribal bellwether case. The JPML subsequently entered a conditional remand order for *Cherokee Nation*. The Defendants moved to vacate the JPML's conditional remand order, reiterating their objections to remanding

*Cherokee Nation*. The JPML overruled the objections and entered a remand order to this Court's

docket on February 5, 2020. *See* ECF No. 71.

      ***Defendants' additional statement of the Procedural History***: Judge Polster's Suggestion

of Remand in this case did not make any reference to previously-filed motions to dismiss in other

tribal cases, nor did the JMPL's order remanding this case state that the MDL court's ruling in

other tribal cases were somehow relevant to the decision to remand.  Judge Polster's Suggestion

of Remand stated only that *Cherokee Nation* "is the consensus pick of the Indian Tribe leadership

committee. The Plaintiff has agreed not to seek remand to state court and to try the case in the

federal transferor court. The case is from a different jurisdiction than the Track One and Track

Two cases. The case should be remanded now." MDL ECF No. 2941 at 6.[4]

## C.    CURRENT POSITIONS OF THE PARTIES.

### 1.    Status of Discovery.

      The parties have not yet conferred under Federal Rule of Civil Procedure 26(f), and no

discovery requests have been served in this case.  The parties have not yet received initial

disclosures under Federal Rule 26(a)(1).

---

[4] As Plaintiff notes, Distributor Defendants had opposed remand of the Cherokee Nation case as part of the "strategic remands" by Judge Polster.  In their Memorandum of Law to the JPML on December 16, 2019, Distributor Defendants explained that Cherokee Nation's status as the largest Indian Tribe in the United States with the largest healthcare system of any Indian Tribe rendered it an especially difficult case for discovery (among other reasons that counseled against remand of this case).  JPML Case MDL No. 2804, Dkt. 6477 ("As a result, the scope of discovery exceeds that for any other tribe and is likely to be far greater and more complex than the massive discovery of the two bellwether counties in Ohio.  The Nation's status, size, and governance structure, moreover, is not typical of other tribal cases and would complicate discovery and trial of the case.").  For this reason, Distributor Defendants suggested other cases may be able to be discovered and move forward faster than the Cherokee Nation case, which will require extraordinary discovery given the structure, size, and scope of the Cherokee Nation.  The JPML did not dispute these points but nonetheless remanded the case in deference to Judge Polster's Suggestion of Remand.

***Plaintiff's position:*** Upon being remanded, Cherokee Nation obtained access to the global discovery previously produced by defendants in the MDL. A large volume of this global discovery from the MDL will bear on the Cherokee Nation's claims. In particular, discovery relating to the nationwide opioid distribution activities of most Defendants is substantially complete. Further productions in the MDL are also forthcoming, particularly relating to the Pharmacy Defendants' dispensing activities. Thus, at this time, Cherokee Nation anticipates that its discovery here will target: (a) distribution and dispensing activity in Cherokee Nation; (b) suspicious order monitoring and diversion in and around Cherokee Nation; (c) discovery from Pharmacy Defendants in regards to their opioid dispensing activities and in their capacities as owners of retail pharmacies; and (d) expert analyses and opinions regarding the effects of the opioid crisis in Cherokee Nation. It is anticipated that depositions of Pharmacy Defendants will soon commence in the MDL in the "Track 1B" case by two Ohio counties against the same Pharmacy Defendants named in this case. The Cherokee Nation and the Defendants anticipate that many of those depositions may be relevant to this case, and the parties will work towards creating efficiencies in relying on those depositions.

The scope of discovery will not likely be affected based on motions to dismiss. In the Cherokee Nation's amended complaint due April 10, 2020, its claims under Oklahoma law (public nuisance, negligence, unjust enrichment, and civil conspiracy) will track the factual and legal allegations asserted in the Muscogee Creek Nation's case in the MDL, which Judge Polster designated as a "bellwether motion case" and already ruled upon motions to dismiss (granting in part, and denying in part, Defendants' motions to dismiss the Tribe's claims under Oklahoma law).

