**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| THE CHEROKEE NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MCKESSON CORPORATION; | ) | Case No. 18-cv-56-RAW-SPS |
| CARDINAL HEALTH, INC.; | ) | |
| CARDINAL HEALTH 110, LLC; | ) | |
| AMERISOURCEBERGEN DRUG CORP.; | ) | |
| CVS PHARMACY, INC.; | ) | |
| OKLAHOMA CVS PHARMACY, L.L.C.; | ) | |
| WALGREEN CO.; | ) | |
| WAL-MART STORES, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## STATUS REPORT

Plaintiff respectfully submits this status report in advance of the December 11, 2020, 10:00 a.m. discovery status conference. The Parties agreed to a schedule and process by which to prepare and exchange this Report to be filed as a Joint Status Report. The agreement was:

On November 23, 2020, Plaintiff provided Defendants with a draft Joint Status Report with Plaintiff's summary and positions on disputed issues. The draft Joint Status Report was generally in the format of Sections A, B, and C below.

On November 30, 2020, Defendants provided their proposed edits to the Joint Status Report and included Defendants' response portions on disputed issues.

On December 2, 2020 Defendants provided further revisions to the Joint Status Report.

On December 4, 2020, Plaintiff provided its revisions in response to Defendants' positions.

1

On December 7, 2020, was the agreed deadline for Defendants to provide their final additions to their inserts on the Joint Status Report.

However, on the afternoon of December 7 Defendants advised Plaintiff for the first time they object to filing any of the summaries of the discovery impasses below in Section C, after having already drafted and exchanged the positions included below.

Since the parties had agreed to the process and exchanged the version of positions in Section C below—and Defendants had an opportunity to make any further additions they wished to include by the agreed-upon final revision date of December 7, 2020, Plaintiff is filing this status report and notes Defendants' objection.

\* \* \* \* \*

## I.     Status of Discovery

All parties have served and responded to numerous written discovery requests. The parties are in the process of collecting documents and conferring on certain objections and the scope of discovery, including search terms and custodians.

### A.     Written Discovery

Below is a timeline of the written discovery process to date.

1.  Fact discovery began on June 11, 2020. *See* D.E. 160.

2. On July 27, 2020, the Distributor Defendants[1] served their First Set of Requests for Production of Documents and First Set of Interrogatories on Cherokee Nation.

3. On July 30, 2020, the Pharmacy Defendants[2] served their First Set of Requests for Production on Cherokee Nation.

4. On August 17, 2020, Cherokee Nation served its First Set of Requests for Production on All Defendants; First Set of Requests for Production to CVS, Walgreens, and Walmart; and First Set of Requests for Production to McKesson.

5. On August 26, 2020, Cherokee Nation requested and Defendants agreed to a 30-day extension to respond to Defendants' initial discovery requests.

6. On September 15, 2020, the Pharmacy Defendants served their Second Set of Requests for Production on Cherokee Nation.

7. On September 16, 2020, all Defendants served responses and objections to Cherokee Nation's discovery requests served on August 17.

8. On September 24, 2020, CVS served its First Set of Interrogatories on Cherokee Nation.

9. On September 25, 2020, Cherokee Nation served Responses and Objections to the Distributor Defendants' First Set of Requests for Production and First Set of Interrogatories.

10. On September 28, 2020, Cherokee Nation served Responses and Objections to the Pharmacy Defendants' First Set of Requests for Production.

---

[1] The Distributor Defendants are McKesson Corporation ("McKesson"); Cardinal Health, Inc. and Cardinal Health 110, LLC (collectively "Cardinal Health"); and AmerisourceBergen Drug Corporation ("ABDC").

[2] The Pharmacy Defendants are CVS Pharmacy, Inc. and Oklahoma CVS Pharmacy, L.L.C. (collectively "CVS"); Walgreen Company ("Walgreens"); and Walmart Inc. ("Walmart"). Effective February 1, 2018, Wal-Mart Stores, Inc. changed its name to Walmart Inc.

11. On October 15, 2020, Cherokee Nation served Responses and Objections to the Pharmacy Defendants' Second Set of Requests for Production.

12. On October 21, 2020, Walgreens served its First Set of Interrogatories on Cherokee Nation.

13. On October 27, 2020, Walmart served its First Set of Interrogatories on Cherokee Nation.

14. On November 11, 2020, Cherokee Nation served its First Set of Interrogatories on all Defendants.

15. On November 11, 2020, Cherokee Nation served its First Set of Interrogatories on the Pharmacy Defendants.

16. On November 20, 2020, Cherokee Nation served Responses and Objections to Walgreens' First Set of Interrogatories.

17. On November 27, 2020, Cherokee Nation served Responses and Objections to Walmart's First Set of Interrogatories.

18. On December 2, 2020, the Distributor Defendants served their Second Set of Interrogatories on Cherokee Nation.

19. Third-party discovery is open. *See* Amended Case Management Order, D.E. 204, ¶ 9. To date, Defendants have served subpoenas for documents on the third parties identified in Annex A below.

To date, only one third party has made a small production (on November 27) in response to any of the 312 subpoenas served by Defendants that are listed in Annex A, though Defendants have had numerous meet and confer discussions with certain of these third parties. Very recently, after certain of these discussions had advanced and certain subpoenas had been pending for over a month, the Office of the Oklahoma Attorney General contacted defense counsel to assert that they are representing nearly all state entities, certain cities, towns and counties, and potentially

4

additional governmental agencies, with respect to the third party subpoenas issued in this matter. On November 25, Defendants received several near identical letters from the Attorney General's office asserting overarching objections to the majority of third party subpoenas listed in Annex A. Defendants maintain that most of the Attorney General's positions with respect to third party discovery in this matter are procedurally and substantively improper. In light of these objections, Defendants are in the process of scheduling additional meet and confers with these third parties, now to involve the Attorney General's office representatives. The Defendants intend to participate in good faith, but may need to present certain issues to the Court if the parties cannot agree.

**B.     Discovery Produced to Date**

*Cherokee Nation's Position:* The chart below identifies the number of case-specific documents each party has produced to date in this litigation:

| Party | Number of documents |
|-------|--------------------|
| Cherokee Nation | 439 |
| ABDC | 44 |
| Cardinal Health | 6,151 |
| McKesson[3] | 47 |

In addition to the documents identified on the chart, Walgreens responded, in part, to four of Cherokee Nation's document requests by citing Bates numbers of responsive documents Walgreens previously produced in the MDL. Walmart responded in the same manner to two of Cherokee Nation's document requests. Likewise, in responding to document requests all

---

[3] Although McKesson and ABDC have produced less than 50 documents specific to this case, these include spreadsheets of certain data that Cherokee Nation requested.

Defendants have made general reference to millions of pages of productions from the MDL, albeit without referencing any particular documents or Bates ranges.

*Defendants' Position:* Defendants have produced millions of documents in this action, including many documents relevant to this matter produced in *In Re National Prescription Opiate* multidistrict litigation pending in the U.S. District Court for the Northern District of Ohio ("MDL"). Plaintiff's chart of "case-specific documents" available to Cherokee Nation is, therefore, inaccurate. Distributor Defendants have produced transactional and other data regarding customers within the fourteen counties comprising the Cherokee Nation jurisdictional area, including spreadsheets with a significant amount of data that Cherokee Nation requested, and logs or indexes of their document productions. Walgreens responded, in part, to four of Cherokee Nation's document requests by citing Bates numbers of responsive documents Walgreens previously produced in the MDL. Walmart responded in the same manner to two of Cherokee Nation's document requests.

On November 21, 2020, Cherokee Nation made its first production of documents in this case, consisting of 439 documents.

**C.     Meet and Confer Process**

Starting in late October the parties have conferred concerning the scope of relevant discovery for approximately 4.5 hours over four telephone calls and through written correspondence. The parties have not resolved their disputes over these issues outlined below.

**1.     Preliminary Statements about the Status and Scope of Discovery**

*Cherokee Nation's Position:* This case was remanded from the MDL as the "tribal track" bellwether case. The JPML remanded the case as part of what the MDL court described as a coordinated "hub and spoke" model of the national opioid litigation. This model contemplated that

6

certain national discovery would occur in the MDL, and that case-specific discovery and trials would occur in the transferor jurisdictions of the remanded cases. The MDL court has spent nearly three years dealing with disputes about the appropriate "scope" of discovery in cases brought by government entities against opioid distributors and retail pharmacies. For example, the MDL court has issued rulings on topics such as the relevant time period of discovery and the geographic area. In conferring with Defendants on discovery issues, Cherokee Nation's position has been that if the MDL court (or the MDL Special Master) has entered a ruling on a dispute about the "scope" of relevant discovery, then there is no reason to re-litigate the same issue here. Instead, the MDL ruling should be applied to corresponding discovery issues in this case, unless the parties agree otherwise. Cherokee Nation's positions below are consistent with the discovery rulings on corresponding issues in the MDL. Defendants argue otherwise, but they appear to be relying on a discovery ruling the court revised.

