IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEROKEE NATION, *Plaintiff* —v— MCKESSON CORPORATION; CARDINAL HEALTH, INC.; CARDINAL HEALTH 110, LLC; AMERISOURCEBERGEN DRUG CORPORATION; CVS PHARMACY, INC.; OKLAHOMA CVS PHARMACY, L.L.C.; WALGREEN CO.; WAL-MART STORES, INC., *Defendants.* | Case No. CIV–18–56–RAW–SPS Hon. Ronald A. White |

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S
RULING ON THE GEOGRAPHIC SCOPE OF DISCOVERY**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendants object to the Magistrate Judge's ruling expanding the geographic scope of this case to a magnitude without precedent in any other opioid case. If upheld, the Magistrate Judge's ruling would expand the scope of discovery from the portions of the 14 Oklahoma counties in which the Cherokee Nation's reservation is located—as pled in Plaintiff's Complaint—to include seven Oklahoma counties outside of Plaintiff's reservation as well as nine counties in three other states—Arkansas, Missouri, and Kansas—that have little or no relevance to Plaintiff's claims. Such expansion would unreasonably add to the burdens of already enormous discovery efforts and would

7664411.1

require a further extension of the case schedule (which already requires expansion) by an additional year or more. No court in opioid cases being litigated in state and federal courts across the country has authorized such sweeping discovery.

## Introduction

Seeking to dramatically expand the geographic scope of this case, Plaintiff Cherokee Nation filed a motion to compel Defendants to extend their discovery efforts far beyond Plaintiff's claimed jurisdictional territory. In its Amended Complaint, Plaintiff claims jurisdiction over all or part of 14 counties in Northeast Oklahoma and alleges that Defendants are responsible for creating a public nuisance *within* this 14-County area.[1] Despite the already significant burdens of completing discovery related to Plaintiff's jurisdictional area alone, the Magistrate Judge's decision to accept Plaintiff's proposal to expand the geographic scope of this case to include counties outside of Plaintiff's jurisdiction and crossing borders into three additional states threatens to render this litigation unmanageable.

Indeed, the Magistrate Judge's order is more sweeping than the relief Plaintiff sought. Plaintiff moved to compel based on a claimed need for a *particular and limited form of discovery*: centralized, non-custodial transactional data about Defendants'

---

[1] The size of Plaintiff's claimed jurisdictional area alone has imposed burdensome discovery obligations on Defendants. These include broad offensive and defensive party discovery and extensive third-party discovery at the local, county, tribal, state, and federal levels. Notwithstanding these efforts, the discovery focused on Plaintiff's jurisdictional area is far from complete. To the contrary, because of Plaintiff's slow production of documents and other discovery, Defendants are not yet ready to conduct depositions and an extension of the scheduling order will be necessary.

2

distribution and dispensing of prescription opioids in the area around the Cherokee Nation. Tossing aside the allegations of the relevant geographic scope in its Amended Complaint, Plaintiff argued for production of transactional data—not full-scale discovery—related to the portions of the 14 counties in which its reservation is not located, as well as numerous counties entirely outside of its jurisdiction, not just in Oklahoma, but also in Arkansas, Kansas, and Missouri. In support of its motion, Plaintiff cited rulings from the Opiate MDL that required Defendants to produce extra-jurisdictional *data*—not full-scale document discovery, which no court anywhere has ordered in opioid litigation. Yet Plaintiff now insists that the Magistrate Judge has expanded the geographic scope of this case for all purposes rather than simply compelling production of transactional data concerning counties outside of Plaintiff's jurisdiction.

Because that form of expansive geographic scope is unprecedented, imposes unjustified burdens on Defendants, and threatens to destabilize this litigation, Defendants ask the Court to hold that the relevant geographic scope of this litigation is the area that makes up the Cherokee Nation's claimed jurisdictional area. In the alternative, Defendants ask the Court to reform the Magistrate Judge's ruling to require only production of transactional dispensing and distribution data pertaining to the identified counties located within Oklahoma (the 14 counties which overlap with Plaintiff's jurisdictional area and the seven additional Oklahoma counties that surround that jurisdictional area).

