# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE CHEROKEE NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-056-RAW |
| | ) | |
| MCKESSON CORPORATION; | ) | |
| CARDINAL HEALTH, INC.; | ) | |
| CARDINAL HEALTH 110, LLC; | ) | |
| AMERISOURCEBERGEN DRUG CORP.; | ) | |
| CVS HEALTH CORPORATION; | ) | |
| CVS PHARMACY, INC.; | ) | |
| OKLAHOMA CVS PHARMACY, LLC; | ) | |
| WALGREENS BOOTS ALLIANCE, INC.; | ) | |
| WALGREEN CO.; | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants McKesson Corporation, Cardinal Health, Inc., Cardinal Health 110, LLC, and AmerisourceBergen Drug Corp.'s (Distributors) Motion to Dismiss the Cherokee Nation's (the Nation) First Amended Complaint [Docket No. 146]. The Nation has filed an omnibus response to this motion and a motion filed by the pharmacy Defendants in this matter [Docket No. 159].[1] Distributors have filed a reply to the Nation's response [Docket No. 172].

In examining a motion to dismiss, the court accepts as true all well-pleaded facts[2] in the Complaint and construes those facts in the light most favorable to Plaintiffs. *Western Watersheds Project v. Michael*, 869 F.3d 1189, 1193 (10th Cir. 2017). To survive a Rule 12(b)(6) motion to

---

[1] The court will address the pharmacy Defendants' motion to dismiss in a separate order.

[2] The court does not accept as true conclusory statements or legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")).

dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs must nudge their "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

The Tenth Circuit has held that the "*Twombly/Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "In other words, *Rule 8(a)(2) still lives*." *Id.* (emphasis added). "Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting *Khalik*, 671 F.3d at 1191).

## BACKGROUND

The Nation instituted this action on January 19, 2018, in the District Court of Sequoyah County, Oklahoma. Defendants removed the case to this court on February 26, 2018. The United States Judicial Panel on Multidistrict Litigation transferred this case to the Northern District of Ohio as part of the national prescription opioid multidistrict litigation. In February 2020, the Multidistrict Litigation Panel remanded the case back to this court as part of a broad effort to resolve cases brought by certain types of plaintiffs—in this case, a Native American Tribe. The court currently has before it a pair of motions to dismiss filed by the Distributor Defendants and Pharmacy Defendants.

2

The First Amended Complaint encompasses eighty-seven pages and three hundred seventy paragraphs of allegations [Docket No. 136].  It would not be useful to attempt to summarize that document and its numerous allegations here.  Put simply, the crux of the Nation's claims against Distributors is that they failed to combat the illegal diversion of prescription opiates to nonmedical users, contributing greatly to what has become a nationwide epidemic of opiate abuse, addiction, and overdoses.  The Nation alleges four causes of action against Distributors:  (1) Public Nuisance; (2) Negligence and Gross Negligence; (3) Unjust Enrichment; and (4) Civil Conspiracy. Distributors seek dismissal of each claim and rely on a wide range of grounds to support their positions.

## ANALYSIS

Initially, the court recognizes the fact that the Northern District of Ohio has analyzed many of the issues presented in this Motion to Dismiss.  The multidistrict litigation (MDL) court first issued a Report and Recommendation explicitly addressing claims brought by the Muscogee (Creek) Nation concerning claims of nuisance, negligence, negligence per se, unjust enrichment, and civil conspiracy against Distributors and other situated defendants.  *In re National Prescription Opiate Litigation*, MDL No. 1:17-MD-02804, Case No. 1:18-OP-45459, 2019 WL 2468267 (N.D. Ohio April 1, 2019) (hereinafter *Muscogee R&R*).  The District Court adopted that Report and Recommendation almost in its entirety, with the exception being a claim related to negligence per se, in which the District Court concluded that the Muscogee (Creek) Nation was not the intended beneficiary of the statutes upon which its claim was founded.  *In re National Prescription Opiate Litigation*, MDL No. 1:17-MD-02804, Case No. 1:18-OP-45459, 2019 WL 3737023, at *12–13 (N.D. Ohio June 13, 2019) (hereinafter *Muscogee Order*).  These rulings are not binding upon this court; however, to the extent they interpret and apply Oklahoma law and common law applicable

to this case, they are persuasive authority that the court considers and to which it will not turn a blind eye.[3]

