## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE CHEROKEE NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-056-RAW |
| | ) | |
| MCKESSON CORPORATION; | ) | |
| CARDINAL HEALTH, INC.; | ) | |
| CARDINAL HEALTH 110, LLC; | ) | |
| AMERISOURCEBERGEN DRUG CORP.; | ) | |
| CVS HEALTH CORPORATION; | ) | |
| CVS PHARMACY, INC.; | ) | |
| OKLAHOMA CVS PHARMACY, LLC; | ) | |
| WALGREENS BOOTS ALLIANCE, INC.; | ) | |
| WALGREEN CO.; | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants CVS Health Corporation, CVS Pharmacy, Inc., Oklahoma CVS Pharmacy, LLC, Walgreens Boots Alliance, Inc., Walgreen Co., and Wal-Mart Stores, Inc.'s (Pharmacies) Motion to Dismiss the Cherokee Nation's (the Nation) First Amended Complaint [Docket No. 147]. The Nation has filed an omnibus response to this motion and a motion filed by the pharmacy Defendants in this matter [Docket No. 159].[1] Pharmacies have filed a reply to the Nation's response [Docket No. 173].

In examining a motion to dismiss, the court accepts as true all well-pleaded facts[2] in the Complaint and construes those facts in the light most favorable to Plaintiffs. *Western Watersheds*

---

[1] The court will address the distributor Defendants' motion to dismiss in a separate order.
[2] The court does not accept as true conclusory statements or legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")).

*Project v. Michael*, 869 F.3d 1189, 1193 (10th Cir. 2017).  To survive a Rule 12(b)(6) motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Plaintiffs must nudge their "claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  The well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct."  *Id.* at 679.

The Tenth Circuit has held that the "*Twombly*/*Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).  "In other words, *Rule 8(a)(2) still lives*."  *Id.* (emphasis added).  "Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting *Khalik*, 671 F.3d at 1191).

## BACKGROUND

The Nation instituted this action on January 19, 2018, in the District Court of Sequoyah County, Oklahoma.  Defendants removed the case to this court on February 26, 2018.  The United States Judicial Panel on Multidistrict Litigation transferred this case to the Northern District of Ohio as part of the national prescription opioid multidistrict litigation.  In February 2020, the Multidistrict Litigation Panel remanded the case back to this court as part of a broad effort to resolve cases brought by certain types of plaintiffs—in this case, a Native American Tribe.  The

court currently has before it a pair of motions to dismiss filed by the Distributor Defendants and Pharmacy Defendants.

The First Amended Complaint encompasses eighty-seven pages and three hundred seventy paragraphs of allegations [Docket No. 136].  It would not be useful to attempt to summarize that document and its numerous allegations here.  Put simply, the crux of the Nation's claims against Pharmacies is that they failed to combat the illegal diversion of prescription opiates to nonmedical users, contributing greatly to what has become a nationwide epidemic of opiate abuse, addiction, and overdoses.  The Nation alleges four causes of action against Pharmacies:  (1) Public Nuisance; (2) Negligence and Gross Negligence; (3) Unjust Enrichment; and (4) Civil Conspiracy. Pharmacies seek dismissal of each claim and rely on a wide range of grounds to support their positions.

## ANALYSIS

Initially, the court recognizes the fact that the Northern District of Ohio has analyzed many of the issues presented in this Motion to Dismiss.  The multidistrict litigation (MDL) court first issued a Report and Recommendation explicitly addressing claims brought by the Muscogee (Creek) Nation concerning claims of nuisance, negligence, negligence per se, unjust enrichment, and civil conspiracy against pharmacy defendants.  *In re National Prescription Opiate Litigation*, MDL No. 1:17-MD-02804, Case No. 1:18-OP-45459, 2019 WL 2468267 (N.D. Ohio April 1, 2019) (hereinafter *Muscogee R&R*).  The District Court adopted that Report and Recommendation almost in its entirety, with the exception being a claim related to negligence per se, in which the District Court concluded that the Muscogee (Creek) Nation was not the intended beneficiary of the statutes upon which its claim was founded.  *In re National Prescription Opiate Litigation*, MDL No. 1:17-MD-02804, Case No. 1:18-OP-45459, 2019 WL 3737023, at *12–13

3

(N.D. Ohio June 13, 2019) (hereinafter *Muscogee Order*).  These rulings are not binding upon this

court; however, to the extent they interpret and apply Oklahoma law and common law applicable

to this case, they are persuasive authority that the court considers and to which it will not turn a

blind eye.[3]

## I.   *Parens Patriae* Standing

The Nation seeks to bring its claims pursuant to its own proprietary interests as well as the

doctrine of *parens patriae*, which allows sovereign entities to bring suits "to prevent or repair harm

to its 'quasi-sovereign' interests."  *BP America, Inc. v. Oklahoma*, 6133d 1029, 1031 n.* (10th.

