# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE CHEROKEE NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MCKESSON CORPORATION; | ) | Case No. 18-cv-56-RAW-SPS |
| CARDINAL HEALTH, INC.; | ) | |
| CARDINAL HEALTH 110, LLC; | ) | |
| AMERISOURCEBERGEN DRUG CORP.; | ) | |
| CVS PHARMACY, INC.; | ) | |
| OKLAHOMA CVS PHARMACY, L.L.C.; | ) | |
| WALGREEN CO.; | ) | |
| WAL-MART STORES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM CVS PHARMACY, INC. AND OKLAHOMA CVS PHARMACY, LLC AND REQUEST FOR A REMEDIAL ORDER

* * * * *

Cherokee Nation served document requests on CVS Pharmacy, Inc. and Oklahoma CVS Pharmacy, LLC (collectively "CVS") on August 28, 2020, and served interrogatories on November 11, 2020. Eight months later, CVS has not yet produced any custodial documents to Cherokee Nation in response to the discovery requests, and CVS has refused to provide even basic disclosures in response to interrogatories—even after the magistrate judge granted Plaintiff's motion to compel against CVS and other Defendants on March 10, 2021.

CVS did not provide a single page of discovery (non-custodial discovery) until April 30, 2021, when CVS produced certain data regarding CVS opioid sales. That means CVS **_waited until 10 days before the fact discovery "substantial completion date"_** under the Case Management Order to **_even begin_** producing any information whatsoever that Plaintiff requested eight months ago. Plaintiff has been conferring with CVS on these issues over several months but there is very little success. So far as it appears, CVS's objective is to not participate in discovery. For months CVS stated it would not even begin to produce documents until the "geographic scope" dispute was resolved—in other words, CVS would not even produce undisputedly relevant discovery relating to CVS opioid sales or employees within the **_undisputed geography_**. Given CVS's production on April 30, 2021, it appears CVS may be abandoning this position. To remedy these problems, and to ensure that CVS's conduct does not continue, this Court should grant Plaintiff's motion to compel on the discovery issues identified below, including ordering CVS to promptly produce custodial documents from 40 additional case-specific witnesses of Plaintiff's selection.

## **BACKGROUND**

1. **Plaintiff's claims against CVS and relevant topics for discovery.**

In exchange for the privilege of holding a license to sell and distribute opioids in Oklahoma, CVS accepted the legal responsibility not to allow or facilitate opioid diversion. *See, e.g.*, 21 C.F.R.

1306.04(a); 1306.06 (establishing pharmacy duties to ensure opioid prescriptions are valid and issued for a legitimate purpose). Plaintiff alleges in its complaint that CVS violated these duties as both a wholesaler and retailer of prescription opioids, which contributed to causing the opioid epidemic in Cherokee Nation. Both this Court and the MDL court have acknowledged these duties under Oklahoma law. Indeed, CVS has publicly acknowledged these duties too.[1] And CVS's promotional advertisements also boast about how CVS ensures "every prescription is filled accurately and safely" including by using advanced computer systems, conferring with doctors about patient prescriptions, performing "comprehensive checks" of patient backgrounds and so forth. *See* Am. Compl. ¶¶ 146-149.

Although CVS has not yet produced its internal documents relating to Oklahoma, even public information proves these claims false and that CVS has utterly failed in complying with its obligations. Oklahoma and Cherokee Nation have been an epicenter for CVS's misconduct. In 2013, the U.S. Attorney for the Western District of Oklahoma fined CVS $11 million relating to drug diversion, including filling invalid opioid prescriptions.[2] According to research into criminal dockets in the Eastern District of Oklahoma pertaining to the prosecution of an opioid diversion ring, another CVS store in Cherokee Nation was implicated for filling at least some of the approximately 28,000 fake opioid prescriptions filled between 2011 and 2013. In 2020, a CVS store in Cherokee Nation was the subject of a scathing complaint and fines by the Oklahoma State Board of Pharmacy for carelessness in filling prescriptions. The Board of Pharmacy's complaint

---

[1] *See* Am. Compl. ¶ 138 (citing CVS public statement that "the abuse of controlled substance pain medication is a nationwide epidemic that is exacting a devastating toll upon individuals, families and communities. *Pharmacists have a legal obligation under state and federal law to determine whether a controlled substance was issued for a legitimate purpose and to decline to fill prescriptions they have reason to believe were issued for a non-legitimate purpose.*").

