# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEREOKEE NATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 18-cv-56-RAW-SPS |
| MCKESSON CORPORATION; ) | |
| CARDINAL HEALTH, INC.; ) | |
| CARDINAL HEALTH 110, LLC; ) | |
| AMERISOURCEBERGEN DRUG CORP.; ) | |
| CVS PHARMACY, INC.; ) | |
| OKLAHOMA CVS PHARMACY, L.L.C.; ) | |
| WALGREEN CO.; ) | |
| WAL-MART STORES, INC. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO CERTIFY ORDERS FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)**

**BACKGROUND**

Cherokee Nation filed its Amended Complaint on April 10, 2020 [Docket 136], asserting claims under Oklahoma law for public nuisance, negligence/gross negligence, unjust enrichment, and civil conspiracy. Plaintiff has never asserted any claim arising under federal law.[1] Nor has Plaintiff sought to "enforce" the Controlled Substances Act, as Defendants mistakenly suggest.

Defendants filed separate motions to dismiss on May 11, 2020 [Docket Nos. 146, 147], in which they argued (among other things) they did not have certain duties under the Federal CSA. Consistent with every federal court to consider these issues in opioid litigation, however, this Court rejected these arguments and denied Defendants' motions to dismiss on March 29, 2021 [Docket No. 288 ("Distributor Order") and Docket No. 289 ("Pharmacy Order")]. Specifically, relying on rulings from the MDL court and the D.C. Circuit in *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, 861 F.3d 206, 212–13 (D.C. Cir. 2017), the Court found that "there is not only a duty to report suspicious orders once detected, but also a duty to either not fulfill those orders or to investigate them to determine that they are not likely to be diverted to illegal channels." Distributor Order, 10. Likewise, consistent with other federal courts and administrative decisions, the Court disagreed with Pharmacy Defendants' argument that "the CSA's dispensing duties apply only to individual pharmacists, not their corporate employers." Pharmacy Order at 12. The Court added that whether "red flags" existed and whether pharmacies were filling illegitimate prescriptions "is a fact question the court does not explore at this time." *Id.*

Defendants now ask the Court to certify three questions for appeal. ***First***, all six Defendants ask the Court to certify the question of whether there is a "no ship" duty under the Federal Controlled Substances Act ("CSA"). In substance, they argue the CSA does not prevent them from knowingly selling and shipping unusually large and suspicious amounts of opioids to their customers, even when the orders are *known* to be suspicious. They make that argument even though they concede that for the last 15 years they have clearly understood that the CSA does, in

---

[1] No Defendant has ever claimed Plaintiff's complaint asserts a claim under federal law. Subject matter jurisdiction in this case is not based on "federal question" jurisdiction under 28 U.S.C. § 1331. Rather, McKesson removed the case to federal court by invoking its alleged status as a "federal officer" under 28 U.S.C. § 1442, claiming that McKesson's alleged misconduct was done at the behest of the Department of Veterans Affairs. This Court flatly rejected that argument in a different opioid litigation and remanded the case. That ruling is currently on appeal.

fact, prohibit shipments in that scenario. Not surprisingly, the Court rejected Defendants' argument much like every other federal court to consider the issue.

***Second***, Pharmacy Defendants (who were both opioid distributors and dispensers in Oklahoma during the relevant years) ask the Court to certify the question of whether they had any "corporate level" duties under the CSA to detect or prevent opioid diversion from their pharmacies. They concede the CSA imposes such duties at the pharmacy level, but they contend the corporations *themselves* are not bound by the CSA requirements—even if the corporations are aware of systematic failures in their pharmacy chain.

