# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEROKEE NATION,<br><br>                    Plaintiff<br><br> v.<br><br>MCKESSON CORPORATION; CARDINAL HEALTH, INC.;<br>CARDINAL HEALTH 110, LLC;<br>AMERISOURCEBERGEN DRUG CORPORATION; CVS PHARMACY, INC.;<br>OKLAHOMA CVS PHARMACY, L.L.C.;<br>WALGREENS BOOTS ALLIANCE, INC.;<br>WALGREEN CO.; WAL-MART STORES, INC.,<br><br>                    Defendants. | Case No. 18-CV-00056-RAW-SPS<br><br>Hon. Ronald A. White |

## PHARMACY DEFENDANTS' RESPONSE IN OPPOSITION TO CHEROKEE NATION'S MOTION TO REMAND

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

ARGUMENT ........................................................................................................ 5

I.     CHEROKEE NATION CANNOT SEEK A REMAND ...................................... 5

II.    THIS COURT SHOULD NOT REMAND ......................................................... 8

     A.    The Factors Governing Remand Support Keeping This Case ................... 8

     B.    Cherokee Nation's Counterarguments Fail ........................................... 11

III.   THIS COURT LACKS AUTHORITY TO REMAND THIS CASE ..................... 15

     A.    Even Without Original Jurisdiction, There Is No Authority to Remand Now .......... 15

          1.    Congress Has Not Given This Court Power To Remand ................................ 16

          2.    Cherokee Nation's Counterarguments Are Unpersuasive ............................... 18

     B.    There Are Independent Grounds for Original Jurisdiction ....................... 19

CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acoma Pueblo v. Am. Tobacco Co.*,
No. CIV 99-1049M, 2001 WL 37125252 (D.N.M. Feb. 20, 2001)......................................20

*Allender v. Scott*,
379 F. Supp. 2d 1206 (D.N.M. 2005) ...................................................................................14

*Anglemyer v. Hamilton Cnty. Hosp.*,
58 F.3d 533 (10th Cir. 1995) ..................................................................................................8

*Araya v. JPMorgan Chase Bank, N.A.*,
775 F.3d 409 (D.C. Cir. 2014)........................................................................................14, 19

*Bd. of Cnty. Comm'rs of Delaware Cnty. v. Purdue Pharma L.P.*,
No. 18-CV-0460, 2018 WL 5307623 (N.D. Okla. Oct. 26, 2018) .......................................22

*Bd. of Cnty. Comm'rs of Pawnee Cnty. v. Purdue Pharma L.P.*,
No. 180-CV-459, 2018 WL 5973752 (N.D. Okla. Nov. 14, 2018) ......................................22

*Bd. of Cnty. Comm'rs of Seminole Cnty. v. Purdue Pharma L.P.*,
No. CIV-18-372, 2019 WL 1474397 (E.D. Okla. Apr. 3, 2019)..........................................22

*Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., L.L.C.*,
850 F.3d 714 (5th Cir. 2017) ..........................................................................................21, 22

*Bennett v. MIS Corp.*,
607 F.3d 1076 (6th Cir. 2010) .......................................................................................15, 19

*Black v. Doe*,
No. CIV.A. 11-25, 2011 WL 1642540 (E.D. Ky. May 2, 2011) ...........................................14

*Boeuf River Farm, Inc. v. Trigleth*,
No. 5:10CV00279, 2011 WL 5599422 (E.D. Ark. Nov. 16, 2011)......................................14

*BP P.L.C. v. Mayor & City Council of Baltimore*,
141 S. Ct. 1532 (2021) ..........................................................................................................18

*Buchinger ex rel. Est. of Buchinger v. Garlock, Inc.*,
No. 3:05 CV 118, 2005 WL 2338801 (N.D. Fla. Sept. 23, 2005) ........................................14

*Burke v. City of Fort Worth*,
No. 19-CV-00744, 2021 WL 347473 (N.D. Tex. Feb. 2, 2021).....................................13, 19

*Call v. N.C. Farm Bureau Mut. Ins. Co.*,
No. 1:19-cv-00229, 2020 WL 5269800 (W.D.N.C. Sept. 4, 2020).....................................13

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988)........................................................................................................10, 17

*Carnett v. Watts*,
No. 15-CV-02437, 2016 WL 705986 (D. Colo. Feb. 23, 2016)...........................................14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Carter v. Cent. Reg'l W. Va. Airport Auth.*,
No. 2:15-CV-13155, 2016 WL 4005932 (S.D. W. Va. July 25, 2016) ...................................13

*D.C. v. Merit Sys. Prot. Bd.*,
762 F.2d 129 (D.C. Cir. 1985) .....................................................................................13, 18

*Dennis v. Allis-Chalmers Corp. Prod. Liab. Tr.*,
No. C 09-02363, 2009 WL 1874017 (N.D. Cal. June 26, 2009) ...........................................13

*Dixie Brewing Co. v. Dep't of Veterans Affs.*,
No. 13-6605, 2013 WL 6715921 (E.D. La. Dec. 18, 2013) ....................................................13

*Eastman v. Union Pac. R. Co.*,
493 F.3d 1151 (10th Cir. 2007) .................................................................................................6

*Est. of Guzik ex rel. Guzik v. Mahmud*,
No. 09-cv-0657, 2009 WL 1844317 (W.D. Pa. June 26, 2009) ............................................14

*Everbank v. Blair*,
No. 14-CV-22, 2014 WL 3547738 (N.D. Okla. July 17, 2014) ............................................14

*Gabaldon v. N.M. Coal. to End Homelessness*,
No. CIV 17-0473, 2017 WL 3057669 (D.N.M. May 30, 2017)............................................13

*Gaylord v. Spartan Coll. of Aeronautics & Tech., LLC*,
No. 16-CV-461, 2019 WL 3400682 (N.D. Okla. July 26, 2019) ..........................................13

*Gen. Motors Corp. v. Hirschfield Steel Serv. Ctr., Inc.*,
402 F. Supp. 2d 800 (E.D. Mich. 2005).................................................................................14

*Givoh Assocs. v. Am. Druggists Ins. Co.*,
562 F. Supp. 1346 (E.D.N.Y. 1983) ......................................................................................14

*Grable & Sons Metal Prods., Inc v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)................................................................................................................21

*Gulati v. Zuckerman*,
723 F. Supp. 353 (E.D. Pa. 1989) ..........................................................................................14

*Gunn v. Minton*,
568 U.S. 251 (2013).....................................................................................................19, 20, 21

*Hall v. Greystar Mgmt. Servs., L.P.*,
179 F. Supp. 3d 534 (D. Md. 2016) ........................................................................................12

*IMFC Pro. Servs. of Fla., Inc. v. Latin Am. Home Health, Inc.*,
676 F.2d 152 (5th Cir. 1982) ..................................................................................................18

*In re Nat'l Prescription Opiate Litig.*,
327 F. Supp. 3d 1064 (N.D. Ohio 2018)..............................................................................2, 16

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Nat'l Prescription Opiate Litig.*,
   No. 1:17 MD 2804, 2019 WL 3737023 (N.D. Ohio June 13, 2019) ......................................12

*Jamison v. Wiley*,
   14 F.3d 222 (4th Cir. 1994) ...................................................................................15, 18, 19

*Johnson v. Conley*,
   No. CIV.A. 12-18, 2012 WL 1947330 (E.D. Ky. May 30, 2012) .........................................14

*Johnson v. United States*,
   559 U.S. 133 (2010)..............................................................................................................6

*Kennedy v. Jefferson Cnty.*,
   No. 5:13-CV-226, 2014 WL 7151321 (S.D. Miss. Dec. 12, 2014) ....................................12

*Kovach v. MFA, Inc.*,
   No. 2:21-CV-00013, 2021 WL 2949556 (E.D. Mo. July 14, 2021) ...................................12

*Macias v. Kerr-McGee Corp.*,
   No. 92-C-3389, 1993 WL 524734 (N.D. Ill. Dec. 14, 1993)..................................................14

*Mangold v. Analytic Servs., Inc.*,
   77 F.3d 1442 (4th Cir. 1996) ........................................................................................15, 19

*Marquee Acquisitions, LLC v. Highlander Condos., LLC*,
   No. 13-00596, 2014 WL 2601464 (M.D. La. June 10, 2014) ...............................................14

*Martinez v. Seaton*,
   285 F.2d 587 (10th Cir. 1961) .......................................................................................13, 18

