**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE CHEROKEE NATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CVS HEALTH CORPORATION; ) | Case No. 18-cv-56-RAW-SPS |
| CVS PHARMACY, INC.; ) | |
| OKLAHOMA CVS PHARMACY, L.L.C.; ) | |
| WALGREENS BOOTS ALLIANCE, INC.; ) | |
| WALGREEN CO.; ) | |
| WAL-MART STORES, INC., ) | |
| ) | |
| Defendants. ) | |

**THE CHEROKEE NATION'S OPPOSITION TO**
**DEFENDANTS MOTION TO STAY**

Defendants have not met their burden to show good cause to stay discovery. Courts allow cases to proceed "except under the most extreme circumstances" and "a discovery stay is particularly disfavored when it would prevent a party from seeking matters relevant to the dispositive motion." *Century Martial Art Supply, L.L.C. v. Dynamics World, Inc.*, No. CIV-17-1194-M, 2018 WL 4390752, at *1 (W.D. Okla. Sept. 14, 2018). *See also MAI Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978, 986 (10th Cir. 1992) ("the right to proceed in court should not be denied except under the most extreme circumstances."). Courts in this district have held that "Defendants, as the parties seeking a stay, bear the burden to make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which they pray will work damage to someone else." *In re Broiler Chicken Grower Litig.*, No. 6:17-CV-00033-RJS, 2017 WL 3841912, at *3 (E.D. Okla. Sept. 1, 2017) (internal alterations and citations omitted); *see also Thies v. Hudson Foods, Inc.*, No. 88-4002-S, 1988 WL 188334, at *1 (D. Kan.

Apr. 18, 1988) ("As a general policy, the Court does not stay discovery because of the pendency of motions for summary judgment or other dispositive motions.").

No court in the Tenth Circuit has found "good cause" for a blanket stay of discovery in circumstances remotely similar to this case, which already survived motions to dismiss and is nearing the home stretch of the discovery schedule. Indeed, in 2020 and 2021 the Court considered extensive briefing on Defendants' arguments about the sufficiency of Plaintiff's claims for negligence, unjust enrichment, and civil conspiracy, and found that Plaintiff stated viable claims for relief that turned on factual issues.[1] Discovery has been underway since July 2020. Collectively the parties have responded to hundreds of discovery requests and produced over a million pages of documents. Defendants have collectively served hundreds of subpoenas. There have been approximately 20 depositions. The parties are working with experts to prepare reports due in early April, and summary judgment motions are due in May. *See* ECF No. 321 (amended CMO). The requested stay could potentially push the trial date into 2023. This case does not fall into the exceptional category where a short stay is warranted pending a dispositive motion early in the case.

Defendants' motion should also be viewed as part of a pattern. Plaintiff filed this case in April 2017 in the district court of the Cherokee Nation. Defendants moved to stay the litigation, arguing it should be brought in state or federal court. Once Plaintiff re-filed the lawsuit in state court in 2018, Defendants removed it to this Court and moved for another stay (ECF No. 25). At that time, the only pending matter was Plaintiff's dispositive remand motion, and Defendants urged the Court not to consider it because the Court would "needlessly familiarize[ ] itself with the intricacies of a case" which Defendants claimed should be "litigated in another court," i.e., the MDL. Then in 2020, when the MDL proposed lifting the stay to remand the case, Defendants opposed that too, claiming the *Cherokee Nation* case should remain stayed.

---

[1] Plaintiff has contemporaneously filed for voluntary dismissal of the public nuisance claim. Weeks ago Plaintiff advised Defendants that a disputed motion on public nuisance may be unnecessary. Defendants proceeded to file the motion for judgment on the pleadings regarding the public nuisance claim.

1

On this backdrop, Defendants ask for another stay. While they previously argued (ECF No. 25) that the Court should not spend time on a case that might be "litigated in another court," they now urge the Court to forge ahead and decide their Rule 12(c) motion in regards to negligence, unjust enrichment, and civil conspiracy *despite* the pending motion for remand to state court. It is difficult to find any consistency in Defendants' procedural arguments in this case, except that they always seek to delay its resolution on the merits.