***Defendants' position:*** To date, while there has already been voluminous discovery from Defendants in the nationwide opioid litigation, there has been ***no*** parallel discovery from Cherokee Nation received by any Defendant. Nor have Defendants received initial disclosures under Federal

Rule 26(a)(1) or had the opportunity to obtain any discovery from the wide range of state agencies and other third parties in Oklahoma that possess facts central to their defenses. Defendants anticipate that this discovery will be substantial. It will include, for example, discovery addressing whether and to what extent Defendants' alleged conduct caused a cognizable public nuisance on Cherokee Nation land or affected Cherokee Nation's governmental operations; when Cherokee Nation knew or should have known of its claims; whether Cherokee Nation can prove the necessary elements of causation; Cherokee Nation's own conduct with respect to opioid prescribing and dispensing as it provided health care to its citizens; and Cherokee Nation's alleged damages. Extensive third-party discovery is also necessary given the involvement of multiple State, county and federal agencies, law enforcement officials and others in assessing, responding to and funding responses to opioid-related health issues in Oklahoma. Furthermore, the nature and scope of Defendants' discovery will necessarily be affected by the scope of Cherokee Nation's amended complaint, which is expected to be filed by April 10, 2020. Discovery will also be shaped significantly, or potentially rendered moot, depending on the Court's rulings on the forthcoming motions to dismiss, which will not be ripe for decision until June 2020.

    2.    **Motions to Dismiss.**

    ***Plaintiff's position:*** Briefing on dispositive motions should be substantially limited, based on Judge Polster's prior rulings on Oklahoma law on motions to dismiss in *Muscogee Creek Nation*, which Judge Polster designated as a "bellwether motion case" for tribal opioid claims.[5]

    In remanding *Cherokee Nation*, the MDL court listed several of its significant accomplishments in presiding over the MDL, including that it had made "[r]ulings on motions to

---

[5] Distributor Defendants filed a motion to dismiss on March 16, 2020. This will be rendered "moot" when Cherokee Nation files its amended complaint by April 10, 2020. Prior to Distributor's filing, it was not clear Defendants intended to re-argue issues Judge Polster previously decided.

dismiss in several 'bellwether motion cases' involving various plaintiff types, defendants, claims and jurisdictions." ECF No. 2941 at 4. One of those "bellwether motion cases" was the Muscogee Creek Nation's opioid case, in which an Oklahoma tribe asserted claims of nuisance, negligence, and conspiracy (among others) under Oklahoma law, against the exact same defendants here.

Moreover, the factual and legal allegations in the Cherokee Nation's amended complaint will be substantially identical to the allegations in the *Muscogee Creek* Complaint. The purpose of strategically remanding *Cherokee Nation* (along with three other cases) was so that "resolution of substantial portions of the Opiate MDL will be speeded up and aided by strategic remand," and that "the global discovery, pretrial rulings, and other litigation matters over which the undersigned has already presided provide a good base upon which the transferor courts can build." MDL ECF No. 2941 at 5-6. This purpose will not be served if the MDL rulings do not apply to this case.

The Defendants in this case all litigated the motions to dismiss in *Muscogee Creek Nation*. First, each of the Defendants in this action filed a motion to dismiss. Together all the defendants in Muscogee Creek filed over 150 pages of briefing on motions to dismiss. Their motions were granted in part, and denied in part, in a 70-page report and recommendation issued by the MDL magistrate judge. *In re Nat'l Prescription Opiate Litig.*, No 1:17-md-02804, 2019 WL 2468267 (N.D. Ohio April 1, 2019). The defendants then filed objections to the magistrate judge's order, totaling another approximately 50 pages of briefing, which Judge Polster considered and resolved in a 28-page opinion resolving the Rule 12(b)(6) motions. *In re Nat'l Prescription Opiate Litig.*, No 1:17-md-02804, 2019 WL 3737023 (N.D. Ohio June 13, 2019) (adopting the Magistrate's recommendation, but dismissing Muscogee Creek's negligence *per se* claim under Oklahoma law).