Finally, Defendants continue to mention "millions of documents" they produced into the MDL document repository. Such documents include every document Defendants have produced in any opioid litigation nationwide, perhaps hundreds of millions of pages from dozens of different cases brought by states, cities, and counties, as well as documents Defendants produced to state or federal investigators during numerous investigations into their misconduct over the years. It is indeed possible some of these documents are relevant to this case. If any such documents are responsive to Cherokee Nation's pending document requests or interrogatories, Defendants should simply identify them. The documents do not need to be produced again. But merely referencing the existence of millions of documents is not helpful and does not discharge Defendants' discovery responsibilities.

*Defendants' Preliminary Statement:*  As noted in the joint status report filed on October 21, 2020 (D.E. 206), Defendants continue to be concerned about the imbalance of discovery and the ability to meet the fact discovery deadline in light of Plaintiff's delayed and minimal document productions to date. As the Court is aware, Plaintiff has had access to millions of Defendants' documents and hundreds of transcripts of depositions and witness interviews of Defendants' witnesses for months. *See* Joint Status Report, p. 4 (D.E. 206).  Distributor Defendants have also provided detailed logs or indexes about their productions and produced substantial information relating to shipments and customers of prescription opioids in the Cherokee Nation jurisdictional area.  By contrast, Plaintiff made its first production of documents just over two weeks ago, and produced only 439 documents.  In other opioid cases involving similarly expansive claims and allegations as those at issue here, plaintiffs have had to produce many thousands of documents across a wide array of government functions and custodians.

When this case was remanded from the MDL, the JPML did not indicate that this Court would in any way be bound by the MDL court's rulings on discovery issues in cases involving different plaintiffs, different defendants, different claims, and different governing law. While the MDL court's discovery rulings may at times be instructive, Defendants' position is that this Court should resolve discovery disputes in the context of the needs of this case rather than merely import all of the MDL rulings as Cherokee Nation suggests. This is the approach that other courts have taken with respect to other opioid cases remanded from the MDL. Though this Court should not be bound by the MDL court's rulings, Cherokee Nation is entitled to take the position that there is no need to re-litigate discovery issues previously resolved in the MDL. But Cherokee Nation must be consistent and it cannot argue—as detailed further below—that a few cherry picked MDL rulings resolve certain discovery issues while it seeks to re-litigate MDL rulings that contradict its

position on other issues. As discussed below, MDL rulings support Distributor Defendants'
position regarding issues that Plaintiff raises in this report as they pertain to those Defendants.

Finally, Defendants note that, to the extent any party has a dispute regarding discovery, the
proper way to present that dispute for decision by this Court is through motion and not via status
reports. *See* Joint Status Report, p. 10 (D.E. 120) ("A joint status report is not the proper vehicle
for raising, or responding to, substantive legal arguments on the merits of forthcoming motions to
dismiss. Defendants reserve the right to brief these issues at a later time.") (quoting Defendants'
position).

## 2.      Relevant Opioid Products

*Cherokee Nation's Position:* Cherokee Nation's discovery requests seek certain categories
of Defendants' documents and communications concerning opioids. Defendants do not dispute
that the term "opioids" includes commonly abused opioid products such as codeine, but they
nevertheless resist discovery into their practices and data concerning codeine and various other
opioids by claiming it would be overly burdensome to look for such documents. Defendants'
position should be rejected for numerous reasons.

***First***, on the question of relevance, all commonly-abused opioids are clearly relevant.
Although certain notorious "Schedule II" opioid products like fentanyl or high-dose OxyContin
are among the strongest and the most deadly products, they are not necessarily the most widely
abused in every geographic area. Less potent opioids in Schedule III through Schedule V—such
as certain codeine-related products—are also highly important to this case. There is no basis to
exclude them based on relevance.

***Second***, Plaintiff's Amended Complaint is not limited to only Schedule II opioids. Rather,
the complaint puts at issue all opioids as defined by federal law, including codeine. *See, e.g.*, Am.

Compl. at ¶¶ 30–31, D.E. 136 (April 10, 2020) (defining "opioids" broadly to "include *all drugs* derived in whole or in part from the opium poppy—natural, synthetic, and semi-synthetic opioids"). Likewise, the Plaintiff's discovery requests define "opioids" by reference to definition set forth by the Controlled Substances Act, 21 U.S.C. § 802, which includes codeine and other opioid products.

*Third*, the Pharmacy Defendants' relevant legal duties under federal regulations are not limited to only Schedule II opioids. Indeed, numerous federal cases have found that legal duties concerning controlled substances are relevant and applicable in opioid lawsuits. *See, e.g.*, 21 C.F.R. § 1306.04(a) (imposing responsibilities on pharmacists for the proper dispensing of all controlled substances without regarding for the schedule).[4]

*Fourth,* Pharmacy Defendants themselves have sought third-party discovery of non-Schedule II opioids—and even discovery of non-opioid drugs. *See, e.g.*, Walmart subpoena to Indian Health Service, D.E. 234-1 (seeking discovery of "Illicit Drugs," which Walmart defined broadly to include all Schedules for all drugs: "*any scheduled drug* as defined in 21 U.S.C. § 812 that was illegally manufactured, obtained, diverted, or used."); Walgreens subpoenas to 21 Oklahoma Drug Courts, D.E. 214-1–228-1, D.E. 233-1, D.E. 235-1–239-1 (seeking discovery of "Illicit Drugs," which under Walgreens' definition would include all Schedules for all drugs: "any Schedule I drug, *as well as any drug monitored by the DEA*" (emphasis added)).

---

[4] *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3917575, at *7–9 (N.D. Ohio Aug. 19, 2019) (finding that distributors of controlled substances have legal duties under the Controlled Substances Act, 21 U.S.C. §§  to identify, investigate, decline to ship, and report suspicious orders of controlled substances); *In re Na''l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2020 WL 5642173, at *2 (N.D. Ohio Sept. 22, 2020) ("The Court overruled the Pharmacy Defendants' principal contention, and the Court reaffirms its conclusion here: 'all registrants [including pharmacies] have an affirmative obligation to protect not only against diversion via theft but also other forms of diversion more broadly.'").

*Fifth*, half of the Defendants in this case—McKesson, Cardinal, and ABDC—agree that opioids such as codeine are within the scope of discovery regardless of whether they are classified Schedule II opioids. The Distributor Defendants have agreed to produce discovery relating to the opioid products Cherokee Nation has requested, including codeine products.

*Sixth*, the Pharmacy Defendants were ordered to produce data and documents about numerous non-Schedule II drugs in the MDL including benzodiazepines and muscle relaxers (which are Schedule IV and some are not even scheduled).

Pharmacy Defendants nevertheless maintain that discovery should be strictly limited to only eight specific Schedule II opioid products. Cherokee Nation is not aware of any MDL order holding that non-Schedule II opioids are irrelevant in a case in which Pharmacies' dispensing practices are at issue. As mentioned above, in 2020 the MDL ordered Defendants' to produce data regarding numerous Schedule IV controlled substances. *See also* Discovery Ruling No. 3 at 6 n.2, *In Re: National Prescription Opiate Litigation*, D.E. 762 ("Given some apparent confusion by a few defendants, the Special Master makes clear that this ruling includes discovery related to Schedule II drugs during earlier periods of time when they were listed as Schedule III drugs (e.g. hydrocodone combination products).").

And regardless, as the MDL has recognized, the scope of discovery may change based on the specific facts of the case. During the parties' meet and confers, Cherokee Nation has explained to Defendants that codeine-related products, regardless of Schedule, are relevant to this case because of the high prevalence of abuse of such products among Native Americans. The National Institute on Drug Abuse of the United States Department of Health and Human Services has also held that non-Schedule II codeine products are harmful and widely abused. For example, the agency wrote that "[d]rinking promethazine-codeine cough syrup mixed with soda (a combination

called syrup, sizzurp, purple drank, barre, or lean) was referenced frequently in some popular music beginning in the late 1990s and has become increasingly popular among youth in several areas of the country." *See DrugFacts*, *Cough and Cold Medicine Abuse*, NATION INSTITUTE OF DRUG ABUSE (May 2014), www.drugabuse.gov/sites/default/files/drugfacts_cough_cold_meds.pdf. (warning that "when abused, promethazine-codeine cough syrup presents a high risk of fatal overdose due to its effect of depressing the central nervous system, which can slow or stop the heart and lungs. Mixing with alcohol greatly increases this risk.").

Moreover, Defendants have previously argued that ***all opioid products*** are relevant to this case—regardless of Schedule. In connection with the motion practice over whether there was federal jurisdiction, Defendants relied on non-Schedule II opioids as part of the argument in favor of McKesson's removal. *See In Re: National Prescription Opiate Litigation*, MDL No. 2804, ECF No. 1052 (Oct. 28, 2018). McKesson's brief informed the MDL court about volumes of non-Schedule II opioid distributions and argued that:

> [the] ARCOS data [cited by Cherokee Nation] does not include ***numerous prescription opioid products that are within the scope of the [Cherokee] Nation's claims, such as Tramadol, propoxyphene, and others.*** *See* Compl., ¶ 29 (defining the 'opioid[s]' put at issue by the Nation's claims as 'all drugs derived in whole or in part from the opium poppy'). McKesson distributed a large number of dosage units for these prescription opioid products to federal government facilities in the Cherokee Nation's counties, and the Nation's calculation ignores those opioid distributions.