Although Defendants maintain that these data are irrelevant and should not be produced, Defendants are compelled to seek this alternative reformation of the Magistrate Judge's ruling. An expansion of the geographic scope of discovery into neighboring States—even if only for data—creates too many burdens on Defendants to be justified under any sensible view of proportionality requirements. At a minimum, Defendants would be required to seek prescription monitoring data from three additional states.[2] That could lead to drawn-out negotiations and discovery disputes with the Attorneys General of Arkansas, Kansas, and Missouri. Defendants would also be required to replicate party and third-party discovery in those jurisdictions. All the while, the relevance of this extra-jurisdictional data is minimal, if it exists at all.

## Background

### I. MDL Rulings on the Scope of Discovery in Tracks One, Two, and Three.

No court involved in opioid litigation has expanded the geographic scope of discovery in the manner that Plaintiff asserts the Magistrate Judge has done here.[3]

---

[2] Prescription monitoring data is critical information because it provides a more complete picture of the physicians in those jurisdictions who wrote opioid prescriptions and the pharmacies where those prescriptions were filled.

[3] Because the parties dispute the meaning of the Magistrate Judge's unexplained ruling "as to the geographic . . . scope of discovery" (*see* Dkt. #279 at ¶ 1), the Court could refer the issue for further proceedings before the Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(A). *But see* Fed. R. Civ. P. 72 advisory committee's note (1983) ("[R]econsideration of a magistrate's order . . . shall be by the district judge to whom the case is assigned."). Defendants file this Objection with this Court in recognition of the law in this Circuit providing for waiver of objections to a magistrate judge's rulings not asserted within the mandatory periods established in Federal Rule of Civil Procedure 72 (14 days after receiving the written ruling).

7664411.1

Track One of the MDL involved two plaintiff counties located in northeastern Ohio. There, the Special Master ruled that the relevant geographic scope of discovery was national for certain kinds of documents and limited to the jurisdictional boundaries of the plaintiffs for most other kinds of documents. Ex. 1 (Discovery Ruling No. 3, July 17, 2018, ECF No. 762) at 4. Documents included in the "national" category included those related to distribution monitoring and suspicious order reports. *Id.* at 2. Documents limited to the "local" category included transactional data and local sales information. *Id.* at 3. Documents from the national category already have been reproduced or made available to Plaintiff in this litigation.

Although the MDL Special Master originally considered the local category to cover not just the plaintiffs' own jurisdiction but multiple states, he later reconsidered that ruling. He recognized that expanding discovery to include non-party jurisdictions would require defendants to seek discovery from non-party cities and counties, creating untenable burdens on defendants as well as non-parties. *Id.* at 3.

In Track Two of the MDL, which involves only distributor defendants, discovery was limited to discovery already taken in Track One and discovery in the jurisdictions that had filed suit (Cabell County and the City of Huntington), with one exception: "the appropriate geographic scope of discovery of ***transactional data*** should be for the states of Ohio, West Virginia, and Kentucky." Ex. 2 (Order Regarding Track Two Cases, Nov. 22, 2019, ECF No. 2950) at 5 (emphasis added).

In Track Three of the MDL, which involves only pharmacy defendants, the Special Master reaffirmed that the defendants must produce suspicious order reports

on a national basis. Ex. 3 (Order Regarding Geographic Scope of Discovery, July 8, 2020, ECF No. 3371) at 6. Over the defendants' objection, he also required the pharmacy defendants to produce transactional dispensing data for all of Ohio. *Id.* at 7. As to other forms of discovery, the Special Master observed that a "surgical response" was necessary. *Id.* at 9. He then revised plaintiffs' discovery requests one by one to redefine the appropriate geographic scope. With minor exceptions, the Special Master largely confined discovery to the jurisdictional boundaries of the plaintiffs' jurisdictions. *Id.* at 11-12; Ex. 4 (Second Order Regarding Geographic Scope of Discovery, Aug. 12, 2020, ECF No. 3410).

## II.     Plaintiff's Motion to Compel.

Here, Plaintiff's motion to compel (ECF No. 251) had three components: (1) geographic scope; (2) relevant medications; and (3) temporal scope. As to each of these components, Plaintiff took the position that "if the MDL court has entered a ruling on a dispute about the 'scope' of relevant discovery . . . there is no reason to re-litigate the same issue here." ECF No. 251 at 2.