## I.   *Parens Patriae* Standing

The Nation seeks to bring its claims pursuant to its own proprietary interests as well as the doctrine of *parens patriae*, which allows sovereign entities to bring suits "to prevent or repair harm to its 'quasi-sovereign' interests."  *BP America, Inc. v. Oklahoma*, 6133d 1029, 1031 n.* (10th. Cir. 2010) (quoting *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 257 (1972)).  To bring a claim under the doctrine of *parens patriae*, a sovereign must:  (1) "articulate an interest apart from the interests of particular private parties, *i.e.*, the [sovereign] must be more than a nominal party"; (2) "express a quasi-sovereign interest"; and (3) allege an "injury to a sufficiently substantial segment of its population."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982).  In the context of tribal actions, the Northern District of Oklahoma has held that "a tribe must show that all or a substantial portion of its members have suffered an injury."[4]  *Quapaw Tribe of Oklahoma v. Blue Tee Corp.*, 653 F. Supp. 2d 1166, 1180 (N.D. Okla. 2009).  The

---

[3] The court also notes that one of the primary purposes of MDL is the avoidance of conflicting rulings on pretrial matters.  *See* Desmond T. Barry, Jr., *A Practical Guide to the Ins and Outs of Multidistrict Litigation*, 64 Def. Couns. J. 58, 59 (1997); *see also Board of County Commissioners of Seminole County, Oklahoma v. Perdue Pharma L.P.*, Case No. CIV-18-372-JWL, 2019 WL 1474397, at *2 (E.D. Okla. Apr. 3, 2019) (noting that stay pending MDL transfer protected against risk of inconsistent rulings on all pretrial matters).  It seems likely, though not an absolute certainty, that these motions would have been resolved consistently with the *Muscogee Order* if they were addressed while the case remained with the MDL court.  It also seems likely that rulings inconsistent with the *Muscogee Order*, or others issued by the MDL court, on relevant legal matters would frustrate the goals of MDL, even though this case sits now as its own litigation separate from the MDL.  *See Parkinson v. Novartis Pharmaceuticals Corp.*, 5 F. Supp. 3d 1265, 1272 (D. Ore. 2014)) (refusing to rule in a manner inconsistent with MDL court following remand of case with pending pretrial motions because doing so would create conflicting pretrial rulings and frustrate purposes of MDL).  Nonetheless, the court has examined the matters raised to reach its own conclusions concerning this motion.  To the extent the court adopts the reasoning of the MDL court, it does so because it has determined that doing so is proper following its own analysis.

[4] The court rejects Distributors' contention that the Nation's claims cannot be brought under the doctrine of *parens patriae* because the Nation does not allege an injury to every member of the Nation [*see* Docket No. 146, at 36–37; Docket No. 172, at 17–18].  Rather, *parens patriae* standing is not appropriate where a tribe seeks to bring claims on behalf of a small, discrete portion of its membership, such as those it employs.  *See Northern Arapahoe Tribe v. Burwell*, 118 F. Supp. 3d 1264, 1277–78 (D. Wyo. 2015) (rejecting *parens patriae* standing where tribe opposed health insurance mandate on behalf of only those members it employed).

4

Supreme Court has explicitly held that "quasi-sovereign interests" include an "interest in the health and well-being—both physical and economic—of" a sovereign's citizens. *Snapp*, 458 U.S. at 607.

The court concludes that the Nation may brings its claims pursuant to its *parens patriae* status.  The Nation had adequately alleged that the opioid epidemic has harmed a substantial segment of its population.  These affects go far beyond simple overdose deaths and reach matters such as broad societal, health, and economic concerns arising from the pervasive presence of illegal opioids in the Nation's communities.

The court recognizes that limitations on relief available under this status may be appropriate.  For example, harms to the Nation's members occurring outside of its borders or outside of Oklahoma may not be available.  The court notes that the Oklahoma Court of Criminal Appeals recently determined that Congress has not disestablished the Nation's reservation. *Hogner v. State*, --- P.3d ---, 2021 OK CR 4, 2021 WL 958412, at *6 (Okla. Ct. Crim. App. March 11, 2021).  The extent of relief available to the Nation concerning claims brought as *parens patriae* may better be resolved through further briefing at a later date.  For now, it is sufficient to determine that it may proceed with its claims.

## II.    "Threshold" Issues

Distributors' Motion to Dismiss begins by raising what it refers to as three "threshold" issues, presumably because it believes that dismissal on any of these grounds requires complete dismissal of the Nation's claims [Docket No. 146, at 4–11].  The court finds no basis for dismissal, at this stage of the proceedings, on any of these grounds.

The first issue, lack of proximate causation, must be rejected because "[t]he existence of proximate cause is generally a question of fact for the jury to determine and becomes a question of law only if there is no evidence from which a reasonable person could find a causal nexus

between the defendant's negligent act and the plaintiff's injury." *Jones v. Mercy*, 155 P.3d 9, 14 (Okla. 2006). "Foreseeability is an essential element of proximate cause in Oklahoma, and it is the standard by which proximate cause, as distinguished from the existence of a mere condition, is to be tested." *Tomlinson v. Love's Country Stores, Inc.*, 854 P.2d 910, 916 (Okla. 1993) (internal quotation marks omitted). "Whether a negligent event's injurious consequences could have been reasonably foreseen presents a jury question. Whether an intervening act is foreseeable also calls for an *evaluative determination* by the trier of fact." *Lockhart v. Loosen*, 943 P.2d 1074, 1079–80 (Okla. 1997). Whether the harms the Nation alleges were reasonably foreseeable consequences of the wrongful conduct upon which the Nation's claims are premised—the failure to take effective steps to prevent illegal diversion of prescription opiates—is a fact question. For the time being, the Nation's allegations are adequate to survive a motion to dismiss.