Cir. 2010) (quoting *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 257 (1972)).  To bring

a claim under the doctrine of *parens patriae*, a sovereign must:  (1) "articulate an interest apart

from the interests of particular private parties, *i.e.*, the [sovereign] must be more than a nominal

party"; (2) "express a quasi-sovereign interest"; and (3) allege an "injury to a sufficiently

substantial segment of its population."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592,

607 (1982).  In the context of tribal actions, the Northern District of Oklahoma has held that "a

tribe must show that all or a substantial portion of its members have suffered an injury."  *Quapaw*

*Tribe of Oklahoma v. Blue Tee Corp.*, 653 F. Supp. 2d 1166, 1180 (N.D. Okla. 2009).  The

---

[3] The court also notes that one of the primary purposes of MDL is the avoidance of conflicting rulings on pretrial matters.  *See* Desmond T. Barry, Jr., *A Practical Guide to the Ins and Outs of Multidistrict Litigation*, 64 Def. Couns. J. 58, 59 (1997); *see also Board of County Commissioners of Seminole County, Oklahoma v. Perdue Pharma L.P.*, Case No. CIV-18-372-JWL, 2019 WL 1474397, at *2 (E.D. Okla. Apr. 3, 2019) (noting that stay pending MDL transfer protected against risk of inconsistent rulings on all pretrial matters).  It seems likely, though not an absolute certainty, that these motions would have been resolved consistently with the *Muscogee Order* if they were addressed while the case remained with the MDL court.  It also seems likely that rulings inconsistent with the *Muscogee Order*, or others issued by the MDL court, on relevant legal matters would frustrate the goals of MDL, even though this case sits now as its own litigation separate from the MDL.  *See Parkinson v. Novartis Pharmaceuticals Corp.*, 5 F. Supp. 3d 1265, 1272 (D. Ore. 2014)) (refusing to rule in a manner inconsistent with MDL court following remand of case with pending pretrial motions because doing so would create conflicting pretrial rulings and frustrate purposes of MDL).  Nonetheless, the court has examined the matters raised to reach its own conclusions concerning this motion.  To the extent the court adopts the reasoning of the MDL court, it does so because it has determined that doing so is proper following its own analysis.

4

Supreme Court has explicitly held that "quasi-sovereign interests" include an "interest in the health and well-being—both physical and economic—of" a sovereign's citizens. *Snapp*, 458 U.S. at 607.

The court concludes that the Nation may brings its claims pursuant to its *parens patriae* status. The Nation had adequately alleged that the opioid epidemic has harmed a substantial segment of its population. These affects go far beyond simple overdose deaths and reach matters such as broad societal, health, and economic concerns arising from the pervasive presence of illegal opioids in the Nation's communities.

The court recognizes that limitations on relief available under this status may be appropriate. For example, harms to the Nation's members occurring outside of its borders or outside of Oklahoma may not be available. The court notes that the Oklahoma Court of Criminal Appeals recently determined that Congress has not disestablished the Nation's reservation. *Hogner v. State*, --- P.3d ---, 2021 OK CR 4, 2021 WL 958412, at *6 (Okla. Ct. Crim. App. March 11, 2021). The extent of relief available to the Nation concerning claims brought as *parens patriae* may better be resolved through further briefing at a later date. For now, it is sufficient to determine that it may proceed with its claims.

Pharmacies raise concerns about the possibility of double recovery in allowing the Nation to pursue its claims as *parens patriae* [Docket No. 147, at 16–17]. Pharmacies specifically point to Oklahoma's own public nuisance suit, on which it prevailed against manufacturers of opioids, which awarded monetary relief to abate the nuisance caused throughout the State of Oklahoma and which was brought on behalf of all Oklahoma citizens. *State ex rel. Hunter v. Purdue Pharma LP*, No. CJ-2017-816, 2019 Okla. Dist. LEXIS 3486 (Okla. Dist. Aug. 26, 2019).