[2] *See* DOJ Press Release, https://www.justice.gov/usao-wdok/pr/cvs-pay-11-million-settle-civil-penalty-claims-involving-violations-controlled.

referenced letters received from multiple local CVS employees who reported, for example, that "the way CVS is currently conducting business is **unsafe for our customers** and unfair to our employees." Another letter from a different CVS employee stated that the "pursuit of profits within CVS pharmacy has reached a critical point, where the **lives and health of their patients are being put in danger regularly**."[3]

These events are likely just the tip of the iceberg. CVS has improperly avoided its discovery obligations to prevent Plaintiff from learning about these kinds of things, and likely many others, knowing there is highly relevant information and documents in possession of its employees that CVS has not turned over. That CVS waited until April 30, 2021 to produce any data whatsoever is contemptable and should not be allowed. CVS must be required to produce custodial files and records relating to due diligence that CVS performed on opioid prescriptions at its pharmacies.

## 2.  Discovery background.

On August 28, 2020 Plaintiff served a total of 23 requests for production ("RFPs") on CVS.[4] CVS responded to the RFPs on September 16, 2020, but did not produce any documents.[5] Plaintiff served a total of 18 interrogatories on CVS on November 11, 2020, which were also broken into two separate sets, and CVS responded on December 11, 2020.[6]

---

[3] *In the Matter of the Complaint Against CVS/Pharmacy*, No. 2324 (License No. 2-5549) 12902 East 96th Street, N. Owasso, OK 74055, Case No. 1568 (Feb. 12, 2020, Okla. Board of Pharmacy).

[4] Plaintiff's RFPs were broken into two sets. There were 9 requests in Plaintiff's RFPs to CVS, Walgreens, and Walmart ("RFPs to Pharmacies") and there were 12 requests in Plaintiff's RFPs to All Defendants.

[5] *See* CVS Responses to RFPs to Pharmacies (Exhibit A) and CVS Responses to RFPs to All Defendants (Exhibit B).

[6] *See* CVS Responses to Interrogatories to CVS, Walgreen, and Walmart ("Interrogatories to Pharmacies") (Exhibit C), and CVS Responses to Interrogatories to All Defendants (Exhibit D).

Most of Plaintiff's discovery requests are targeted at learning the essential facts relevant to the allegations against CVS in the complaint, such as:

- What did CVS know about opioid diversion, and what did CVS do about it?

- What "due diligence" did CVS pharmacists perform at the pharmacy counters at stores around Cherokee Nation when they received a suspicious opioid order?

- In recent years as the opioid epidemic raged on in Oklahoma—and as opioid sales at CVS locations in Cherokee Nation frequently increased quarter-over-quarter by rates of 25% or 40%[7]—what actions did CVS undertake to audit its stores and investigate the potential causes of these increases, such as "pill mills" or inadequate compliance policies?

- What were CVS's relevant employees emailing about these kinds of topics?

These areas are unquestionably ripe for discovery. But CVS has objected at almost every turn and has not produced documents. CVS refuses to make even routine disclosures about specific "persons with knowledge" and employees with compliance responsibilities relating to opioids.[8]

Because many of CVS's responses and objections to RFPs and interrogatories were deficient and improper, Plaintiff sent CVS a detailed deficiency letter on December 21, 2020 (Exhibit E), asking for CVS's first availability to meet and confer. CVS never responded. After a month, Plaintiff reminded CVS it had not responded to the letter. Ten days later, CVS proposed scheduling a telephone call. The parties conferred by telephone on February 11, 2021 for over an hour. CVS agreed to follow up on various topics.

For the next month, Plaintiff heard nothing back from CVS. As CVS had promised, it also withheld all written discovery based on CVS's stated position that it would not collect any documents until its objections were resolved. On March 10, 2021, after the Court overruled CVS's

---

[7] See Am. Complaint 158-164.

[8] After prodding CVS for months, CVS eventually emailed plaintiff with some information about the names and job dates of some "field personnel" and pharmacists, though the information is plainly incomplete.

objections to geography, Plaintiff asked for CVS to participate in another conference call to discuss the deficiency letter. Plaintiff presumed (incorrectly it turns out) that since CVS's objection was overruled, CVS would finally produce documents. The parties scheduled a call. CVS cancelled it. Plaintiff sent two emails with times proposing a new call. CVS never responded.

Thus, on March 24, 2021 (which was two weeks after the Magistrate Judge overruled CVS's geography objection), Plaintiff emailed CVS listing outstanding discovery issues and asked for CVS to respond in writing. Plaintiff wrote:

> Plaintiff served its RFPs in August. CVS took the position it would not collect documents until the geography was settled. I assume you are not objecting to Judge Shreder's ruling. There are 3.5 months remaining in discovery. Plaintiff asks that CVS move extremely quickly in collecting documents to avoid further prejudice.