***Third***, Pharmacy Defendants ask the Court to "certify" a ruling the Court did not make, that the CSA affords Plaintiff a private right of action to enforce federal regulations.[2]

## LEGAL STANDARD

"Interlocutory appeals have long been disfavored in the law, and properly so." *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1189 (10th Cir. 2006). Nevertheless, under 28 U.S.C. § 1292(b), a district court may certify an interlocutory order for appeal if the order "involves a controlling question of law about which there is substantial ground for disagreement" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1708 (2017) (quoting 28 U.S.C. § 1292(b)). "A motion for certification must be granted sparingly, and the movant bears the heavy burden of demonstrating that a case is an exceptional one in which immediate appeal is warranted." *In re Semgroup Energy Partners*, 729 F.Supp.2d 1276, 1311 (N.D. Okla. 2010). Stated simply, in the Tenth Circuit "an appeal under § 1292 is an exceedingly rare occurrence." *In re Transdata, Inc. Smart Meters Patent Litig.*, 12-ML-2309-C, 2015 WL 12600181, at *1 (W.D. Okla. Dec. 8, 2015) (citing *State of Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994)).

## ARGUMENT

**A.    Defendants have not demonstrated "substantial grounds for disagreement" with any of the rulings they seek to appeal.**

Defendants have not met their burden to demonstrate grounds for substantial disagreement on any of the three issues. To meet this burden, the questions presented for certification must be

---

[2] As explained below, however, the Court made no such ruling. The Court held that Plaintiff was *not* seeking to enforce federal law, but Plaintiff was entitled to rely on regulatory requirements as it relates to questions about duties and standards of care, which is allowed under Oklahoma law.

2

difficult and novel, and involve "a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions." *In re Grand Jury Proceedings June 1991*, 767 F. Supp. 222, 226 (D. Colo. 1991). "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Am. Fid. Assur. Co. v. Bank of New York Mellon*, CIV-11-1284-D, 2014 WL 8187951, at *4 (W.D. Okla. Dec. 12, 2014) (quoting *Northern Arapaho Tribe v. Ashe*, 925 F. Supp. 2d 1206, 1223–24 (D. Wyo. 2012).

**1. "No-ship" duty.**

Every federal court that has considered whether the CSA imposes a "no ship" duty has held that it does, and more than one district court has also denied similar § 1292(b) motions by defendants for immediate appeal of similar issues. *See* Order Denying Defendants' Motions to Certify Order Under 28 U.S.C. § 1292(b) for Interlocutory Appeal, *City & Cty. of San Francisco v. Purdue Pharma L.P.* ("*San Francisco*"), Case No. 18-CV-07591, ECF No. 344 (N.D. Cal. Nov. 9, 2020) (denying Distributors' 1292(b) motion to certify order relating to CSA duties); Order Re: Distributors' Motion to Certify Order Under 28 U.S.C. § 1292(b), ECF No. 1283 (denying motion to certify MDL rulings on motions to dismiss public nuisance and RICO claims); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2020 WL 2128462, at *2 (N.D. Ohio May 5, 2020) (denying motion to certify MDL rulings on motions to dismiss RICO claims).

In summary judgment rulings, the MDL court considered the legislative text of the federal controlled substances laws and the applicable case law, and held:

> given the overriding duty of a registrant to maintain effective controls against diversion, the Court is hard-pressed to think of a more basic requirement than not to ship a dubious order bearing indicia that the drugs could be diverted to illegal channels. How can a registrant freely ship suspicious orders and still comply with its duty to maintain controls against diversion? It cannot. It has a duty not to ship the order unless due diligence reasonably dispels the suspicion.

*In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804, 2019 WL 3917575, at *9 (N.D. Ohio Aug. 19, 2019). *See also In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745, 781 n. 44, 2020 WL 1669655 (N.D. Ohio 2020) ("West Boca") ("the CSA creates a duty not to put a suspicious order into the stream of commerce" absent due diligence).