*McKesson Corp. v. Hembree*,
   No. 17-CV-323, 2018 WL 340042 (N.D. Okla. Jan. 9, 2018)................................................2

*Mesa v. California*,
   489 U.S. 121 (1989).............................................................................................................16

*Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*,
   273 F.3d 722 (7th Cir. 2001) ..............................................................................................10

*Milyakov v. JP Morgan Chase, N.A.*,
   No. C 11-2066, 2011 WL 6012928 (N.D. Cal. Dec. 1, 2011) ..............................................12

*MJC Ventures LLC v. Detroit Trading Co.*,
   No. 219CV13707, 2021 WL 1212534 (E.D. Mich. Mar. 31, 2021)......................................12

*Murphy v. Kodz*,
   351 F.2d 163 (9th Cir. 1965) ........................................................................................14, 18

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
   770 F.3d 1010 (2d Cir. 2014)..............................................................................................21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Naylor v. Case & McGrath, Inc.*,
    585 F.2d 557 (2d Cir. 1978)..........................................................................13, 19

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)..........................................................................5, 6, 7

*Newport Ltd. v. Sears, Roebuck & Co.*,
    941 F.2d 302 (5th Cir. 1991) ..........................................................................9

*Osborn v. Haley*,
    549 U.S. 225 (2007)..........................................................................16, 17, 18

*Pelt v. Utah*,
    104 F.3d 1534 (10th Cir. 1996) ..........................................................................20

*Plant Food Sys., Inc. v. Gottwald*,
    No. 6:12-CV-788-ORL-37, 2012 WL 2568130 (M.D. Fla. July 2, 2012)) ....................13

*Poarch Band of Creek Indians v. Amneal Pharms., LLC*,
    CIV.A. No. 20-0279, 2020 WL 3833009 (S.D. Ala. 2020)......................................20

*Reyes v. APEX Trucking, Inc.*,
    No. 20-2435, 2021 WL 259406 (D. Kan. Jan. 26, 2021)..........................................9

*Rosado v. Wyman*,
    397 U.S. 397 (1970)..........................................................................16

*Rose v. Seamless Fin. Corp. Inc.*,
    No. 11cv00240, 2012 WL 3985964 (S.D. Cal. Sept. 10, 2012) ..............................12

*Russello v. United States*,
    464 U.S. 16 (1983)..........................................................................17

*Tanner v. Tex. Workforce Comm'n*,
    No. A-09-CV-429, 2009 WL 10669202 (W.D. Tex. Oct. 21, 2009)............................14

*Transok Pipeline Co. v. Darks*,
    565 F.2d 1150 (10th Cir. 1977) ..........................................................................8

*United States v. Carrasco-Salazar*,
    494 F.3d 1270 (10th Cir. 2007) ..........................................................................6

*United States v. Olano*,
    507 U.S. 725 (1993)..........................................................................5

*Walker v. Lewis*,
    No. 2:14-CV-1118, 2015 WL 1926290 (M.D. Ala. Apr. 28, 2015)............................13

*Weise v. Casper*,
    424 F. App'x 799 (10th Cir. 2011) ..........................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Wullschleger v. Royal Canin U.S.A.*,
   953 F.3d 519 (8th Cir. 2020) .....................................................................22

*Zimmerman v. CitiMortgage, Inc.*,
   No. 3:11-CV-00164, 2013 WL 588252 (W.D. Ky. Feb. 13, 2013).........................12

STATUTES

21 U.S.C. § 801.........................................................................................21

21 U.S.C. § 882.........................................................................................22

Indian Health Care Improvement Act, 25 U.S.C. § 1601 *et seq.*....................20

25 U.S.C. § 1602........................................................................................20

28 U.S.C. § 1367.................................................................................17, 22

28 U.S.C. § 1442...............................................................................*passim*

28 U.S.C. § 1447.................................................................................16, 18

28 U.S.C. § 2679.................................................................................17, 18

**INTRODUCTION**

Like many other tribes, Cherokee Nation wanted its case moved to the front of the line in the Opiate Multidistrict Litigation ("MDL") to ensure speedier resolution of its claims. But the MDL court made clear that any tribal bellwether case singled out to leave the MDL had to meet one key condition: To fulfill Judge Polster's goal of having "other federal judges" work with him in "parallel" in resolving the opioid litigation, the plaintiff had to agree to remain in federal court rather than try to escape back to state court. Cherokee Nation embraced this condition and told Judge Polster—as he memorialized at the time—that it "agreed not to seek remand to state court and to try the case in the federal transferor court." And Cherokee Nation repeatedly confirmed this agreement, declaring that a transfer to this Court was "fully aligned" with Judge Polster's "stated objectives." In exchange for this commitment, Cherokee Nation secured its goal: It became the sole tribal case in the nation transferred out of the Opiate MDL, placing it on the path to be tried well ahead of over 100 tribal cases and providing the MDL litigation with a tribal bellwether case in federal court. This case has since proceeded apace in this Court, with extensive discovery and pretrial rulings, including the resolution of two motions to dismiss.

Having reaped the benefit of its bargain, Cherokee Nation now seeks to break its promise, asking for what it calls a "discretionary" remand to state court. The Court should deny that request for three reasons. First, the doctrines of waiver and judicial estoppel prevent Cherokee Nation from reneging on its agreement to "try the case" here. Second, in addition to disrupting the MDL court's bellwether plans, requiring the parties to restart in state court now would be a tremendous waste of resources. Finally, this Court lacks authority to remand under the circumstances. Congress has specified those circumstances in which federal courts may decline to exercise supplemental jurisdiction after the departure of an anchor claim, and the dismissal of claims against the removing federal officer is not among them. In addition, this Court has federal-question jurisdiction over the tribe's state-law claims because they necessarily implicate substantial federal issues.

1

# BACKGROUND

Cherokee Nation first tried to bring its opioid-related litigation in its own courts. After those efforts failed, *see McKesson Corp. v. Hembree*, No. 17-CV-323, 2018 WL 340042 (N.D. Okla. Jan. 9, 2018), Cherokee Nation filed suit in Oklahoma state court. McKesson Corporation then removed the case to this Court on February 26, 2018, Dkt. No. 2, and the Judicial Panel on Multidistrict Litigation ("JPML") transferred it to the Opiate MDL on June 6, 2018. Dkt. No. 70. The MDL court (Judge Polster) denied Cherokee Nation's motion to remand. *In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d 1064 (N.D. Ohio 2018). The MDL court determined that McKesson had properly invoked federal-question jurisdiction. The MDL court then stayed this action as the parties focused on selecting initial bellwether cases.

In the Fall of 2019, the MDL court solicited proposals for bellwether cases out of the remaining Opiate MDL cases. In a proposal that Judge Polster called "parallel processing" or "selective remand," he asked the JPML to transfer prototypical cases back to their originating federal courts so that "other federal judges" could "help to resolve specific portions of the *Opiate* MDL" side by side. Suggestions of Remand, *In re: National Prescription Opiate Litigation No. 2804* ("*Opiate Litigation*"), No. 17-md-2804, JPML Dkt. No. 6242, at 1, 3, 5 (N.D. Ohio Nov. 20, 2019) (Exhibit A); *see also* Pls.' Position Statement, *Opiate Litigation*, No. 17-md-02804, JPML Dkt. No. 2906, at 9 (N.D. Ohio Nov. 5, 2019) (Exhibit B) (discussing Judge Polster's desire for "[s]elective [r]emand"). Cherokee Nation, like other plaintiffs, wanted its case moved to the front of the line. Acting through the Plaintiffs' Executive Committee ("PEC") and the Tribal Committee,[1] Cherokee Nation proposed that "[i]f the Court [was] inclined to transfer back only one Tribal case," then its case should be chosen. Ex. B at 9. It contended that the MDL court had "already ruled on all of the significant threshold issues of Oklahoma law relating to opioid claims,"

---

[1] The MDL court established the PEC to act on behalf of all plaintiffs in the MDL. Plaintiffs' Renewed Motion to Approve Co-Leads, Co-Liaisons, and Executive Committee, *Opiate Litigation*, No. 17-md-2804, JPML Dkt. No. 37 (N.D. Ohio Jan. 4, 2018). Special Master Yanni appointed the Tribal Committee to work with the PEC and speak on behalf of the tribal cases pending in the MDL, including *Cherokee Nation*.

implying that this Court could quickly resolve remaining issues and thereby "advance the interests of all Tribes with cases pending in the MDL" through this bellwether litigation. *Id.* For their part, the Opiate MDL Defendants were concerned that a tribe, once outside the MDL, would attempt to return to state court, defeating the purpose of the bellwethers as a means of avoiding piecemeal litigation. They thus sought as a "condition" for transfer that the plaintiff would not seek remand. 11/5/19 Certain Defs.' Position Statement, Opiate MDL Dkt. No. 2908, at 3–4 (Exhibit C).