The gist of Defendants' current stay motion is that the Court should dispose of Plaintiff's negligence, unjust enrichment, and civil conspiracy claims on the pleadings under Rule 12(c). This premise is wrong. Other than the public nuisance arguments (which are moot), Defendants' "dispositive" motion depends on misstating Plaintiff's claims, and overlooking the Court's prior rulings. For example, Defendants claim this is a products liability case, even though Plaintiff has never alleged a product defect and the Court already held "[t]his is not a products liability claim[.]" They contend a claim of civil conspiracy cannot attach to gross negligence, even the court held otherwise. *Cherokee Nation v. McKesson Corp.*, 529 F. Supp. 3d 1225, 1241, 2021 WL 1181176 (E.D. Okla. 2021) ("the court notes that Distributors concede gross negligence can satisfy the underlying tort requirement."). They contend Plaintiff is not seeking disgorgement of Defendants' unjust profits, notwithstanding the clear allegations to the contrary in Plaintiff's complaint. *See, e.g.*, Amended Compl. p. 86 (seeking as relief to "Disgorge Defendants of all amounts they have unjustly obtained"). Defendants should not be entitled to stay discovery merely by filing what amounts to a motion for "reconsideration" of the Court's Rule 12(b) rulings—especially given that Defendants have previously moved (unsuccessfully) to certify the Court's Rule 12(b) rulings for interlocutory appeal.

In sum, other than decision in *Oklahoma ex rel. Hunter* v. *Johnson & Johnson* ("J&J decision"), 2021 WL 5191372, at *1, 2021 OK 54, ¶ 2 (Okla. Nov. 9, 2021)—which by its own terms only addressed a public nuisance claim—the factual and legal landscape is the same as it was in 2021. The Court already carefully reviewed Plaintiff's allegations in the First Amended

2

Complaint—as well as over 150 pages of briefing on these issues—and found that Plaintiff appropriately stated causes of action. To the extent the Court recognized open legal questions, their resolution depended on factual issues.

Defendants cannot meet their burden for other reasons, too. Defendants' stay motion mentions only one example of their alleged "burden" in continuing discovery. Specifically, they mention the burden of collecting certain records of "due diligence" created at Defendants' pharmacy locations in regards to opioid prescriptions (they call this information "notes"). Defendants exaggerate the "burden" associated with this discovery. For each Defendant, Plaintiff offered to identify a sampling of only 250 "customer IDs," and the Defendants would produce only that subset of due diligence for the relevant controlled substances prescriptions. Of the millions of prescriptions Defendants filled in the relevant area, Plaintiff proposed a vanishingly small sample. This proposal is not necessarily more burdensome than Defendants' discovery obligations in other federal cases on this issue.[2]

In any event, Defendants "burden" argument is not a genuine one. Plaintiff invited Defendants to make any counter-proposal—provided that Defendants respected Plaintiff's desire to select due diligence files for discovery (rather than for Defendants to provide a "random" selection). Defendants refused to discuss any proposal under which Plaintiff could choose due diligence files for discovery. *See* **Exhibit A** (emails from Ulrich to Durfee). Thus, "burden" considerations clearly are not the touchstone for Defendants. Rather, their motivation appears to

---

[2] Leading up to the first MDL trial against these Defendants in late 2021 (in which a 12-person jury unanimously found Defendants liable as a result of their unlawful opioid diversion), the four pharmacy defendants were collectively required to produce records relating to about 8,000 prescriptions. In subsequent MDL cases, Defendants have been ordered to produce due diligence records relating to a set of 400 opioid prescriptions, plus records relating to controlled substances prescriptions dispensed to the 400 customers around the same time as the opioid prescriptions. In *Cherokee Nation*—which involves more of Defendants chain pharmacies locations in Northeast Oklahoma than the number of stores at issue in any of the county cases in MDL discovery—Plaintiff requested records of due diligence relating to 250 customers per Defendant.

3

be withholding potentially harmful evidence that supports Plaintiff's claim of gross negligence, not avoiding burden.

Moreover, Defendants' refusal to produce these documents is not related to the J&J decision. Plaintiff began requesting this discovery in *August 2020*. Defendants have objected at every turn to numerous document requests, interrogatories, and related discovery proposals by Plaintiff. Defendants have obstructed this discovery to the point where Plaintiff is preparing for a trial without obtaining the documents, with the consequence that neither party will be able to rely on the "due diligence" notes at trial. And Defendants would be precluded from suggesting they created records which they have refused to produce in discovery.

Defendants also argue that staying all discovery is warranted because certain discovery allegedly should be prohibited under the "learned intermediary" doctrine from *Carista v. Valuck*, 2016 OK CIV APP 66, ¶¶ 6-7, 394 P.3d 253, 256-57 (Okla. Civ. App. 2016). This "learned intermediary" argument occupies only a footnote of Defendants Rule 12(c) motion, where they assert in conclusory fashion that "if this case proceeds, the Court should make clear that the immunity provided by the learned intermediary doctrine applies." Mot. for Judgment, p. 18 fn.3. The footnote fails to mention that the Court previously analyzed about 20 pages of briefing on *Carista v. Valuck* on Defendants' motion to dismiss. The Court was not convinced the doctrine even applies. *Cherokee Nation v. Mckesson Corp.*, No. CIV-18-056-RAW, 2021 WL 1200093, at *3 (E.D. Okla. Mar. 29, 2021) ("[t]he court expresses no opinion, at this time, as to whether the learned intermediary doctrine would apply"), *certificate of appealability denied,* 2021 WL 2695353 (E.D. Okla. June 30, 2021). Defendants are effectively just asking the Court to "make clear" the applicability of a doctrine whose applicability the Court expressly held was *not* clear. The standard of review is the same, the factual allegations are the same, and the legal authorities are the same.