Because of the extensive attention Judge Polster already gave to the law governing tribal opioid claims in the MDL, Defendants should be ordered to demonstrate why differences in law,

or applicable facts, compel a result different than the transferee MDL court has already found with respect to the same issues. This procedure honors the role of the transferee court in an MDL proceeding and will substantially reduce the burden on the Court and the parties.[6]

To be clear, Cherokee Nation's proposal does not argue this Court must adopt the *Muscogee Creek* rulings as "binding." Rather, Cherokee Nation proposes that the MDL court's prior work should frame how the same issues are re-litigated to this Court, if Defendants choose to re-litigate them, as follows: (1) Cherokee Nation will not re-assert any legal claim that Judge Polster dismissed in *Muscogee Creek Nation*; (2) should any Defendant elect to file a motion to dismiss raising any argument for dismissal that is related to an issue previously ruled upon in the MDL, at the outset of each such argument Defendant should include a citation to that previous ruling by docket number and page number, and explain what changed or what special circumstances warrant this Court's reconsideration of a legal issue previously briefed and decided in the MDL; and (3) to avoid duplicative briefing, the parties should be allowed to brief the issues by "incorporation by reference" to the prior arguments in the MDL. This process would alert this Court to prior rulings, and avoid inadvertent conflicting rulings.[7]

---

[6] It is also an approach that has been applied in other cases. *See, e.g.*, *In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ.3288 DLC, 2003 WL 21357026, at *1 (S.D.N.Y. June 11, 2003) (requiring plaintiffs to "show cause" why previously-issued orders in an MDL should not apply to their newly-filed cases as well).

[7] If and when *Muscogee Creek Nation* gets remanded to federal court in Oklahoma, Judge Polster's rulings will be binding, and different outcomes in *Cherokee Nation* on the same issues would create the kind of conflict MDL centralization is meant to avoid. *See generally* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §3867 (4th ed. Aug. 2019 Update) ("[E]xceptions to the law of the case principle should be especially rare in these circumstances, because refusal to follow the previous ruling would result in the sort of piecemeal decision making that MDL centralization is intended to avoid."). In footnote 8, Defendants cite *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) for the proposition that if *Muscogee Creek Nation* is remanded from the MDL, a federal court in Oklahoma is free to reverse or change Judge Polster's prior rulings on motions to dismiss in that case. *Rimbert* did not involve prior rulings from an

**_Defendant's position:_**   A joint status report is not the proper vehicle for raising, or responding to, substantive legal arguments on the merits of forthcoming motions to dismiss. Defendants reserve the right to brief these issues at a later time.  Moreover, Plaintiff's position that prior legal rulings by a different court in a different case should somehow limit Defendants' ability to mount their defense to Plaintiff's claims here is clearly incorrect.  *See Huffman v. Saul Holdings Ltd. P'ship,* 262 F.3d 1128, 1132 (10th Cir. 2001) ("The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in ***the same case***.") (emphasis added);  *see also* 18B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4478 (4th ed. Aug. 2019 update) ("Law-of-the-case rules ... [apply] during the course of a single continuing lawsuit" and "do[es] not apply between separate actions.").

        There is no exception for cases in an MDL.  The Supreme Court has instructed that cases consolidated in an MDL do ***not*** merge into a single case (at least in the absence of a master consolidated complaint, which was not filed in the MDL at issue here); instead they "ordinarily retain their separate identities."  *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904 (2015); *accord* Wright & Miller § 3862 (same).  It is a "well-established principle that consolidated cases remain separate actions" for purposes of law of the case doctrine; a ruling on an issue is binding law of the case only when "the ***same*** issue [is] presented a second time in the ***same*** case in the ***same*** court."  *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 339 (6th Cir. 2016) (emphases in original).  As then-Judge Ginsburg stated in a prominent MDL decision:  "The federal courts

---

MDL, where different considerations apply. *See, e.g.*, *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 705 (5th Cir. 2014) ("[t]he law of the case doctrine requires attention to the special authority granted to the multidistrict transferee judge and ensures that transferor courts respect the transferee court's decisions") (citation omitted).

spread across the country owe respect to each other's efforts and should strive to avoid conflicts, but each has an obligation to engage independently in reasoned analysis.  Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit." *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1176 (D.C. Cir. 1987).