*Id*. Thus, in opposing remand to state court McKesson argued that the MDL court needed to consider non-Schedule II opioids (like Tramadol, codeine, and others). Therefore, having relied on data regarding ***all*** opioids—including all Schedules—to argue for federal jurisdiction, Defendants cannot credibly argue that non-Schedule II opioids are beyond the scope of discovery.

_Distributor Defendants' Position:_ The distribution data produced by the Distributor Defendants in this litigation is not limited with respect to particular medications and does not omit any opioid medications.  As noted in Plaintiff's statement, the Distributor Defendants have agreed to produce discovery relating to the opioid products Cherokee Nation has requested. There seems to be no dispute between Plaintiff and the Distributor Defendants with respect to this issue.

_Pharmacy Defendants' Position:_ This issue is not yet ripe. The parties have engaged in a series of fruitful discussions and have been very close to coming to an agreeable compromise. As part of those discussions, Plaintiff agreed that the relevant opioids would be the same eight Schedule II opioids at issue in the MDL with one exception: it sought to replace one MDL Schedule II opioid (tapentadol) with many different codeine products. While the Pharmacy Defendants agreed to codeine products that were—like the MDL opioids—Schedule II medications, Plaintiff insists on including _all_ schedules of codeine products—an overbroad position that would implicate products like Tylenol with codeine (Schedule III) or Robitussin AC (Schedule V). The MDL Court has explained that the drugs at the root of the alleged "opioid crisis" are Schedule II drugs, not drugs such as Tylenol with codeine.  Discovery Ruling No. 2, _In Re: National Prescription Opiate Litigation_, Case: 1:17-md-02804-DAP, Document 693 at 2-3.

Plaintiff's current request to now include _all_ "opioid and opioid-related products as defined under the Controlled Substances Act" would be an enormous departure from the scope of relevant medications at issue in the MDL and many other state cases, and would create enormous inefficiencies with respect to the Pharmacy Defendants' ability to collect and produce data. The Pharmacy Defendants seek only to be consistent with the scope of medications at issue in the MDL and other opioid-related cases and never joined the filing that Plaintiff now erroneously attributes to all Defendants. As noted, the MDL court already has ruled that medications like Tylenol with

13

codeine are "clearly peripheral" and "barely relevant to plaintiffs' claims." *Id.* at 3 (denying plaintiffs' request for production of non-Schedule II medications).

While the Pharmacy Defendants remain willing to add Schedule II codeine products to the list of relevant opioids, Plaintiff's new demand of *all* schedules of *all* opioid and opioid-related products is unreasonable. No opioid-related case to date has permitted such expansive and irrelevant discovery. Broadening the scope here would create enormous inefficiencies and delay and is not proportional to the needs of the case. It would, for example, require the re-review of all documents previously reviewed in other opioid litigation and made available to Plaintiff in this case to determine relevancy in light of the additional medications requested.

### 3.    Relevant Geographic Scope

<u>*Cherokee Nation's Position:*</u> The relevant geographic area for discovery should be the Cherokee Nation and surrounding counties. This includes the 14 counties in Northeastern Oklahoma of Cherokee Nation's reservation, plus the 7 surrounding Oklahoma counties of Pawnee, Payne, Creek, Okmulgee, Pittsburg, Haskell, and Le Flore; and 9 counties next to Cherokee Nation in surrounding states: McDonald, Newton, Jasper, Benton, Washington, Crawford, Sebastian, Labette, and Montgomery.

The rationale for the geographic scope is that controlled substances travel. Prohibiting Plaintiff from discovering information about the activities of pharmacies located outside Cherokee Nation (and distributing activities to these pharmacies) would exclude, for example, the nearby pharmacies that dispense opioids that flood the Cherokee Nation. Many of them are only a matter of miles away from Cherokee Nation. Notably, in opposing motions to dismiss in this case, Defendants argued it was arbitrary to assume that pharmacy locations serve only customers within a close geographic proximity; meaning the Defendants have effectively conceded Cherokee Nation's position regarding the relevance of data from pharmacies located in bordering counties.

14

Additionally, this geographic scope is necessary to derive valid statistics showing how patterns of opioid transactions may differ across locations, which is relevant to establishing what the defendants knew about the potential diversion of controlled substances.

Moreover, the issue of the relevant geographic scope of distribution and dispensing data was litigated extensively in the MDL through briefs, hearings, and multiple orders. The MDL has "repeatedly" recognized that "certain *evidence from beyond the plaintiff jurisdictions is relevant to their claims*." Order at 2, Case: 1:17-md-02804-DAP, D.E. 3389 (July 21, 2020) (citing rulings). There is no reason to depart from the principles established in the MDL concerning the appropriate scope of geographic discovery in a case similar to this one.

The MDL, for example, ordered Pharmacy Defendants to produce transactional dispensing data for the entire state of Ohio (88 counties) in a case brought by two counties in northern Ohio. *See* Order at 3, *In Re: National Prescription Opiate Litigation*, MDL 2804, D.E. 3341 (June 17, 2020) (holding that "transactional dispensing data for Ohio is likewise relevant and proportional to the needs of Track Three."). This involved producing data for over 500 of Defendants' pharmacy locations. The MDL court also ordered Walmart, CVS, and Walgreens to produce *distribution* data in their role as opioid distributors for the entire state of Ohio. Order Regarding Geographic Scope of Discovery at 7, 11, D.E. 3371 (July 8, 2020) (requiring the production of distribution data for the state of Ohio in response to plaintiffs' request for production no. 4 and restating that the Court found that "dispensing data for Ohio is likewise relevant and proportional to the needs of Track Three").

Similarly, in a different MDL case brought by a West Virginia county and city, the MDL court ordered some of the same Defendants here to produce transactional distribution data from an entire three-state area—all of West Virginia, Kentucky, and Ohio. *See* Order Regarding Track Two

Cases at 5, D.E. 2950 (Nov. 22, 2019) ("The Court concludes the appropriate geographic scope of discovery of transactional data should be for the states of Ohio, West Virginia, and Kentucky.").[5]

To try to distinguish Judge Polster's discovery orders, Pharmacy Defendants rely on a New York trial court order (applying New York state civil procedure) in a case brought by two county governments, Nassau and Suffolk Counties. *See* Decision and Order, *In re: Opioid Litigation*, Index No. 400000/2017, D.E. 3388 (Jan. 28, 2020). Defendants claim the judge "ruled" that the geographic scope of certain discovery should be limited to the plaintiffs' county-specific jurisdiction. So far as it appears, however, the geographic scope in that case was actually framed by an agreement, not a ruling. The plaintiffs did not seek statewide discovery of pharmacy data.

Regardless, the New York county case is not comparable. Cherokee Nation's discovery request is proportional to this case. In terms of burden, there were approximately 185 of Defendants' pharmacy locations in those two New York counties, according to DEA data. In this case there are about 194 of Defendants' Pharmacy locations in the relevant counties in Oklahoma, Arkansas, Missouri, and Kansas *combined*. The burden is not materially different.

There is also a much stronger argument for a broader geographic scope in this case. The population density in Nassau County, New York, is about 4,700 people living per square mile, which is extremely dense. By comparison, in Eastern Oklahoma along the Arkansas border, the population density is about 50 people living per square mile (8000% less). This means fewer

---

[5] *See also* Cardinal Letter to Plaintiffs dated Dec. 13, 2019, Exhibit to Plaintiffs' Motion to Compel Discovery, *Huntington v. AmerisourceBergen Drug Corp.*, Case 3:17-cv-01362, D.E. 140-2 (Jan. 24, 2020) ("Cardinal Health will also be producing transactional data for West Virginia, Kentucky, and Ohio consistent with Judge Polster's order, and expects to do so by years' end."); ABDC's Response to Plaintiffs' Motion to Compel, *Huntington v. AmerisourceBergen Drug Corp.*, Case 3:17-cv-01362, D.E. 193 (Mar. 4, 2020) (stating that "ABDC produced transactional data for West Virginia from 2002 through 2018 and Ohio from 2007 through 2017 [and] Kentucky from 2010 through November 30, 2018.").

pharmacies per square mile, and people may drive farther. Most of the relevant pharmacy locations in Arkansas, for example, are within about 25 miles from Cherokee Nation. And some are only a few miles away (including some located in what the United States Census Bureau has designated as the "Fort Smith Metropolitan Statistical Area," which is a five-county area including three Western Arkansas counties and part of Cherokee Nation). In sum, as the MDL court recognized, there is no reason to arbitrarily cut-off discovery of Defendants' activities at the border of a plaintiff's jurisdiction. Rather, "evidence from beyond the plaintiff jurisdictions is relevant to their claims." This is even confirmed by Defendants' own geographically expansive third party discovery requests, whose scope is broader than what Defendants are asking this Court to impose on Plaintiff.[6]

_Distributor Defendants' Position:_ The relevant geographic scope for discovery from the Distributor Defendants in this case should be limited to the 14 counties containing Cherokee Nation's jurisdictional area, in accordance with the allegations in the Amended Complaint and the rulings in the MDL.