As to geographic scope, Plaintiff argued that it needed discovery from outside of its jurisdictional area—including from parts of counties that overlap with its reservation only slightly (such as Tulsa County)—as well as counties in three other states. Plaintiff argued that it required this discovery to "derive valid statistics showing how patterns of opioid ***transactions*** may differ across locations." *Id.* at 8 (emphasis added). In an attempt to support this argument, Plaintiff cited rulings from the MDL allowing for discovery of transactional dispensing data and transactional distribution data. *Id.* Plaintiff also sought to distinguish rulings from

6

various state courts limiting all discovery to the boundaries of the plaintiffs' jurisdictional borders. *Id.* at 9–10. Plaintiff cited no opioid rulings—nor could it—that expanded the geographic scope of discovery to include full document discovery and new custodians from an area outside the jurisdiction.

Defendants responded that Plaintiff has downplayed the burden of producing transactional data *and* custodial files for such a dramatically expanded geographic area. ECF No. 255 at 10. Defendants pointed out that with minor exceptions, the MDL Special Master had *rejected* proposals to expand document discovery beyond the borders of the plaintiffs' jurisdictions. Defendant Walgreens explained that the number of its pharmacies at issue would increase by as much as 500% and drag in a new distribution center that never distributed to pharmacies located within the Cherokee Nation. *Id.* at 11. Defendants also explained that the new burdens to conduct third-party discovery would be significant, dwarfing any related benefits from allowing the discovery. *Id.* at 12.

### III. The Magistrate Judge's Ruling on Geographic Scope.

Although Plaintiff purported to seek a ruling on geographic scope consistent with the MDL rulings, the Magistrate Judge's order on that issue went well beyond anything the MDL court has ever done. Indeed, the Magistrate Judge granted Plaintiff's motion as to geographic scope without expressly limiting Defendants' extra-jurisdictional obligations to transactional data only. As a result, Plaintiff now insists that the Magistrate Judge's ruling requires full-scale document discovery from all counties that overlap with the Cherokee Nation, additional counties in Oklahoma that are not within the Cherokee Nation, and counties in three other states.

If that interpretation stands, the ruling would be the first of its kind nationwide and also would expand discovery to an unmanageable degree.

## Argument

### I. The Relevant Geographic Scope Is The Cherokee Nation's Jurisdictional Boundaries.

Plaintiff alleges that it "is a sovereign Indian nation that occupies all or part of 14 Counties in Northeast Oklahoma," an area it defines as the "Cherokee Nation Jurisdictional Area." Am. Compl. ¶ 17, n.11. Plaintiff's claims are based on prescription opioids that Defendants distributed to and dispensed in the portions of the 14 counties that overlap with the Cherokee Nation's jurisdictional area. *E.g.*, *id.* ¶¶ 7, 33. Based on this claim, Plaintiff seeks damages and other relief for the alleged injuries that it purportedly has suffered, including "expenses Cherokee Nation has incurred or will incur" and "increased costs to Cherokee Nation's healthcare, criminal justice, social services, welfare, and education systems" in relation to the opioid crisis. *E.g.*, *id.* at 82 (Prayer for Relief). Given these allegations, discovery beyond Plaintiff's jurisdictional boundaries, especially areas that do not overlap with Plaintiff's territory at all, including some that are entirely *outside* Oklahoma, is of minimal relevance and grossly disproportionate to the needs of the case. *Cf.* Op. & Order at 10, *Cheyenne & Arapaho Tribes v. United States*, No. 1:20-cv-143-LAS (Fed. Cl. Dec. 9, 2020), ECF No. 14, attached hereto as Ex. 5 (rejecting plaintiffs' argument that "off-reservation activity . . . which is within the economic proximity of tribal lands[] can constitute an on-reservation harm").

Given the already burdensome amount of discovery required to prepare this case for trial, any expansion of the geographic scope of this case beyond Plaintiff's borders is unwarranted. Consistent with Plaintiff's allegations, the Court should limit the geographic scope of this case to the Cherokee Nation.