Distributors further argue that the "derivative injury rule" bars the Nation's claims because their claims for damages are entirely derivative of the harms suffered by the Nation's individual members [Docket No. 146, at 7–9]. The derivative injury rule can be understood as an extension of the proximate causation requirement, in that a plaintiff can seek damages only when there is a direct relationship between the injury and the injurious conduct. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). "Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Id.* at 268–69. A classic example of this is that health insurance providers do not have an independent cause of action against a tortfeasor simply because the insurance provider had to pay an insured's medical expenses due to the tortfeasor's actions. *See, e.g., United Food & Commercial Workers Unions, Employers Health and Welfare Fund v. Philip Morris, Inc.*, 223 F.3d 1271, 1274 (11th Cir. 2000) ("The usual common law rule is that a

health-care provider has no direct cause of action in tort against one who injures the provider's beneficiary, imposing increased costs upon the provider.").

The court rejects Distributor's assertion that this rule precludes the Nation from bringing claims in this case on behalf of its members as *parens patriae*.  The claims are not brought *merely* as healthcare providers seeking to recoup expenditures, but as a sovereign seeking to protect the physical and economic health and wellbeing of its members.  The court sees this as a significant distinction.  *See, e.g., Texas v. American Tobacco Co.*, 14 F. Supp. 2d 956, 967–68 (E.D. Tex. 1997) (holding that Texas had *parens patriae* status because efficient expenditure of money for the purpose of providing medical care "improves the health and welfare of the people of Texas," and this status permitted it to seek damages to recover healthcare expenditures it claimed to have incurred due to tobacco-related illness)[5]; *State ex rel. Jennings v. Purdue Pharma L.P.*, C.A. No. N18C-01-223 MMJ CCLD, 2019 WL 446382, at *3–4 (Del. Super. Ct. Feb. 4, 2019) (citing *State of Sao Paolo of Federative Republic of Brazil v. American Tobacco Co.*, 919 A.2d 1116, 1122 (Del. 2007)) (holding that Delaware could, in its capacity as *parens patriae*, recover medical expenses it incurred as a result of opioid manufacturers' alleged misrepresentations, specifically distinguishing prior Delaware law concerning foreign governments' inability to recoup medical expenditures because those governments lacked *parens patriae* status).

Finally, Distributors argue that the "free public services doctrine," also known as the "municipal cost recovery rule," precludes the Nation from recovering the costs it incurred in providing free public services related to emergency health services, law enforcement, fire services,

---

[5] The court notes that this case concerned Medicaid benefits and the recovery of expenditures based on those benefits. Importantly, the district court held that Texas could pursue its claims against the tobacco companies under the common law, even without the statutory provisions directing Texas to seek recoupment of Medicaid-related costs, *because* it was proceeding based on its status as *parens patriae*. *Id.* at 962 ("[I]f the Medicaid statute did not require the states to seek reimbursement, could a state proceed as the State of Texas has in this matter? Based on the Supreme Court's decision in [*Snapp*, 458 U.S. 592], the Court concludes that the State could bring such an action.").

7

etc. [Docket No. 146, at 9–11].  The court declines to bar any of the Nation's claims on this basis.

First, there are no Oklahoma cases adopting this doctrine to preclude the recovery of costs related

to public services.  Second, abatement of a public nuisance is a legitimate basis for recovery related

to the performance of public services.  *City of Flagstaff v. Atchison, Topeka and Santa Fe Railway*

*Co.*, 719 F.2d 322, 324 (9th Cir. 1983); *In re Opioid Litigation*, No. 400000/2017, 2018 WL

3115102, at *10 (N.Y. Sup. Ct., Suffolk County, June 18, 2018).  Third, the court recognizes that

both the MDL court as well as other state courts have rejected application of this doctrine where

the harms arise from allegedly continuous, persistent, and ongoing wrongful conduct—as opposed

to discrete instances of tortious behavior causing discrete expenditures of government resources.

*See Muscogee Order*, 2019 WL 3737023, at *8; *Muscogee R&R*, 2019 WL 2468267, at *8–9; *City*

*of Everett v. Purdue Pharma L.P.*, Case No. C17-209RSM, 2017 WL 4236062, at *7 (W.D. Wash.