The court acknowledges that double recovery is a hypothetical possibility. At this stage however, it is nothing more than that. The court believes that the best approach is to allow the

nuisance action to move forward and allow evidence to develop.  This will allow the court to make a more accurate determination if double recovery would actually occur if the Nation prevails.  The court is prepared to revisit this matter in the future, including the Nation's right to bring a suit to protect its own interests even in light of Oklahoma's suit, *see, e.g., Oklahoma v. Tyson Foods, Inc.*, 258 F.R.D. 472, 480–82 (N.D. Okla. 2009) ("Because the State's claims involve allegations of harm to natural resources in which the Cherokee Nation claims an interest, a judgment for damages in this case would either impinge on the Cherokee Nation's sovereign and statutory rights or leave defendants exposed to subsequent suit by the Cherokee Nation, or both."), but it does not believe this issue to be an appropriate basis for dismissal at this stage of the proceedings.

## II.      Learned Intermediary Doctrine

Pharmacies argue that Oklahoma's learned intermediary doctrine precludes the claims against them [Docket No. 147, at 5–11].  In Oklahoma, the learned intermediary doctrine may "shield pharmacists from being required to 'second guess' a physician's medical decisions embodied in an otherwise authorized and legally made prescription," but this shield falls away when a "prescription 'is unreasonable on its face,' e.g., it prescribes facially bizarre quantities or dosages clearly outside of any acceptable range, or clearly inappropriate drugs." *Carista v. Valuck*, 394 P.3d 253, 256 (Okla. Ct. App. 2016).  Having reviewed the Nation's allegations, the court concludes that the Nation has adequately set forth allegations that an exception to the learned intermediary doctrine should apply, in that it has sufficiently alleged Pharmacies filled prescriptions that were unreasonable on their face.  The court expresses no opinion, at this time, as to whether the learned intermediary doctrine would apply to the facts of this case in the first instance, thus requiring an exception.  *See Muscogee Order*, 2019 WL 3737023, at *5–6

(expressing uncertainty that, under the facts alleged, the learned intermediary doctrine would apply at all).

### III.    Free Public Services Doctrine

Pharmacies argue that the "free public services doctrine," also known as the "municipal cost recovery rule," precludes the Nation from recovering the costs it incurred in providing free public services related to emergency health services, law enforcement, fire services, etc. [Docket No. 147, at 22].  The court declines to bar any of the Nation's claims on this basis.  First, there are no Oklahoma cases adopting this doctrine to preclude the recovery of costs related to public services.  Second, abatement of a public nuisance is a legitimate basis for recovery related to the performance of public services.  *City of Flagstaff v. Atchison, Topeka and Santa Fe Railway Co.*, 719 F.2d 322, 324 (9th Cir. 1983); *In re Opioid Litigation*, No. 400000/2017, 2018 WL 3115102, at *10 (N.Y. Sup. Ct., Suffolk County, June 18, 2018).  Third, the court recognizes that both the MDL court as well as other state courts have rejected application of this doctrine where the harms arise from allegedly continuous, persistent, and ongoing wrongful conduct—as opposed to discrete instances of tortious behavior causing discrete expenditures of government resources.  *See Muscogee Order*, 2019 WL 3737023, at *8; *Muscogee R&R*, 2019 WL 2468267, at *8–9; *City of Everett v. Purdue Pharma L.P.*, Case No. C17-209RSM, 2017 WL 4236062, at *7 (W.D. Wash. Sept. 25, 2017); *In re Opioid Litigation*, 2018 WL 3115102, at *10; *Jennings v. Purdue Pharma L.P.*, 2019 WL 446382, at *6; *see also State v. Black Hills Power, Inc.*, 354 P.3d 83, 85–86 (Wyo. 2015) (adopting municipal cost recovery rule in case concerning a wildfire caused by power company's negligence).  The court believes that rejection of the free public services doctrine is appropriate for these same reasons.  However, the court is willing to entertain future arguments that the Nation's recovery should be limited to those expenditures that "exceed the ordinary costs

of providing those services . . . if evidence establishes that they were incurred" because of Pharmacies' wrongful conduct. *Muscogee R&R*, 2019 WL 2468267, at \*9.

### IV.    Statute of Limitations

Pharmacies assert that the Nation's claims are barred by Oklahoma's two-year statute of limitations on tort claims.