*See* 3/24/21 Email from Ulrich to Pardoe (Exhibit F). Anticipating that CVS was finally ready to collect documents, Plaintiff also provided comments on the search terms CVS previously used to collect documents in the MDL opioid cases. *See* 3/25/21 Email from Ulrich to Pardoe (Exhibit G). The parties scheduled a call to confer again on April 2, 2021 "with the understanding that at this point plaintiff really needs CVS's answers and confirmations about its positions." Several hours after the telephone call on April 2, 2021, Plaintiff sent CVS an email accurately confirming CVS's stated positions from the telephone call, and also advising that Plaintiff would be filing a motion to compel. *See* 4/2/21 Email from Ulrich to Pardoe (Exhibit H).[9]

## **ARGUMENT**

1. **Motion to Compel Topic #1: Disclosure of persons with knowledge/discoverable information and CVS's custodial collection.**

    a.   Non-disclosure

---

[9] By email on April 9, 2021 (*see* Exhibit I), CVS added some gloss to its positions from the telephone call and stated that CVS was still evaluating its positions. Now weeks later, however, CVS still hasn't produce documents or advised Plaintiff it was changing any positions.

It has now been eight months since CVS has received Plaintiff's document requests, and nearly six months since CVS received Plaintiff's interrogatories. CVS has not only withheld its document production, it has also failed to disclose important information about persons with knowledge. CVS's failure in this regard has also prevented the parties from having a meaningful discussion about the custodial files CVS must collect and review in response to Plaintiff's RFPs.

Two of Plaintiff's interrogatories requested this disclosure. In Interrogatory 4 to All Defendants, Plaintiff asked CVS to:

> Identify the name of each of Your departments and divisions, and the name and title of each person responsible for such departments or divisions, by year, that had compliance responsibilities and/or was responsible for conducting due diligence on Opioid or Cocktail Drug orders shipped to the Relevant Area from 1996 to the present.

Apart from CVS's boilerplate objections, CVS answered that "CVS incorporates by reference its response to Request No. 12 of Plaintiff's First Set of Requests for Production of Documents to All Defendants." In turn, CVS's response to RFP 12 merely states: "the CVS Opiate MDL Productions contain organizational charts for CVS personnel engaged in CVS's corporate-wide suspicious order monitoring systems." As Plaintiff has explained to CVS in writing and on the telephone multiple times, this interrogatory response is deficient and incomplete.

CVS also failed to disclose relevant individuals in response to Plaintiff's Interrogatory 5 to All Defendants:

> Identify each person, other than a person intended to be called as an expert witness at trial, who You believe likely has discoverable information relating to the claims or defenses in this case (including Your employees with knowledge of the distribution and/or dispensing of prescription opioids), and state in detail the subject matter and timeframe of the information possessed by that person.

CVS mostly responded by naming broad "categories" of people by job title, like: "CVS field personnel" or "direct or indirect supervisors" of CVS pharmacists, and "CVS corporate personnel responsible for licensure or registration with DEA" and sometimes mentioning some names

(without job titles). *See* Exhibit D, p. 12-13. CVS's response does not disclose any of the "subject matter and timeframe" of the information possessed by the witnesses. This response is baffling given that CVS served essentially the same interrogatory on Plaintiff (and Plaintiff responded), *i.e.*, asking Plaintiff to identify "every Person likely to have discoverable information" and asking for the "subject matter of the information possess by that Person."[10]

  b.  Refusal to collect custodial documents

    Notably, in responding to the interrogatory above, CVS claimed that its employees with relevant discoverable information included "CVS pharmacists" and their "direct or indirect supervisors" as well as "CVS field personnel with direct or indirect responsibility for the CVS Cherokee Nation Pharmacies." But CVS has steadfastly refused to collect documents from more than a tiny number of them.

    In brief summary, the structure of CVS's pharmacy "field" leadership is fundamentally similar to that of all chain pharmacies. Each store has a store manager who has operational control over the whole store. There are also "pharmacists in charge" at each location. There are also pharmacy supervisors or District Leaders who have a higher level of responsibility. And then above the District Leader are the "Divisional Professional Practice Leaders." These positions comprise the core "field positions" and they have important compliance functions and likely have relevant documents, as CVS concedes in its interrogatory responses. There is also relatively common turnover for some of these positions. Between all the people who served for a relevant period of years during the relevant timeframe in CVS stores located in the relevant area, there could be in excess of a hundred employees. CVS may still possess many/most of their files and

---

[10] On April 9, 2021, CVS belatedly agreed to disclose some Oklahoma area employees going back a few years, though it is still incomplete. *See* Exhibit I (Email from Pardoe to Ulrich on 4/9/21).

communications—which Plaintiff understands exist mostly on centralized servers and can be collected electronically.