Likewise, in *City of Chicago v. Purdue Pharma L.P.*, 14 CV 4361, 2021 WL 1208971, at *7 (N.D. Ill. Mar. 31, 2021), the court rejected the defendants' argument concerning the "no ship" duty. Under the text of the CSA regulations and the existing case law, the court held that the

3

"statutory and regulatory duties to maintain effective controls against diversion includes a duty not to ship suspicious orders . . . unless due diligence reasonably dispels the suspicion." *Id.* (quotations omitted). The court in *San Francisco* reached the same conclusion. *San Francisco*, 491 F. Supp. 3d at 631–32.

The only allegedly conflicting case Defendants cite is a ruling by a trial court in *State of Rhode Island v. Purdue Pharma L.P.*, 2020 WL 2315956, at *3 (R.I. Super. 2020). Given the harmony of federal decisions from numerous courts, it is unlikely that a single conflicting state court ruling would establish a "substantial ground for difference of opinion." But it does not matter, because the Rhode Island ruling does not conflict with this Court's order, as the court did *not* reject the existence of a "no-shipping" duty. Rather, the court declined to rule in favor of the state of Rhode Island on summary judgment, because "granting the State's motion would not resolve any part of its claims such that the substantive rights of the parties would be affected, and because the State has not established the existence of the 'no shipping' duty as a matter of law." *Id.* Notably, the Rhode Island court did not believe its ruling was at odds with the MDL court's granting summary judgment on the same issue. *Id.* Distributors also fail to mention that on motions to dismiss earlier in the case, the Rhode Island court held that violations of federal CSA duties could indeed support a state-law tort claim. *See State v. Purdue Pharma L.P.*, No. PC-2018-4555, 2019 WL 3991963, at *16 (R.I. Super. Aug. 16, 2019) (holding plaintiff sufficiently alleged negligence claim premised in part on opioid distribution in violation of CSA duties). There is no indication the court has ever receded from these rulings, and the case is reportedly going to trial in early 2022. Rather than being forthcoming about the record from that case (in which all three distributors are parties), Defendants have attempted to distort it to make a baseless claim that this Court erred.

### 2. Corporate-level dispensing duties.

The federal courts have also rejected Pharmacy Defendants' argument that the CSA creates "no corporate-level" liability with respect to dispensing. The MDL court recently engaged in a detailed analysis of this issue and found that "the Pharmacy Defendants' ultimate argument—that they cannot be liable to Plaintiffs because only their pharmacist-employees are responsible for preventing diversion of opioids via illegitimate prescriptions—is premised upon a tortured reading of the CSA and its regulations." *In re Nat'l Prescription Opiate Litig.*, 477 F. Supp. 3d 613, 631, 2020 WL 4550400 (N.D. Ohio 2020). Similarly, in *San Francisco*, the court held that the CSA regulations "impose duties on Walgreens in its capacity as a dispenser to implement systems

4

designed to prevent diversion, the violations of which can serve as a premise for liability under California's public nuisance law." 491 F. Supp. 3d 610, 671-72.

The court agreed with Judge Polster's finding that "[i]t would undermine the entire purpose of the CSA (and defy logic) for the Act to require a pharmacy to collect the dispensing data listed in § 1304.22(c), but then allow the pharmacy to ignore this data when fulfilling its fundamental obligation to guard against diversion." *Id*. at 672 (citation omitted).[3]

The only case Pharmacy Defendants contend conflicts with these rulings is a trial court ruling from the New York state opioid litigation. But the Pharmacy Defendants mischaracterize that ruling. The New York court did not hold that the CSA creates no corporate level duties – indeed, the New York never reached the issue of what duties the Pharmacy Defendants owe under the CSA. Rather the New York court erroneously believed that the plaintiffs before it were trying to hold the Pharmacy Defendants vicariously liable for the misconduct of their subsidiaries and that the question of what duties these defendants owe under the CSA was irrelevant to their liability under New York law. Because the New York court never reached the question of the Pharmacy Defendants' duties under the CSA, its ruling (which is, in any event, the subject of a pending appeal to New York's intermediate appellate court) provides no support for the Pharmacy Defendants' contention that there are any grounds for disagreement with this Court's ruling about the requirements of the CSA.