The MDL court held a conference on November 6, 2019, to discuss the transfer proposals. Cherokee Nation reiterated its claim that its case was a "relatively simple" one appropriate for transfer and trial. 11/6/19 Tr. at 35:19–36:14 (Exhibit D). Defense counsel responded by repeating that "whatever . . . tribal case [is] selected, it should remain in federal court." *Id.* at 36:22–37:9. In response, the MDL court agreed:

> **The Court:** I wasn't suggesting it go to state court.
>
> **[Defense Counsel]:** Well, your Honor, there could be an issue of a motion for remand back to state court, so we think it should be a condition that whatever the tribal case is—
>
> **The Court:** Well, that's for sure. I'm not remanding a case to federal court that's going to go to state court. I don't think anyone is contemplating that.

*Id.* at 36:22–37:9. Cherokee Nation raised no objection to the MDL court's condition.

The parties then submitted additional briefing. Cherokee Nation (again through the PEC and the Tribal Committee) continued to push for transfer to this Court, telling the MDL court that transferring its case would conform to the "principles announced by the Court on November 6." Pls.' Revised Position Statement Regarding Continuing Litigation, *Opiate Litigation*, No. 17-md-02804, JPML Dkt. No. 2935, at 1, 10-11 (N.D. Ohio Nov. 13, 2019) (Exhibit E). Those principles included the requirement that this case remain in federal court. Cherokee Nation emphasized that it sought transfer, not to "obtain further legal rulings on motions to dismiss," "but for both sides to assess the facts of their cases . . . through discovery and trial." *Id.* at 11; *see id.* (seeking to transfer this case to a "trial setting").

3

On November 19, 2019, the MDL court filed Suggestions of Remand with the JPML.  Ex. A.  It recommended that the JPML transfer Cherokee Nation's case back to this Court—"the consensus pick of the Indian Tribe leadership committee"—at least in part because "*[t]he Plaintiff has agreed not to seek remand to state court and to try the case in the federal transferor court*." *Id.* at 6 (emphasis added).  In response, the JPML entered a conditional transfer order, which Defendants sought to vacate because they believed another tribal case would have made a better bellwether.  Conditional Remand Order, *Opiate Litigation*, No. 17-md-2804, JPML Dkt. No. 6257 (N.D. Okla. Nov. 20, 2019).  Cherokee Nation, by contrast, fully embraced "[t]he MDL Court's suggestion for remand," explaining that it was "*fully aligned with the court's stated objectives and principles governing selective remand*."  Cherokee Nation's Opp'n to Movants' Mot. to Vacate Conditional Remand Order, *Opiate Litigation*, No. 17-md-2804, JPML Dkt. No. 6709, at 1–2 (N.D. Okla. Jan. 6, 2020) (Exhibit F) (emphasis added).  It thus embraced the MDL court's clear statement that Cherokee Nation had "agreed not to seek remand to state court" and promised "to try the case in the federal transferor court."  Ex. A at 6.

On February 5, 2020, the JPML rejected Defendants' motion to vacate its conditional transfer order and returned the case to this Court.  Remand Order, *Opiate Litigation*, No. 17-md-2804, JPML Dkt. 7033, at 1 (N.D. Okla. Feb. 5, 2020) (Exhibit G).  It noted that it has "consistently given great weight to the transferee judge's determination that remand . . . is appropriate."  *Id.* And it explained that it "s[aw] no reason to second-guess his selection of [*Cherokee Nation*] for bellwether remand and trial."  *Id.* at 3.

The Court and the parties spent the next two years in intensive litigation.  *See infra* 8–10.  On September 28, 2021, Cherokee Nation disclosed that it had settled with the Distributor Defendants.  *See* Dkt. No. 418.  The next day, it sought discretionary remand to Oklahoma state court, in direct contravention of its previous representations.  *See* Dkt. No. 420 ("Mot.").

**ARGUMENT**

**I.     CHEROKEE NATION CANNOT SEEK A REMAND.**

Cherokee Nation advanced its interests in speedy resolution of this bellwether case by agreeing to have it resolved in federal court.  Two doctrines require that Cherokee Nation now be held to that agreement.  First, waiver prohibits a party from "intentional[ly] relinquish[ing] . . . a known right" at one stage of the proceedings, only to try to assert it at a later stage.  *United States v. Olano*, 507 U.S. 725, 733 (1993); *cf. id.* (a litigant forfeits a right that the litigant fails to timely assert).  Second, judicial estoppel prevents litigants from "playing fast and loose with the courts" by "prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *New Hampshire v. Maine*, 532 U.S. 742, 749, 750 (2001) (internal quotation marks and citations omitted).

These doctrines defeat Cherokee Nation's request for a remand to state court.  Take first waiver.  Cherokee Nation wanted to get its case out of the MDL for more immediate resolution by this Court.  But in identifying bellwether cases for selective remand, the MDL court made clear that it wanted "parallel processing" by "other federal judges."  Ex. A at 3, 5.  In response to a request for a "condition that whatever tribal case is" remanded stay in federal court, for example, the MDL court said: "[T]hat's for sure.  I'm not remanding a case to federal court that's going to go to state court."  Ex. D at 36:22–37:9.  But Cherokee Nation pressed ahead anyway.  Far from just staying silent—which would establish waiver under the circumstances—Cherokee Nation affirmatively informed the MDL court (and later the JPML) that returning its case to "the Eastern District of Oklahoma," Ex. B at 9, for "discovery and trial," Ex. E at 11, fit with the "principles announced by the Court," *id.* at 1.  The MDL court thus correctly and unambiguously explained that Cherokee Nation "has agreed not to seek remand to state court and to try the case in the federal transferor court," and it told the JPML it was recommending remand to this Court on that basis.  Ex. A at 6.  And Cherokee Nation, aware of this requirement, continued to seek transfer to this Court over Defendants' opposition, informing the JPML that transfer would be "*fully aligned with the court's stated objectives and principles governing selective remand*."  Ex. F at 1–2 (emphasis

5

added).  After affirmatively proclaiming its intent to stay in federal court in order to secure transfer to this Court, Cherokee Nation may not seek remand to state court now.  *See, e.g.*, *Johnson v. United States*, 559 U.S. 133, 145 (2010) (refusing to remand for consideration of an alternative argument because the United States had disclaimed it before the Eleventh Circuit); *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272–73 (10th Cir. 2007) (refusing to consider an argument where the district court raised the issue with the defendant and he stated that he did not object to it).  As a matter of law, Cherokee Nation must now live with the consequences of its litigation strategy.

Judicial estoppel principles yield the same conclusion.  That doctrine applies when a party succeeds in persuading a court to accept one position, but then advocates for an inconsistent position for its own "unfair advantage" or to its adversary's "unfair detriment."  *New Hampshire*, 532 U.S. at 750–51; *see also Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1159–60 (10th Cir. 2007) (applying judicial estoppel where debtor sought substantive advantage by later pressing claims omitted from its bankruptcy filings); *Weise v. Casper*, 424 F. App'x 799, 802–03 (10th Cir. 2011) (applying judicial estoppel where parties obtained a procedural advantage by securing an appealable Rule 54(b) judgment through statements about the effect on an unsuccessful appeal on their claims against other defendants).