Additionally, Defendants' contention that "the scope of discovery will likely change significantly" is largely disingenuous. Mot. 3. In conferring on the motion to stay, Defendants

4

were unable to identify any aspect of their *own* discovery efforts that would recede once the public nuisance claim was dismissed. Defendants presumably would still claim the relevancy of discovery from the Drug Enforcement Agency, Center for Medicare Services, Department of Justice, Indian Health Services, and numerous state agencies.

Moreover, Defendants contend that proceedings should be stayed because there is a pending "dispositive" motion, i.e., Defendants Rule 12(c) motion. But Plaintiff's pending motion for remand is also a dispositive motion. *See Flam v. Flam*, 788 F.3d 1043, 1046–47 (9th Cir. 2015) (noting that "a motion to remand is a dispositive one") (citing *First Union Mortg. Corp. v. Smith,* 229 F.3d 992, 996 (10th Cir. 2000)). Therefore Plaintiff proposed agreeing to stay the case pending a ruling on the remand motion, for three reasons. *See* **Exhibit B** (email from Ulrich to Durfee).

*First*, Plaintiff moved for remand long before Defendants moved for judgment on the pleadings. *Second*, staying the case pending a remand ruling would potentially spare this Court's judicial resources in dealing with disputes that could be more appropriately resolved in state court. *Third*, and most importantly, a motion for remand presents a "threshold question that a federal court must address before reaching the merits." *Payton v. U.S. Dep't of Agriculture*, 337 F.3d 1163, 1167 (10th Cir. 2003). The Tenth Circuit's instruction about remand motions applies equally to disputes about supplemental jurisdiction, too. *See Rome v. Kansas City*, 2001 WL 1644791, at *1 (D. Kan. Dec. 10, 2001) (ruling on existence of supplemental jurisdiction before motion to dismiss because "[t]he Tenth Circuit has cautioned that, in such circumstances, the 'better practice [is] to rule first on the motion to remand and if granted to ... sen[d] the motion to dismiss back to the state court.'" *Id*. (*quoting In re Bear River Drainage Dist*., 267 F.2d 849, 851 (10th Cir. 1959)).[3]

---

[3] *See also Ledbetter v. Blevins*, 2018 WL 3757598, at *3 (D. Kan. Aug. 8, 2018) ("Tenth Circuit prefers resolution of the motion to remand prior to resolution of the motion to dismiss."); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 607 (3d Cir. 2010) ("The Supreme Court frowns upon a federal court 'resolv[ing] contested questions of law when its jurisdiction is in doubt,'" *quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

But Defendants had no interest in any scenario that would jeopardize their hope the Court will "deny as moot" the jurisdictional dispute—because Defendants' *primary* concern is not actually obtaining a stay, but delay and tactical gamesmanship. That itself should factor into the Court's finding that Defendants have not met their burden to obtain a stay.

## CONCLUSION

For the foregoing reasons, Defendants' motion to stay should be denied.

                Respectfully Submitted,

                */s/ Michael Burrage*
                Michael Burrage; OK #1350
                WHITTEN BURRAGE
                512 N. Broadway Ave., Suite 300
                Oklahoma City, OK 73102
                mburrage@whittenburragelaw.com
                Tel: (405) 516-7800
                Fax: (405) 516-7859

                Tyler Ulrich (*pro hac vice*)
                BOIES SCHILLER FLEXNER LLP
                100 SE 2nd Street, Suite 2800
                Miami, FL 33131
                tulrich@bsfllp.com
                Tel: (305) 539-8400
                Fax: (305) 539-1307

                William S. Ohlemeyer (*pro hac vice*)
                BOIES SCHILLER FLEXNER LLP
                333 Main Street
                Armonk, NY 10504
                wohlemeyer@bsfllp.com
                Tel: (914) 749-8200
                Fax: (914) 749-8300

                Richard W. Fields (*pro hac vice*)
                FIELDS PLLC
                1700 K Street, NW, Suite 810
                Washington, DC 20006
                fields@fieldslawpllc.com
                Tel: (917) 297-3610

                Attorney General Sara Hill

>THE CHEROKEE NATION
>P.O. Box 948
>Tahlequah, OK 74464
>Tel: (918) 453-5000
>Fax: (918) 458-5099
>
>*Attorneys for Plaintiff*
>*Cherokee Nation*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2022, the foregoing document was served on counsel of record for defendants in this action via electronic service through CM-ECF.

*/s/ Tyler Ulrich*
Tyler Ulrich