While Plaintiff rightly concedes the position that Judge Polster's rulings in the *Muskogee Creek Nation* case are *not* binding on this Court, its proposal nonetheless attempts to treat those rulings as binding by asserting that "[b]riefing on dispositive motions should be substantially limited" based on those rulings, and that those rulings should be "reconsidered" only if Defendants show "special circumstances."  Plaintiff's position is directly contrary to settled law that rulings by a different court in a different case is not law of the case in this litigation.  If Plaintiff believes that another ruling from another case is persuasive authority, it can of course cite to such rulings and make that argument as part of its opposition to any motion to dismiss.  But there is no basis for Plaintiff's proposed approach, which would in effect treat rulings by a different judge in a different case as the law of the case absent "special circumstances" that warrant "reconsideration." There is no basis in the Federal Rules of Civil Procedure for Plaintiff's proposed one-off procedure for "reconsideration" of rulings that were not made in this case.  Such a procedure is contrary to settled limitations on the law-of-the-case doctrine, and would impermissibly restrict Defendants' right to defend themselves in this case.  It also disregards the fact that Distributor Defendants have already filed a motion to dismiss, which remains pending and which Cherokee Nation must respond to if it does not file an amended complaint.[8]

---

[8] Although not relevant here, Plaintiff is incorrect in asserting that Judge Polster's rulings will be binding in the *Muscogee (Creek) Nation* case if and when it is remanded to federal court in Oklahoma.  Rather, as the Tenth Circuit has held, "district courts generally remain free to reconsider their earlier interlocutory orders," including when "a case is reassigned from one judge to another . . . ." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (further noting,

3.      **Monthly telephonic status hearings.**

***Plaintiff's position:*** Plaintiff proposes the Court schedule a 30-minute standing monthly telephonic "status hearing" between the parties and either the Court or the Magistrate, as appropriate, to hear updates on the case and make sure it is progressing according to plan, as well as to permit the parties to raise discovery disputes or other pre-trial matters that may be efficiently resolved at a telephonic hearing. At least 10 days before any such scheduled status hearing, the parties will meet and confer to determine the agenda points to be submitted to the Court, or otherwise advise the Court that there are no issues to be raised and that the hearing may be cancelled. Additionally, any party may submit a motion no longer than 5 pages, excluding any exhibits, at least 10 days before a status hearing. Within 5 days, the opposing party may file a 5-page response.

***Defendant's position:*** Defendants believe that it is premature to schedule monthly status hearings at this time, particularly given the schedule that the Court recently approved for Plaintiff's amended complaint and motion-to-dismiss briefing and Plaintiff's agreement that there should be a 40-day stay of discovery, *see* Section D, *infra*. Defendants would be pleased to address the issue of whether monthly status hearings should be scheduled in this case, as well as appropriate briefing schedules and page limits for discovery issues, after motions to dismiss are briefed and decided, and discovery commences.

**D.      PROPOSED DEADLINES AND TRIAL DATE.**

***Plaintiff's position:*** Cherokee Nation acknowledges that the exigencies of addressing COVID-19 have made an immediate start to discovery unfeasible. Given the rapidly changing

---

"[t]he law of the case doctrine does not bind a judge to following rulings in the same case by another judge of coordinate jurisdiction.").