---

[6] _See, e.g._, Cardinal subpoena to Oklahoma Board of Medical Licensure and Supervision (no docket number) (seeking discovery for the entire state of Oklahoma relating to opioid diversion); Walgreens subpoena to Oklahoma Bureau of Narcotics, D.E. 205-1 (seeking discovery without geographic limitation of "[a]ll Documents reflecting or relating to Your registering and discipline of registrants on a summary basis by year."); Walmart subpoena to Indian Health Services, D.E. 234-1 (seeking discovery without geographic limitation of documents relating to opioid abuse). It is also necessary to point out that the Pharmacy Defendants' argument regarding geographic scope is filled with inaccurate statements. The Sixth Circuit did not reverse the MDL court's ruling on national dispensing; rather, it stayed the ruling and eventually decided the issue was moot. The New York court's order did not reject the plaintiffs' requests for statewide discovery; the plaintiffs request was limited to several counties. They claim Cherokee Nation "has no way of determining whether its members use pharmacies that fall outside of the borders of the reservation"; however, Cherokee Nation actually informed Defendants that the exact opposite is true. They also claim that this case is unique because Cherokee Nation has "overlapping jurisdiction with other governments"—failing to acknowledge that cities, counties, states, and the federal government, all of which have brought actions against these defendants, also have aspects of overlapping jurisdiction.

Plaintiff alleges that Cherokee Nation "is a sovereign Indian nation that occupies all or part of 14 Counties in Northeast Oklahoma," an area it defines as the "14 Counties" and the "Cherokee Nation Jurisdictional Area." Am. Compl. ¶ 17, n.11. Plaintiff's principal claim against Distributor Defendants is that they allegedly "flooded" these 14 Counties "with opioid pills" and that this alleged "oversupply" of opioids purportedly contributed to an opioid crisis or epidemic in Cherokee Nation. *E.g.*, *id.* ¶¶ 7, 33. Based on this claim, Plaintiff seeks damages and other relief for the alleged injuries that Cherokee Nation has purportedly suffered, including "expenses Cherokee Nation has incurred or will incur" and "increased costs to Cherokee Nation's healthcare, criminal justice, social services, welfare, and education systems" in relation to the opioid crisis. *E.g.*, *id.* at 82 (Prayer for Relief). Based on Plaintiff's own allegations, discovery beyond the 14 Counties, including areas outside the State of Oklahoma, is either irrelevant or not proportional to the needs of the case.

The MDL rulings Plaintiff cites did not require Distributor Defendants to provide discovery beyond the two counties at issue in that case. Contrary to Plaintiff's suggestion, the MDL court limited the geographic scope of discovery regarding "decentralized, customer-specific materials, such as sales call notes and transactional data"—including distribution and shipping data from Distributor Defendants—to only the two counties that brought the case. *See In Re: National Prescription Opiate Litigation*, MDL No. 2804, Order at 2–4, D.E. 762 (July 17, 2018). To the extent MDL rulings expanded the geographic scope of discovery beyond the counties at issue, it did so with respect to dispensing data from pharmacy defendants and "with one eye toward future bellwether cases and also State-court litigation—in other words, with ensuring plaintiffs and defendants begin now with discovery for *other* cases that have a fair chance of going to trial." *Id.* at 3; *see In Re: National Prescription Opiate Litigation*, MDL No. 2804, Order at 3, D.E. 3341

(June 17, 2020) (ordering the production of "transactional dispensing data" in a case involving only pharmacy defendants); Order Regarding Track Two Cases at 5, D.E. 2950 (ordering production of transactional data with respect to Pharmacy defendants). These rulings do not support extending the geographic scope of discovery from Distributor Defendants in this case.

_Pharmacy Defendants' Position:_ This issue is not yet ripe. Plaintiff's proposal is unnecessarily broad, exceedingly burdensome, and would greatly complicate discovery in this case. To start, Plaintiff's claims relate to prescription opioids that the Pharmacy Defendants distributed to and dispensed within the borders of Cherokee Nation. What the Pharmacy Defendants distributed to and dispensed anywhere outside the borders of Cherokee Nation is not relevant. Moreover, Plaintiff mischaracterizes the MDL rulings, which ordered statewide discovery for only limited topics that were more data-focused and likely available in centralized repositories (i.e., transactional distribution and dispensing data). The majority of discovery in the MDL was limited geographically to the plaintiffs' jurisdictions in light of the significant burden associated with a broader scope, including, for example, collecting documents and hard copy files from pharmacies and custodians spread across multiple states. Additionally, Plaintiff's proposal would significantly expand third-party discovery to local government agencies in three additional states. Such an expansion is not warranted under the circumstances.

The Pharmacy Defendants' position is that Cherokee Nation has sovereignty over only the fee and trust land it identified in its interrogatory responses, and so the relevant geographic scope should include, at most, Cherokee County, Adair County, Sequoyah County, Delaware County, and possibly Mayes and Craig Counties. This proposal is consistent with other courts' rulings in similar opioid cases in New York and Massachusetts that have limited the geographic scope of discovery to the area immediately encompassing plaintiffs' jurisdictions and rejected plaintiffs'

19

requests to expand discovery to encompass an entire state. No court has compelled a pharmacy defendant to produce discovery from pharmacies across State lines.

The MDL Court initially ruled that the pharmacies would have to produce dispensing data on a national scale. But that ruling was reversed by the Sixth Circuit. On remand, the MDL Court limited the scope to the State of Ohio. Both of those rulings had more to do with a desire to create efficiencies in the MDL, and less to do with a relevancy determination. Even if the MDL's ruling on geographic scope were based on relevancy, Cherokee Nation is not like a county or municipality. It has overlapping jurisdiction with other governments. Its request for discovery from a wide swath of land in northeastern Oklahoma will already sweep in sensitive health information about numerous non-Native Americans that is irrelevant to this case. That concern is exacerbated by moving outside of the Cherokee Nation's boundaries.

The Cherokee Nation has informed the pharmacy defendants that it has no way of determining whether its members use pharmacies that fall outside of the borders of the reservation, let alone pharmacies in other States. That kind of fishing expedition, without any good faith basis, should not be permitted.

### 5.     Temporal Scope for Discovery

*Cherokee Nation's Position:* The relevant discovery period in this case should be basically consistent with what was ordered in the MDL, as there is no reason to re-litigate these rulings. For the start-date, Cherokee Nation believes Defendants should be ordered to produce certain discovery back to January 1, 1996, consistent with the MDL ruling that "distributor defendants shall produce transactional data and Suspicious Order Reports with a cut-off date of January 1, 1996." *See* MDL Discovery Ruling No. 2 at 11, *In Re: National Prescription Opiate Litigation*, MDL 2804, D.E. 693 (June 30, 2018). The same 1996 start date also applied to distribution activities of the Pharmacy Defendants, as stated in a subsequent MDL ruling:

> [T]the pharmacies argue their discovery obligations should be more limited because, unlike the distributor defendants, they distributed opioids only to their own retail stores. The Special Master rejects this argument. The distribution function of a national retail pharmacy implicates exactly the same anti-diversion obligations as any other distributor defendant. . . . Accordingly, the Special Master declines to impose different discovery obligations on the pharmacy defendants than on the other distributor defendants.

MDL Discovery Ruling No. 3 at 7-8, D.E. 762 (July 17, 2018).

Additionally, Cherokee Nation has requested the Pharmacy Defendants produce pharmacy dispensing data back to 2006, which is also consistent with MDL rulings. *See* Order on Reconsideration Regarding Scope of Discovery at 4, *In Re: National Prescription Opiate Litigation*, D.E. 3055 (holding that the temporal scope for pharmacy dispensing data should be from 2006 forward).

Although Plaintiff is not aware of any specific ruling by the MDL court regarding the appropriate start date for relevant documents from the "custodial productions" from Defendants' witnesses, Plaintiff believes Defendants should produce responsive company documents, emails, memos, etc., from their witnesses' custodial files going back to 1996 (provided such files can be located after a reasonable search). If no such documents can be located, then Defendants should simply look for responsive documents from their relevant employees for as far back as they exist. In sum, contrary to the argument of some Defendants, there is no basis for a blanket cut-off date of 2006 of witnesses' documents. This is especially true given the MDL rulings that find certain company documents from 1996 to be potentially highly relevant.

Also, the Defendants themselves have sought discovery of documents going back to 1996 through numerous third-party subpoenas served upon Oklahoma government entities. As just a few examples, Walgreen's subpoena to the Oklahoma Bureau of Narcotics (D.E. 205-1) requires the agency to produce "annual reports *from 1996 to the present*." Cardinal's subpoena to

Oklahoma Board of Medical Licensure and Supervision (no docket number) seeks discovery of "Documents *from 1996 to present* regarding the Oklahoma Board of Medical Licensure and Supervision's policy entitled 'Use of Controlled Substances for the Treatment of Pain.'" McKesson's subpoena to Adair County Sheriff (D.E. 232-1) requests "annual reports *from 1996 to the present*." Defendants cannot credibly argue that pre-2006 documents are "irrelevant" when they themselves are subpoenaing discovery back to 1996.