## II. Plaintiff Argued for Data, But Now Claims the Right to Full Discovery.

Plaintiff reads the Magistrate Judge's ruling too broadly. In arguing for its expanded geographic scope, Plaintiff contended that "[t]here is no reason to depart from the principles established in the MDL concerning the appropriate scope of geographic discovery in opioid cases similar to this one." ECF No. 251 at 8. Plaintiff repeatedly represented that it only "seeks opioid distribution/dispensing data." ECF No. 258 at 2. Because Plaintiff never clearly moved to compel production of any discovery beyond transactional dispensing or distribution data, the Court should make clear that even if the Magistrate Judge's ruling is upheld, Defendants are required to produce only transactional data and only for the *Oklahoma* counties outside Plaintiff's jurisdiction—not full-scale discovery and not (as addressed below) data from other states. This is the only way the Magistrate Judge's ruling can be read as consistent with the scope of discovery ordered in the MDL—a scope from which Plaintiff itself admits "there is no reason to depart." ECF No. 251 at 8.

## III. Expansion Across State Borders Could Require at Least an Additional Year of Fact Discovery.

Because Plaintiff's jurisdictional boundaries span all or part of 14 counties in Oklahoma, the burdens of defending this litigation and preparing this case for trial are already enormous. At the same time, evidence of conduct outside of Plaintiff's

jurisdictional area is of minimal relevance. For those reasons, the Court should modify the Magistrate Judge's ruling to make clear that the geographic scope of discovery in this case does not extend beyond the Plaintiff's claimed jurisdictional area. But in the event that the Court decides to admit extra-jurisdictional evidence at trial over Defendants' objections, Defendants will need discovery to develop defenses pertaining to those other jurisdictions.

Even without any expansion of the scope of discovery, the parties already will require an extension of the discovery period. Due to the slow pace of Plaintiff's document production and ongoing disputes with third parties, Defendants estimate that, at a minimum, an additional six months will be required to complete the discovery currently contemplated. If Defendants must develop defenses to activities that Plaintiff alleges occurred well beyond Plaintiff's territorial jurisdiction, which would effectively quadruple Defendants' discovery burdens, then that estimate increases to 18 months.

For instance, Defendant Walgreens recently was forced to file a motion against the Oklahoma Bureau of Narcotics to compel production of data reflecting the dispensing of relevant opioid prescriptions. ECF No. 284. These sensitive data are critical to a complete understanding of Plaintiff's causes of action. If the scope of this case is expanded into other states, Defendants will be forced to pursue production of this data from three other states. Based upon past experience (including in this case), Defendants expect the Attorneys General of those states to resist production of this data, despite its clear relevance.

Defendants may also need to seek third-party discovery from local law enforcement, government entities, prescribers, hospitals, treatment centers, and so on. In addition, under Plaintiff's reading of the Magistrate Judge's order, Defendants could also be required to review and produce enormous volumes of documents from their own files involving activity in other states—Kansas, Missouri, and Arkansas—in which the Cherokee Nation can exercise no jurisdiction, and which therefore have little or no relevance to Plaintiff's claims.

Furthermore, crossing state borders gives rise to intractable choice-of-law issues. If Plaintiff is contending that a pharmacist employed by a Pharmacy Defendant improperly filled a prescription in Missouri, for example, then Plaintiff must show (among other things) that the pharmacist owed Plaintiff a duty in the first instance. But which law applies? Expanding the scope of this case to include counties in other states would lead to interminable litigation over choice of law and further strain Plaintiff's already tenuous theories of liability.

In short, an expansion into other states will cause this already complex litigation to become needlessly convoluted and overly burdensome.

## Conclusion

For these reasons, Defendants request that the Court modify the Magistrate Judge's ruling on geographic scope to limit the relevant scope to the boundaries of Plaintiff's jurisdictional area. Alternatively, the Court should limit Defendants' obligation to produce discovery from outside of Plaintiff's jurisdictional area solely to transactional dispensing and distribution data pertaining to the additional counties Plaintiff has identified that are in Oklahoma.

**Certificate of Compliance with Local Rule 7.1(f)**

Counsel for Defendants hereby certify, pursuant to Rule 7.1(f) of the Local Civil Rules, that (1) we complied with the meet and confer requirement adopted by the Rule, and (2) this motion is opposed.