Sept. 25, 2017); *In re Opioid Litigation*, 2018 WL 3115102, at *10; *Jennings v. Purdue Pharma*

*L.P.*, 2019 WL 446382, at *6; *see also State v. Black Hills Power, Inc.*, 354 P.3d 83, 85–86 (Wyo.

2015) (adopting municipal cost recovery rule in case concerning a wildfire caused by power

company's negligence).  The court believes that rejection of the free public services doctrine is

appropriate for these same reasons.  However, the court is willing to entertain future arguments

that the Nation's recovery should be limited to those expenditures that "exceed the ordinary costs

of providing those services . . . if evidence establishes that they were incurred" because of

Distributors' wrongful conduct.  *Muscogee R&R*, 2019 WL 2468267, at *9.

### III.     Public Nuisance

In Oklahoma, as relevant to this case, "a nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either" "annoys, injures or endangers the comfort, repose, health, or safety of others" or "in any way renders other persons insecure in life, or in the use of property."[6]  Okla. Stat. tit. 50, § 1.  Public nuisances are those that "affect[] at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."  Okla. Stat. tit. 50 § 2.  Distributors contend, for a variety of reasons, that the Nation's claim for public nuisance should be dismissed.

### a.  Legal Duties and the Controlled Substances Act

Distributors contend they owe the Nation no duties under the Controlled Substances Act (CSA) and its associated regulations [Docket No. 146, at 12–18]. 21 U.S.C. §§ 821, 822, 823; 21 C.F.R. §§ 1301.71–77.  As such, they take the position that they have committed no unlawful act upon which a claim for public nuisance may be based [Docket No. 146, at 12].  The Nation disagrees and argues that Distributors have duties to identify and report suspicious orders for opioids to the Drug Enforcement Administration (DEA) and to refuse to fulfill those suspicious orders under the CSA [Docket No. 159, at 15–17, 25–31].

With respect to this issue, the court has examined the CSA, its associated regulations, the decision of the MDL court, and the case law upon which that decision was premised.  The court agrees with the MDL court's analysis.  The CSA and its regulations impose a duty upon all registrants to "provide effective controls and procedures to guard against theft and diversion of controlled substances," 21 C.F.R. § 1301.71(a), and that all registrants "shall design and operate a

---

[6] This definition of a nuisance also reflects the elements that must be proven to prevail on a claim for nuisance.  *See* Oklahoma Uniform Civil Jury Instruction No. 33.2.

system to disclose to the registrant suspicious orders of controlled substances" and "inform the [DEA] of suspicious orders when discovered by the registrant." 21 C.F.R. § 1301.74(b).  Further, the D.C. Circuit has held that the CSA and its regulations create a duty to make one of two choices after reporting a suspicious order:  either the registrant must decline to ship the order or, if it intends to ship the order, it must first perform "due diligence" to determine that the order is not likely to be diverted into illegal channels.  *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, 861 F.3d 206, 212–13 (D.C. Cir. 2017).  The D.C. Circuit premised its determination upon what it found to be proper rulemaking through adjudication, citing a prior DEA adjudication establishing a requirement to either withhold shipping or first perform an investigation into the order.  *Id.* (citing *Southwood Pharmaceutical Inc.*, 72 Fed. Reg. 36,487, 36,500–01 (Drug Enf't Admin. July 3, 2007).

This court agrees with the MDL court and the D.C. Circuit with respect to Distributors' duties under the CSA and its associated regulations.  As such, there is not only a duty to report suspicious orders once detected, but also a duty to either not fulfill those orders or to investigate them to determine that they are not likely to be diverted to illegal channels.  Thus, the court concludes that allegations Distributors violated the CSA by failing to either withhold suspicious orders or to first investigate them and perform "due diligence" satisfy the requirement that a nuisance claim be based on either an unlawful act or failure to perform a legal duty.[7]

---

[7] The court rejects the premise that the duty must be owed specifically to the Nation before it may give rise to a nuisance claim; the statute incorporates no such requirement.  The Nation does not seek to enforce the CSA, but to use its requirements, and Distributors' alleged violations of those requirements, as the basis for its nuisance claim.

### b.  Double Recovery

Distributors object to the Nation's nuisance claim, for which the recovery would be monetary relief to abate the nuisance, on the grounds that such relief would constitute a form of double recovery [Docket No. 146, at 18–19].  Distributors specifically point to Oklahoma's own public nuisance suit, on which it prevailed against manufacturers of opioids, which awarded monetary relief to abate the nuisance caused throughout the State of Oklahoma and which was brought on behalf of all Oklahoma citizens.  *State ex rel. Hunter v. Purdue Pharma LP*, No. CJ-2017-816, 2019 Okla Dist. LEXIS 3486 (Okla. Dist. Aug. 26, 2019).