The affirmative defense that a plaintiff's claims fall outside of the statute of limitations is often a question of fact not appropriately resolved through a motion to dismiss. *Miller v. Liberty Mutual Fire Insurance Co.*, 191 P.3d 1221, 1227 (Okla. 2008). This principle does not apply, however, "where the facts establishing the affirmative defense are apparent on the face of the complaint." *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 996 (N.D. Okla. 2017). "If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under [R]ule 12(b)(6)." *Id.* at 997.

The court disagrees with the Pharmacies' assertion that the Nation's First Amended Complaint demonstrates that its claims accrued in 2014. Merely referencing a particular set of data concerning a given timeframe does not necessarily mean the Nation's claims accrue solely based on that timeframe. *See State of Vermont v. Perdue Pharma L.P.*, 7575-9-18 CNCV, Ruling on Motion to Dismiss, at 2 (Vt. Super. Ct. March 19, 2019). Indeed, the Nation alleges that Pharmacies "*continue* to ignore their obligations to prevent opioid diversion." [Docket No. 136, at ¶ 228 (emphasis added)]. As such, the court will not rule on Pharmacies' statute of limitations defense at this time.[4]

---

[4] The court also notes that the Nation alleges various grounds for tolling the statute of limitations, which provides an additional basis for declining to rule on the issue at this time.

## V.     Proximate Causation

Pharmacies argue that the Nation has failed to allege that their actions proximately caused the Nations injuries and its claims must therefore be dismissed [Docket No. 147, at 18–21].  This argument must be rejected because "[t]he existence of proximate cause is generally a question of fact for the jury to determine and becomes a question of law only if there is no evidence from which a reasonable person could find a causal nexus between the defendant's negligent act and the plaintiff's injury."  *Jones v. Mercy*, 155 P.3d 9, 14 (Okla. 2006).  "Foreseeability is an essential element of proximate cause in Oklahoma, and it is the standard by which proximate cause, as distinguished from the existence of a mere condition, is to be tested."  *Tomlinson v. Love's Country Stores, Inc.*, 854 P.2d 910, 916 (Okla. 1993) (internal quotation marks omitted).  "Whether a negligent event's injurious consequences could have been reasonably foreseen presents a jury question. Whether an intervening act is foreseeable also calls for an *evaluative determination* by the trier of fact."  *Lockhart v. Loosen*, 943 P.2d 1074, 1079–80 (Okla. 1997).  Whether the harms the Nation alleges were reasonably foreseeable consequences of the wrongful conduct upon which the Nation's claims are premised—the failure to take effective steps to prevent illegal diversion of prescription opiates—is a fact question.  For the time being, the Nation's allegations are adequate to survive a motion to dismiss.

## VI.     Public Nuisance

Pharmacies claim that the Nations cause of action for public nuisance must be dismissed as a matter of law because its allegations are unconnected to the use of real property [Docket No. 147, at 24–28].  The court declines to adopt that position.

In Oklahoma, as relevant to this case, "a nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either" "annoys, injures or endangers the

comfort, repose, health, or safety of others" or "in any way renders other persons insecure in life, or in the use of property."[5]  Okla. Stat. tit. 50, § 1.  Public nuisances are those that "affect[] at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."  Okla. Stat. tit. 50 § 2.

Pharmacies point to *Fairlawn Cemetery Association v. First Presbyterian Church, U.S.A.*, for the principle that "[a] nuisance, public or private, arises where a person uses his own property in such a manner as to cause injury to the property of another."  496 P.2d 1185, 1187 (Okla. 1972).  This statement was made, however, in the context of distinguishing a nuisance from a trespass where a church piled dirt against the cemetery's wall, causing the wall to lean and crack.  *Id.* at 1186–87.  It was not a categorical statement that nuisances can *only* arise from use of real property, but a statement that the church's use of its own land was not a nuisance because it was, in fact, a trespass.[6]

While the court admits to a bit of skepticism regarding the viability of a nuisance claim without concomitant use of real property, that conclusion is not presently persuasive.  *See* Okla. Stat. tit. 50, § 1; Oklahoma Uniform Civil Jury Instruction No. 33.2.  Most nuisances do arise from property use; however, that does not necessarily mean that nuisances can *only* arise from property use.  Although the case is more than a century old, the Oklahoma Supreme Court has held that

---

[5] This definition of a nuisance also reflects the elements that must be proven to prevail on a claim for nuisance.  *See* Oklahoma Uniform Civil Jury Instruction No. 33.2.