Incredibly, however, CVS has offered to collect documents from only **two people** "to be determined" who held these job functions. To be clear, that means just two employees in CVS pharmacy field leadership positions—which includes all pharmacists in charge, store managers, pharmacy supervisors, district leaders, and divisional leaders, etc.—across all the entire timeframe and the entire relevant geography, which includes about 25 pharmacy locations in Tulsa County alone.[11] CVS also offered to collect documents from only **two employees** who worked at the primary distribution center that distributed opioids to CVS pharmacies across the whole timeframe. This is unacceptable and verges on contemptable to force Plaintiff to wait eight months for documents when CVS is not even agreeing to collect documents from more than **four new witnesses**. Plaintiff produced documents to CVS from 70+ custodians in half that time.

As evidenced by the Department of Justice's recent civil complaint against Walmart for opioid diversion in Oklahoma and elsewhere, an essential aspect of the litigation against chain pharmacies is discovering information from their local employees who had their boots on the ground, and who were directly communicating about what was going on, what the companies knew (or could have known) and what they could have done. It would prejudice Plaintiff's case to be denied access to this essential discovery.

In addition to the four case-specific witnesses CVS disclosed, CVS says it plans to see if any of the approximately 32 MDL custodians it disclosed (whose documents have already been

---

[11] This estimate is based on the "store locator" feature on CVS's website. *See* https://www.cvs.com/store-locator/store-locator-landing.jsp?_requestid=849872. This is Plaintiff's only resource for this information because, as mentioned previously, CVS has refused to disclose more than a five of its relevant store locations, and has refused to disclose the DEA registration numbers for more than three of the approximately 25 stores in Tulsa County.

collected/produced in relation to litigation in Ohio) have additional documents related specifically to this case or the stores in Oklahoma. CVS has provided no information about which of these witnesses have case specific information. Some of them likely do; but CVS's "collection" would be ineffectual unless CVS is ordered to run all the search terms as requested by Plaintiff across their documents—without imposing arbitrary temporal restrictions that contradict this Court's prior discovery rulings. For relevant witnesses, CVS should also be required to look for responsive documents across the whole file, not just parts of it.

In sum, CVS should be ordered to: (1) fully respond to Interrogatories 4 and 5; (2) identify which CVS employees/former employees possess ESI and disclose this information by witnesses; and (3) Plaintiff should be allowed to identify up to 40 of these custodians whose responsive, non-privileged files CVS will promptly produce, in addition to running case specific search terms across the MDL witnesses that CVS deemed potentially relevant to this case. Plaintiff also requests this Court to order that when CVS collects a custodian's files, CVS collects the whole file including personnel files, and runs searches across the *whole* file for responsive documents. If their documents are responsive they should not be withheld based on self-serving, undisclosed determinations by CVS that otherwise relevant documents allegedly pertain to an "unrelated" job function or unrelated time. Plaintiff produced responsive documents from a witnesses' whole file (as have other Defendants) and CVS should do the same.[12]

Finally, CVS should not be heard to claim "undue burden." It is the eighth largest corporation in America.  There is no undue burden for CVS to collect and review documents from

---

[12] For example, CVS contends that the discovery period for some of its witnesses should be limited based on the timeframe when CVS was selling opioids wholesale, which was roughly 2009 to 2014. This is a fallacy. If a witnesses has responsive documents from outside of that time range, they must be produced. If there are no such documents, as CVS claims, then CVS has nothing to worry about because when it runs the search terms, it will receive zero "hits."

approximately the same number of custodians as Plaintiff did (which Plaintiff timely completed in accordance with the Case Management Order, producing over 700,000 pages of documents from 70+ witnesses).

**2.     Motion to Compel Topic #2: Search terms.**

Plaintiff's motion concerning CVS's search terms is simple and straight forward: CVS should run the same search terms CVS ran to collect its documents in the opioid MDL, with basically four modest modifications, which are discussed in more detail in the email and attachments at Exhibit G.