### 3. No "private right of enforcement."

Finally, the Court should deny the motion to certify the third issue—i.e., that there is no private right of enforcement under the CSA—because the Court never ruled to the contrary. Defendants repeatedly suggest in their motions that the Court determined that Cherokee Nation has a right to enforce the CSA. *See, e.g*., Pharmacy Motion at 4 (stating "this Court disagreed" with the Pharmacies' argument that "the Nation has no right to enforce the CSA's regulatory scheme"); Distributor Motion at 1 (claiming the court held that the CSA's "federal registration

---

[3] Other courts have also come to this same conclusion. *See Top RX Pharmacy; Decision and Order*, 78 FR 26069-01, 26082 (DEA May 3, 2013) ("The corresponding responsibility to ensure the dispensing of valid prescriptions extends to the pharmacy itself."); *see also United States v. Appalachian Reg'l Healthcare, Inc.*, 246 F. Supp. 3d 1184, 1189-90 (E.D. Ky. 2017) (finding "nothing inconsistent about articulating the responsibilities of individual practitioners and pharmacists while simultaneously indicating that other entities may be subject to penalties for their role in issuing and filling invalid prescriptions.").

5

framework may be enforced by private parties under state tort law."). These statements reflect a misunderstanding or a knowing misreading of the Court's orders, which hold the opposite: "***The Nation does not seek to enforce the CSA***, but to use its requirements, and Distributors' alleged violations of those requirements, as the basis for its nuisance claim." Distributor Order at 10 n.7 (emphasis added); *see also* Pharmacy order at 13 ("the court notes that the Nation does not seek to simply enforce the CSA and its provisions."). There are no grounds to certify this ruling, as it is undisputed that under Oklahoma law, a statutory or regulatory requirement can inform the duties owed under negligence or nuisance. *See* Plaintiff's Opp. 25–26.[4]

### 4. Defendants' own statements contradict their claim of "substantial grounds for disagreement."

Finally, contradicting Defendants' legal positions in their briefs, Defendants' company witnesses concede they have obligations and responsibilities to prevent diversion by not shipping suspicious orders, and/or not filling suspicious prescriptions. AmerisourceBergen's witness on this topic testified there was a "no-ship" obligation:

> Q. So if you—it's based on your understanding of the legal requirements that if you identify an order as suspicious, you cannot ship it, correct?
>
> MR. NICHOLAS: Object to the form.
>
> A. It's my understanding of the law and the regulation and the expectation of the regulator.
>
> Q. To be clear, that if an order is suspicious, you cannot ship it, correct?
>
> A. Correct.

David May Dep. 16:5-20 (Aug. 4, 2018) (Exhibit A). A Cardinal witness testified similarly:

> Q. So since 2007 or approximately that time period, Cardinal has not shipped suspicious orders, correct?

---

[4] Pharmacy Defendants' citation to *McKesson Corp. v. Hembree*, 17-CV-323-TCK-FHM, 2018 WL 340042, at *5 (N.D. Okla. Jan. 9, 2018) is misplaced. First, that opinion had nothing to do with the substance Defendants' duties under the CSA. Second, the court ruled in a different context that an Indian tribe did not have jurisdiction to enforce a tribal consumer protection statute against a non-member that created civil liability for violating the federal Controlled Substances Act. The court emphasized that "unlike states, tribes do not have courts of general jurisdiction. Defendants have cited no provision of the CSA that would provide a tribal court with jurisdiction of a claim asserting rights created by the CSA, even if such a claim were permissible." *Id.*

> A. Since 2007, Cardinal Health has not shipped an order that it has reported as suspicious to the DEA.
>
> * * *
>
> A. Under the statute, Cardinal has an obligation to identify and report suspicious orders, and then under the additional guidance provided by the DEA [no later than 2007], the further obligation to not ship those orders that it has reported as suspicious.