Judicial estoppel bars Cherokee Nation's remand request because that request is clearly inconsistent with Cherokee Nation's "agree[ment] not to seek remand to state court and to try the case in th[is] federal transferor court."  Ex. A at 6; *see also, e.g.*, Ex. F at 1–2 (Cherokee Nation asserting that its desired remand was "fully aligned" with the MDL court's conditions).  And Cherokee Nation succeeded in persuading a court through its earlier position.  *See New Hampshire*, 532 U.S. at 750.  The MDL court recommended returning this case to this Court *because of* Cherokee Nation's "agree[ment]" to keep it here.  Ex. A at 6.  And the JPML granted that recommendation *because* it "s[aw] no reason to second-guess [the MDL court's] selection of [this case] for bellwether remand and trial."  Ex. G at 3.  Finally, Cherokee Nation would obtain an "unfair advantage" if this Court allowed its gamesmanship.  *New Hampshire*, 532 U.S. at 751.  But

for Cherokee Nation's prior promise to stay in federal court, its case—like many other tribal cases—would have remained stayed in the MDL, awaiting the outcome of a different federal tribal bellwether.  Allowing Cherokee Nation to break its promise would also "unfair[ly]" harm the Pharmacy Defendants.  *Id.*  Pharmacy Defendants had identified a different tribal bellwether case and explained in detail why it was superior to this one.  *See* Mot. to Vacate Conditional Remand Order, *Opiate Litigation*, No. 17-md-2804, JPML Dkt. 6477, 9–14 (N.D. Okla. Dec. 16, 2019).[2] The MDL court and the JPML likely would have chosen the Pharmacy Defendants' preferred case (or another tribal case) had they known Cherokee Nation would undermine the MDL's bellwether process by seeking remand to state court.

Against all of this, Cherokee Nation now claims years later—in a few sentences in a footnote—that any promise "pertained only to the disputed issue of federal officer removal jurisdiction."  Mot. 2–3 n.2.  But Cherokee Nation identifies no record basis for its assertion, and in fact the record proves exactly the opposite.  Judge Polster made clear that the condition for transfer out of the MDL was staying in federal court because it wanted "other federal judges" working in "parallel" with him in resolving these cases.  Ex. A at 3, 5; *see supra* 2–4.  Indeed, that is the purpose of selecting bellwether cases for trial ahead of the thousands of other pending cases. If the MDL court had misunderstood the scope of Cherokee Nation's agreement, then Cherokee Nation had a duty to say so—particularly given how clearly the MDL court had stated its understanding of Cherokee Nation's promise.  Instead, Cherokee Nation took the deal, asserting that its request for a remand "fully aligned" with the MDL court's objectives.  Ex. F at 1–2.

Cherokee Nation also tries to wriggle out of its promise by asserting that "neither the parties (nor another District Judge) can create jurisdiction where it does not exist."  Mot. 2–3 n.2.  That is irrelevant because Cherokee Nation does not challenge this Court's jurisdiction.  This Court properly acquired jurisdiction when McKesson timely removed, and McKesson's settlement does

---

[2] Defendants' preferred case was past the motion-to-dismiss stage and more representative of tribal claims than this one.  *See* MDL Dkt. No. 6477 at 10 n.8.

not defeat that jurisdiction now.  *See infra* section III.A.  Cherokee Nation thus concedes that this Court (at least) has discretion to retain this case.  *See* Mot. 3–5.  As a result, Cherokee Nation (at most) has the right to ask this Court to exercise that discretion in its favor.  But Cherokee Nation waived that right long ago to obtain bellwether selection, when it persuaded the MDL court to recommend sending this case out of the MDL by agreeing not to seek a remand to state court.  As a result, it cannot now be heard to seek a different result.  That is reason enough to deny its Motion.

## II.    THIS COURT SHOULD NOT REMAND.

Even assuming that Cherokee Nation could properly seek remand despite its prior statements, this case should stay here.  Over the last two years, this Court and the parties have devoted an extraordinary amount of time and energy to this bellwether case.  All the usual factors governing remand when supplemental jurisdiction is considered discretionary—judicial economy, convenience, fairness, and comity—confirm that the Court should keep this key bellwether case.

### A.    The Factors Governing Remand Support Keeping This Case.

Consider first the advanced stage of this litigation—and the judicial waste and inconvenience that starting over in state court would work.  The Tenth Circuit has frequently "expressed concern that district courts be aware of the extent of the litigants' pretrial efforts." *Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995); *see also, e.g.*, *Transok Pipeline Co. v. Darks*, 565 F.2d 1150, 1155 (10th Cir. 1977).  That concern is heightened in a bellwether case, which provides guidance in resolving thousands of others.

Since the MDL court sent this case here for trial, this Court has devoted considerable attention to it.  The parties have litigated more than 30 substantive motions—including two motions to dismiss, four motions to stay, four motions to compel, two motions to remand, and two motions to certify orders for interlocutory appeal.  Naturally, that litigation has demanded considerable efforts from the Court.  Magistrate Judge Shreder, for example, has conducted multiple status hearings, during which he worked with the parties toward a case management order, oversaw discovery, heard argument on discovery-related motions, and resolved some of the parties' issues from the bench.  *See* 7/29/2020 Hr'g, Dkt. No. 186; 3/9/2021 Hr'g, Dkt. No. 278;

6/9/2021 Hr'g, Dkt. No. 345.  Magistrate Judge Shreder also has issued a number of substantive orders on discovery-related issues.  For example, he has resolved the geographical, temporal, and medication scope of discovery, *see* Dkt. No. 279; required Cherokee Nation to provide its prescribers' data to Defendants, *see id.*; directed Defendants to provide certain custodians' documents, *see id.*; required CVS to use additional search terms to review for potentially responsive documents, *see* Dkt. No. 346; and ordered Walmart to search certain high-level employees' records, *see id*.

Pursuant to these discovery rulings, Defendants have produced 234,533 documents, totaling more than 923,331 pages, in addition to the documents that Cherokee Nation has access to as part of discovery produced in the Opiate MDL.  Cherokee Nation, for its part, has produced 129,734 documents, totaling more than 714,578 pages of information.  The parties have served over 370 subpoenas to third parties, have served ten sets of requests for production, have served nine sets of interrogatories, and have taken seven depositions, with several more in the process of being scheduled.  *See Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302, 307–08 (5th Cir. 1991) (abuse of discretion to decline jurisdiction "after four years of litigation produced 23 volumes and thousands of pages of record, the preparation of a pretrial order exceeding 200 pages, over a hundred depositions, and according to counsel nearly two hundred thousand pages of discovery production").  Even if some of this discovery could be repurposed in state court, Magistrate Judge Shreder's time and energy resolving the geographical, temporal, and medication scope of discovery could not be.  Nor would his rulings control the scope of discovery back in state court. *See, e.g.*, *Reyes v. APEX Trucking, Inc.*, No. 20-2435, 2021 WL 259406, at *1 (D. Kan. Jan. 26, 2021) (holding that "state court judges' rulings on the contours of allowable discovery in state court cases . . . are subject to different discovery rules").

This Court, too, has also spent significant time and energy on this matter.  Most significantly, this Court issued two orders denying motions to dismiss, one from Distributor Defendants and the other from Pharmacy Defendants.  *See* Dkt. No. 288 (Distributor Defendants); Dkt. No. 289 (Pharmacy Defendants).  In more than 40 pages, this Court independently examined

the sufficiency of the claims in these cases, delving into the details of Oklahoma and federal law. *See, e.g.*, Dkt. No. 288 at 3–4 (explaining that the MDL court's decisions were "not binding" here); Dkt. No. 289 at 4–19 (assessing eleven separate substantive issues raised by Pharmacy Defendants' motion to dismiss). This Court has issued other orders as well, including denying Defendants' request for an interlocutory appeal on the grounds that an interlocutory appeal would "likely result in a delay of the litigation." Dkt. No. 348 at 3; *see also, e.g.*, Dkt. No. 327 (upholding Magistrate Judge Shreder's ruling on the geographic scope of discovery).

This case thus fits within what the Seventh Circuit described as the paradigm of "when a district court should exercise supplemental jurisdiction over pendent state law claims for reasons of judicial efficiency." *Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001). In *Miller*, "the district court considered 22 motions, held 9 hearings, and issued 19 orders, including the 71–page decision presently before [the Seventh Circuit] on appeal. Additionally, [its] orders demonstrate[d] a mastery of the minutiae of [the case's substance]." *Id.* As in *Miller*, the Court's efforts would be wasted—indeed, would likely need to be repeated—if the Court remanded to state court.

This waste of time and effort would tip the scales against remand in any case, but it matters all the more here. Far from a one-off, this is a bellwether case in the "parallel processing" plan that the MDL court established. Ex. G at 1, 3. This action—in Cherokee Nation's own words— is "representative of the many Tribal cases pending in the MDL," so its resolution will "advance the interests of all Tribes with cases pending in the MDL." Ex. B at 9. Remanding would defeat the MDL court's and the JPML's *express purpose* in sending this case back for resolution by a federal district court, depriving all the other federal litigants of the guidance this bellwether case is intended to provide. *See supra* 2–4.