landscape and the significance of the next few weeks, Cherokee Nation believes that there should be a general 40-day stay of discovery. After the 40-day stay, while the public health situation may still present challenges to travel, government operations, and other functions, there is no reason that the parties could not at least begin the "lawyerly" process of discovery, i.e., exchanging their opening discovery request and beginning the process of meeting and conferring about the scope of those requests. If certain disputes cannot be resolved by compromise, the parties can submit them to the Court for resolution. These aspects of discovery are largely lawyer-driven and there is no reason to delay them beyond what is necessary. It would be inefficient to postpone this process of working through discovery disputes, which can take place even if there are continuing public health challenges. Moreover, there is no reason to believe that, after the period of conferences and potential discovery motions, the parties will not be in a position to begin the actual process of producing documents, responding to interrogatories, scheduling depositions, and so forth. Relatedly, after receiving the opening discovery requests there is no reason the Pharmacy Defendants cannot produce their dispensing data relevant to the Cherokee Nation, which is obtained merely by running a data request on their central databases. After both: (a) the 40-day stay, and (b) the lengthy period of negotiating and litigating preliminary discovery disputes— which took months in the MDL cases—if any Party continues to be hampered in its ability to collect certain documents, or its ability to produce certain witnesses, then the Parties can commit to focusing on other aspects of discovery that do not present such issues. While it is true many of Defendants' employees are involved in supplying important pharmacy products, the Defendants are all extremely large corporations, all listed in the top 20 of the "Fortune 500," with combined annual revenue well over a trillion dollars. There is typically a different set of employees primarily involved in responding to discovery requests, such as the legal departments, corporate records

13

custodians, information technology employees who run "search terms" to identify documents, and so forth.

Therefore, there is no need for the Court to postpone indefinitely entering a trial schedule, and/or to postpone discovery until after ruling on motions to dismiss. Rather, it would be beneficial to the parties for the Court to enter a trial schedule with realistic deadlines—deadlines that acknowledge the current challenges caused by the pandemic—and the parties can cooperatively work to adhere to these deadlines. Importantly, this case has the benefit of extensive rulings from Judge Polster in the MDL. Judge Polster has already issued a robust set of rulings on discovery issues, at least 12 Daubert motions, 27 summary judgment motions, etc., that will significantly narrow the scope of disputes in this litigation and move the case toward a trial date—especially including an omnibus evidentiary order memorializing rulings on over 100 motions in limine, which Judge Polster ordered will "apply to all future cases in this MDL that are tried by this Court" and "to the remanded cases tried by transferor courts."

Accordingly, the Cherokee Nation proposes:

| PROPOSED DISCOVERY / PRE-TRIAL DEADLINES | |
|---|---|
| Commencement of Discovery | May 11, 2020 |
| Discovery Cutoff | January 15, 2021 |
| Deadline for Exchange of Expert Reports by All Parties | February 1, 2021 |
| Close of Expert Discovery | March 5, 2021 |
| *Daubert* and Dispositive Motions | April 5, 2021 |
| Reponses to *Daubert* and Dispositive Motions | April 26, 2021 |
| Replies on *Daubert* and Dispositive Motions | May 7, 2021 |
| All Trial Materials | May 14, 2021 |
| Pretrial Hearing | May 21, 2021 |
| Trial Date | May 31, 2021 |

**_Defendants' position_:** In the interests of justice, efficiency, and conservation of resources, Defendants submit that discovery should not begin until after resolution of motions to dismiss, which will be fully briefed in June 2020. Given the complexity of this case, planning for and

14

responding to discovery will impose significant burdens and costs on the parties and the Court and result in a significant waste of resources if the motions to dismiss are granted in whole or in part.

Furthermore, as Plaintiff acknowledges, the ongoing public health crisis relating to the COVID-19 pandemic has created a great deal of uncertainty, making it difficult to establish a realistic discovery and trial schedule at this time.  As the Court is aware, Governor J. Kevin Stitt issued Executive Order 2020-07 on March 15, 2020, declaring an emergency in all 77 Oklahoma counties caused by the threat of COVID-19 to the people of the State.  Many of the necessary fact witnesses and counsel for all parties reside in locations across the country where similar, or more restrictive, orders and directives have been put in place by governing authorities.  As a result, travel to or from those locations is and will be for the foreseeable future either extremely difficult or impossible.