For the end-date of discovery collection, Cherokee Nation has proposed an end-date of April 4, 2020, the date Cherokee Nation filed its Amended Complaint. This will maintain consistency with what was done in the MDL *See, e.g.*, Order Regarding Temporal Scope of Discovery at 1–3, *In Re: National Prescription Opiate Litigation*, Case: 1:17-md-02804-DAP, D.E. 3399 (July 29, 2020) (ordering an end date of May 27, 2020—which is the date MDL Track 3 plaintiffs filed their *amended complaint*—for certain discovery relating to dispensing claims). The 2020 end date is also consistent with the temporal scope of discovery that Defendants are seeking in this case. *See, e.g.*, Walmart subpoena to Indian Health Services, D.E. 234-1 (served Nov. 10, 2020) (seeking discovery through 2020).[7]

Finally, Plaintiff has advised Defendants during the conference process that if Defendants can provide a reasonable explanation why it would be disproportionately burdensome to update the document collection of certain witnesses whose custodial files were previously collected in 2018-2019 (in connection with the MDL), then the parties can likely reach an agreement for an earlier cut-off date. But there is no reason for a blanket cut-off. Certainly for any "new" defense

---

[7] Some Defendants contend MDL Discovery Ruling No. 2 imposed an end date of 2018 for discovery. On its face, however, that ruling provides no such end date. Rather, it discusses only the begin date for discovery. *See* Discovery Ruling No. 2 at 11, *In Re: National Prescription Opiate Litigation*, Case: 1:17-md-02804-DAP, D.E. 693 (June 30, 2018)

witnesses/custodians whose electronic files have never been previously collected, there is no logical reason to impose a 2018 cut-off date even though Plaintiff filed its operative complaint in April 2020 (after the case was effectively stayed for nearly 3 years).

*Distributor Defendants' Position:* The Distributor Defendants have already made, and will continue to make, productions consistent with the MDL rulings and with Plaintiff's requested start dates.  Consistent with the MDL rulings, Distributor Defendants have produced or will produce available transactional data (to the extent it exists) from January 1, 1996, through 2018, the ending time frame for MDL productions.  *See* MDL No. 2804, Order at 11, D.E. 693.  They also have produced and will produce responsive documents from 2006 to 2018.  *Id.*  The MDL order Plaintiff cites does not pertain to information by Distributor Defendants.  Collecting and producing additional documents through 2020 would be unduly burdensome to those Defendants and would not be proportional to the needs of the case.

*Pharmacy Defendants' Position:* This issue is not yet ripe for the Court's involvement. The parties have engaged in a series of fruitful discussions and are very close to coming to an agreeable compromise. In fact, the Pharmacy Defendants are not opposed to Plaintiff's request for a start date of January 1, 2006, for transactional dispensing data to the extent such data is reasonably accessible and have been open to discussing Plaintiff's demand for an even earlier January 1, 1996, start date for transactional distribution data. But Plaintiff has not yet provided any justification for seeking discovery from the Pharmacy Defendants dating back until 1996 while Plaintiff refuses to provide discovery dating back to 1996 and instead identifies the "relevant period" for discovery as starting in 2006.

The Pharmacy Defendants proposed an end date for dispensing data of January 2018 because that is when Cherokee Nation asserted its dispensing claims against the Pharmacy

Defendants in state court. This proposal is in line with rulings in other courts. In Track 3 of the MDL, for example, the court ordered dispensing-related discovery to be produced only through the date on which plaintiffs amended their complaints to assert dispensing claims, and even then, limited that order to only certain, discrete categories of dispensing-related discovery. For the vast majority of dispensing-related discovery, the court ordered a time period that ends more than two years before the Track 3 plaintiffs amended their complaints to add dispensing claims. Since Plaintiff asserted its dispensing claims against the Pharmacy Defendants in January 2018—well before it amended its complaint in April 2020 to add distribution claims—there is no reason to tie temporal scope to the later date.

With regard to Plaintiff's distribution-related claims, the Pharmacy Defendants have agreed to produce information up to the date on which they ceased distributing the relevant prescription opioids—a natural end point.

For custodial productions, the Pharmacy Defendants have already collected ESI from many employees in connection with other opioids cases and should not be forced to perform another collection to gather any additional ESI subsequent to the date of the completed collection activity.

## 5.   Document Custodians

*Cherokee Nation's Position:* While the parties are still conferring on issues related to the relevant custodians in this case, it is likely the parties will seek guidance from the Court on this issue at the status conference. Cherokee Nation has identified 18 individuals as the custodians likely to have discoverable documents. Cherokee Nation has collected documents from these individuals and is in the process of reviewing it for production in response to Defendants' document requests. In addition to these 18 witnesses, Defendants have identified an additional 69 custodians for which they ask Cherokee Nation to collect documents. Cherokee Nation is in the process of identifying which of these witnesses are likely to have relevant documents and will

24

likely agree to search many of them based on Defendants' request. Cherokee Nation has also recently received proposals from Defendants regarding their custodians.

Cherokee Nation's position is that there should be some degree of parity surrounding the number and identity of witnesses/employees the parties agree to search as their respective custodians. For example, to the extent Defendants have identified as relevant custodians, for example, the current and former Principle Chief of Cherokee Nation and current and former Attorneys General of Cherokee Nation—as well as each individual who has held certain job titles for a period going back nearly 20 years—Defendants should be prepared to search people in equivalently high positions in their companies, and for similar time ranges. Likewise, Defendants should be prepared to search the electronically stored information of a sufficient number of local custodians who worked at the relevant distribution centers, field offices, and pharmacies serving the relevant geographic area.

_Defendants' Position:_  The issue of document custodians is premature for discussion at the status conference because the parties have not met and conferred on this issue. That process should proceed first so the parties can attempt to narrow or eliminate any disputes on this issue.  However, to provide some further context, in response to the Cherokee Nation's initial proposed list of document custodians, on November 11, 2020, Distributor Defendants provided Cherokee Nation a list of additional custodians derived largely from persons identified by Cherokee Nation in its discovery responses as having relevant information.  To date, Distributor Defendants have received no response from Cherokee Nation as to these additional custodians.  The number of custodians Distributor Defendants have proposed in this case is consistent with the numbers identified in other opioid litigation.

Through their productions of documents in the MDL, Defendants have already provided Cherokee Nation with hundreds of custodians with relevant information, including many senior employees of the Defendants.   Although Cherokee Nation only recently requested the identification of Defendants' custodians in discovery requests it issued on November 11, 2020, to which Defendants' responses are due on December 11, 2020, most Defendants have already provided Cherokee Nation with the names of additional custodians whose documents will be collected and searched for responsive information.   The parties must first discuss the issues related to the number, identification and seniority of the custodians in meet and confer sessions and can address the remaining disputes, if any, with the Court at the conclusion of that process.

## ANNEX A

| | Third party | Date of Subpoena | Party serving the subpoena |
|---|---|---|---|
| 1. | Office of the Chief Medical Examiner for the State of Oklahoma | October 12, 2020 | ABDC |
| 2. | Oklahoma Board of Medical Licensure and Supervision | October 13, 2020 | Cardinal Health, Inc. |
| 3. | Oklahoma Board of Dentistry | October 13, 2020 | Cardinal Health, Inc. |
| 4. | Oklahoma State Board of Osteopathic Examiners | October 13, 2020 | Cardinal Health, Inc. |
| 5. | Oklahoma Bureau of Narcotics | October 16, 2020 | Walgreen Co. |
| 6. | Oklahoma Department of Human Services | October 27, 2020 | ABDC |
| 7. | Oklahoma State Medical Association | October 28, 2020 | Cardinal Health Inc. |
| 8. | The Oklahoma Osteopathic Association, Inc. | October 28, 2020 | Cardinal Health Inc. |
| 9. | Oklahoma Hospital Association, Inc. | October 28, 2020 | Cardinal Health Inc. |
| 10. | Oklahoma Commission on Opioid Abuse | October 28, 2020 | Cardinal Health Inc. |
| 11. | Offices of the District Attorney Matt Ballard Rogers | October 29, 2020 | Walgreen Co. |
| 12. | District Attorney Kevin D. Buchanan | October 29, 2020 | Walgreen Co. |
| 13. | Offices of District Attorney Kevin D. Buchanan | October 29, 2020 | Walgreen Co. |
| 14. | Office of Carol Iski, District Attorney | October 29, 2020 | Walgreen Co. |