On March 24, 2021, counsel for CVS (on behalf of Defendants), Michael Pardoe, and counsel for Plaintiff, Tyler Ulrich, personally discussed via telephone the issues raised in Defendants' Objections to the Magistrate Judge's Ruling on the Geographic Scope of Discovery and conferred in good faith. Moreover, as noted in Plaintiff's motion to compel, ECF No. 251, counsel have discussed the issue of geographic scope on multiple occasions. Despite best efforts, counsel have not been able to resolve the matters presented in this Objection.

Mr. Pardoe (who maintains a practice in Baltimore, MD) conferred with Mr. Ulrich (who maintains a practice in Miami, FL) by telephone instead of in person as the distance between their offices rendered a personal conference infeasible.

| Date: March 24, 2021 | Respectfully submitted, |
|---|---|
| */s/ G. Calvin Sharpe*<br>G. Calvin Sharpe<br>OBA No. 11702<br>Amy D. White<br>OBA No. 19255<br>PHILLIPS MURRAH P.C.<br>Corporate Tower, 13th Floor<br>101 North Robinson Avenue<br>Oklahoma City, Oklahoma 73102<br>Telephone: (405) 235-4100<br>Facsimile: (405) 235-4133<br>gcsharpe@phillipsmurrah.com<br>adwhite@phillipsmurrah.com | */s/ Larry D. Ottaway*<br>Larry D. Ottaway<br>OBA No. 6816<br>Amy Sherry Fischer<br>OBA No. 16651<br>FOLIART HUFF OTTAWAY &<br>　BOTTOM<br>201 Robert S Kerr Avenue, 12th Floor<br>Oklahoma City, Oklahoma 73102<br>Telephone: (405) 232-4633<br>Facsimile: (405) 232-3462<br>larryottaway@oklahomacounsel.com<br>amyfischer@oklahomacounsel.com |

| | |
|---|---|
| -and-<br><br>Eric R. Delinsky<br>(admitted *pro hac vice*)<br>Alexandra W. Miller<br>(admitted *pro hac vice*)<br>Paul B. Hynes, Jr.<br>(admitted *pro hac vice*)<br>ZUCKERMAN SPAEDER LLP<br>1800 M Street, NW, Suite 1000<br>Washington, D.C. 20036<br>Telephone:  (202) 778-1800<br>Facsimile:  (202) 822-8106<br>edelinsky@zuckerman.com<br>smiller@zuckerman.com<br>phynes@zuckerman.com<br><br>Conor B. O'Croinin<br>(admitted *pro hac vice*)<br>J. Michael Pardoe<br>(admitted *pro hac vice*)<br>ZUCKERMAN SPAEDER LLP<br>100 East Pratt Street, Suite 2440<br>Baltimore, Maryland 21202-1031<br>Telephone:  (410) 332-0444<br>Facsimile:  (410) 659-0436<br>cocroinin@zuckerman.com<br>mpardoe@zuckerman.com<br><br>***Counsel for Defendants***<br>***CVS Pharmacy, Inc., and***<br>***Oklahoma CVS Pharmacy, LLC*** | -and-<br><br>Laura Jane Durfee<br>Andrew Junker<br>JONES DAY<br>2727 North Harwood Street<br>Dallas, Texas 75201<br>Telephone:  (214) 969-5150<br>ldurfee@jonesday.com<br>ajunker@jonesday.com<br><br>Jason Varnado<br>JONES DAY<br>717 Texas, Suite 3300<br>Houston, Texas 77002<br>Telephone:  (832) 239-3939<br>Facsimile:  (832) 239-3600<br>jvarnado@jonesday.com<br><br>***Counsel for Defendant Walmart Inc.*** |
| /s/ Steven E. Holden<br>Steven E. Holden<br>OBA No. 4289<br>HOLDEN LITIGATIO, HOLDEN P.C.<br>15 East 5th Street, Suite 3900<br>Tulsa, Oklahoma 74103<br>Telephone:  (918) 295-8888 | /s/ Stuart D. Campbell<br>Stuart D. Campbell<br>OBA No. 11246<br>Kaylee Davis-Maddy<br>OBA No. 31534<br>DOERNER, SAUNDERS, DANIEL<br>  & ANDERSON, L.L.P. |