The court acknowledges that double recovery is a hypothetical possibility.  At this stage however, it is nothing more than that.  The court believes that the best approach is to allow the nuisance action to move forward and allow evidence to develop.  This will allow the court to make a more accurate determination if double recovery would actually occur if the Nation prevails.  The court is prepared to revisit this matter in the future, including the Nation's right to bring a suit to protect its own interests even in light of Oklahoma's suit, *see, e.g., Oklahoma v. Tyson Foods, Inc.*, 258 F.R.D. 472, 480–82 (N.D. Okla. 2009) ("Because the State's claims involve allegations of harm to natural resources in which the Cherokee Nation claims an interest, a judgment for damages in this case would either impinge on the Cherokee Nation's sovereign and statutory rights or leave defendants exposed to subsequent suit by the Cherokee Nation, or both."), but it does not believe this issue to be an appropriate basis for dismissal at this stage of the proceedings.

### c.  Special Injury

Distributors assert that the Nation must allege a "special injury," because it is bringing its claim for public nuisance as a private plaintiff.  In Oklahoma, "[a] private person may maintain an action for a public nuisance if it is specially injurious to himself but not otherwise."   Okla. Stat. tit. 50, § 10.  The court rejects that theory as grounds for dismissal because Native American tribes are "public bod[ies] or officer[s]" for the purpose of public nuisance claims and, as such, need not allege special injuries.  *See Quapaw*, 653 F. Supp. 2d at 1186 (concluding that Quapaw Tribe was a public body or officer, but nonetheless finding that it lacked standing to bring claims that belonged to individual landowners); Okla. Stat. tit. 50 § 11.

### d.  Control of the Instrumentality of the Nuisance

Oklahoma law states that, with respect to nuisances, a defendant "may be held liable to the extent he was responsible for the maintenance of a nuisance that was under his possession or control."  *Burlington N. and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1026 (10th Cir. 2007). Distributors argue that the Nation's nuisance claim must be dismissed because it does not properly allege that Distributors exercised control over the cause of the nuisance [Docket No. 146, at 21]. Distributors' position is essentially premised on the notion that the cause of the nuisance is opioid abuse and they lacked control over the opioids once they were delivered  [*Id.*].  The court disagrees.

The Nation does not claim that mere opioid abuse is the cause of the nuisance.  Instead, it alleges that the inadequate controls and safeguards concerning the opioid supply, including the oversupplying of opioids into the market for distribution to users, is the cause; opioid abuse is the consequence of that cause.  A nuisance may properly be alleged based on such allegations, and the final question of control is a fact issue.  *See Ileto v. Glock, Inc.*, 349 F.3d 1191, 1210–11 (9th Cir. 2003)  (holding  that  allegations  gun  manufacturers'  oversaturated  market  with  firearms

unreasonably interfered with public health and safety satisfactorily alleged a public nuisance under the Restatement (Second) of Torts)[8]; *Muscogee R&R*, 2019 WL 2468267, at *30 (rejecting Distributors' arguments for same reasons as stated here).

### e.   Connection to Real Property

Distributors' final argument that the Nation's nuisance claim should be dismissed is that it does not adequately allege a connection to real property [Docket No. 146, at 21–24]. For support, Distributors primarily point to *Laubenstein v. Bode Tower, L.L.C.*, an Oklahoma Supreme Court decision that stated nuisances "arise[] from an unreasonable, unwarranted, or unlawful use of property." 392 P.3d 706, 709 (Okla. 2016). The court recognizes this authority, but it also recognizes that the statement was made in the context of a case involving property use that was not unlawful. *Id.* In other words, the Oklahoma Supreme Court's focus, in that case, was the question of whether the manner in which the property was used created a nuisance, not whether use of property was a necessary predicate for a nuisance. *Id.* (concluding that no nuisance is created where cellular tower was lawfully constructed and "nuisance claim was predicated entirely on [plaintiff's] distinctive aesthetic preferences).

While the court admits to a bit of skepticism regarding the viability of a nuisance claim without concomitant use of real property, that conclusion is not presently persuasive. *See* Okla. Stat. tit. 50, § 1; Oklahoma Uniform Civil Jury Instruction No. 33.2. Most nuisances do arise from property use; however, that does not necessarily mean that nuisances can *only* arise from property use. Although the case is more than a century old, the Oklahoma Supreme Court has held that violations of anti-trust laws constitute a public nuisance. *Territory v. Long Bell Lumber Co.*, 99

---

[8] The court notes that Oklahoma often applies the Restatement's nuisance principles to its own law. *See Nichols v. Mid-Continent Pipe Line Co.*, 933 P.d 272, 277 (Okla. 1996); *see Tyson Foods*, 258 F. Supp. 2d at 1290 (applying Restatement principles concerning public nuisances)

P. 911, 920 (Okla. 1908).  Specifically, the Oklahoma Supreme Court held that secret agreements to fix supply and prices invaded the public's rights and interests to free and open markets.  *Id.* Additionally, an Oklahoma trial court rejected opioid manufacturers' similar property-based arguments, finding that Oklahoma's statute simply does not require a connection to real property to maintain a nuisance action.  *Hunter*, 2019 Okla Dist. LEXIS 3486, at *32–33.