[6] The distributor Defendants raised a similar argument in their own motion to dismiss [Docket No. 146, at 21–24], citing *Laubenstein v. Bode Tower, L.L.C.*, which stated that nuisances "arise[] from an unreasonable, unwarranted, or unlawful use of property."  392 P.3d 706, 709 (Okla. 2016).  That argument was similarly unpersuasive because *Laubenstein* made that statement in the context of a case involving property use that was not unlawful.  *Id.*  The question in that case was whether the manner in which the property was used created a nuisance, not whether use of property was a necessary predicate for a nuisance.  *Id.* (concluding that no nuisance is created where cellular tower was lawfully constructed and "nuisance claim was predicated entirely on [plaintiff's] distinctive aesthetic preferences").

violations of anti-trust laws constitute a public nuisance. *Territory v. Long Bell Lumber Co.*, 99 P. 911, 920 (Okla. 1908). Specifically, the Oklahoma Supreme Court held that secret agreements to fix supply and prices invaded the public's rights and interests to free and open markets. *Id.* Additionally, an Oklahoma trial court rejected opioid manufacturers' similar property-based arguments, finding that Oklahoma's statute simply does not require a connection to real property to maintain a nuisance action. *Hunter*, 2019 Okla Dist. LEXIS 3486, at *32–33.

In light of the totality of Pharmacies' nuisance defenses, the court is cognizant that this rather novel use of nuisance has the potential to morph into the "tort that ate the world." Nevertheless, the First Amended Complaint has at least stated a nuisance claim and the allegations are adequate to proceed.

## VII.   Controlled Substances Act

Pharmacies appear to raise two primary arguments with respect to their duties under the Controlled Substances Act (CSA).[7] First, that the CSA does not impose corporate-level liability for dispensing of opioids; instead, it is limited to pharmacists [Docket No. 147, at 11–13]. Second, that the Nation cannot enforce the CSA's regulations through a private right of action [*Id.* at 13–15].

Pharmacies do not appear to raise the argument that they lack duties under the CSA as distributors of opioids[8] but, to the extent that they do, the court adopts the conclusions it reached with respect to distributor Defendants' arguments that they lacked duties under the CSA.

---

[7] The Nation alleges violations of the duties imposed by the CSA serve as the "unlawful act" or "omitted duty" that gave rise to the public nuisances for which they seek abatement [*See* Docket No. 136, at ¶ 321 (alleging failures to perform duties imposed by the CSA)].

[8] Pharmacies in this case do distribute opioids to their individual pharmacy locations from which they are dispensed to patients.

As for Pharmacies' argument concerning the CSA not imposing corporate-level obligations to safeguard against illegal diversion of opioids, the court disagrees. Pharmacies argue that the CSA's dispensing duties apply only to individual pharmacists, not their corporate employers [*Id.* at 11–12]. Pharmacies admit they, as registrants, have obligations under the CSA to "provide effective controls and procedures to guard against theft and diversion of controlled substances," 21 C.F.R. § 1301.71(a), but argue that their obligations are limited to physical security of controlled substances, not the dispensing of those substances. The DEA has, in fact, found pharmacy-level responsibility for failing to properly monitor the dispensing practices of pharmacists, and has revoked registrations for pharmacies in such circumstances. *See e.g.*, *Holiday CVS, L.L.C., d/b/a CVS/Pharmacy Nos. 219 and 5195, Decision and Order*, 77 Fed. Reg. 62316-01, 2012 WL 4832770 (Drug Enf't. Admin. Oct. 12, 2012) (revoking registration of two pharmacies because their pharmacists dispensed prescriptions for controlled substances that raised red flags in violation of 21 C.F.R. § 1306.04(a), finding that pharmacists completely abdicated their role to exercise professional judgment in dispensing prescriptions for addictive substances)). In that sense, the court concludes that *pharmacies*, not merely pharmacists, have obligations to "resolve red flags" before dispensing controlled substances concerning suspicious prescriptions. *See id.*, at 62317–23. Whether those red flags existed, whether they were adequate to establish that pharmacists "subjectively believed there was a high probability" that the prescriptions were legitimate, and whether they were adequately resolved is a fact question the court does not explore at this time. *See Superior Pharmacy I and Superior Pharmacy II, Decision and Order*, 81 Fed. Reg. 31310-01, 2016 WL 2866659 (Drug Enf't Admin. May 18, 2016) (setting forth requirements for showing that a pharmacist "knowingly" filled a prescription that was not issued "for a

12

legitimate medical purpose . . . in the usual course of professional treatment" (quoting 21 C.F.R. 1306.04(a)).