All parties in this litigation are using search terms to identify and collect responsive custodial documents. When CVS and all other Defendants asked Plaintiff to run a set of search terms (far broader than what Plaintiff is asking of CVS), Plaintiff agreed.[13]

The search terms used in opioid litigation primarily fall into two buckets: (1) **"stand alone"** terms; and (2) **"search strings,"** i.e., more complex terms that use "and" connectors and typically include a "BLOCK" term as well. The two buckets are illustrated below with examples from the list of search terms Defendants demanded Cherokee Nation run across its custodian's ESI. **"Stand alone"** terms are exemplified by the examples below (except for 46):

| | |
|---|---|
| 41 | "Employee Assistance Program" OR EAP |
| 42 | "Cultural Connection" |
| 43 | DARE |
| 44 | "Addiction Severity Index" OR "ASI" |
| 45 | "Tribal Opioid Response" |
| 46 | ("re-entry program*" or "re-entry service*" or "reentry program*" or "reentry service*") and (drug* or substance* or alcohol* OR addict*) |
| 47 | "Cherokee Nation Opioid Task Force" |
| 48 | Omnicell or Pyxis or AcuDose or MedSelect |

---

[13] If the Court believes CVS should run the same search terms that Defendants asked Plaintiff to run, that may also be an appropriate solution.

In other words, Cherokee Nation collected all documents that included the word "DARE" (search terms are not case sensitive); and all documents that included the phrase "addiction severity index," all documents that included the acronym "ASI," etc.

By contrast, **"search strings"** typically contain an "and" connector, and usually also contain a "BLOCK" term, which is illustrated by the ones below:

| | |
|---|---|
| 53 | ("red flag" OR "red flags" OR "red flagged" OR alert*)<br><br>AND<br><br>**[DRUG BLOCK]** |
| 54 | (("high dosage" OR suspicious OR illegitim* OR forg* OR fake OR fraud* OR false)<br>w/100 (prescription* OR script* OR Rx))<br><br>AND<br><br>**[DRUG BLOCK]** |
| 55 | (reject* w/5 (prescription* OR script* OR Rx))<br><br>AND<br><br>**[DRUG BLOCK]** |

The "BLOCK" term is then separately defined as a long list of stand-alone terms, such as the "DRUG BLOCK" Defendants proposed for Cherokee Nation:

**SEARCH TERM BLOCKS**

**[DRUG BLOCK]:**
(opio* OR opia* OR oxy* OR hydro* OR fent* OR codone* OR morphone* OR Dilaud* OR Delaud* OR Hysing* OR Hising* OR Targin* OR hydromorph* OR Kadean OR durages* OR nucinta OR nusynta OR tapent* OR opana* OR perco* OR perca* OR subsis OR exalg* OR roxico* OR roxeco* OR Xartem* OR Xartim* OR (control* w/25 (med OR meds OR medication OR medications OR substance OR substances OR drug OR drugs OR prescrip* OR eprescrip* OR rx OR rxs OR erx OR erxs OR scrip OR scrips OR script OR scripts OR escrip OR escrips OR escript OR escripts)) OR "c ii" OR cii OR ciis OR c2 OR c2s OR "schedule ii" OR scheduleii OR scheduleiis OR schedule2 OR schedule2s OR "class ii" OR classii OR classiis OR class2 OR class2s OR "c iis" OR "schedule iis" OR "class iis" OR "c 2" OR "schedule 2" OR "class 2" OR "c 2s" OR "schedule 2s" OR "class 2s" OR CS OR narcotic*)

Plaintiff proposes CVS run the MDL search terms with the four following modest modifications. ***First***, some of the geographic-specific terms from the MDL case relating to "Ohio" should be modified to Oklahoma. For example, "Ohio Board of Pharmacy" would become

"Oklahoma Board of Pharmacy." This mostly pertains to geographic terms such as county names and store numbers, and should not be controversial.

*Second*, Plaintiff asked CVS to modify the DRUG BLOCK in small respects to more closely mirror the drug block that CVS asked Plaintiff to run. The modification proposed by Cherokee Nation is seen highlighted below.[14]