Jennifer Norris Dep. 129:9–13; 153:3–8 (Aug. 7, 2018) (Exhibit B). *See also* John Henry Morelliti Dep. 25:4-13 (Jan. 23, 2019) (CVS witness testifying that as of when he started his job around 2008 that CVS's duty with respect to suspicious order monitoring was "[n]ot to release any order that we deemed an order of interest" which he explained meant not to ship it) (Exhibit C).

**B.    The proposed issues for certification are not "controlling."**

Because certifying the orders will not materially affect the outcome of the case, those questions cannot be said to be controlling. Plaintiffs have adequately pled causes of action under Oklahoma law even without reference to Defendants' violations of the CSA. Even if Defendants won the proposed appeal, none of Plaintiff's claims would be dismissed, and the litigation would not be simplified.

That is because the Federal CSA duties at issue in Defendants' motions are not the only sources of Defendants' duties relevant to the nuisance and negligence claims (not to mention unjust enrichment and civil conspiracy). Defendants rely heavily on the fact that, in opposing Defendants' motions to dismiss, Plaintiff's legal briefs identified violations as a predicate "unlawful act" to support a public nuisance claim. There is a simple explanation for that: the main argument in Defendants' motions to dismiss was that CSA violations could *not* support the public nuisance claim—and Plaintiff was merely responding to that. If Defendants had focused on other arguments—such as that Plaintiff's common law claims could not be supported by alleged violations of Oklahoma CSA or breaches of state law, violations of duties under professional standards, violations of duties created by voluntarily undertakings, etc., all of which Plaintiff alleged in the complaint—then Plaintiff would have spent more pages explaining why those are predicate sources of law, too. In any event, it is clear that Plaintiff has never relied exclusively on Defendants' alleged violations of the CSA:

> The Nation has plausibly alleged that Defendants both omitted to perform duties and engaged in unlawful acts. The Complaint's numerous allegations regarding

7

>   Defendants' (a) shipments and sales of opioids in violation of state and federal law, (b) failure to implement effective anti-diversion systems as required by law; and (c) concealing information from regulators (among other things) qualify as "unlawfully doing an act" or "omitting to perform a duty" under Oklahoma's nuisance statute. See, e.g., FAC ¶¶ 54, 141, 164, 213–215, 221–222, 321.

Plaintiff's Opposition to Motions to Dismiss, at 15 (Docket No. 159, June 11, 2020).[5] Plaintiff elaborated on the various sources of law underpinning the negligence and nuisance claims:

>   The Nation alleges that "Defendants owe a duty to act reasonably under the circumstances" and that "Defendants owe a duty to prevent the diversion of opioid prescriptions." FAC at ¶¶ 334-35. The Nation also alleges that "[t]he conduct of Defendants fell below the reasonable standard of care" and that "[e]ach Defendant breached its duty to exercise the degree of care commensurate with the dangers involved in selling dangerous controlled substances." *Id.* at ¶¶ 337, 342. These allegations do not rely on the regulatory standards of the CSA, but rather invoke the common law standards for negligence under Oklahoma law [citing cases] . . . . ***The fact that a defendant's conduct was unlawful may be a relevant circumstance for a jury to consider, along with others***, in determining whether the defendant acted with reasonable care even in cases where a statutory violation does not rise to the level of negligence per se.

*Id.* at 25 (emphasis added). In sum, Defendants failure to perform *other* duties or follow *other* laws also supports the Plaintiff's claims, independently of Defendants' alleged CSA violations.[6] The overlap of issues giving rise to Plaintiff's case is such that removing the allegations about federal "no ship" duties and/or "corporate-level" duties will not materially impact how the discovery and

---

[5] The statutory public nuisance claim depends, in part, on a defendants' failure to perform a duty or follow the law. *See* Okla. Stat. tit. 50, § 1. It does not necessarily require breach of a statutory duty or regulation. Many courts applying the Restatement (Second) of Torts (which has also been applied in Oklahoma, *see* Distributor Order at 13, n.8) have also found that public nuisance claims can arise against distributors of potentially harmful projects regardless of any alleged statutory or regulatory violations. *See* Plaintiffs Opposition, at 9-20.