Fairness—both to the parties and to the other litigants in the MDL—cuts against remand as well. Cherokee Nation can hardly complain about having to proceed in this federal forum—*it agreed to do so* to secure transfer from the MDL court, treatment that no other tribal plaintiff in the MDL has received. *See id.*; *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("A

10

district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case."). The Pharmacy Defendants, for their part, do not wish to restart litigation in another forum. Just as importantly, remand would be unfair to other litigants and courts, who, as noted above, were looking to this bellwether case as a guidepost to the resolution of many others pending in federal court. If Cherokee Nation's request is granted, the MDL court's plan for the efficient, coordinated resolution of these cases under the Federal Rules of Civil Procedure and the Federal Rules of Evidence will be upended. Indeed, if the Court is inclined to remand this case to state court, the Pharmacy Defendants ask for the opportunity to first request that the JPML transfer this case back to the MDL. Doing so would allow the MDL court to preserve all of the efforts that the parties and this Court have made thus far and to ensure that this case is resolved under federal procedural rules as intended.

Consider, finally, comity. Substantive federal law—in particular, the Controlled Substances Act ("CSA")—drives much of this litigation even if the claims sound in Oklahoma law. *See, e.g.*, Dkt. No. 289 at 9–10 (analyzing whether the Pharmacy Defendants owe Cherokee Nation duties under the CSA). Moreover, as Cherokee Nation has acknowledged, federal courts— the MDL court and *this* Court—have already ruled on what it sees as "the significant threshold issues of Oklahoma law relating to opioid claims." Ex. B at 9; *see* ECF Nos. 288, 289.

### B.    Cherokee Nation's Counterarguments Fail.

Cherokee Nation argues that remand is proper because its claims "arise under Oklahoma law relating to public health and welfare." Mot. 5. But as just explained, Cherokee Nation ignores how those state law issues are shaped in significant part by the CSA's federal standards. Moreover, while Pharmacy Defendants have raised a number of affirmative defenses under state law, *see id.* at 6–7, they also have lodged a host of federal defenses, including standing, preemption, due process, and the absence of any private right of action under the CSA. *See, e.g.*, Dkt. No. 311, at 73, 75, 80–82, 85–87, 89. And of course, federal courts routinely resolve state law issues over which they have jurisdiction.

Cherokee Nation similarly asserts that the "significant issues of state law" here should be resolved by state judges. Mot. 8. But again, it previously asserted that most of those issues had been resolved. *See* Ex. B at 9. Insofar as some remain, this Court's expertise in Oklahoma law make resolution here perfectly appropriate. Contrary to Cherokee Nation's purported concern, there is no added danger of inconsistent decisions. Opioid-related cases under Oklahoma law are in state *and federal* courts already. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17 MD 2804, 2019 WL 3737023 (N.D. Ohio June 13, 2019) (adjudicating the Muscogee (Creek) Nation's claims under Oklahoma law).

Cherokee Nation also tries to portray this case as in its infancy. *See* Mot. 8–10. That is untrue. As noted above, this Court has engaged in extensive pretrial proceedings involving both discovery and the merits of this case. *See supra* 8–10. Indeed, courts have kept cases at similar (and far earlier) stages in the proceedings,[3] and for good reason. The relevant question is not (just) how far there is to go, but how far the case has come, particularly given this case's status as a bellwether case. On that front, Cherokee Nation's position undermines the JPML's purpose in returning this case to this Court and denigrates the tremendous amount of litigation the parties have already conducted, not to mention the time and energy that this Court has spent mastering the case. *See supra* 8–10.

---

[3] *See, e.g.*, *Hall v. Greystar Mgmt. Servs., L.P.*, 179 F. Supp. 3d 534, 537 (D. Md. 2016) (court had reviewed motions to dismiss but discovery had "not yet commenced"); *MJC Ventures LLC v. Detroit Trading Co.*, No. 219CV13707, 2021 WL 1212534, at *4 (E.D. Mich. Mar. 31, 2021) ("heavy motions practice" but "formal discovery has not yet begun"); *Kovach v. MFA, Inc.*, No. 2:21-CV-00013, 2021 WL 2949556, at *3 (E.D. Mo. July 14, 2021) ("the parties have fully briefed the motion to dismiss, and discovery has commenced."); *Kennedy v. Jefferson Cnty.*, No. 5:13-CV-226, 2014 WL 7151321, at *2 (S.D. Miss. Dec. 12, 2014) ("pending in federal court for seven months; discovery would not conclude for nine more months; and trial was not set for fourteen more months"); *Rose v. Seamless Fin. Corp. Inc.*, No. 11cv00240, 2012 WL 3985964, at *4 (S.D. Cal. Sept. 10, 2012) (retaining case at motion-to-dismiss stage); *Zimmerman v. CitiMortgage, Inc.*, No. 3:11-CV-00164, 2013 WL 588252, at *2 (W.D. Ky. Feb. 13, 2013) ("several orders" and "a dispositive motion to dismiss"); *Milyakov v. JP Morgan Chase, N.A.*, No. C 11-2066, 2011 WL 6012928, at *2 (N.D. Cal. Dec. 1, 2011) (motion to dismiss converted to motion for summary judgment).

Cherokee Nation also asserts that "[c]ourts in this scenario have overwhelmingly remanded the cases." Mot. 10. But it cites no cases that have confronted anything like the scenario here—a party that successfully sought remand from the JPML for the express purpose of "parallel processing" of a bellwether claim by "[an]other federal judge" based on its agreement to remain in federal court. Ex. A at 3, 5. None of its cases therefore are on point. In any event, these cases are distinguishable. Cherokee Nation first strains to find Tenth Circuit support by citing a sixty-year-old case. Mot. 11. But *Martinez v. Seaton*, 285 F.2d 587 (10th Cir. 1961), is irrelevant: The federal-officer defendant there was never amenable to service; the district court quashed the service of summons at the outset; and thus removal was never properly effected under § 1442(a)(1). *See id.* at 589. While Cherokee Nation's other cases involved proper removals—albeit not always under § 1442(a)(1)—those cases likewise have no bearing here. They involved remands at *far earlier* stages of litigation: cases only recently removed,[4] some in which lengthy litigation had proceeded in state court;[5] some in which there had been "no hearings or discovery disputes";[6] and some in which "the Court has made little or no time investment in the state

---

[4] *Gabaldon v. N.M. Coal. to End Homelessness*, No. CIV 17-0473, 2017 WL 3057669, Dkt. No. 25 at *2 (D.N.M. May 30, 2017) ("this action was only recently filed"); *see also Carter v. Cent. Reg'l W. Va. Airport Auth.*, No. 2:15-CV-13155, 2016 WL 4005932, at *2 (S.D. W. Va. July 25, 2016) (claims against federal actor dismissed only "[d]ays after . . . removal"); *D.C. v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 133 (D.C. Cir. 1985) ("the federal party was eliminated shortly after removal"); *Plant Food Sys., Inc. v. Gottwald*, No. 6:12-CV-788-ORL-37, 2012 WL 2568130, at *1 (M.D. Fla. July 2, 2012) ("Plaintiff's Notice of Partial Voluntary Dismissal . . . filed June 15, 2012" and, per Dkt. No. 1, notice of removal filed May 23, 2012); *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 562 (2d Cir. 1978) ("the action was little more than two months old."); *Call v. N.C. Farm Bureau Mut. Ins. Co.*, No. 1:19-cv-00229, 2020 WL 5269800, at *1 (W.D.N.C. Sept. 4, 2020) (defendant United States dismissed one week after removal); *Dennis v. Allis-Chalmers Corp. Prod. Liab. Tr.*, No. C 09-02363, 2009 WL 1874017, at *1 (N.D. Cal. June 26, 2009) ("no defendant except [one] has yet appeared").

[5] *Walker v. Lewis*, No. 2:14-CV-1118, 2015 WL 1926290, at *2 (M.D. Ala. Apr. 28, 2015) (federal actor moved to dismiss on day of removal and "action was before the state court for over seven years prior"); *Dixie Brewing Co. v. Dep't of Veterans Affs.*, No. 13-6605, 2013 WL 6715921, at *2, 4 (E.D. La. Dec. 18, 2013) (action filed in state court on December 6, 2013, removed on December 9, 2013, claims against federal agency dismissed December 18, 2013; related proceedings had "resided for years" in state court).