In addition, as suppliers of medications and medical equipment, Distributor Defendants are focused on their critical role in responding to the COVID-19 pandemic, which requires ongoing dependable access to the medical supplies and medicines that Distributor Defendants distribute to hospitals, urgent care facilities, long-term care facilities, and pharmacies across the country.  Distributor Defendants' employees are heavily engaged in these and other activities to mitigate the effects of this pandemic on the healthcare supply chain.  Just yesterday, the CEOs of McKesson and Cardinal Health met with President Trump and federal officials at the White House to help plan the distribution of vital medical supplies, and then joined the President for his daily coronavirus update to the nation.   Officials at every level of all three Distributor Defendants are engaged in combatting the pandemic and will be for the foreseeable future.  Many key government agencies are likewise, and rightly, focused on the urgent and immediate issues presented by COVID-19.  The same departments and agencies of the federal and Oklahoma state governments

that possess relevant and necessary discovery—including those related to public health, law enforcement, and emergency response—are also among those most overwhelmed with the response to the COVID-19 crisis and its impact.   Similarly, the Pharmacy Defendants are themselves involved in the emergency responses to this unprecedented public health crisis.   Retail pharmacies are essential businesses, working at full tilt to safely maintain pharmacy services for patients and ensure uninterrupted supply chains despite significant challenges, all while maintaining the health and safety of their pharmacists and other employees.

On March 17, 2020, this Court entered General Orders 20-5, 20-6, and 20-7 in response to the public health emergency, noting that "precautions in light of the COVID-19 virus outbreak" were necessary and appropriate.   E.D. Okla. General Order 20-5.   The provisions of that Order will likely apply to necessary participants in fact discovery, including third-party discovery.   The continuing threat of the outbreak, and the social distancing measures imposed by state and local governments around the country, as well as the directives of private employers, have severely curtailed the ability of the parties to conduct discovery in other opioid-related litigation, and the same will be true in this case.   This is a further reason to defer discovery—and the setting of a case schedule and trial date—until the motions to dismiss are resolved, at which time the Court and the parties will have more clarity about the state of the public health emergency.   Until (at least) then, it is difficult to see how any deadlines can be considered "realistic" in light of the current and ongoing state of uncertainty.

Defendants expect this case will require a minimum of 12 months for fact discovery, a minimum of 4 months for expert discovery, and a minimum of 2 months for *Daubert* and dispositive motion briefing following disposition of the motions to dismiss—if Cherokee Nation and third parties provide their discovery in a complete and timely fashion, and if the COVID-19

pandemic does not further disrupt the progression of the litigation. Even assuming timely discovery responses and minimal disruptions from the pandemic, this is the minimum amount of time that has proven feasible for other opioid cases around the country, including numerous cases of smaller geographic scope than this one.

For instance, in the MDL Ohio bellwether case (which involved only two counties and two cities, as compared to the fourteen counties comprising Cherokee Nation), fact discovery took more than 12 months, with the plaintiffs producing more than 15 million documents and 99 witnesses for depositions. This confirms that the scope of fact discovery will be extensive here, and will require at least 12 months to complete. Furthermore, given the importance of expert testimony in this litigation (as Cherokee Nation itself makes clear), 4 months is the minimum amount of time likely to be required to complete expert discovery. Defendants also expect that the Court will want a reasonable period of at least 2 months for consideration of summary judgment and *Daubert* motions. Depending on the time it takes for the Court to resolve motions to dismiss, and if the case proceeds past those motions, this would suggest a trial date sometime in the first half of 2022. That timing of course may be affected by the progression of the COVID-19 pandemic and other factors.