| | Third party | Date of Subpoena | Party serving the subpoena |
|---|---|---|---|
| 15. | Offices of Steve Kunzweiler, District Attorney | October 29, 2020 | Walgreen Co. |
| 16. | Office of Orvil Loge, District Attorney | October 29, 2020 | Walgreen Co. |
| 17. | Oklahoma Department of Corrections | October 29, 2020 | Walgreen Co. |
| 18. | Oklahoma Drug Court for Adair County | October 29, 2020 | Walgreen Co. |
| 19. | Oklahoma Drug Court for Cherokee County | October 29, 2020 | Walgreen Co. |
| 20. | Oklahoma Drug Court for Craig County | October 29, 2020 | Walgreen Co. |
| 21. | Oklahoma Drug Court for Delaware County | October 29, 2020 | Walgreen Co. |
| 22. | Oklahoma Drug Court for Mayes County | October 29, 2020 | Walgreen Co. |
| 23. | Oklahoma Drug Court for McIntosh County | October 29, 2020 | Walgreen Co. |
| 24. | Oklahoma Drug Court for Muskogee County | October 29, 2020 | Walgreen Co. |
| 25. | Oklahoma Drug Court of Nowata County | October 29, 2020 | Walgreen Co. |
| 26. | Oklahoma Drug Court for Ottawa County | October 29, 2020 | Walgreen Co. |
| 27. | Oklahoma Drug Court of Rogers County | October 29, 2020 | Walgreen Co. |
| 28. | Oklahoma Drug Court of Sequoyah County | October 29, 2020 | Walgreen Co. |
| 29. | Oklahoma Drug Court of Tulsa County | October 29, 2020 | Walgreen Co. |
| 30. | Oklahoma Drug Court of Wagoner County | October 29, 2020 | Walgreen Co. |
| 31. | Oklahoma Drug Court of Washington County | October 29, 2020 | Walgreen Co. |
| 32. | Office of Jack Thorp, District Attorney, District 27 | October 29, 2020 | Walgreen Co. |
| 33. | Offices of District Attorney, Kenny Wright, District 13 | October 29, 2020 | Walgreen Co. |
| 34. | Adair County Sheriff | October 30, 2020 | McKesson |
| 35. | Adair Police | October 30, 2020 | McKesson |
| 36. | Afton Police | October 30, 2020 | McKesson |
| 37. | Bartlesville Police | October 30, 2020 | McKesson |
| 38. | Big Cabin Police | October 30, 2020 | McKesson |
| 39. | Bixby Police | October 30, 2020 | McKesson |
| 40. | Boynton Police | October 30, 2020 | McKesson |
| 41. | Braggs Police | October 30, 2020 | McKesson |
| 42. | Broken Arrow Police | October 30, 2020 | McKesson |
| 43. | Catoosa Police | October 30, 2020 | McKesson |
| 44. | Chelsea Police | October 30, 2020 | McKesson |
| 45. | Cherokee County Sheriff | October 30, 2020 | McKesson |
| 46. | Claremore Police | October 30, 2020 | McKesson |
| 47. | Collinsville Police | October 30, 2020 | McKesson |

|     | Third party | Date of Subpoena | Party serving the subpoena |
|-----|-------------|------------------|-----------------------------|
| 48. | Coweta Police | October 30, 2020 | McKesson |
| 49. | Craig County Sheriff | October 30, 2020 | McKesson |
| 50. | Delaware County Sheriff | October 30, 2020 | McKesson |
| 51. | Dewey Police | October 30, 2020 | McKesson |
| 52. | Disney Police | October 30, 2020 | McKesson |
| 53. | Eastern Shawnee Police | October 30, 2020 | McKesson |
| 54. | Fairland Police | October 30, 2020 | McKesson |
| 55. | Ft. Gibson Police | October 30, 2020 | McKesson |
| 56. | Gans Police | October 30, 2020 | McKesson |
| 57. | Glenpool Police | October 30, 2020 | McKesson |
| 58. | Gore City Police | October 30, 2020 | McKesson |
| 59. | Grove Police | October 30, 2020 | McKesson |
| 60. | Haskell Police | October 30, 2020 | McKesson |
| 61. | Hulbert Police | October 30, 2020 | McKesson |
| 62. | Inola Police | October 30, 2020 | McKesson |
| 63. | Jay Police | October 30, 2020 | McKesson |
| 64. | Jenks Police | October 30, 2020 | McKesson |
| 65. | Kansas Police | October 30, 2020 | McKesson |
| 66. | Ketchum Police | October 30, 2020 | McKesson |
| 67. | Langley Police | October 30, 2020 | McKesson |
| 68. | Locust Grove Police | October 30, 2020 | McKesson |
| 69. | Marble City Police | October 30, 2020 | McKesson |
| 70. | Mayes County Sheriff | October 30, 2020 | McKesson |
| 71. | McIntosh County Sheriff | October 30, 2020 | McKesson |
| 72. | Miami Police | October 30, 2020 | McKesson |
| 73. | Moffett Police | October 30, 2020 | McKesson |
| 74. | Muldrow Police | October 30, 2020 | McKesson |
| 75. | Muskogee County Sheriff | October 30, 2020 | McKesson |
| 76. | Muskogee Police | October 30, 2020 | McKesson |
| 77. | Nowata County Sheriff | October 30, 2020 | McKesson |
| 78. | Nowata Police | October 30, 2020 | McKesson |
| 79. | Okay Police | October 30, 2020 | McKesson |
| 80. | Oologah Police | October 30, 2020 | McKesson |
| 81. | Ottawa County Sheriff | October 30, 2020 | McKesson |
| 82. | Owasso Police | October 30, 2020 | McKesson |
| 83. | Porter Police | October 30, 2020 | McKesson |
| 84. | Porum Police | October 30, 2020 | McKesson |
| 85. | Pryor Police | October 30, 2020 | McKesson |
| 86. | Ramona Police | October 30, 2020 | McKesson |
| 87. | Rogers County Sheriff | October 30, 2020 | McKesson |
| 88. | Roland Police | October 30, 2020 | McKesson |
| 89. | Salina Police | October 30, 2020 | McKesson |
| 90. | Sallisaw Police | October 30, 2020 | McKesson |

| | Third party | Date of Subpoena | Party serving the subpoena |
|---|---|---|---|
| 91. | Sand Springs Police | October 30, 2020 | McKesson |
| 92. | Sequoyah County Sheriff | October 30, 2020 | McKesson |
| 93. | Skiatook Police | October 30, 2020 | McKesson |
| 94. | South Coffeyville Police | October 30, 2020 | McKesson |
| 95. | Spavinaw Police | October 30, 2020 | McKesson |
| 96. | Sperry Police | October 30, 2020 | McKesson |
| 97. | Stillwell Police | October 30, 2020 | McKesson |
| 98. | Tahlequah Police | October 30, 2020 | McKesson |
| 99. | Tulsa County Sheriff | October 30, 2020 | McKesson |
| 100. | Tulsa Police | October 30, 2020 | McKesson |
| 101. | Vian Police | October 30, 2020 | McKesson |
| 102. | Vinita Police | October 30, 2020 | McKesson |
| 103. | Wagoner County Sheriff | October 30, 2020 | McKesson |
| 104. | Wagoner Police | October 30, 2020 | McKesson |
| 105. | Warner Police | October 30, 2020 | McKesson |
| 106. | Washington County Sheriff | October 30, 2020 | McKesson |
| 107. | Webbers Falls Police | October 30, 2020 | McKesson |
| 108. | West Siloam Police | October 30, 2020 | McKesson |
| 109. | Westville Police | October 30, 2020 | McKesson |
| 110. | Oklahoma Drug Court for McIntosh County | November 2, 2020, | Walgreen Co. |
| 111. | Indian Health Service, U.S. Department of Health and Human Services | November 10, 2020 | Wal-Mart Stores, Inc. |
| 112. | Oklahoma Drug Court for Adair County | November 12, 2020 | Walgreen Co. |
| 113. | Oklahoma Drug Court for Cherokee County | November 12, 2020 | Walgreen Co. |
| 114. | Oklahoma Drug Court for Craig County | November 12, 2020 | Walgreen Co. |
| 115. | Oklahoma Drug Court of Tulsa County | November 12, 2020 | Walgreen Co. |
| 116. | Oklahoma Drug Court of Wagoner County | November 12, 2020 | Walgreen Co. |
| 117. | Adair Fire Department | December 1, 2020 | McKesson |
| 118. | Air EMS, Inc. | December 1, 2020 | McKesson |
| 119. | Air Evac Lifeteam – Claremore | December 1, 2020 | McKesson |
| 120. | Bartlesville Ambulance | December 1, 2020 | McKesson |
| 121. | Bartlesville Fire Department | December 1, 2020 | McKesson |
| 122. | Berryhill Fire Protection District | December 1, 2020 | McKesson |
| 123. | Bixby Fire Department | December 1, 2020 | McKesson |
| 124. | Broken Arrow Fire Department EMS | December 1, 2020 | McKesson |
| 125. | Butler Volunteer Fire Department | December 1, 2020 | McKesson |
| 126. | Catoosa Fire Department | December 1, 2020 | McKesson |
| 127. | Checotah EMS | December 1, 2020 | McKesson |
| 128. | Cherokee Nation EMS | December 1, 2020 | McKesson |