7664411.1

| | |
|---|---|
| Facsimile: (918) 295-8889<br>steveholden@holdenlitigation.com<br><br> -and-<br><br>*/s/ Robert B. Tannebaum*<br>Steven E. Derringer<br>(admitted *pro hac vice*)<br>Robert B. Tannenbaum<br>(admitted *pro hac vice*)<br>BARLIT BECK LLP<br>54 West Hubbard Street, Suite 300<br>Chicago, Illinois 60654<br>Telephone: (312) 494-4400<br>Facsimile: (312) 494-4440<br>steven.derringer@bartlitbeck.com<br>robert.tannenbaum@bartlitbeck.com<br><br>**Counsel for Defendant Walgreen Co.** | 700 Williams Center Tower II<br>Two West Second Street<br>Tulsa, Oklahoma 74103-3522<br>Telephone: (918)5 82-1211<br>Facsimile (918) 591-5360<br>scampbell@dsda.com<br>kmaddy@dsda.com<br><br>-and-<br><br>Jose E. Arvelo<br>(admitted *pro hac vice)*<br>Neil K. Roman<br>(admitted *pro hac vice)*<br>John J. DeBoy<br>(admitted *pro hac vice)*<br>Alexander N. Ely<br>(admitted *pro hac vice)*<br>COVINGTON & BURLING LLP<br>850 Tenth Street, NW<br>Washington, D.C. 20001-4956<br>jarvelo@cov.com<br>nroman@cov.com<br>jdeboy@cov.com<br><br>Micaela McMurrough<br>(admitted *pro hac vice)*<br>COVINGTON & BURLING, LLP<br>620 Eighth Avenue<br>New York, New York 10018<br>Telephone: (212) 841-1242<br>mmcmurrough@cov.com<br><br>**Counsel for Defendant McKesson Corporation** |
| */s/ Susan E. Huntsman*<br>D. Michael McBride III<br>OBA No. 15431<br>Susan E. Huntsman<br>OBA No. 18401<br>Elliot P. Anderson,<br>OBA No. 21098<br>CROWE & DUNLEVY | */s/ Ryan A. Ray*<br>Ryan A. Ray<br>OBA No. 22281<br>NORMAN WOHLGEMUTH LLP<br>401 South Boston Avenue<br>3200 Mid-Continent Tower<br>Tulsa, Oklahoma 74103<br>Telephone: (918) 583-7571 |

14

| | |
|---|---|
| A PROFESSIONAL CORPORATION<br>500 Kennedy Building<br>321 South Boston Avenue<br>Tulsa, Oklahoma 74103-3313<br>Telephone:  (918) 592-9800<br>Facsimile:  (918) 592-9801<br>Mike.mcbride@crowedunlevy.com<br>Susan.huntsman@crowedunlevy.com<br>Elliot.anderson@crowedunlevy.com<br><br>-and-<br><br>Robert A. Nicholas<br>(admitted pro hac vice)<br>Shannon E. McClure<br>(admitted *pro hac vice*)<br>Thomas H. Suddath, Jr.<br>(admitted *pro hac vice*)<br>Jennifer B. Jordan<br>(admitted *pro hac vice*)<br>REED SMITH LLP<br>Three Logan Square<br>1717 Arch Street, Suite 3100<br>Philadelphia, Pennsylvania 19103<br>Telephone:  (215) 851-8100<br>Facsimile:  (215) 851-1420<br>rnicholas@reedsmith.com<br>smcclure@reedsmith.com<br>tsuddath@reedsmith.com<br>jennifer.jordan@reedsmith.com<br><br>***Counsel for AmerisourceBergen Drug Corporation*** | Facsimile:  (918) 584-7846<br>rray@nwlawok.com<br><br>-and-<br><br>Emily Renshaw Pistilli<br>(admitted *pro hac vice*)<br>William F. Hawkins<br>(admitted *pro hac vic*e)<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005<br>Telephone:  (202) 434-5000<br>Facsimile:  (202) 434-5029<br>epistilli@wc.com<br>whawkins@wc.com<br><br>***Counsel for Defendant Cardinal Health, Inc.; Cardinal Health 110, LLC*** |

7664411.1

## CERTIFICATE OF SERVICE

      I certify that on March 24, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

                                  /s/G. Calvin Sharpe

7664411.1