In light of the totality of Distributors' nuisance defenses, the court is cognizant that this rather novel use of nuisance has the potential to morph into the "tort that ate the world." Nevertheless, the First Amended Complaint has at least stated a nuisance claim and the allegations are adequate to proceed.[9]

## IV.     Negligence

Distributors assert that the Nation's negligence claim should be dismissed because: (1) they have no liability under the Oklahoma Products Liability Act, Okla. Stat. tit. 76 § 57.2(G); (2) they owed no duty of care to the Nation, and; (3) the Nation has failed to properly allege gross negligence [Docket No. 146, at 24–28].

"The elements of the tort of negligence are 1) a duty of care owed by defendant to plaintiff, 2) defendant's breach of that duty, and 3) injury to plaintiff caused by defendant's breach of that duty." *Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007).

### a.   Innocent Seller Provision

Distributors argue that Oklahoma law precludes holding them liable for any negligence arising from the distribution of opioids because of its innocent seller provision, which states:

---

[9] Although Distributors' briefing includes a heading claiming that the Nation has not adequately alleged interference with a public right, nothing in their argument furthers that position [*see* Docket No. 146, at 21–24].  The court therefore declines to address such issues in detail, but it notes that the MDL court upheld allegations identical to those asserted by the Nation as alleging interference with public rights.  *Muscogee R&R*, 2019 WL 2468267, at *30–32.  The court agrees with the reasoning set forth therein.

G.  A product seller other than a manufacturer is liable to a claimant on the basis of negligence if the claimant establishes that:

   1.  The product seller sold the product involved in such action;
   2.  The product seller did not exercise reasonable care:
       a.  in assembling, inspecting, or maintaining such product, or
       b.  in passing on warnings or instructions from such product's manufacturer about the dangers and proper use of such product; and
   3.  Such failure to exercise reasonable care was a proximate cause of the harm complained of by the claimant.

Okla. Stat. tit. 76 § 57.2(G); [Docket No. 146, at 24–25].

The court declines to find this statutory provision applicable to the Nation's claim because it applies only to products liability actions premised on defective products.  First, the court notes that Distributors do not cite a single case supporting the proposition that the innocent seller provision applies to matters unrelated to defective products.  Second, Section 57 as a whole is very clearly concerned with defective products and limiting liability arising from such claims—it is titled "Inherently Unsafe Product Liability Limitation."  *See* Okla. Stat. tit. 76 § 57.  Section 57.2 provides a variety of rebuttable presumptions concerning liability and any associated limitations. *Id.* at § 57.2.  This is not a products liability claim premised on a defective product; it is a claim that Distributors negligently failed to prevent the diversion of highly addictive opioid medications. It is not primarily the product Distributors sold that has led to this lawsuit; it is the Distributors' alleged wrongful conduct in selling that product.

**b.  Duty of Care**

Whether the defendant owed the plaintiff a duty of care is a question of law for the court in a negligence action.  *Lowery*, 160 P.3d at 964.

The most important consideration in establishing duty is foreseeability.  As a general rule, a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous.  Foreseeability as an element of duty establishes a zone

15

of risk, that is, whether the conduct creates a generalized and foreseeable risk of harming others.

*Trinity Baptist Church v. Brotherhood Mutual Insurance Services, LLC*, 341 P.3d 75, 84 (Okla. 2014) (internal citations and quotation marks omitted) (quoting *Brown v. State Farm Fire and Casualty Co.*, 58 P.3d 217, 219 (Okla. Ct. App. 2002)).[10] "[A] legal duty arises when a human endeavor creates a generalized and foreseeable risk of harming others." *Delbrel v. Doenges Bros. Ford, Inc.*, 913 P.2d 1318, 1321 (Okla. 1996) (citing *McCain v. Florida Power Corp.*, 593 So.2d 500, 503 (Fla. 1992)).

The court concludes that the Nation has adequately alleged facts demonstrating Distributors owed it a duty because it was foreseeable that negligently failing to prevent the diversion of addictive opioids, including allegedly "oversupplying the market" with such opioids, would lead to abuse, addiction, and overdoses, and that Nation would pay the price. On this point, the court agrees with the MDL court's determination regarding foreseeability:

> When there is a flood of highly addictive drugs into a community it is foreseeable—to the point of being a foregone conclusion—that there will be a secondary, "black" market created for those drugs. It is also foreseeable that local governments will be responsible for combatting the creation of that market and mitigating its effects.