Insofar as Pharmacies argue that the Nation cannot enforce the CSA through a private right of action, the court notes that the Nation does not seek to simply enforce the CSA and its provisions. The Nation argues that Pharmacies violated their duties under the CSA, and that in violating those duties, their actions ultimately led to a public nuisance under Oklahoma law. The court rejects this argument.

### VIII.   Preemption

Pharmacies briefly argue that the Nation's claims that rely on violations of the CSA are preempted under the doctrine of "obstacle preemption," because punishing violations of the CSA through a private cause of action, such as public nuisance, "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in creating the CSA, because it leads to conflicting methods of enforcement [Docket No. 147, at 15–16 (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)]. The court declines to find the Nation's claims preempted, noting that the MDL court rejected the same arguments, *see In re National Prescription Opiate Litigation*, Case No. 1:17-md-2804, 2019 WL 4178591, at *12 (Sept. 3, 2019) (citing *In re National Prescription Opiate Litigation*, Case No. 1:17-md-2804, 2018 WL 6628898 (Dec. 19, 2018) (adopting report and recommendation findings concerning obstacle preemption)), and also points out that the case Pharmacies primarily rely upon, *Arizona v. United States*, was a *field preemption* case, and the Supreme Court held that *any* attempt to regulate in the area of alien registration was preempted. 567 U.S. at 401.

### IX.   Negligence

Pharmacies assert that the Nation's negligence cause of action should be dismissed because they have no liability under the Oklahoma Products Liability Act, Okla. Stat. tit. 76 § 57.2(G) and they owed no duty of care to the Nation [Docket No. 147, at 28–32].

"The elements of the tort of negligence are 1) a duty of care owed by defendant to plaintiff, 2) defendant's breach of that duty, and 3) injury to plaintiff caused by defendant's breach of that duty." *Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007).

### a.   Innocent Seller

Pharmacies claim that Oklahoma law precludes holding them liable for any negligence arising from the distribution and dispensing of opioids because of its innocent seller provision, which states:

> G.  A product seller other than a manufacturer is liable to a claimant on the basis of negligence if the claimant establishes that:
>    1.  The product seller sold the product involved in such action;
>    2.  The product seller did not exercise reasonable care:
>        a.  in assembling, inspecting, or maintaining such product, or
>        b.  in passing on warnings or instructions from such product's manufacturer about the dangers and proper use of such product; and
>    3.  Such failure to exercise reasonable care was a proximate cause of the harm complained of by the claimant.

Okla. Stat. tit. 76 § 57.2(G); [Docket No. 147, at 31–32].

The court declines to find this statutory provision applicable to the Nation's claim because it applies only to products liability actions premised on defective products.  First, the court notes that Pharmacies do not cite a single case supporting the proposition that the innocent seller provision applies to matters unrelated to defective products.  Second, Section 57 as a whole is very clearly concerned with defective products and limiting liability arising from such claims—it is titled "Inherently Unsafe Product Liability Limitation."  *See* Okla. Stat. tit. 76 § 57.  Section 57.2 provides a variety of rebuttable presumptions concerning liability and any associated limitations.

*Id.* at § 57.2.  This is not a products liability claim premised on a defective product; it is a claim

that Pharmacies negligently failed to prevent the diversion of highly addictive opioid medications.

It is not primarily the product Pharmacies sold that has led to this lawsuit; it is Pharmacies' alleged

wrongful conduct in selling that product.

### b.  Duty of Care

Whether the defendant owed the plaintiff a duty of care is a question of law for the court

in a negligence action.  *Lowery*, 160 P.3d at 964.

> The most important consideration in establishing duty is foreseeability.  As a
> general rule, a defendant owes a duty of care to all persons who are foreseeably
> endangered by his conduct with respect to all risks which make the conduct
> unreasonably dangerous.  Foreseeability as an element of duty establishes a zone
> of risk, that is, whether the conduct creates a generalized and foreseeable risk of
> harming others.

*Trinity Baptist Church v. Brotherhood Mutual Insurance Services, LLC*, 341 P.3d 75, 84 (Okla.

2014) (internal citations and quotation marks omitted) (quoting *Brown v. State Farm Fire and

Casualty Co.*, 58 P.3d 217, 219 (Okla. Ct. App. 2002)).[9]  "[A] legal duty arises when a human

endeavor creates a generalized and foreseeable risk of harming others."  *Delbrel v. Doenges Bros.