[~~CT1B~~ DRUG BLOCK]: HCP *OR* hcp *OR* hydrocodone *OR* hydro* *OR* opioid* *OR* opiate* *OR* Vicodin *OR* Lortab *OR* Lorcet *OR* Maxidone *OR* Norco *OR* Zydone *OR* Vicoprofen *OR* Ibudone *OR* Reprexain *OR* Alor *OR* Azdone *OR* Damason* *OR* Lortab* *OR* Panasal *OR* Hysing* *OR* Zohydro *OR* Hycet *OR* Zamicet *OR* Xodol *OR* Verdrocet *OR* Xylon *OR* fentanyl *OR* Sublimaze *OR* Duragesic *OR* Subsys *OR* Fentora *OR* Actiq *OR* hydromorphone *OR* Dilaudid *OR* Exalgo *OR* meperidine *OR* Demerol *OR* methadone *OR* Dolophine *OR* Methadose *OR* *morphine *OR* Arymo *OR* Avinza *OR* Kadian *OR* Morphabond *OR* "MS Contin" *OR* Oramorph *OR* Roxanol *OR* oxycodone *OR* oxy* *OR* Dazidox *OR* Endocodone *OR* *ETH-Oxydose* *OR* Oxaydo *OR* Oxecta or Oxycontin *OR* Oxyfast *OR* OxylR *OR* Percolone *OR* Roxicodone *OR* Xtampza *OR* Targiniq *OR* Xartemis *OR* Combunox *OR* Endocet *OR* Endodan *OR* Lynox *OR* Magnacet *OR* Narvox *OR* Oxycet *OR* Percocet *OR* Percodan *OR* Perloxx *OR* Primlev *OR* Roxicet *OR* Roxiprin *OR* Tatxadone *OR* Tylox *OR* Xolox *OR* oxymorphone *OR* Opana *OR* Numorphan *OR* tapentadol *OR* Nucynta *OR* C2* *OR* CII* *OR* "schedule II*" *OR* "schedule 2*" *OR* "c ii*" *OR* "class ii*" *OR* "c 2*" *OR* OR "class 2*" *OR* CS *OR* (control* w/25 (med *OR* meds *OR* medication* *OR* substance* *OR* drug* *OR* prescrip* *OR* rx *OR* rxs *OR* erx* *OR* erxs *OR* scrip* *OR* escrip*)) OR *morphine *OR* *contin *OR* cocktail* *OR* trinity *OR* alprazolam *OR* chlordiazepoxide *OR* clobazam *OR* clonazepam *OR* clorazepate *OR* diazepam *OR* estazolam *OR* flurazepam *OR* lorazepam *OR* midazolam *OR* oxazepam *OR* quazepam *OR* temazepam *OR* triazolam *OR* Carisoprodol *OR* Cyclobenzaprine *OR* orphenadrine *OR* triple *OR* "M's" *OR* blues *OR* narcotic*

*Third*, Plaintiff asked CVS to add the small number of stand-alone terms below:

"Opioid epidemic"

"Cherokee Nation"

Opioid* OR opiate* /100 ("American Indian*" *OR* "Native American" *OR* "Indian Reservation" *OR* "Tribal Area"

"Holiday CVS" *OR* "Holiday C.V.S." *OR* "Medicine Shoppe"

These terms are reasonable, narrowly-tailored, and highly relevant. If a *relevant* CVS employee whose job function *relates to prescription opioids* is commenting on the "opioid epidemic"—and

---

[14] There are several versions of the "DRUG BLOCK" in the CVS search terms, since CVS used several different lists in the MDL for different purposes. In substance, all the "DRUG BLOCK" terms should reflect these additions.

the document has not otherwise been produced—it is absolutely necessary for CVS to review the document and determine if it is responsive to Plaintiff's document requests. It makes no sense for CVS to prevent Plaintiff from seeing these highly relevant documents that Plaintiff specifically requested. *See* Exhibit B, RFPs 8-10.

Likewise, the search term "Cherokee Nation" is relevant. *See id*. Notably, Plaintiff used the Defendants' organization/company names as search terms for Cherokee Nation's document—including the names "Walgreens" and "CVS"—which are common words. Likewise, if relevant CVS witnesses are discussing opioids in relation to Native Americans, those documents are relevant in this tribal bellwether case (and they are expressly requested in Plaintiff's RFP).

The term "Holiday CVS" pertains to a DEA legal action against CVS in 2012 for failing to prevent opioid diversion. *See Holiday CVS, L.L.C. v. Holder*, 839 F. Supp. 2d 145, 151 (D.D.C.) (and the term "Medicine Shoppe" pertains to a similar DEA action). After the DEA action, CVS was required to improve its opioid compliance programs. CVS documents using the term "Holiday CVS" that are in the custodial possession of relevant witnesses almost certainly pertain to the duties and corresponding responsibilities of pharmacists, and not (as CVS disingenuously claims) the CVS subsidiary Holiday CVS LLC.[15]

***Fourth***, Cherokee Nation asked CVS to run approximately 11 of the search strings that Defendants asked Cherokee Nation to run. These are identified at Exhibit G (on the first attachment after the email) highlighted in blue on each search term number. They mostly pertained to the

---

[15] Specifically, CVS contends that using "Holiday CVS" as a search term might result in "false hits" because it is also the name of an actual CVS subsidiary. Even if that is theoretically possible, it is beside the point. When a party uses search terms, there will oftentimes be at least some "false hits" and that is part of the discovery process. Defendants insisted Cherokee Nation run the stand-alone word "dare" across the documents from 70+ custodians—even though most documents are false hits because they are unrelated to the "DARE program," i.e., the acronym for "Drug Abuse Resistance Education."

responsibility of pharmacists with respect to opioids and related issues. If CVS deemed these terms sufficiently important for Cherokee Nation to run them—even though Cherokee Nation dispenses less than 0.7% of the opioids in the 14 Counties of Northeastern Oklahoma—then the terms are equally important for CVS to run. It is an untenable double standard for Defendants to ask Plaintiff to run terms that Defendants refuse to run themselves.