[6] Distributors Defendants assert in footnote 3 that Oklahoma controlled substances laws are similar to federal law. But Defendants do not explain how or why an appellate ruling regarding the interpretation of federal regulations would hinder Plaintiff from proceeding on the claim that the public nuisance stemmed from Defendants' state-law violations, consistent with the complaint's allegations. Indeed, Defendants' argument about the alleged absence of federal duties is premised, in part, on Defendants' claim that DEA policy guidance allegedly changed over time. Defendants contend that DEA action/inaction supports their interpretation of the regulations. *See* Distributor Motion at 13 and n.9. Those considerations do not apply to Oklahoma regulations. Defendants have not even addressed some the Oklahoma laws in the complaint, let alone demonstrated that they does not independently impose obligations whose violation resulted in a public nuisance.

8

trial unfold. In a ruling that illuminates how courts deal with this scenario on a § 1292(b) motion, another federal court held:

> [W]hile reversal could potentially have some impact on the scope of remaining discovery and, ultimately, trial, the substantial factual overlap between the . . . remaining state law claims and the RICO claims that would be evaluated on appeal militates strongly against a conclusion that the effect of a reversal on the conduct of the litigation going forward would be sufficiently "significant" to render the question for appeal "controlling."

*City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2017 WL 1424326, at *3 (S.D.N.Y. Apr. 20, 2017). Finally, as discussed above, all the companies to varying degrees admit to having legal responsibilities not to ship suspicious orders, and not to fill suspicious prescriptions without performing due diligence. These statements and admissions by Defendants' witnesses and representatives completely undermine Defendants' motion for interlocutory appeal, and also illustrate that the duties exist even apart from what Defendants claim is required by the CSA.

### 5. Certification will not materially advance the litigation.

Certification of interlocutory appeals under § 1292(b) is "limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate and final decision of controlling questions encountered early in the action." *Kennecott Corp.*, 14 F.3d at 1495 (10th Cir. 1994) (citation omitted). A primary purpose of § 1292(b) is to provide an opportunity to review an order when an immediate appeal would "materially advance the ultimate termination of the litigation." *Am. Fid. Assur. Co. v. Bank of New York Mellon*, 2014 WL 8187951, at *3 (W.D. Okla. Dec. 12, 2014).

None of these considerations apply here. The lawsuit has been ongoing since 2017, across five different courts, which are in chronological order: the District Court of Cherokee Nation; the Northern District of Oklahoma; District Court for Sequoyah County, Oklahoma; the Eastern District of Oklahoma; and the Northern District of Ohio (then back to this Court). Document discovery has been open for nearly a year, and Plaintiff has already produced over 700,000 pages of documents from 70+ document custodians (and some Defendants claim they have already produced millions of pages of documents). Depositions have begun. Fact discovery closes later this year. Moreover, even if the Court of Appeals agreed with Defendants, all of the claims would remain, thus mooting any purported savings of time or expense in discovery. Given the litigation will be conducted in substantially the same manner regardless of the Court's decision, the appeal cannot be said to materially advance the ultimate termination of the litigation.