[6] *Burke v. City of Fort Worth*, No. 19-CV-00744, 2021 WL 347473, at *6–7 (N.D. Tex. Feb. 2, 2021) ("There have been no hearings or discovery disputes. . . . The Court has not reviewed the state claim for legal sufficiency . . . .'"); *see also Gaylord v. Spartan Coll. of Aeronautics &*

substantive issues."[7]  In several others, remand was *unopposed*.[8]  And in still others, it was *unexplained*.[9]

Cherokee Nation's remaining arguments for remand are also mistaken.  It suggests that it matters that this case was filed in a state court "within the Cherokee Nation's tribal jurisdictional area" as its "choice of forum."  Mot. 5.  Cherokee Nation offers no supporting authority or argument for why the address of the courthouse is relevant.  Even if physical location somehow bears on the litigants' convenience, the federal courthouse is less than three miles from Cherokee Nation's border.  And the Court should not credit Cherokee Nation's "choice" of a state forum anyway.  It initially and improperly filed in tribal court; although it refiled in state court, it secured

_____

*Tech., LLC*, No. 16-CV-461, 2019 WL 3400682, at *1, 7 (N.D. Okla. July 26, 2019) (federal-officer defendant moved to dismiss upon removing action, and court "stayed discovery and other proceedings"); *Johnson v. Conley*, No. CIV.A. 12-18, 2012 WL 1947330, at *4 (E.D. Ky. May 30, 2012) ("no significant proceedings in federal court—with the exception of this Order"); *Est. of Guzik ex rel. Guzik v. Mahmud*, No. 09-cv-0657, 2009 WL 1844317, at *1 (W.D. Pa. June 26, 2009) ("no substantive proceedings or significant involvement by this Court"); *Black v. Doe*, No. CIV.A. 11-25, 2011 WL 1642540, at *3 (E.D. Ky. May 2, 2011) (same).

[7] *Macias v. Kerr-McGee Corp.*, No. 92-C-3389, 1993 WL 524734, at *2 (N.D. Ill. Dec. 14, 1993) ("the Court has made little or no time investment in the state substantive issues"); *see also Gulati v. Zuckerman*, 723 F. Supp. 353, 359 (E.D. Pa. 1989) ("no proceedings in this court have addressed the merits of the plaintiff's remaining defamation claim"); *Murphy v. Kodz*, 351 F.2d 163, 168 (9th Cir. 1965) ("no substantial commitment of judicial resources to the nonfederal claims"); *Givoh Assocs. v. Am. Druggists Ins. Co.*, 562 F. Supp. 1346, 1352 (E.D.N.Y. 1983) ("clear that this court has not at this time expended that amount of time and effort which would warrant keeping it").

[8] *See Allender v. Scott*, 379 F. Supp. 2d 1206, 1210–11 (D.N.M. 2005) ("parties agreed to an order remanding the case to state court"); *Marquee Acquisitions, LLC v. Highlander Condos., LLC*, No. 13-00596, 2014 WL 2601464, at *1 (M.D. La. June 10, 2014) ("motion is unopposed"); *Tanner v. Tex. Workforce Comm'n*, No. A-09-CV-429, 2009 WL 10669202, at *5 (W.D. Tex. Oct. 21, 2009) ("the only parties remaining . . . have both requested the Court to remand"); *Carnett v. Watts*, No. 15-CV-02437, 2016 WL 705986, at *2 (D. Colo. Feb. 23, 2016) ("remaining defendants . . . have not filed any responsive pleading"); *Buchinger ex rel. Est. of Buchinger v. Garlock, Inc.*, No. 3:05 CV 118, 2005 WL 2338801, at *2 (N.D. Fla. Sept. 23, 2005) ("none of the remaining defendants have responded to the plaintiff's motion to remand").

[9] *See Everbank v. Blair*, No. 14-CV-22, 2014 WL 3547738, at *3-4 (N.D. Okla. July 17, 2014); *Boeuf River Farm, Inc. v. Trigleth*, No. 5:10CV00279, 2011 WL 5599422, at *2 (E.D. Ark. Nov. 16, 2011); *Gen. Motors Corp. v. Hirschfield Steel Serv. Ctr., Inc.*, 402 F. Supp. 2d 800, 808 (E.D. Mich. 2005).  In a final case, the court abused its discretion by deciding pendent state-law claims after dismissal of anchoring claims without considering whether it was appropriate to do so.  *See Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 417 (D.C. Cir. 2014).

14

its sought-after transfer by agreeing to proceed and *remain* in "the Eastern District of Oklahoma." Ex. B at 9.  It should be held to that deal.

Finally, Cherokee Nation protests that "[t]here is no reason why a tort lawsuit brought by the Attorney General of an Indian tribe should be treated differently" than "similar" opioid lawsuits brought by state attorneys general that are in state courts.  Mot. 6.  But the comparison is off the mark for at least two reasons.  First, the suits by state attorneys general that Cherokee Nation identifies were never consolidated in the MDL, much less remanded to the originating federal district as a bellwether based on a promise not to seek remand to state court.  Second, those lawsuits are not analogous; a suit in the tribe's own courts would mirror that scenario, not one in state court. But the Northern District of Oklahoma enjoined Cherokee Nation's effort to litigate this action in its courts.  Indeed, Cherokee Nation is *better off* than most tribal plaintiffs.  Their claims largely remain pending in the MDL court—again, a situation that Cherokee Nation avoided only by promising to litigate here.

## III.   THIS COURT LACKS AUTHORITY TO REMAND THIS CASE.

If this Court declines to remand for the reasons above, then it need go no further.  But this Court lacks authority to remand in any event.  First, even assuming Cherokee Nation is right that there is no longer a basis for original jurisdiction, nothing in § 1442(a)(1) or the remand provisions authorizes remand just because the anchoring claim was settled.  Second, Cherokee Nation's premise is mistaken: There is federal-question jurisdiction over the tribe's state-law claims because they necessarily implicate substantial federal issues.

### A.   Even Without Original Jurisdiction, There Is No Authority to Remand Now.

"When a case has been properly removed under § 1442(a)," "the district court may remand it back to state court only if it thereafter discovers a defect in removal procedure or a lack of subject matter jurisdiction in the federal court."  *Jamison v. Wiley*, 14 F.3d 222, 238–39 (4th Cir. 1994); *see also Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1453 (4th Cir. 1996); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 & n.13 (6th Cir. 2010).  Because neither of those conditions applies, the Court may not remand this action to state court.

### 1.      Congress Has Not Given This Court Power To Remand.

Subsection 1442(a)(1) permits removal of "[a] civil action" from state court by any person acting at the direction of a federal officer, under the color of federal office, and presenting a colorable federal defense. *See In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1069–70. If those conditions are met, the entire "action" is removed.

Nothing in § 1442(a)(1) authorizes a district court to remand any part of the action later in the proceedings.  Rather, remand is governed by the ordinary remand provision, 28 U.S.C. § 1447(c), which provides that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal."  Thus, after removal under § 1442(a)(1), remand is authorized only if a party identifies a defect with removal within 30 days or if the court lacks subject matter jurisdiction.

Neither basis for remand exists here.  Removal occurred more than three years ago, and the MDL court held it was proper. *See In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1070–79.  (Cherokee Nation does not dispute that the MDL court's ruling controls here.[10])  Nor can Cherokee Nation argue a lack of subject matter jurisdiction.  McKesson's colorable federal defense arose under federal law for Article III purposes. *See Mesa v. California*, 489 U.S. 121, 136–37 (1989); *Osborn v. Haley*, 549 U.S. 225, 244–45 (2007).  In turn, because § 1442(a)(1) requires removal of the entire "action," the statute grants supplemental jurisdiction over all other claims, as Cherokee Nation acknowledges.  Mot. 3.  Cherokee Nation's assertion that "there is no continuing basis for jurisdiction" is thus wrong.  Mot. 2.  Even if the original jurisdictional basis for removal may no longer be present, *but see infra* section III.B, that does not disturb this Court's continuing constitutional and statutory power—and therefore its jurisdiction—over the case. *See, e.g.*, *Rosado v. Wyman*, 397 U.S. 397, 404 (1970) (courts may resolve pendent claims after the "jurisdiction-

---

[10] Cherokee Nation's allusions to a different ruling in a different case involving the State of Oklahoma are—by its own description—irrelevant.  As Cherokee Nation admits, it secured transfer back to this Court by agreeing in the MDL court not to challenge the MDL court's ruling that removal was proper.  Mot. 2–3 n.2.

conferring claim" disappears).  Indeed, Cherokee Nation acknowledges jurisdiction exists by accepting the Court *could* retain the action.  *See* Mot. 4.