*     *     *

Respectfully submitted,

/s/ Tyler Ulrich
Tyler Ulrich (pro hac vice)
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
tulrich@bsfllp.com
Tel: (305) 539-8400
Fax: (305) 539-1307

Attorney General Sara Hill

/s/ Stuart D. Campbell
Stuart D. Campbell, OBA #11246
Kaylee Davis-Maddy, OBA #31534
DOERNER, SAUNDERS, DANIEL
& ANDERSON, L.L.P.
700 Williams Center Tower II
Two West Second Street
Tulsa, Oklahoma 74103-3522
Telephone 918-582-1211
Facsimile 918-591-5360

Assistant Attorney General Chrissi Nimmo
Assistant Attorney General John YoungTHE
CHEROKEE NATION
P.O. Box 948
Tahlequah, OK 74464

*Attorneys for the Cherokee Nation,
Plaintiff*

scampbell@dsda.com
kmaddy@dsda.com

*Counsel to Defendant McKesson
Corporation*

s/Susan E. Huntsman
D. Michael McBride III, OBA #15431
Susan E. Huntsman, OBA #18401
CROWE & DUNLEVY
A PROFESSIONAL CORPORATION
500 Kennedy Building
321 South Boston Avenue
Tulsa, OK 74103-3313
(918) 592-9800
(918) 592-9801 Facsimile
mike.mcbride@crowedunlevy.com
susan.huntsman@crowedunlevy.com

-and-

Robert A. Nicholas (admitted *PHV*)
Rachel B. Weil (admitted *PHV*)
Shannon E. McClure (admitted *PHV*)
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA  19103
(215) 851-8100
(215) 851-1420 Facsimile
nicholas@reedsmith.com
rweil@reedsmith.com
smcclure@reedsmith.com

-and-

Stan Perry (admitted *PHV*)
REED SMITH LLP
811 Main Street, Suite 1700
Houston, TX  77002-6110
(713) 469-3800
(713) 469-3899 Facsimile
sperry@reedsmith.com

*Attorneys for Defendant AmerisourceBergen
Drug Corporation*

18

/s/ Ryan A. Ray
Ryan A. Ray, OBA #22281
Norman Wohlgemuth Chandler
Jeter Barnett & Ray, P.C.
401 S. Boston Ave.
2900 Mid-Continent Tower
Tulsa, Oklahoma 74103
Telephone: (918) 583-7571
Facsimile: (918) 584-7846
rar@nwcjlaw.com

-and-

Emily Renshaw Pistilli (admitted *pro hac vice*)
William F. Hawkins (admitted *pro hac vice*)
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Attorneys for Defendant, Cardinal Health, Inc.*

/s/Steven E. Holden
Steven E. Holden, OBA #4289
Caleb S. McKee, OBA #32066
HOLDEN LITIGATION, Holden, P.C.
15 East 5th Street, Suite 3900
Tulsa, OK 74103
Telephone: 918-295-8888
Facsimile: 918-295-8889
SteveHolden@HoldenLitigation.com
CalebMcKee@HoldenLitigation.com

Steven E. Derringer
Kaspar Stoffelmayr
Bartlit Beck LLP
54 W. Hubbard St., Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
Facsimile: (312) 494-4440
Steven.Derringer@bartlitbeck.com
Kaspar.Stoffelmayr@bartlitbeck.com

19

Alex J. Harris
Bartlit Beck LLP
1801 Wewatta St.
Denver, CO 80202
Telephone: (303) 592-3100
Alex.Harris@bartlitbeck.com

*Attorneys for Defendants Walgreen Co. and Walgreens Boots Alliance, Inc.*

*/s/G. Calvin Sharpe*
G. Calvin Sharpe, OBA # 11702
Amy D. White, OBA # 19255
PHILLIPS MURRAH P.C.
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma 73102
(405) 235-4100 (t)
(405) 235-4133 (f)
*gcsharpe@phillipsmurrah.com*
*adwhite@phillipsmurrah.com*

-and-

Conor B. O'Croinin
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 949-1160
cocroinin@zuckerman.com
Eric R. Delinsky
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M St., NW, Suite 1000
Washington, D.C. 20035
Telephone: (202) 778-1800
edelinsky@zuckerman.com
phynes@zuckerman.com

*Attorneys for CVS Health Corporation; CVS Pharmacy, Inc., and Oklahoma CVS Pharmacy*

20