|  | **Third party** | **Date of Subpoena** | **Party serving the subpoena** |
|---|---|---|---|
| 129. | Childrens Hospital at St. Francis | December 1, 2020 | McKesson |
| 130. | Chouteau Fire Department | December 1, 2020 | McKesson |
| 131. | Claremore Fire Department | December 1, 2020 | McKesson |
| 132. | Cleora Fire Department | December 1, 2020 | McKesson |
| 133. | Collinsville Fire Department | December 1, 2020 | McKesson |
| 134. | Collinsville Rural Fire Protection | December 1, 2020 | McKesson |
| 135. | Commerce Fire Department | December 1, 2020 | McKesson |
| 136. | Cookson Volunteer Fire Dept. | December 1, 2020 | McKesson |
| 137. | Copan Fire Department | December 1, 2020 | McKesson |
| 138. | Coweta Fire Department EMS | December 1, 2020 | McKesson |
| 139. | Cowskin Fire Department | December 1, 2020 | McKesson |
| 140. | Dewey Volunteer Fire Department | December 1, 2020 | McKesson |
| 141. | EMSA-East Division | December 1, 2020 | McKesson |
| 142. | Eucha Volunteer Fire District | December 1, 2020 | McKesson |
| 143. | First Flight | December 1, 2020 | McKesson |
| 144. | Glenpool Fire Department | December 1, 2020 | McKesson |
| 145. | Grove EMS | December 1, 2020 | McKesson |
| 146. | Grove Fire Department | December 1, 2020 | McKesson |
| 147. | Health Ride | December 1, 2020 | McKesson |
| 148. | Hickory Grove Volunteer Fire Department | December 1, 2020 | McKesson |
| 149. | Illinois River VFD | December 1, 2020 | McKesson |
| 150. | Inola Fire Department | December 1, 2020 | McKesson |
| 151. | INTEGRIS Miami EMS | December 1, 2020 | McKesson |
| 152. | Jay EMS | December 1, 2020 | McKesson |
| 153. | Jenks Fire & Rescue | December 1, 2020 | McKesson |
| 154. | Kenwood Volunteer Fire Association | December 1, 2020 | McKesson |
| 155. | Lakemont Volunteer Fire Department | December 1, 2020 | McKesson |
| 156. | Lenapah Volunteer Fire Department | December 1, 2020 | McKesson |
| 157. | Liberty Volunteer Fire Department EMRA | December 1, 2020 | McKesson |
| 158. | Limestone Fire Protection District | December 1, 2020 | McKesson |
| 159. | Mayes Emergency Svc Trust Auth | December 1, 2020 | McKesson |
| 160. | MedSupport, LLC | December 1, 2020 | McKesson |
| 161. | Mercy Regional of Oklahoma | December 1, 2020 | McKesson |
| 162. | Miami Fire Department | December 1, 2020 | McKesson |
| 163. | Miller EMS – Owasso | December 1, 2020 | McKesson |
| 164. | Monkey Island Fire Protection Dist | December 1, 2020 | McKesson |
| 165. | Muldrow Fire Department | December 1, 2020 | McKesson |

|     | Third party | Date of Subpoena | Party serving the subpoena |
| --- | --- | --- | --- |
| 166. | Muskogee County EMS | December 1, 2020 | McKesson |
| 167. | Muskogee Fire Department | December 1, 2020 | McKesson |
| 168. | Northeastern Health System | December 1, 2020 | McKesson |
| 169. | Nowata EMS | December 1, 2020 | McKesson |
| 170. | Nowata Fire Department EMRA | December 1, 2020 | McKesson |
| 171. | NW Rogers County Fire Protection | December 1, 2020 | McKesson |
| 172. | Oak Grove Fire Protection District | December 1, 2020 | McKesson |
| 173. | Okay Fire Department | December 1, 2020 | McKesson |
| 174. | Oklahoma Medical Transport | December 1, 2020 | McKesson |
| 175. | Onapa Volunteer Fire Department | December 1, 2020 | McKesson |
| 176. | Oologah-Talala EMS District | December 1, 2020 | McKesson |
| 177. | Owasso Fire Department EMS | December 1, 2020 | McKesson |
| 178. | Owens & Company Fire | December 1, 2020 | McKesson |
| 179. | Pafford EMS of Oklahoma | December 1, 2020 | McKesson |
| 180. | Pafford EMS of Oklahoma | December 1, 2020 | McKesson |
| 181. | Porter Fire Department | December 1, 2020 | McKesson |
| 182. | Porum Landing Fire Department | December 1, 2020 | McKesson |
| 183. | Porum Volunteer Fire Department | December 1, 2020 | McKesson |
| 184. | Pryor Fire Department | December 1, 2020 | McKesson |
| 185. | Quapaw Nation Fire/EMS | December 1, 2020 | McKesson |
| 186. | Quapaw Volunteer Fire Department | December 1, 2020 | McKesson |
| 187. | Rock Fire Department | December 1, 2020 | McKesson |
| 188. | Roland Fire & Rescue | December 1, 2020 | McKesson |
| 189. | Rolling Hills Fire Department | December 1, 2020 | McKesson |
| 190. | Sand Springs Fire Department | December 1, 2020 | McKesson |
| 191. | Seneca-Cayuga Fire & Rescue | December 1, 2020 | McKesson |
| 192. | Sequoyah County EMRA | December 1, 2020 | McKesson |
| 193. | Skiatook Fire and EMS | December 1, 2020 | McKesson |
| 194. | Sperry Fire Department | December 1, 2020 | McKesson |
| 195. | Spring Valley Volunteer Fire Dept. | December 1, 2020 | McKesson |
| 196. | Stone Bluff VFD | December 1, 2020 | McKesson |
| 197. | Tullahassee Volunteer Fire Dept | December 1, 2020 | McKesson |
| 198. | Tulsa Fire Department | December 1, 2020 | McKesson |
| 199. | Tulsa Fire Department | December 1, 2020 | McKesson |
| 200. | Tulsa Life Flight | December 1, 2020 | McKesson |
| 201. | Tulsa Police Department | December 1, 2020 | McKesson |
| 202. | Verdigris Fire Protection District | December 1, 2020 | McKesson |
| 203. | Vinita Fire Department | December 1, 2020 | McKesson |

|  | Third party | Date of Subpoena | Party serving the subpoena |
|---|---|---|---|
| 204. | Wagoner EMS | December 1, 2020 | McKesson |
| 205. | Wagoner Fire Department | December 1, 2020 | McKesson |
| 206. | Warner Fire Department | December 1, 2020 | McKesson |
| 207. | Adair County Tri Community Fire Department (Stilwell, OK) | December 7, 2020 | McKesson |
| 208. | Bell Fire Department (Stilwell, OK) | December 7, 2020 | McKesson |
| 209. | Chance Community Fire Department Inc. (Westville, OK) | December 7, 2020 | McKesson |
| 210. | Christe Proctor Volunteer Fire Department (Stilwell, OK) | December 7, 2020 | McKesson |
| 211. | Greasy Volunteer Fire Dept (Bunch, OK) | December 7, 2020 | McKesson |
| 212. | Highway 100 West Volunteer Fire Department (Stilwell, OK) | December 7, 2020 | McKesson |
| 213. | Hwy 51 West Volunteer Fire Department (Stilwell, OK) | December 7, 2020 | McKesson |
| 214. | Kirk Mountain Fire and Rescue Inc. (Stilwell, OK) | December 7, 2020 | McKesson |
| 215. | Mid County Fire Department (Westville, OK) | December 7, 2020 | McKesson |
| 216. | Stilwell Fire Department (Stilwell, OK) | December 7, 2020 | McKesson |
| 217. | Watts Fire Dept (Watts, OK) | December 7, 2020 | McKesson |
| 218. | Westville Fire Department (Westville, OK) | December 7, 2020 | McKesson |
| 219. | Gideon Fire Department Inc. (Tahlequah, OK) | December 7, 2020 | McKesson |
| 220. | Keys Volunteer Fire Department (Park Hill, OK) | December 7, 2020 | McKesson |
| 221. | Oaks Volunteer Fire Department (Oaks, OK) | December 7, 2020 | McKesson |
| 222. | Peggs Volunteer Fire Department (Peggs, OK) | December 7, 2020 | McKesson |
| 223. | Sparrow Hawk Village Volunteer Fire Department (Tahlequah, OK) | December 7, 2020 | McKesson |
| 224. | Tahlequah Fire Dept (Tahlequah, OK) | December 7, 2020 | McKesson |
| 225. | Welling Tri Community Fire Department (Welling, OK) | December 7, 2020 | McKesson |
| 226. | Woodall Volunteer Fire Department (Tahlequah, OK) | December 7, 2020 | McKesson |
| 227. | Big Cabin Fire Dept (Big Cabin, OK) | December 7, 2020 | McKesson |
| 228. | Bluejacket Vfd (Bluejacket, OK) | December 7, 2020 | McKesson |
| 229. | Carselowey Community Vfd (Vinita, OK) | December 7, 2020 | McKesson |