*In re National Prescription Opiate Litigation*, MDL 2804, Case No. 1:17-md-2804, 2018 WL 6628898, at *19 (N.D. Ohio Dec. 19, 2018).[11]

### c.   Gross Negligence

Distributors finally claim that the Nation has not properly alleged gross negligence because Oklahoma law requires an "intentional failure to perform a manifest duty in reckless disregard of

---

[10] The court notes that *Trinity* abrogated the holding in *Brown*, which adopted a minority view that an independent insurance adjuster hired by an insurer owed a duty of care to the insured. *Trinity* rejected that conclusion because "The special relationship between the insurer and insured, and the implied duty of good faith and fair dealing on the part of the insurer, represent a unique factual departure from the decisions of this Court relied upon by the Court of Civil Appeals in *Brown*. . . ." 341 P.3d at 86.

[11] The MDL court later analyzed this issue under Oklahoma law and found that this holding remained applicable. *Muscogee Order,* 2019 WL 3737023, at *6.

consequences or in callous indifference to life, liberty, or property." [Docket No. 146, at 28 (quoting *NMP Corp. v. Parametric Technology Corp.*, 958 F. Supp. 1536, 1546 (N.D. Okla. 1997))]. The Nation responds that gross negligence does not necessarily require intentional conduct, and the court agrees [Docket No. 159, at 48–51.

Oklahoma defines gross negligence as "want of slight care and diligence," Okla. Stat. tit. 25 § 6, and further defines slight care or diligence as that which "persons of ordinary prudence usually exercise about their own affairs of slight importance." *Id.* at § 4. Contrary to Distributors' position, Oklahoma does not limit claims of gross negligence to those that allege an intentional failure to perform a manifest duty. The district court's decision in *NMP*, upon which Distributors rely, cites an Oklahoma Supreme Court case that concluded such an intentional failure *satisfied* the requirement that negligence be "so flagrant, so deliberate, or so reckless [as to be] removed from the realm of mere negligence." *Fox v. Oklahoma Memorial Hospital*, 774 P.2d 459, 461 (Okla. 1989). Indeed, it strikes the court as problematic to hold that gross negligence, which differs from standard negligence *only* in degree, *see NMP Corp.*, 958 F. Supp. at 1546, cannot be satisfied by negligent conduct and instead requires allegations of an intentional failure to perform a manifest duty. To read such a requirement into Oklahoma's gross negligence statute is ignore the statute's text and completely transform the nature of the cause of action. *See FDCI for Seaway Bank and Trust Co. v. Urban Partnership Bank*, Case No. 17-cv-01517, 2018 WL 497285, at *5–6 (N.D. Ill. Jan. 22, 2018) (examining Oklahoma's gross negligence statutes and the *Fox* decision, and concluding that alleging intentional act was not required to survive motion to dismiss); *see also Neal v. Donahue*, 611 P.2d 1125, 1129–30 (Okla. 1980) (holding doctor's failure to adhere to notification procedures he knew or should have known were in place could constitute gross negligence and "willful and wanton negligence" for purpose of statute immunizing state

employees from liability for ordinary negligence). The conduct at issue in this case represents a question of fact as to the degree of Distributors' negligence. As such, the court concludes that the question of whether Distributors are liable for gross negligence is not a matter to be resolved on a motion to dismiss. *Fox*, 774 P.2d at 462.

### V.      Unjust Enrichment

Distributors dispute whether the Nation has adequately pleaded its claim for unjust enrichment. Specifically, they contend the Nation cannot bring its unjust enrichment claim because it has an adequate remedy at law and because the Nation has not adequately alleged it enriched Distributors [Docket No. 146, at 28–30]. The Nation responds that its unjust enrichment claim stands as an alternative to its other claims and, with respect to enrichment, it argues that it would be unjust for Distributors to retain the benefit of the profits they derived through their conduct surrounding the distribution of opioids while the Nation must bear the costs to remedy the harms incurred by that distribution [Docket No. 159, at 51–54].

"Unjust enrichment is a condition which results from the failure of a party to make restitution in circumstances where not to do so is inequitable, i.e., the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Oklahoma Dept. of Securities ex rel. Fought v. Blair*, 231 P.3d 645, 658 (Okla. 2010). Unjust enrichment typically consists of "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another." *Id.* The Oklahoma Supreme Court has held:

> [U]njust enrichment arises not only where an expenditure by one person adds to the property of another, but also where the expenditure saves the other from expense or loss. One is not unjustly enriched, however, by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution.

*City of Tulsa v. Bank of Oklahoma, N.A.*, 280 P.3d 314, 319 (Okla. 2011) (quoting *McBride v. Bridges*, 215 P.2d 830, 832 (Okla. 1950)).   To recover for unjust enrichment, "there must be enrichment to another, coupled with a resulting injustice." *Id.* (quoting *Teel v. Public Service Co. of Oklahoma*, 797 P.2d 391, 398 (Okla. 1985).