Ford, Inc.*, 913 P.2d 1318, 1321 (Okla. 1996) (citing *McCain v. Florida Power Corp.*, 593 So.2d

500, 503 (Fla. 1992)).

The court concludes that the Nation has adequately alleged facts demonstrating Pharmacies

owed it a duty because it was foreseeable that negligently failing to prevent the diversion of

addictive opioids, including allegedly "oversupplying the market" with such opioids, would lead

---

[9] The court notes that *Trinity* abrogated the holding in *Brown*, which adopted a minority view that an independent insurance adjuster hired by an insurer owed a duty of care to the insured.  *Trinity* rejected that conclusion because "The special relationship between the insurer and insured, and the implied duty of good faith and fair dealing on the part of the insurer, represent a unique factual departure from the decisions of this Court relied upon by the Court of Civil Appeals in *Brown*. . . ."  341 P.3d at 86.

to abuse, addiction, and overdoses, and that Nation would pay the price.  On this point, the court

agrees with the MDL court's determination regarding foreseeability:

> When there is a flood of highly addictive drugs into a community it is foreseeable—
> to the point of being a foregone conclusion—that there will be a secondary, "black"
> market created for those drugs. It is also foreseeable that local governments will be
> responsible for combatting the creation of that market and mitigating its effects.

*In re National Prescription Opiate Litigation*, MDL 2804, Case No. 1:17-md-2804, 2018 WL

6628898, at *19 (N.D. Ohio Dec. 19, 2018).[10]

### X.    Unjust Enrichment

Pharmacies dispute whether the Nation has adequately pleaded its claim for unjust

enrichment.  Specifically, they contend that the Nation has not adequately alleged it enriched

Pharmacies because the Nation's expenditures did not put money into the hands of any Pharmacy

Defendant [Docket No. 147, at 32–33].  The Nation responds that it would be unjust for Pharmacies

to retain the benefit of the profits they derived through their conduct surrounding the distribution

and dispensing of opioids while the Nation must bear the costs to remedy the harms incurred by

that distribution and dispensing [Docket No. 159, at 51–54].

"Unjust enrichment is a condition which results from the failure of a party to make

restitution in circumstances where not to do so is inequitable, i.e., the party has money in its hands

that, in equity and good conscience, it should not be allowed to retain."  *Oklahoma Dept. of

Securities ex rel. Fought v. Blair*, 231 P.3d 645, 658 (Okla. 2010).  Unjust enrichment typically

consists of "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another."  *Id.*

The Oklahoma Supreme Court has held:

> [U]njust enrichment arises not only where an expenditure by one person adds to the
> property of another, but also where the expenditure saves the other from expense
> or loss. One is not unjustly enriched, however, by retaining benefits involuntarily

---

[10] The MDL court later analyzed this issue under Oklahoma law and found that this holding remained applicable.
*Muscogee Order*,  2019 WL 3737023, at *6.

> acquired which law and equity give him absolutely without any obligation on his
> part to make restitution.

*City of Tulsa v. Bank of Oklahoma, N.A.*, 280 P.3d 314, 319 (Okla. 2011) (quoting *McBride v. Bridges*, 215 P.2d 830, 832 (Okla. 1950)).  To recover for unjust enrichment, "there must be enrichment to another, coupled with a resulting injustice."  *Id.* (quoting *Teel v. Public Service Co. of Oklahoma*, 797 P.2d 391, 398 (Okla. 1985).

The court notes that an Oklahoma trial court rejected similar arguments asserted by opioid manufacturers seeking dismissal of an unjust enrichment claim in the case brought by the State of Oklahoma against those manufacturers.  *See Hunter v. Purdue Pharma L.P.*, Case No. CJ-2017-816, Defendants' Joint Motion to Dismiss for Failure to State a Claim (Okla. Dist. Ct. Sept. 22, 2017); *id.*, Order (Okla. Dist. Ct. Dec. 6, 2017).  The State of Oklahoma's Petition alleged facts in support of its unjust enrichment claim that relied on similar, though not identical, allegations.  *See id.*, Petition, at 30 (Okla. Dist. Ct. June 30, 2017); [Docket No. 136, at 78–79].  The court further notes that the MDL court rejected Pharmacies' position and adopted those the Nation has put forth, specifically that a plaintiff paying the costs of the "negative externalities" caused by a defendant's conduct is a form of enrichment because the defendant does not have to pay the costs of its own conduct.  *Muscogee Order*, 2019 WL 3737023, at *8–9; *Muscogee R&R*, 2019 WL 2468267, at *34–35.  The MDL court's decision was based on its own analysis of Oklahoma law, which it found provided a "broad view of unjust enrichment liability to vindicate a wide variety of equitable principles," to conclude that the Oklahoma Supreme Court would adopt this "negative externalities" theory of equitability.  *Muscogee Order*, 2019 WL 3737023, at *8–9.