3.      **Motion to Compel Topic #3: If CVS intends to rely on documents CVS produced in other litigations, CVS must identify them by bates number.**

In multiple instances CVS purported to respond to Plaintiff's RFPs by generically referring to documents CVS claims it produced in other litigations. For example, in Plaintiff's RFP 12 to All Defendants, Plaintiff requested corporate "organizational charts" for relevant departments.[16] In response, CVS asserted that "the CVS Opiate MDL Productions contain organizational charts for CVS personnel engaged in CVS's corporate-wide suspicious order monitoring systems."

If the responsive documents *have* been produced, as CVS claims, CVS must identify them. Plaintiff has repeatedly asked CVS to do so. *See* Plaintiff's 12/21/20 Deficiency Letter ("[i]f all responsive documents have been previously produced, please specify all the Bates numbers."). For several other RFPs, CVS identified the relevant documents by bates number, and this should be a uniform rule across all discovery responses. If a Defendant believes previously-produced documents are responsive to an RFP or otherwise relevant, they should be identified. Otherwise Plaintiff is faced with an insurmountable burden to review unresponsive/irrelevant documents

---

[16] "**REQUEST 12:** Please produce all organizational charts for all employees with relevant knowledge of the claims asserted in Plaintiff's complaint or Your defenses. Please include work charts for all of Your employees participating in Your Suspicious Order Monitoring System and Your due diligence review of Opioid orders from pharmacies located in The Relevant Area from 1996 to present."

from dozens of other litigations trying to find the responsive documents to this case. This is tantamount to further non-production and shows a disregard for its basic obligations in this case.

4.      **Motion to Compel Topic #4: CVS improperly answered interrogatories by referring to documents under Rule 33(d).**

CVS responded to approximately half of Plaintiff's 18 interrogatories by referencing Rule 33(d) and claiming that Plaintiff could derive responsive information from reviewing unspecified documents that CVS has never produced. This is improper. Rule 33(d) is inapplicable for several reasons. ***First***, CVS has never produced documents. CVS answered the interrogatories in December 2020 and the documents still are not produced, rendering CVS's answers useless throughout almost the entire period of fact discovery.

***Second***, even if CVS has actually produced the documents, CVS's interrogatory responses would still be deficient. Under rule 33(d), "[a] party may refer to records, as opposed to providing a narrative, if the records are clearly identified." *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518–19, 2009 WL 2424448 (D. Colo. 2009) (quoting *Continental Ins. Co. v. Chase Manhattan Mortgage,* 59 Fed. Appx. 830, 837 (7th Cir. 2003)). A general reference to unspecified responsive documents produced in response to other discovery requests is not sufficient. *See Pardick v. Barrow,* No. 07–cv–02056–WYD–MEH, 2008 WL 2902623, at *2 (D. Colo. July 24, 2008); *see also Haughton v. D.C.*, 161 F. Supp. 3d 100, 102, 2014 WL 11397863 (D.D.C. 2014) (upholding magistrate's ruling that defendant's interrogatory responses must direct plaintiff to a narrow page range where the responsive information can be found); *Pulsecard, Inc. v. Discover Card Servs.,* No. 94–2304, 1996 WL 397567, at * 8 (D. Kan. July 22, 1996) (holding that the response must identify the specific responsive documents).

CVS has violated this clear rule. This is illustrated by CVS's answer to Plaintiff's Interrogatory 3 which is a straight-forward interrogatory that pertains specifically to CVS's knowledge of opioid diversion at relevant pharmacy locations:

> **INTERROGATORY NO. 3:** Identify each pharmacy store visit or inspection performed by You (or by any third party of which You are aware) related to potential diversion, suspicious opioid orders, dispensing of opioids, or any other potential problems at the pharmacy that raised concerns about the pharmacy's practices relating to controlled substances, and state who conducted the visit and their findings. Identify all Documents by Bates ranges pertaining to each pharmacy store.

In sum, Plaintiff is asking CVS to identify when and who inspected stores relating to opioid diversion, and to state the findings.