### 6. None of Defendants' cases support granting their motion for immediate appeal.

Defendants have not found a case within the Tenth Circuit granting a § 1292(b) motion in circumstances similar to this case. Oddly, most of Defendants' cases involve *denials* of 1292(b) motions. For example, in *Diaz v. King*, 2016 WL 8925344, at *2 (D.N.M. Jan. 13, 2016), the court denied the 1292(b) motion because the statute "should be limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action." In *Dunn v. United Reg'l Health Care., Inc.*, 2010 WL 11613791, at *4 (W.D. Okla. Mar. 8, 2010), the court declined to certify a jurisdictional ruling, because regardless of the appeal outcome the litigation would still proceed against at least one remaining defendant, and therefore "no time savings will inure to the benefit of the remaining parties." The 1292(b) motion was also denied in *In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1312, 2010 WL 1816434 (N.D. Okla. 2010) because the "interlocutory appeal will *not* materially advance the ultimate termination of the litigation." Likewise, in *Mayer v. Bernalillo Cty.*, 2018 WL 6594231, at *31 (D.N.M. Dec. 13, 2018), the court denied certification because "[defendant] does not point to an on-point case, from another court, with which the Court had to disagree." In *Kennecott Corp.*, 14 F.3d 1489 at 1496, the Tenth Circuit discussed § 1292(b) but ultimately dismissed the appeal for lack of jurisdiction under § 1292(a).

Defendants collectively cited three district courts within the Tenth Circuit that granted § 1292(b) motions. Each case is distinguishable. In *Farmer v. Kansas State Univ.*, 16-CV-2256-JAR-GEB, 2017 WL 3674964, at *3 (D. Kan. Aug. 24, 2017) the court seemed to incorrectly believe the "substantial ground for disagreement" requirement was met when there were merely "colorable arguments" on both sides. No other judge in the Tenth Circuit has applied that standard, and it is inconsistent with the statute and the case law. Next, in *Am. Fid. Assur. Co. v. Bank of New York Mellon*, CIV-11-1284-D, 2014 WL 8187951, at *5 (W.D. Okla. Dec. 12, 2014), the court certified a ruling on personal jurisdiction that, if reversed on appeal, would "terminate the litigation before this Court." That will not happen in *Cherokee Nation* no matter what the appellate outcome. Finally, in *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 15-CV-0547-MV, 2016 WL 8261743, at *2 (D.N.M. Mar. 22, 2016), the court identified a novel jurisdictional issue at the outset of the case on a "question of law about which the circuits are divided" that was potentially dispositive to the whole case, and was appealable under the collateral order doctrine anyway (the court secondarily certified the order under § 1292(b)).

10

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' motions to certify orders for interlocutory appeal.

Dated: May 21, 2021.

        Respectfully Submitted,

          */s/ Tyler Ulrich*
          Tyler Ulrich (*pro hac vice*)
          BOIES SCHILLER FLEXNER LLP
          100 SE 2nd Street, Suite 2800
          Miami, FL 33131
          tulrich@bsfllp.com
          Tel: (305) 539-8400
          Fax: (305) 539-1307

          William S. Ohlemeyer (*pro hac vice*)
          BOIES SCHILLER FLEXNER LLP
          333 Main Street
          Armonk, NY 10504
          wohlemeyer@bsfllp.com
          Tel: (914) 749-8200
          Fax: (914) 749-8300

          Michael Burrage; OK #1350
          WHITTEN BURRAGE
          512 N. Broadway Ave., Suite 300
          Oklahoma City, OK 73102
          Tel: (405) 516-7800
          Fax: (405) 516-7859

          Richard W. Fields (*pro hac vice*)
          FIELDS PLLC
          1700 K Street, NW, Suite 810
          Washington, DC 20006
          fields@fieldslawpllc.com
          Tel: (917) 297-3610

          Attorney General Sara Hill
          Assistant Attorney General Chrissi Nimmo
          Assistant Attorneys General John Young
          THE CHEROKEE NATION

P.O. Box 948
Tahlequah, OK 74464
chrissi-nimmo@cherokee.org
john-young@cherokee.org
Tel: (918) 453-5000
Fax: (918) 458-5099

*Attorneys for Plaintiff*
*Cherokee Nation*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2021, a true and correct copy of the foregoing document was served on counsel of record for defendants in this action via electronic notice/email.

*/s/ Tyler Ulrich*
Tyler Ulrich