When the exercise of supplemental jurisdiction is itself discretionary, federal courts have discretion to remand.  *See Carnegie-Mellon*, 484 U.S. at 350.  Nothing in § 1442(a)(1), however, makes the exercise of supplemental jurisdiction discretionary in this case.  By contrast, § 1367(c) expressly grants district courts discretion to "decline to exercise supplemental jurisdiction" over nonfederal claims related to claims over which the court has original jurisdiction.  28 U.S.C. § 1367(c).  Section 1367(c) thus shows Congress knows how to make supplemental jurisdiction discretionary when it desires to do so, and that district courts do not enjoy similar discretion under § 1442(a)(1).  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Nor, finally, can Cherokee Nation argue that Congress somehow could not have intended to bar remand after an action loses its federal character.  Congress directed exactly that result in a closely analogous context: the provision authorizing removal of a tort action against a federal employee "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment," which "shall conclusively establish scope of office or employment for purposes of removal."  28 U.S.C. § 2679(d)(2).  In that context, the Supreme Court has held that once removal is effected, the action must be retained even if the federal court later rejects the removing defendant's federal character.  *See Osborn*, 549 U.S. at 230, 245.  Here, as there, someone presented a colorable claim to have acted on behalf of (or at the direction of) the United States to secure a federal forum.  Even if the action later loses that federal character, Congress has insisted that the case remain in federal court, as a prophylactic measure given the arguable proximity to vital federal interests.

### 2.     Cherokee Nation's Counterarguments Are Unpersuasive.

Cherokee Nation offers *no* textual basis or reasoned argument why the Court could decline to exercise jurisdiction Congress conferred upon it.  Instead, it cites mostly unpublished cases.  Some of those cases are inapposite, and others offer no grounding in the statutory text.  That failure is particularly important given the Supreme Court's recent and repeated emphasis on the text of statutes, especially in the removal context.  After all, courts may not "ignore clear statutory language on the ground that other courts have done so."  *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S.Ct. 1532, 1541 (2021) (appellate courts reviewing remand orders under § 1447(d) may consider all of the removing party's grounds for removal, not just federal-officer status).

As already explained, Cherokee Nation's lone Tenth Circuit case is irrelevant.  Mot. 11.  Removal of that case was never properly effected under § 1442(a)(1).  *See Martinez*, 285 F.2d at 589; *supra* 13.  Cherokee Nation's out-of-circuit court of appeals cases (Mot. 3–4) do not attempt to follow—and cannot be reconciled with—the statutory text and subsequent Supreme Court precedent.  Two claim "independent authority for a discretion to remand from the nature of the ancillary jurisdiction created by s 1442(a)(1)."  *IMFC Pro. Servs. of Fla., Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 160 (5th Cir. 1982); *see also D.C. v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 133 (D.C. Cir. 1985) (citing *IMFC Pro. Servs. of Fla.*, 676 F.2d at 133).  A third deduces similar authority simply from its view that keeping such cases would be "akin to 'making the tail wag the dog.'"  *Murphy v. Kodz*, 351 F.2d 163, 168 (9th Cir. 1965).

These policy arguments are mistaken.  The Supreme Court has since fully accepted that, under § 2679(d)(2)'s analogous regime, Congress forbade remand of a state tort action *even if* the federal court concludes the defendant federal employee was not acting within the scope of his employment.  *See Osborn*, 549 U.S. at 230, 245.  Moreover, in recent years the Supreme Court has insisted on strict adherence to the text of jurisdictional provisions—particularly the federal officer removal statute—rather than divining authority from the purported "nature" of ancillary jurisdiction.  *See, e.g.*, *BP P.L.C.*, 141 S.Ct. 1532.  Thus, unlike the cases cited by Cherokee Nation, it is the Fourth Circuit that has correctly decided this issue.  *See, e.g.*, *Jamison*, 14 F.3d at 238–39

(granting mandamus where the district court remanded to state court after rejecting a removing defendant's colorable federal defense); *Mangold*, 77 F.3d at 1453 (holding that district courts lack "discretionary power" to remand cases removed under either § 1442(a)(1) or the Westfall Act even after rejecting the federal defense); *cf. Bennett*, 607 F.3d at 1091 n.13 (citing *Jamison* approvingly in noting that the rejection of the federal defense does not defeat jurisdiction).

Finally, Cherokee Nation cites a string of orders from district courts. *See* Mot. 3–4, 11 & n.13. Almost all are unpublished, and none provides any reasoning—let alone textual basis—for a federal court's authority to decline jurisdiction over claims properly removed under § 1442(a)(1). In fact, many of Cherokee Nation's cases (whether from district courts or courts of appeals) were not even removed under § 1442(a)(1). *See, e.g.*, *Araya*, 775 F.3d at 412; *Naylor*, 585 F.2d at 559; *Burke*, 2021 WL 347473, at *6. These cases say nothing about the Court's authority to remand § 1442(a)(1) cases.

### B.   There Are Independent Grounds for Original Jurisdiction.

This case must remain in federal court for yet one more reason. Even though Cherokee Nation's claims nominally sound in state law, there is original federal-question jurisdiction. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). There are two such claims here.[11]

*First*, Cherokee Nation's public nuisance and negligence claims necessarily raise a disputed federal question about the tribe's injury. The cornerstone of Cherokee Nation's case is its allegation that it "has sustained *economic harm* by spending substantial sums trying to fix the societal harms caused by Defendants' nuisance-causing activity, including *costs to the healthcare*

---

[11] Because McKesson removed this entire "action" under § 1442(a), there was no reason for other Defendants to have previously asserted a ground for this Court's subject matter jurisdiction. While Defendants have preserved the right to challenge Cherokee Nation's standing for purposes of this Court's subject matter jurisdiction, *see* Dkt. No. 312 at 90, they never sought to dismiss on the grounds that this Court lacked statutory authority to hear the case.

*. . . systems.*" Dkt. No. 136, ¶ 332 (emphasis added); *see also id.*, ¶¶ 14, 344.  Whether those expenditures constitute injury *to Cherokee Nation* necessarily raises a federal issue, however, given that it arises against the backdrop of a comprehensive federal statutory and regulatory scheme for providing healthcare funding and services to Indian tribes.  *See, e.g.*, The Indian Health Care Improvement Act, 25 U.S.C. § 1601 *et seq.*  The parties also plainly dispute this issue, as Defendants argue that Cherokee Nation is not the real party in interest because the federal government, not Cherokee Nation, ultimately lost money.  *See* Dkt. No. 311, Eighth Defense.

These claims meet the other *Gunn* factors as well.  Whether the comprehensive federal funding scheme allows a tribe to claim economic harm from incurred healthcare costs is a substantial issue affecting numerous tribes nationwide.  Moreover, resolving this issue uniformly in federal court—where over 100 tribal opioid-related cases currently reside—reflects the federal-state balance.  After all, the issue implicates the United States' duty "to provide funding for [healthcare] programs and facilities operated by Indian tribes and tribal organizations." 25 U.S.C. § 1602.  Because "[t]he overriding legal area implicated in this case is the care of Native Americans—a uniquely federal question," "this case involves an area of law not within the purview of the states, but rather one that is solidly within the federal realm."  *Pelt v. Utah*, 104 F.3d 1534, 1544 (10th Cir. 1996).

Courts have recognized as much in similar cases.  In *Acoma Pueblo v. American Tobacco Co.*, for example, the court held that tribal claims against tobacco companies raised federal questions because the tribes sought reimbursement for "alleged expenditures for tobacco-related health care costs" authorized by the Indian Health Care Act.  No. CIV 99-1049M, 2001 WL 37125252, at *6 (D.N.M. Feb. 20, 2001).  And in *Poarch Band of Creek Indians v. Amneal Pharmaceuticals, LLC*—an opioid case—the court granted a manufacturer's request for a stay of the Band's motion to remand because this jurisdictional argument presented, at least, "difficult" questions blocking immediate remand.  CIV.A. No. 20-0279, 2020 WL 3833009, at *5 (S.D. Ala. 2020).  This Court should follow *Acoma*'s lead and exercise jurisdiction over these claims.