|      | Third party | Date of Subpoena | Party serving the subpoena |
|------|-------------|------------------|----------------------------|
| 230. | Centralia Volunteer Fire Company (Vinita, OK) | December 7, 2020 | McKesson |
| 231. | Eastern State Hospital (Vinita, OK) | December 7, 2020 | McKesson |
| 232. | Welch Volunteer Fire Department (Welch, OK) | December 7, 2020 | McKesson |
| 233. | Bernice Fire Dept (Bernice, OK) | December 7, 2020 | McKesson |
| 234. | Butler Volunteer Fire Department (Jay, OK) | December 7, 2020 | McKesson |
| 235. | Flint Ridge Volunteer Fire Department (Kansas, OK) | December 7, 2020 | McKesson |
| 236. | Jay Fire Dept (Jay, OK) | December 7, 2020 | McKesson |
| 237. | Kansas Fire Department (Kansas, OK) | December 7, 2020 | McKesson |
| 238. | West Siloam Springs Rural Volunteer Fire Department (Colcord, OK) | December 7, 2020 | McKesson |
| 239. | Zena Volunteer Fire Department (Jay, OK) | December 7, 2020 | McKesson |
| 240. | Cabin Creek Fire District (Langley, OK) | December 7, 2020 | McKesson |
| 241. | Chimney Rock Fire Dept (Rose, OK) | December 7, 2020 | McKesson |
| 242. | Chouteau Vfd (Chouteau, OK) | December 7, 2020 | McKesson |
| 243. | Diamond Head Lone Chapel Fire Department (Pryor, OK) | December 7, 2020 | McKesson |
| 244. | Flat Rock Fire Protection Association (Chouteau, OK) | December 7, 2020 | McKesson |
| 245. | Langley Volunteer Fire Department (Langley, OK) | December 7, 2020 | McKesson |
| 246. | Leach Volunteer Fire Department (Rose, OK) | December 7, 2020 | McKesson |
| 247. | Locust Grove Fire Department (Locust Grove, OK) | December 7, 2020 | McKesson |
| 248. | Salina Fire Department (Salina, OK) | December 7, 2020 | McKesson |
| 249. | Spavinaw Fire Dept (Spavinaw, OK) | December 7, 2020 | McKesson |
| 250. | Strang Community Fire Department (Strang, OK) | December 7, 2020 | McKesson |
| 251. | Tiajuana Community Area Fire Protection Inc. (Disney, OK) | December 7, 2020 | McKesson |
| 252. | Boynton Vol Fire Department (Boynton, OK) | December 7, 2020 | McKesson |
| 253. | Braggs Volunteer Fire Department (Braggs, OK) | December 7, 2020 | McKesson |
| 254. | Brushy Mountain Volunteer Fire Department (Muskogee, OK) | December 7, 2020 | McKesson |

|  | Third party | Date of Subpoena | Party serving the subpoena |
|---|---|---|---|
| 255. | Council Hill Vol Fire Dept (Council Hill, OK) | December 7, 2020 | McKesson |
| 256. | Fort Gibson Fire Department (Fort Gibson, OK) | December 7, 2020 | McKesson |
| 257. | Gooseneck Bend Fire Protection District (Muskogee, OK) | December 7, 2020 | McKesson |
| 258. | Haskell Fire Department (Haskell, OK) | December 7, 2020 | McKesson |
| 259. | Keefeton Volunteer Fire Department Inc. (Muskogee, OK) | December 7, 2020 | McKesson |
| 260. | Mountain View Volunteer Fire Department (Muskogee, OK) | December 7, 2020 | McKesson |
| 261. | Muskogee Fire Department (Muskogee, OK) | December 7, 2020 | McKesson |
| 262. | Norwood Rural Volunteer Fire Department (Ft. Gibson, OK) | December 7, 2020 | McKesson |
| 263. | Oktaha Fire Dept (Oktaha, OK) | December 7, 2020 | McKesson |
| 264. | Summit Volunteer Fire Department (Muskogee, OK) | December 7, 2020 | McKesson |
| 265. | Taft Volunteer Fire Department (Taft, OK) | December 7, 2020 | McKesson |
| 266. | Wainwright Volunteer Fire Department (Wainwright, OK) | December 7, 2020 | McKesson |
| 267. | Webbers Falls Volunteer Fire Department (Webbers Falls, OK) | December 7, 2020 | McKesson |
| 268. | Delaware Volunteer Fire Department (Delaware, OK) | December 7, 2020 | McKesson |
| 269. | South Coffeyville Fire Department (Coffeyville, OK) | December 7, 2020 | McKesson |
| 270. | Cleora Community Fire Dept (Afton, OK) | December 7, 2020 | McKesson |
| 271. | Chelsea Fire Department (Chelsea, OK) | December 7, 2020 | McKesson |
| 272. | Foyil Fire Protection District (Foyil, OK) | December 7, 2020 | McKesson |
| 273. | New Alluwe Volunteer Fire Department Assd (Alluwe, OK) | December 7, 2020 | McKesson |
| 274. | Tiawah Fire Department (Claremore, OK) | December 7, 2020 | McKesson |
| 275. | Tri District Fire Protection District 1 (Claremore, OK) | December 7, 2020 | McKesson |
| 276. | Verdigris Fpd (Claremore, OK) | December 7, 2020 | McKesson |
| 277. | Blackgum Mountain Volunteer Fire Department (Vian, OK) | December 7, 2020 | McKesson |
| 278. | Brent Rural Fire Department (Sallisaw, OK) | December 7, 2020 | McKesson |
| 279. | Brushy Volunteer Fire Department (Sallisaw, OK) | December 7, 2020 | McKesson |

|      | Third party | Date of Subpoena | Party serving the subpoena |
| --- | --- | --- | --- |
| 280. | Central High Fire Association (Sallisaw, OK) | December 7, 2020 | McKesson |
| 281. | Chicken Creek Volunteer Fire Department (Cookson, OK) | December 7, 2020 | McKesson |
| 282. | Gore Fd (Gore, OK) | December 7, 2020 | McKesson |
| 283. | Lee Creek Fire District (Muldrow, OK) | December 7, 2020 | McKesson |
| 284. | Maple Rural Fire District Inc. (Muldrow, OK) | December 7, 2020 | McKesson |
| 285. | Marble City Volunteer Fire Association (Marble City, OK) | December 7, 2020 | McKesson |
| 286. | Mckey Rural Firefighters Association (Sallisaw, OK) | December 7, 2020 | McKesson |
| 287. | Moffett Vfd (Moffett, OK) | December 7, 2020 | McKesson |
| 288. | Nicut Rural Fire District (Muldrow, OK) | December 7, 2020 | McKesson |
| 289. | Redland Fire Department (Muldrow, OK) | December 7, 2020 | McKesson |
| 290. | Rfpd 1 (Gore, OK) | December 7, 2020 | McKesson |
| 291. | Sallisaw Volunteer Fire Department (Sallisaw, OK) | December 7, 2020 | McKesson |
| 292. | Vian Volunteer Fire Department (Vian, OK) | December 7, 2020 | McKesson |
| 293. | West Tenkiller Fire Department (Gore, OK) | December 7, 2020 | McKesson |
| 294. | Berryhill Fire Protection District (Tulsa, OK) | December 7, 2020 | McKesson |
| 295. | Country Corner Fire District (Sperry, OK) | December 7, 2020 | McKesson |
| 296. | Green country Vfd (Sand Springs, OK) | December 7, 2020 | McKesson |
| 297. | Keystone Volunteer Fire Department (Sand Springs, OK) | December 7, 2020 | McKesson |
| 298. | Mannford Fire Department (Mannford, OK) | December 7, 2020 | McKesson |
| 299. | Morgans Corner Volunteer Fire Department (Skiatook, OK) | December 7, 2020 | McKesson |
| 300. | Osage Hills Volunteer Fire Dept (Tulsa, OK) | December 7, 2020 | McKesson |
| 301. | Prairie Meadow Hose Company (Collinsville, OK) | December 7, 2020 | McKesson |
| 302. | Turley Fire and Rescue (Tulsa, OK) | December 7, 2020 | McKesson |
| 303. | Zink Fire Department (Skiatook, OK) | December 7, 2020 | McKesson |
| 304. | Taylor Ferry Fire Department (Wagoner, OK) | December 7, 2020 | McKesson |
| 305. | Toppers Fire Department Inc. (Wagoner, OK) | December 7, 2020 | McKesson |

|  | Third party | Date of Subpoena | Party serving the subpoena |
|---|---|---|---|
| 306. | Tullahassee Fire Dept (Tullahassee, OK) | December 7, 2020 | McKesson |
| 307. | Whitehorn Fire Department (Wagoner, OK) | December 7, 2020 | McKesson |
| 308. | Ochelata Volunteer Fire Department (Ochelata, OK) | December 7, 2020 | McKesson |
| 309. | Oglesby Civil Defense Volunteer Fire Department (Ramona, OK) | December 7, 2020 | McKesson |
| 310. | Osage Hills Rural Firefighter Association Inc. (Bartlesville, OK) | December 7, 2020 | McKesson |
| 311. | Ramona Fire Department (Ramona, OK) | December 7, 2020 | McKesson |
| 312. | Washington County Civil Defense Fire Department (Bartlesville, OK) | December 7, 2020 | McKesson |

Dated: December 7, 2020.

Respectfully Submitted,

*/s/ Tyler Ulrich*

Tyler Ulrich (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
tulrich@bsfllp.com
Tel: (305) 539-8400
Fax: (305) 539-1307

William S. Ohlemeyer (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
wohlemeyer@bsfllp.com
Tel: (914) 749-8200
Fax: (914) 749-8300

Michael Burrage; OK #1350
WHITTEN BURRAGE
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
Tel: (405) 516-7800
Fax: (405) 516-7859

Richard W. Fields (*pro hac vice*)
FIELDS PLLC
1700 K Street, NW, Suite 810
Washington, DC 20006
fields@fieldslawpllc.com
Tel: (917) 297-3610

Attorney General Sara Hill
Assistant Attorney General Chrissi Nimmo
Assistant Attorneys General John Young
THE CHEROKEE NATION
P.O. Box 948
Tahlequah, OK 74464
chrissi-nimmo@cherokee.org
john-young@cherokee.org
Tel: (918) 453-5000
Fax: (918) 458-5099

***Attorneys for Plaintiff***
***Cherokee Nation***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2020, a true and correct copy of the foregoing document was served on counsel of record for defendants in this action via e-mail.

*/s/ Tyler Ulrich*
Tyler Ulrich