The court notes that an Oklahoma trial court rejected similar arguments asserted by opioid manufacturers seeking dismissal of an unjust enrichment claim in the case brought by the State of Oklahoma against those manufacturers.  *See Hunter v. Purdue Pharma L.P.*, Case No. CJ-2017-816, Defendants' Joint Motion to Dismiss for Failure to State a Claim (Okla. Dist. Ct. Sept. 22, 2017); *id.*, Order (Okla. Dist. Ct. Dec. 6, 2017).  The State of Oklahoma's Petition alleged facts in support of its unjust enrichment claim that relied on similar, though not identical, allegations.  *See id.*, Petition, at 30 (Okla. Dist. Ct. June 30, 2017); [Docket No. 136, at 78–79].  The court further notes that the MDL court rejected Distributors' position and adopted those the Nation has put forth, specifically that a plaintiff paying the costs of the "negative externalities" caused by a defendant's conduct is a form of enrichment because the defendant does not have to pay the costs of its own conduct.  *Muscogee Order*, 2019 WL 3737023, at *8–9; *Muscogee R&R*, 2019 WL 2468267, at *34–35.  The MDL court's decision was based on its own analysis of Oklahoma law, which it found provided a "broad view of unjust enrichment liability to vindicate a wide variety of equitable principles," to conclude that the Oklahoma Supreme Court would adopt this "negative externalities" theory of equitability.  *Muscogee Order*, 2019 WL 3737023, at *8–9.

The court agrees with the MDL court's analysis, and it believes this decision is supported by the principles of unjust enrichment law to which Oklahoma adheres.  Specifically, the principles that "[U]njust enrichment arises not only where an expenditure by one person adds to the property of another, *but also where the expenditure saves the other from expense or loss*," *City of Tulsa*,

280 P.3d at 319 (emphasis added), and also that unjust enrichment occurs when a defendant "has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Fought*, 231 P.3d at 658.   Taking these into account, the court will allow the Nation's claim to move forward and permit it the opportunity to show, if necessary, that it is equitably entitled to restitution from Distributors.

      **VI.**    **Civil Conspiracy**

      Distributors' opposition to the Nation's claim for civil conspiracy rests on (1) its failure to allege an underlying intentional tort, (2) the absence of an allegation concerning an illicit agreement, and (3) the lack of an allegation that Distributors committed an unlawful, overt act in furtherance of the conspiracy [Docket No. 146, at 31–35].   The Nation responds that its claims for gross negligence and public nuisance satisfy the underlying tort requirement

      "To state a claim for civil conspiracy, Plaintiffs must allege:   (1) two or more persons; (2) an object to  be accomplished;  (3) a meeting of  the minds on  the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."  *Allen v. IM Solutions, LLC*, 94 F. Supp. 3d 1216, 1233 (E.D. Okla. 2015).   Further, civil conspiracy is not actionable as an independent tort, but instead requires "the existence of an underlying tort or wrongful act committed by one or more of the conspirators in furtherance of the conspiracy."  *Id.* Additionally, "[t]he agreement is a matter of inference from the facts and circumstances of the alleged conspirators. The question is whether the circumstances, considered as a whole, show that the parties united to accomplish the fraudulent scheme."  *North Texas Production Credit Association v. McCurtain County National Bank*, 222 F.3d 800, 815 (10th Cir. 2000) (quoting *Shadid v. Monsour*, 746 P.2d 685, 689 (Okla. Ct. App. 1987).

The court notes that Distributors concede gross negligence can satisfy the underlying tort requirement [*see* Docket No. 146, at 32], but the court also concludes that public nuisance may satisfy it as well.  Public nuisance, if committed intentionally, may constitute an intentional tort. *See* Restatement (Second) of Torts, §825(b)–(c) (noting that an invasion causing a nuisance may be intentional where the defendant "act[s] for the purpose of causing it or know[s] that it is resulting or is substantially certain to result from his conduct," and providing an illustration that one who initially does not recognize that his actions cause harm, but continues to perform those actions after learning of the harm, has created an intentional invasion); *see also Tyson Foods*, 258 F. Supp. 2d at 1301 (recognizing that public nuisance is an intentional tort when the conduct alleged is intentional in nature).  The court therefore rejects the first of Distributors' arguments.

The court further rejects Distributors' contention that the Nation has not adequately alleged a meeting of the minds or unlawful acts in furtherance of a conspiracy.  Taking the allegations in the light most favorable to the Nation, the Nation has adequately alleged facts that, if true, may permit a factfinder to infer the existence of an agreement to accomplish an objective through unlawful means.  As such, the court will not dismiss the Nation's civil conspiracy claim at this time.

## CONCLUSION

Accordingly, Distributors' Motion to Dismiss [Docket No. 146] is hereby DENIED.

**IT IS SO ORDERED** this 29th day of March, 2021.

Ronald A. White
United States District Judge
Eastern District of Oklahoma