The court agrees with the MDL court's analysis, and it believes this decision is supported by the principles of unjust enrichment law to which Oklahoma adheres.  Specifically, the principles that "[U]njust enrichment arises not only where an expenditure by one person adds to the property

of another, *but also where the expenditure saves the other from expense or loss*," *City of Tulsa*, 280 P.3d at 319 (emphasis added), and also that unjust enrichment occurs when a defendant "has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Fought*, 231 P.3d at 658.   Taking these into account, the court will allow the Nation's claim to move forward and permit it the opportunity to show, if necessary, that it is equitably entitled to restitution from Pharmacies.

### XI.   Civil Conspiracy

Pharmacies' opposition to the Nation's claim for civil conspiracy rests on its purported failure to allege an underlying intentional tort and the absence of an allegation concerning an illicit agreement [Docket No. 147, at 33–34].   The Nation responds that its claims for gross negligence and public nuisance satisfy the underlying tort requirement and that it has alleged an agreement insofar as an agreement may be inferred from the allegations it has set forth [Docket No. 159, at 54–56].

"To state a claim for civil conspiracy, Plaintiffs must allege:   (1) two or more persons; (2) an object to  be accomplished;  (3) a meeting of  the minds on  the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Allen v. IM Solutions, LLC*, 94 F. Supp. 3d 1216, 1233 (E.D. Okla. 2015).   Further, civil conspiracy is not actionable as an independent tort, but instead requires "the existence of an underlying tort or wrongful act committed by one or more of the conspirators in furtherance of the conspiracy." *Id.* Additionally, "[t]he agreement is a matter of inference from the facts and circumstances of the alleged conspirators. The question is whether the circumstances, considered as a whole, show that the parties united to accomplish the fraudulent scheme." *North Texas Production Credit*

18

*Association v. McCurtain County National Bank*, 222 F.3d 800, 815 (10th Cir. 2000) (quoting *Shadid v. Monsour*, 746 P.2d 685, 689 (Okla. Ct. App. 1987).

The court concludes that the Nation's claim for public nuisance satisfies the underlying tort requirement. Public nuisance, if committed intentionally, may constitute an intentional tort. *See* Restatement (Second) of Torts, §825(b)–(c) (noting that an invasion causing a nuisance may be intentional where the defendant "act[s] for the purpose of causing it or know[s] that it is resulting or is substantially certain to result from his conduct," and providing an illustration that one who initially does not recognize that his actions cause harm, but continues to perform those actions after learning of the harm, has created an intentional invasion); *see also Tyson Foods*, 258 F. Supp. 2d at 1301 (recognizing that public nuisance is an intentional tort when the conduct alleged is intentional in nature). The court therefore rejects the first of Pharmacies' arguments.

The court further rejects Pharmacies' contention that the Nation has not adequately alleged a meeting of the minds. Taking the allegations in the light most favorable to the Nation, the Nation has adequately alleged facts that, if true, may permit a factfinder to infer the existence of an agreement to accomplish an objective through unlawful means. As such, the court will not dismiss the Nation's civil conspiracy claim at this time.

## XII.    Incorporated Arguments

Pharmacies have sought to "incorporate by reference all applicable arguments set out in Distributor Defendants' Motion to Dismiss." [Docket No. 147, at 4 n.2]. The court rejects those arguments here for the reasons set out in its order addressing distributor Defendants' Motion to Dismiss. The court further discourages such incorporations of arguments in future briefings. By incorporating arguments in this manner, Pharmacies have effectively increased the length of their briefing beyond that granted by the court. If permitted, Defendants in this case could "double-

team" the Nation, splitting arguments between their filings, or raising alternative grounds in support of the same arguments, and then incorporating those arguments not raised in their own motions.

## CONCLUSION

Accordingly, Pharmacies' Motion to Dismiss [Docket No. 147] is hereby DENIED.

**IT IS SO ORDERED** this 29th day of March, 2021.

Ronald A. White
United States District Judge
Eastern District of Oklahoma