In response, however, CVS did not provide the requested information; CVS instead made reference to two vague categories of documents (which CVS never produced). Specifically, after asserting boilerplate objections, CVS answered:

> [P]ursuant to Rule 33(d) of the Federal Rules, CVS will produce, to the extent they can be found after a reasonable search, non-privileged *documents related to the review of Opioid orders that the CVS Cherokee Nation Distribution Center received from the CVS Cherokee Nation Pharmacies*, including any such documents reflecting visits made to the CVS Cherokee Nation Pharmacies. CVS also will produce, to the extent they can be found after a reasonable search, non-privileged *documents reflecting the operation of its controlled substances dispensing program* for the CVS Cherokee Nation Pharmacies and non-privileged documents reflecting the operation of its regulatory focus program with respect to the CVS Cherokee Nation Pharmacies' dispensing of Opioids.

CVS's answer clearly does not meet the substance of Plaintiff's interrogatory or the requirements of Rule 33(d).

***Third***, the burden is not equal between Plaintiff and CVS to find the responsive information from the documents. In the example above, the Plaintiff requested information about store inspections, and CVS responded with seemingly unrelated categories of "documents related to the review of Opioid orders" and "documents reflecting the operation of [CVS's] controlled

substances dispensing programs." For other interrogatories, the burden disparity is even greater. Plaintiff would be forced to navigate through a byzantine maze of CVS's nebulous discovery responses to even arrive at the set of documents from which the interrogatory answer could theoretically be ascertained. For example, in Interrogatory 5 to Pharmacy Defendants, Plaintiff asked this question about people that CVS *suspected or knew* were engaged in opioid diversion around Cherokee Nation:

> INTERROGATORY 5: Identify each prescriber, pharmacy, or pharmacy employee in the Relevant Area who You suspect or know was engaged in any misconduct relating to prescribing or dispensing of prescription Opioids or any Cocktail Drugs during the Relevant Period. After each entry, please produce (and identify Bates range) any documents related to such misconduct or suspected misconduct and your investigations of same (the documents should be sufficient to establish, at a minimum, the circumstances of the misconduct, how and when You discovered it, who was involved, what happened, whether you took any action such as changing your business practices).

This should not be a difficult interrogatory to answer. If CVS suspected or knew someone was engaged in opioid diversion in the relevant area, CVS should just say so and provide the information Plaintiff requested; if CVS is *not* aware of any such facts, it can say so. Instead, CVS responded that "pursuant to Rule 33(d) of the Federal Rules, CVS incorporates by reference its responses to Request Nos. 4 and 8" of Plaintiff's First RFPs. This, in turn, requires Plaintiff to look at CVS's responses to RFP 4 and RFP 8, which are themselves convoluted in the extreme and do not provide the requested information (and no documents were produced). Taken together, Plaintiff asked CVS to identify people CVS suspected of opioid diversion (if any), and CVS answered by referring to broad categories of documents that CVS never produced and which have no apparent connection with the question presented in the interrogatory.

## **CONCLUSION**

CVS has been dilatory in discovery. The Plaintiff's requests in this motion are all meritorious and deserved to be granted. CVS should be ordered to produce its discovery promptly.

17

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Counsel for movant has met and conferred in good faith with opposing counsel by telephone on February 11, 2021 and April 2, 2021 and by email or letters on multiple occasions in December 2020, and in March and April 2021 (many of which are attached hereto). The conferences were by telephone and in writing by letters and email, while counsel were located in different states. After all these conferences, the parties have been unable to reach an accord.

Dated: May 1, 2021.

Respectfully Submitted,

*/s/ Tyler Ulrich*
Tyler Ulrich (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
tulrich@bsfllp.com
Tel: (305) 539-8400
Fax: (305) 539-1307

William S. Ohlemeyer (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
wohlemeyer@bsfllp.com
Tel: (914) 749-8200
Fax: (914) 749-8300

Michael Burrage; OK #1350
WHITTEN BURRAGE
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
Tel: (405) 516-7800
Fax: (405) 516-7859

Richard W. Fields (*pro hac vice*)
FIELDS PLLC
1700 K Street, NW, Suite 810
Washington, DC 20006
fields@fieldslawpllc.com
Tel: (917) 297-3610

Attorney General Sara Hill
Assistant Attorney General Chrissi Nimmo
Assistant Attorneys General John Young
THE CHEROKEE NATION
P.O. Box 948
Tahlequah, OK 74464
chrissi-nimmo@cherokee.org
john-young@cherokee.org
Tel: (918) 453-5000
Fax: (918) 458-5099

***Attorneys for Plaintiff
Cherokee Nation***

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2021, a true and correct copy of the foregoing document was served on counsel of record for defendants in this action via e-mail.

*/s/ Tyler Ulrich*_____
Tyler Ulrich