*Second*, Cherokee Nation's negligence and public nuisance claims also arise under federal law because they are premised on Defendants' alleged breaches of the CSA.  When an asserted right to relief under state law requires resolution of a federal question, federal law is necessarily raised.  *See Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 722–23 (5th Cir. 2017).  Here, Cherokee Nation undoubtedly relies on the CSA.  In its opposition to Defendants' motion to dismiss, for example, it argued that "Defendants' [v]iolations of the CSA [p]rovide a [p]roper [p]redicate for the Nation's [n]uisance and [n]egligence [c]laim."  Dkt. No. 159 at 25.  While Cherokee Nation at times alludes to Oklahoma law, it focuses on the CSA because the duties that it alleges—the supposed duty to halt suspicious orders and to adopt corporate dispensing policies—can come from only the CSA.

Federal questions about the CSA are also "actually disputed*.*"  *Gunn*, 568 U.S. at 258.  This case has always turned in large part on the existence and scope of alleged duties arising under the CSA; in fact, this Court has already entered rulings on these questions.  Dkt. No. 288 at 9–10; Dkt. No. 289 at 11–13.[12]  These questions are also substantial "to the federal system as a whole."  *Gunn*, 568 U.S. at 260.  Congress, for example, has recognized that "[f]ederal control of the *intrastate* incidents of the traffic in controlled substances is essential to the effective control of the *interstate* incidents of such traffic." 21 U.S.C. § 801(2), (6) (emphasis added).  Article III judges, not state judges, should therefore address the scope of distributors' and dispensers' obligations under the CSA; otherwise, key federal interests—including the scope of DEA's enforcement powers—could be threatened.[13]  Finally, letting federal judges determine the scope of the CSA here will not disrupt

[12] This Court held that Cherokee Nation's claims do not impermissibly seek to enforce the CSA, *see* Dkt. No. 288 at 13, but that is a different question from whether they necessarily implicate substantial questions of federal law that should be resolved in federal court.

[13] This remains true even though the CSA does not itself provide a private right of action. The Supreme Court has held that the absence of a federal right of action does not foreclose federal-question jurisdiction.  *Grable & Sons Metal Prods., Inc v. Darue Eng'g & Mfg.*, 545 U.S. 308, 317 (2005).  And other courts have found a federal issue substantial even without any private right of action.  *See, e.g.*, *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1018–19, 1024 (2d Cir. 2014) (determining that the federal issue was substantial even though the underlying federal statute did not include a private right of action because it was "significant to the development of a

the balance of federal and state responsibilities.  Federal courts *already* exclusively set the CSA's bounds when the DEA enforces the CSA.  *See, e.g.*, 21 U.S.C. § 882(a) (giving district courts exclusive jurisdiction to enjoin violations).  If anything, allowing state courts to resolve these issues would disrupt, not maintain, the federal-state balance.

It is no surprise, then, that other courts have also recognized federal-question jurisdiction over similar claims.  In *Wullschleger*, the Eighth Circuit found that state-law claims involving Food & Drug Administration labeling were "premise[d] . . . on violations and interpretations of federal law" because they "depend[ed] on federal law" and could "not stand alone" from federal law.  953 F.3d at 521–22; *see also, e.g.*, *La. Flood*, 850 F.3d at 722–23 (claims tied up with the scope of a duty of care in the Rivers and Harbors Act and the Clean Water Act).  In fact, numerous courts specifically considering opioid-related litigation have determined that the same jurisdictional issue presented here is sufficiently "difficult" to deny remand prior to transfer to the MDL.  *See, e.g.*, *Bd. of Cnty. Comm'rs of Seminole Cnty. v. Purdue Pharma L.P.*, No. CIV-18-372, 2019 WL 1474397, at *2 (E.D. Okla. Apr. 3, 2019) ("Moreover, it is far from clear that this Court lack[s] jurisdiction in this case."); *Bd. of Cnty. Comm'rs of Pawnee Cnty. v. Purdue Pharma L.P.*, No. 180-CV-459, 2018 WL 5973752, at *3 (N.D. Okla. Nov. 14, 2018) (similar); *Bd. of Cnty. Comm'rs of Delaware Cnty. v. Purdue Pharma L.P.*, No. 18-CV-0460, 2018 WL 5307623, at *1 (N.D. Okla. Oct. 26, 2018) (similar).  This Court should therefore hold that, however artfully pleaded, Cherokee Nation's claims raise substantial questions of federal law that demand uniform answers from a federal court.[14]

## CONCLUSION

Cherokee Nation jumped its case to the front of the line by promising to litigate in this Court, not state court.  Its attempt to break that promise is barred by the doctrines of waiver and

---

uniform body of federal securities regulation"); *Wullschleger v. Royal Canin U.S.A.*, 953 F.3d 519, 522 (8th Cir. 2020).

[14] Because this Court has federal-question jurisdiction over at least these aspects of Cherokee Nation's claims, the rest of the case comes within the Court's supplemental jurisdiction and must remain here, too.  *See* 28 U.S.C. § 1367(a).

judicial estoppel; ignores the enormous resources that the parties and the Court have expended on this case; and, in any event, is barred as a matter of law. This case should remain in this Court.

     For these reasons, the Court should deny Cherokee Nation's motion to remand.

                         Respectfully submitted,

Dated: October 13, 2021

                         /s/ *Amy Sherry Fischer*
                         Amy Sherry Fischer, OBA #16651
                         Larry D. Ottaway, OBA #6816
                         FOLIART, HUFF, OTTAWAY & BOTTOM
                         201 Robert S. Kerr Avenue, 12th Floor
                         Oklahoma City, OK 73102
                         Phone: (405) 232-4633
                         Fax: (405) 232-3462
                         E-mail: larryottaway@oklahomacounsel.com
                         E-mail: amyfischer@oklahomacounsel.com

                         Laura Jane Durfee
                         Andrew Junker
                         JONES DAY
                         2727 N. Harwood St.
                         Dallas, TX 75201
                         Phone: (214) 220-3939
                         Fax: (214) 969-5150
                         E-mail: ldurfee@jonesday.com
                         E-mail: ajunker@jonesday.com

                         Jason Varnado
                         JONES DAY
                         717 Texas, Suite 3300
                         Houston, TX 77002
                         Phone: (832) 239-3939
                         Fax: (832) 239-3600
                         E-mail: jvarnado@jonesday.com

                         Benjamin C. Mizer (admitted *pro hac vice*)
                         Jeffrey R. Johnson (admitted *pro hac vice*)
                         JONES DAY
                         51 Louisiana Avenue, N.W.
                         Washington, DC 20001
                         Phone: (202) 879-3939
                         Fax: (202) 626-1700
                         E-mail: bmizer@jonesday.com
                         E-mail: jeffreyjohnson@jonesday.com

*Attorneys for Walmart Inc.*

/s/ *Conor B. O'Croinin*
Conor B. O'Croinin (admitted *pro hac vice*)
William J. Murphy (admitted *pro hac vice*)
J. Michael Pardoe (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202-1031
Telephone:  (410) 332-0444
Facsimile:  (410) 659-0436
cocroinin@zuckerman.com
mpardoe@zuckerman.com
wmurphy@zuckerman.com

Eric R. Delinsky (admitted *pro hac vice*)
Alexandra W. Miller (admitted *pro hac vice*)
Paul B. Hynes, Jr. (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: phynes@zuckerman.com

G. Calvin Sharpe, OBA #11702
Amy D. White, OBA #19255
PHILLIPS MURRAH P.C.
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, OK 73102
Phone: (405) 235-4100
Fax: (405) 235-4133
E-mail: gcsharpe@phillipsmurrah.com
E-mail: adwhite@phillipsmurrah.com

*Attorneys for CVS Pharmacy, Inc. and*
*Oklahoma CVS Pharmacy, L.L.C.*

/s/ *Steven E. Derringer*
Steven E. Derringer (admitted *pro hac vice*)
Kaspar Stoffelmayr (admitted *pro hac vice*)
BARTLIT BECK LLP

24

54 West Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: steven.derringer@bartlitbeck.com
E-mail: kaspar.stoffelmayr@bartlitbeck.com

Steven E. Holden, OBA #4289
Caleb S. McKee, OBA #32066
HOLDEN LITIGATION, Holden, P.C.
15 East 5th Street, Suite 3900
Tulsa, OK 74103
Phone: (918) 295-8888
Fax: (918) 295-8889
E-mail: steveholden@holdenlitigation.com
E-mail: calebmckee@holdenlitigation.com

*Attorneys for Walgreen Co*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system.  Attorneys for Plaintiff are registered CM/ECF users and will be served by the CM/ECF system.

<u>/s/ *Amy Sherry Fischer*</u>
Amy Sherry Fischer
*Attorney for Walmart Inc.*