**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| THE CHEROKEE NATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CVS HEALTH CORPORATION; | ) | Case No. 18-cv-56-RAW-SPS |
| CVS PHARMACY, INC.; | ) | |
| OKLAHOMA CVS PHARMACY, L.L.C.; | ) | |
| WALGREENS BOOTS ALLIANCE, INC.; | ) | |
| WALGREEN CO.; | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THE CHEROKEE NATION'S OPPOSITION TO**
**<u>DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

**<u>INTRODUCTION</u>**

This lawsuit has been pending almost five years, and the pleadings have been closed for nine months. Across 18 months of discovery, there have been over 20 depositions, with more scheduled. There have been hundreds of written interrogatories and document requests, with over a million pages of documents produced over the past year. Defendants have served hundreds of third-party subpoenas, mostly to state and federal agencies, who have also produced evidence. The parties are in the midst of working with experts to prepare reports due in April, and summary judgment motions are only a few months away under the current schedule. Just two months ago the parties had agreed the trial should be scheduled in 2022.

Defendants contend that none of this evidence is relevant anymore, and the Court should alter its prior rulings, based only on the *Hunter* decision. This contention is wrong. *Hunter* dealt only with the public nuisance claim under Okla. Stat. tit. 50, § 1, which Plaintiff has dismissed. Courts have already declined to broadly read *Hunter* into contexts outside of public nuisance. *See Ferrell v. Cypress Env't Mgmt.-TIR, LLC*, No. 20-5092, 2021 WL 5576677, at *3 n.2 (10th Cir. Nov. 30, 2021) ("Because of *Hunter's* specific focus on public nuisance under Oklahoma law, we do not believe it can be appropriately read as rejecting the adoption of any equitable doctrine thus far unrecognized by the Oklahoma Supreme Court"). Cherokee Nation's remaining claims are not related to public nuisance, and the Court's prior rulings therefore do not need to be reconsidered. *See, e.g.*, *McKosky v. Town of Talihina*, 581 P.2d 482, 486 (Okl. App. 1977) ("[t]he two actions of nuisance and negligence are completely separate torts" where a failure to prove one has no bearing on the merits of the other). The Court has already held that the applicability of the remaining causes of action depends on disputed facts. *See Cherokee Nation v. McKesson Corp.*, 529 F. Supp. 3d 1225, 1235 (E.D. Okla. 2021) ("Distributor Order"); *Cherokee Nation v. Mckesson*

1

*Corp*., CIV-18-056-RAW, 2021 WL 1200093, at *12 (E.D. Okla. Mar. 29, 2021) ("Pharmacy Order"). The MDL court in applying Oklahoma law reached the same conclusion on negligence, unjust enrichment, and civil conspiracy. *See In re Natl. Prescription Opiate Litig*., 1:17-MD-2804, 2019 WL 3737023, at *8 (N.D. Ohio June 13, 2019).

Defendants' ostrich-like refusal to accept that the law can provide a remedy is becoming increasingly discordant with the reality around them. Courts nationwide have denied their motions for dismissal or summary judgment on nearly every state or federal cause of action. Just in November, a 12-person jury in federal court in Ohio unanimously found that Walmart, Walgreens, and CVS were liable for systematically violating controlled substance law. Lawsuits by state attorneys general continue to mount, and the U.S. Department of Justice continues its pursuit of a civil lawsuit against Walmart for gross misconduct with respect to selling prescription opioids in Northwestern Arkansas and Roland, Oklahoma (which is within Cherokee Nation), among other places. Unless cases like this one are actually litigated, and plaintiffs like Cherokee Nation have an opportunity to present evidence, Defendants will never face justice for allegations of their wrongdoing and gross negligence.

In sum, this Court already analyzed the negligence, unjust enrichment, and civil conspiracy claims on hundreds of pages of briefing on motions to dismiss and motions for interlocutory appeal. The Court found that questions about the applicability of the causes of action turned on factual issues. Because public nuisance is no longer part of this case, nothing has materially changed with respect to the legal and factual record before the Court, and there is no reason for the Court to reconsider the prior Rule 12 rulings. *See generally Kennedy v. Lubar*, 273 F.3d 1293, 1298 (10th Cir. 2001) (noting the principle that courts ordinarily "maintain consistency and avoid

2

reconsideration of matters once decided during the course of a single continuing lawsuit."). Defendants' motion for judgment on the pleadings should be denied.

## LEGAL STANDARD

A Rule 12(c) motion "is employed as a vehicle to test the plausibility of a complaint, it must be evaluated as if it were a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint need only "contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A Rule 12(b)(6) motion is properly filed "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A court may deny a Rule 12(c) motion after excessive delay. *See Argo v. Woods*, 399 Fed.Appx. 1 (5th Cir. 2010) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 514 (1990) ("Ordinarily, a motion for judgment on the pleadings should be made promptly after the close of the pleadings")); *Grajales* 682 F.3d at 46 ("[O]nce the parties have invested substantial resources in discovery, a district court should hesitate to entertain a Rule 12(c) motion.").

## ARGUMENT

### A.   The Court should rule on Plaintiff's pending motion for remand before ruling on the merits of Defendants' motion for judgment on the pleadings.

If Plaintiff's remand motion is granted, the Court would not reach the merits of the Defendants' Rule 12(c) motion. The case would be litigated in Oklahoma state court. The pending discovery disputes involving the State of Oklahoma's statutory and constitutional objections to

subpoenas also would be decided by an Oklahoma judge, as well as numerous other pending or anticipated motions, relating to what Defendants described yesterday as "many other potential discovery disputes the parties have not yet submitted to the Court." Reply in Supp. of Mot. to Stay Disc. p.5, ECF No. 496. Both sides agree that the Court should avoid deciding issues that might be litigated in another court—which now clearly includes Defendants' motion for judgment on the pleadings. *See* Mot. to Stay p.4, ECF No. 25 (arguing that the Court should stay Plaintiff's then-pending dispositive motion for remand (ECF No. 12) because the Court should not "needlessly familiarize[] itself" with intricate issues that could be "litigated in another court").

More importantly, the Tenth Circuit has held that remand motions should be decided first in this scenario. *Payton v. U.S. Dep't of Agriculture*, 337 F.3d 1163, 1167 (10th Cir. 2003) (a motion for remand presents a "threshold question that a federal court must address before reaching the merits."). The Tenth Circuit's instruction encompasses disputes about supplemental jurisdiction. *See Rome v. Kansas City*, 2001 WL 1644791, at *1 (D. Kan. Dec. 10, 2001) (ruling on existence of supplemental jurisdiction before motion to dismiss because "[t]he Tenth Circuit has cautioned that, in such circumstances, the 'better practice [is] to rule first on the motion to remand and if granted to ... sen[d] the motion to dismiss back to the state court.'" *Id.* (quoting *In re Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir. 1959)).

Defendants have asserted that these cases do not apply here, because Plaintiff previously moved for remand. There is no authority for that argument, and it makes no sense. In any event, the prior remand motion challenged McKesson's removal, which this Court held was improper under identical circumstances. *See Oklahoma ex rel. Hunter v. McKesson Corp.*, No. CIV-20-172-RAW, 2020 WL 5814161, at *1 (E.D. Okla. Sept. 14, 2020) ("McKesson has failed to demonstrate any of the elements of federal officer removal"). Even if McKesson's removal was proper,

McKesson's dismissal ended the Court's jurisdiction, and Plaintiff promptly moved for remand. They were not successive remand motions on the same issue.

It is also unremarkable that Defendants believe remand is not authorized here. That is always the scenario when remand is disputed, and it was also true of the defendants in *Payton* and *Rome* and other cases where courts have held that remand is a threshold issue to be decided before the merits. *See Payton*, 337 F.3d at 1167; *Rome*, 2001 WL 1644791, at *1; *see also Ledbetter v. Blevins*, 2018 WL 3757598, at *3 (D. Kan. Aug. 8, 2018) ("Tenth Circuit prefers resolution of the motion to remand prior to resolution of the motion to dismiss."); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 607 (3d Cir. 2010) ("The Supreme Court frowns upon a federal court 'resolv[ing] contested questions of law when its jurisdiction is in doubt.'") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

Moreover, Defendants hoped-for sequence of events—*i.e.*, that the Court would grant judgment on the pleadings, and then deny the remand motion as "moot" (*see* Ex. B to ECF No. 488 (email from Defense counsel to Plaintiff)—would not only contradict *Bear River Drainage Dist*, it would be inconsistent with the Supreme Court's emphasis on "two centuries of jurisprudence affirming the necessity of determining jurisdiction before proceeding to the merits." *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 98 (1998) (rejecting the doctrine of "hypothetical jurisdiction" that enables a court to resolve contested questions of law when its jurisdiction is in doubt). In sum, Plaintiff's motion for remand was filed first, precedent instructs it should be decided first, and doing so would be judicially efficient.

## B.    Plaintiff has stated a valid cause of action for negligence.

Under Oklahoma law, negligence "is the failure to exercise ordinary care to avoid injury to another's person or property" and ordinary care "is the care which a reasonably careful person

would use under the same or similar circumstances." *See* OUJI-CIV No. 9.2. In this case Defendants legal duties came from a number of different sources. Courts have held that evidence of a defendant's violations of state or federal statutes—even statutes without a private right of enforcement—are relevant to questions about duties and negligence. *See, e.g.*, *Woods v. United States*, 228 F.2d 734, 736 (10th Cir. 1955) (applying Oklahoma law and finding that even if the evidence "d[id] not establish negligence per se," it was still "prima facie evidence of negligence, which may be rebutted by evidence establishing that the violation was not in fact a failure to exert ordinary care, under the attendant circumstances").

Here there are several applicable requirements of the Oklahoma and Federal Controlled Substances Acts ("CSA") that inform the Defendants' common law duty to prevent the diversion of opioid prescriptions in Cherokee Nation.[1] These statutes and regulations reflect duties of care that should be taken by distributors and retailers who control the opioid supply chain to prevent foreseeable harm to the communities they serve, like the Plaintiff.

For example, pharmacies should have procedures to prevent the filling prescriptions in or around Cherokee Nation that companies knew or should have known were invalid. *See In re Natl. Prescription Opiate Litig.*, 1:17-MD-2804, 2019 WL 3917575, at *7 (N.D. Ohio Aug. 19, 2019) (citing *Masters Pharm., Inc. v. Drug Enf't Administration*, 861 F.3d 206, 212 (D.C. Cir. 2017)). The legal requirement to have "controls and procedures to guard against . . . diversion," 21 C.F.R.

---

[1] Provisions under Oklahoma law are similar to the federal statute. *See, e.g.*, Okla. Admin. Code § 475:20-1-2(a) ("All applicants and registrants shall provide effective controls and procedures to guard against theft and diversion of controlled dangerous substances."); Okla. Admin. Code § 475:20-1-5(b) ("The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled dangerous substances."); Okla. Admin. Code § 475:20-1-5(b) ("The registrant shall inform the OBN of suspicious orders when discovered by the registrant."); FAC ¶¶ 92–93, 96.

§ 1301.71(a) cannot be met if pharmacies freely dispense opioids that are likely to be diverted. As alleged in the Complaint, Defendants failed to meet this duty. *See* First Amended Compl. ¶¶ 100-152 ("FAC").

In prior rulings on motions to dismiss, this Court held that "there is not only a duty to report suspicious orders once detected, but also a duty to either not fulfill those orders or to investigate them to determine that they are not likely to be diverted to illegal channels." *Cherokee Nation v. McKesson Corp.*, 529 F. Supp. 3d 1225, 1235 (E.D. Okla. 2021) ("Distributor Order"). Likewise, consistent with other federal courts and administrative decisions, the Court disagreed with Pharmacy Defendants' argument that "the CSA's dispensing duties apply only to individual pharmacists, not their corporate employers." *Cherokee Nation v. Mckesson Corp.,* CIV-18-056-RAW, 2021 WL 1200093, at *12 (E.D. Okla. Mar. 29, 2021) ("Pharmacy Order"). The Court added that whether "red flags" existed and whether pharmacies were filling illegitimate prescriptions "is a fact question the court does not explore at this time." *Id*. The Court's rulings were consistent with the holdings of the other federal courts to consider duties of distributors and retailers of controlled substances (Defendants here are both).[2]

---

[2] *See* Order Denying Defendants' Motions to Certify Order Under 28 U.S.C. § 1292(b) for Interlocutory Appeal, *City & Cty. of San Francisco v. Purdue Pharma L.P.* ("*San Francisco*"), Case No. 18-CV-07591, ECF No. 344 (N.D. Cal. Nov. 9, 2020) (denying Distributors' 1292(b) motion to certify order relating to CSA duties); *In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804, 2019 WL 3917575, at *9 (N.D. Ohio Aug. 19, 2019). *See also In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745, 781 n. 44, 2020 WL 1669655 (N.D. Ohio 2020) ("West Boca") ("the CSA creates a duty not to put a suspicious order into the stream of commerce" absent due diligence); *City of Chicago v. Purdue Pharma L.P.*, 14 CV 4361, 2021 WL 1208971, at *7 (N.D. Ill. Mar. 31, 2021); see also San Francisco, 491 F. Supp. 3d 610, 671-72 ("the CSA regulations "impose duties on Walgreens in its capacity as a dispenser to implement systems designed to prevent diversion, the violations of which can serve as a premise for liability under California's public nuisance law."); *Top RX Pharmacy; Decision and Order*, 78 FR 26069-01, 26082 (DEA May 3, 2013) ("The corresponding responsibility to ensure the dispensing of valid prescriptions extends to the pharmacy itself.").

In addition, Oklahoma law provides that "foreseeability of harm" to the plaintiff is an important concept in defining a duty. *See Lowrey v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007). When someone "creates a generalized and foreseeable risk of harming others," a "legal duty arises." *Delbrel v. Doenges Bros. Ford*, 913 P.2d 1318, 1321 (Okla. 1996). Defendants had duties not to sell or dispense opioids at the wholesale and/or retail level in or around Cherokee Nation based on suspicious orders, without first resolving their suspicious. Plaintiff's relevant factual assertions include that it was "reasonably foreseeable" to Defendants that their "failure to prevent diversion would cause injuries, including addiction, overdoses, and death"; that "many of these injuries would be suffered by Cherokee Nation and its citizens," and that "the costs of these injuries would be shouldered by Cherokee Nation." FAC ¶¶ 242; 153-175; 333-346. And the Complaint alleges much more than that, too.

These harms were undeniably foreseeable. Indeed, the foreseeability of such harm is partly why the CSA's anti-diversion obligations exist the first place. The CSA explicitly states that "[t]he illegal . . . manufacture, distribution, and . . . improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people." 21 U.S.C. § 801(2); *U. S. v. Moore*, 423 U.S. 122, 135 (1975). Surely Defendants understood the foreseeable risks that the CSA was meant to prevent, and that knowledge of such risks informed their duties of care under Oklahoma law. *See Heckler v. Cmty. Health Svs. of Crawford Cty., Inc.*, 467 U.S. 51, 63 (1984) ("[T]hose who deal with the Government are expected to know the law.").

Moreover, the risk was not only foreseeable, it was actually foreseen by Defendants— because the DEA expressly told them about the risks of opioid diversion. FAC ¶¶ 86-87. Numerous Defendants were investigated and fined by government regulators for their oversupply of the market and failure to prevent diversion. *Id.* ¶¶ 177-211. And Defendants themselves have

acknowledged the risks of opioid diversion and their role in preventing it. FAC ¶¶ 63-64, 343. The known risks included the kind of harms alleged in Plaintiff's Complaint.

For this reason, and as the Court already recognized, Plaintiff's allegations establish foreseeability and duty. It was foreseeable—"to the point of being a foregone conclusion," *see In re Natl. Prescription Opiate Litig.*, 1:17-MD-2804, 2018 WL 6628898, at *19 (N.D. Ohio Dec. 19, 2018)—that Defendants' misconduct for many years and patterns of violating controlled substances laws and professional duties (and at times their own internal policies) would cause damage to Plaintiff. Defendants' arguments to the contrary should be rejected, as they have been rejected in the other cases where the issue has been litigated. *See* Pl's. Opp. to Mot. to Dismiss, ECF No. 159; *see also* Pls'. Opp. to Mot. for Interlocutory Appeal, ECF Nos. 433 and 434 (collecting cases).

**C.     Plaintiff's causation allegations are sufficiently pled and present a factual question that cannot be resolved on the pleadings.**

Causation is a fact question typically left for the jury "unless there is no evidence from which the jury could find a causal nexus" between defendants' wrongdoing and plaintiff's resulting injuries. *Tomlinson v. Love's Country Stores, Inc.*, 854 P.2d 910, 916 (Okla. 1993); *Delbrel v. Doenges Bros. Ford, Inc.*, 913 P.2d 1318, 1322 (Okla. 1996) ("Whether or not the actions of the appellee were the proximate cause of the injury to the appellant, or merely established a condition is a fact question, and therefore one for the jury to decide."); *Blackmer v. Cookson Hills Elec. Co-op, Inc.*, 18 P.3d 381, 385 (Okla. App. Div. 2 2000) ("Finally, the questions of foreseeable consequences and foreseeable acts are questions of fact."). "Whether a negligent event's injurious consequences could have been reasonably foreseen presents a jury question." *Lockhart v. Loosen,* 943 P.2d 1074, 1079–80 (Okla. 1997).

Although Defendants' causation related arguments in their Rule 12(c) motion are not well explained, the crux seems to be Defendants' belief that Plaintiff has not alleged (and/or cannot prove) that each Defendants' misconduct direct harm to Cherokee Nation. This is untrue.

First, the Court already held that Plaintiff's negligence claim presented factual issues about causation that could not be resolved under Rule 12. *Cherokee Nation v. Mckesson Corp*., CIV-18-056-RAW, 2021 WL 1200093, at *4 (E.D. Okla. Mar. 29, 2021) ("Whether the harms the Nation alleges were reasonably foreseeable consequences of the wrongful conduct upon which the Nation's claims are premised—the failure to take effective steps to prevent illegal diversion of prescription opiates—is a fact question"). Plaintiff has alleged, among other things, that "[f]or the Pharmacy Defendants it was reasonably foreseeable that filling invalid or suspicious prescriptions for opioids would cause direct harm to Cherokee Nation, and it was reasonably foreseeable that maintaining corporate policies that facilitated that conduct would cause direct harm to Cherokee Nation" and that Defendants "foreseeably caused direct injuries and damage to Cherokee Nation" through "their unlawful oversupply of prescription opioids in Cherokee Nation." *See* FAC ¶¶ 244, 249. Plaintiff has also included other factual allegations throughout the complaint in support of these allegations. The Oklahoma Uniform Jury Instructions further define proximate cause as "a cause which, in the natural and continuous sequence, produces an injury and without which the injury would not have happened."  *Id.* at 915 n.6; *see also U.S. v. Hamilton*, 889 F.3d 688, 693 (10th Cir. 2018) ("Like Oklahoma case law, the Oklahoma uniform jury instructions provide useful guidance on the content of state law."). The Oklahoma Supreme Court has stated that foreseeability "is the standard by which proximate cause . . . is to be tested."  *Id.* at 916.

Plaintiff's allegations easily meet this standard. Furthermore, Plaintiff intends to prove misconduct on the part of each Defendant that caused damages.  *See Smith v. City of Stillwater*,

10

328 P.3d 1192, 1200 (Okla. 2014) (to make out a claim for negligence Plaintiff need only allege "injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care."). In this regard, the Court already held that Plaintiff's complaint was sufficiently pled. *See* Distributor Order ("The court concludes that the Nation has adequately alleged facts demonstrating . . . a duty because it was foreseeable that negligently failing to prevent the diversion of addictive opioids, including allegedly 'oversupplying the market' with such opioids, would lead to abuse, addiction, and overdoses, and that Nation would pay the price."). At this juncture, nothing more is required.[3]

In response, Defendants offer only a self-serving and spectacularly overbroad reading of *Hunter*, a case involving only a public nuisance theory against a product manufacturer. It is not plausible that the Oklahoma Supreme Court intended to implicitly upend basic principles of Oklahoma negligence, to shield these Defendants from all claims in tort or equity, except for products liability claims (even though these Defendants do not manufacture products).

Defendants' next causation-related argument is based on their assumption that Plaintiff needs to rely on "market share liability" to prove its case. The complaint does commit to "market share liability," nor even suggest the theory. It is primarily a concept used by plaintiffs in products liability cases, which this case is not. If Defendants are correct the doctrine is unavailable in a negligence case, then it will not be part of trial. Its applicability does not necessarily need to be decided under Rule 12(c), since it would not result in any "judgment." It is an issue that could be decided on pre-trial motions, if it comes up at all.

---

[3] Courts have already rejected prior attempts by defendants to impose stricter causation requirements in negligence actions. *West v. Chaparral Energy, LLC*, CIV-16-264-F, 2018 WL 8264627, at *9 (W.D. Okla. Aug. 13, 2018).

11

In any event, Plaintiff intends to prove each Defendants' liability as required by the substantive standards and procedural rules that apply. According to Oklahoma jury instructions that may apply at trial, "[t]here may be more than one direct cause of an injury. When an injury is the result of the combined negligence of two or more persons, the conduct of each person is a direct cause of the injury regardless of the extent to which each contributes to the injury. OUJI-CIV No. 9.7. Further, "[i]f you find that the occurrence was directly caused by the negligence of any or all of [*names of the Defendants*], then you shall use the White Verdict Form and you must determine the percentage of each party's negligence." OUJI-CIV No. 9.34. Defendants have provided no basis to conclude from the pleadings that Plaintiff cannot successfully prove this.

More convoluted (but equally wrong) is Defendants argument that the existence of fault on the part of non-defendants somehow requires judgment on the pleadings in favor of Defendants. First, Defendants have offered no grounding in the pleadings (nor any materials subject to judicial notice) of which particular non-defendants are at fault and for what. Defendants merely contend without support that their combined market share of CVS, Walgreens, and Walmart is too low to be liable. Factually, Plaintiff does not accept Defendants' calculations. Their numbers appear to be limited to only some of the counties at issue, and it is also unclear whether they are counting all the relevant stores, including Walmart's "Sam's Club" branded stores (for which Walmart has opposed producing evidence necessitating a motion to compel).[4]

More fundamentally, Defendants' understanding of the law is incorrect. Negligence claims against defendants with similar market shares have survived motions to dismiss in a number of other opioid claims based on negligence—including in this case, and another negligence claim

---

[4] Their numbers are questionable for other reasons, too, in terms of what are the most relevant numbers to this case. These issues involve factual disputes.

under Oklahoma law decided in the MDL (in addition to other negligence claims that were sustained in the MDL). When this Court previously denied Defendants' motions to dismiss, their "market shares" were already known. Defendants did not seek dismissal on this basis then, because there was no merit to the argument. In the current motion, Defendants are also comparing their "distribution" market shares to distribution-only companies; while this case is also about dispensing. Also, Defendants' "market shares" are irrelevant for the remedy of disgorgement under Plaintiff's unjust enrichment claim.

Rather than litigate the issue under Rule 12(c), if Defendants contend that Plaintiff or non-defendants bear a percentage of fault for Plaintiff's damages, presumably Defendants will seek to incorporate that in their trial strategy in accordance with Oklahoma law and procedure. Indeed, part of the purpose of a "bellwether" case is for Defendants' to test their defenses at trial.

Defendants also overlook the fact that the allegations in the complaint support the application of joint and several liability, which would moot Defendants' arguments about market share and fault allocation. Although the Oklahoma legislature has eliminated joint and several liability in most cases, the old regime still applies to claims that accrued before 2011. *See* Okla. Stat. tit. 23, § 15(c) (providing that joint and several liability applies to negligence actions that accrued before November 1, 2011). At that time, gross negligence also allowed joint and several liability. These issues cannot be decided on Defendants' motion for judgment on the pleadings, as they involve factual disputes. *See West v. Chaparral Energy, LLC*, CIV-16-264-F, 2018 WL 8264627, at *9 (W.D. Okla. Aug. 13, 2018) ("The court does not conclude that identification of any particular fault as the culprit is necessary to avoid Rule 12(b)(6) dismissal"). Additionally, Oklahoma courts have occasionally recognized other "alternative" doctrines for collective or

13

concurrent liability that could apply, depending on the facts.[5] If the facts establish civil conspiracy, a claim that has already survived motions to dismiss, that could also render Defendants' arguments on this subject inapplicable.

Finally, Defendants are incorrect in suggesting that Cherokee Nation's negligence claim "replicates the ills of market share liability" found in *Hunter*. Mot. for J. on Pleadings p.11. Again, in *Hunter* "[t]he question before the Court [was] whether the conduct of an opioid manufacturer in marketing and selling its products constituted a public nuisance under 50 O.S.2011, §§ 1 & 2." *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 721 (Okla. 2021). *Hunter* did not consider a theory of recovery based on negligence and traditional causation principles. It considered the situation that the Court viewed as "expand[ing] public nuisance to cover a manufacturers' production and sale of a product [that] would cause the manufacturer to be responsible for products it did not produce" and for a plaintiff to obtain judgment against the manufacturer for the whole costs of abatement even though "[o]ur Court, over the past 100 years in deciding nuisance cases, has never allowed the State to collect a cash payment." *Id.* at 729. In foreclosing the public nuisance claim, the court specifically mentioned the existence of other potentially viable tort claims. *Id.* at 726 (agreeing with the reasoning of a North Dakota case that an expensive view of public nuisance was not necessary given the "availability of other traditional tort law theories of recovery."); *Id.* at 728 n.18 (noting that the proper remedy in cases where "[a]

---

[5] *Berry v. Empire Indem. Ins. Co.*, 634 P.2d 718, 719 (Okla. 1981) ("Driver 2 as a joint tort-feasor is responsible for all injuries derived from his negligence"); *Ordner v. Reimold*, 278 F.2d 532, 534 (10th Cir. 1960) ("a concurrent act of negligence on the part of another wrongdoer is not independent but concurrent negligence, and the proximate cause of the injury, for which both wrongdoers are liable."); *Freeman Fam. Ranch, Ltd. v. Maupin Truck Sales, Inc.*, CIV-07-1085-D, 2010 WL 908665, at *5 (W.D. Okla. Mar. 9, 2010) ("Accepting Plaintiff's facts and evidence and viewing all inferences in its favor, as required by Rule 56, the Court finds that the theory of alternative liability may be applied under the circumstances presented.")

seller loses control of its product when they are sold" are "actions for negligence or breach of warranty rather than a nuisance action.") (citation omitted).

Besides their shaky reliance on *Hunter*, Defendants mention two other cases, *Steed v. Bain-Holloway*, 356 P.3d 62 (Okla. App. Div. 1 2015) and *Case v. Fibreboard Corp*., 743 P.2d 1062 (Okl.,1987). However, both are merely examples of where courts rejected a liability theory, which on public policy grounds asked for the outright elimination of <u>any</u> requirement to prove a "link between the injury suffered and the risk to which the plaintiff was exposed." *Steed*, 356 P.3d at 67 (quoting *Case* 743 P.2d at 1067). In *Steed*, the court held that a statute was unconstitutional because it attempted to completely foreclose any need to connect a particular defendant to an alleged harm. Thus, the public policy reasons in enacting the statute, curbing drug use and violence, would not be met without connecting wrongdoers to the alleged harm. Similarly, in *Case* the court refused to hold an asbestos manufacturer liable for the injuries alleged by the plaintiff could not show even a minimal possibility that the defendant's product could have harmed them. These holdings are inapplicable here.

 By contract, the Cherokee Nation has already pled (and intends to prove) that it was directly damaged by each Defendants' negligent conduct.

**D.      This is not a products liability case.**

It is the ultimate a straw-man argument for Defendant to continue asserting that Plaintiff cannot prevail on a theory that Plaintiff is not asserting. Plaintiff is the master of the complaint and has not brought products liability claim based on prescription opioids. *Fox v. Mize*, 428 P.3d 314, 323 (Okla. 2018), as corrected (Oct. 2, 2018) ("The Plaintiff has the right to determine the facts she will allege and the claims she will pursue"). This fact should have been obvious based on the fact that Plaintiff has not alleged a defective product. The Court held it was not products liability

case. *See Cherokee Nation v. McKesson Corp.*, 529 F. Supp. 3d 1225, 1238 (E.D. Okla. 2021) ("This is not a products liability claim premised on a defective product").

Defendants contend that dicta from *Hunter* changed the analysis. In that case, "[t]he central focus of the State's complaints is that J&J was or should have been aware and that J&J failed to warn of the dangers associated with opioid abuse and addiction in promoting and marketing its opioid products.  This classic articulation of tort law duties--to warn of or to make safe—sounds in product-related liability." That case involved a single manufacturer, which produced 3% of the opioid products in Oklahoma, and was held liable in public nuisance for 100% of the state's damages. *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 722 (Okla. 2021). At times, the Court analyzed public nuisance doctrine by analogy to products liability; but the Court did not find that the state's only option was to proceed on a products liability theory. Regardless, the claims in this case against retail pharmacy companies are factually and legally different from the claims in *Hunter* against an opioid manufacturer. This case involves negligence arising from violations of duties arising from state and federal controlled substances law, the voluntary undertakings of Defendants, and the reasonable person standard. This case does not involve defective products, but rather negligent conduct that caused harm to Plaintiff.

**E.     The economic loss doctrine is inapplicable to Plaintiff's negligence claim.**

There is no merit to Defendants' contention that the economic loss doctrine requires judgment in their favor. The argument turns on a comment in the Third Restatement of Torts from 2020,[6] which Defendants claim stands for the position that the economic loss doctrine applies to all tort claims. No Oklahoma court has ever relied on this comment from the Third Restatement;

---

[6] They also cite a ruling from Arizona that does not rely on Oklahoma law. *See generally CVS Pharmacy, Inc. v. Bostwick*, 494 P.3d 572 (Ariz. 2021).

Defendants merely suggest the comment should be deemed persuasive because the *Hunter* court cited a *different* comment (from a *different* section) of the Third Restatement that was "part of the same chapter."

Put differently, Defendants believe *Hunter* "signaled it alignment" with all the comments from an entire chapter of the Third Restatement merely by citing a single comment relating to a different topic. This argument is not sound. By Defendants' logic, the *Hunter* court also "signaled its alignment" with the comments about economic loss in the *Second* Restatement of Torts, under which the economic loss doctrine would not bar Plaintiff's negligence claim. *See* Restatement (Second) of Torts § 766C cmt. b (Am. L. Inst. 1979) (citations omitted). *See also Mountain Bird, Inc. v. Goodrich Corp.*, 369 F. App'x 940, 945 (10th Cir. 2010).

Moreover, the holding of virtually every court that has actually considered the issue under Oklahoma law indicates that the doctrine would not apply in this case. *See Compsource Oklahoma v. BNY Mellon, N.A.*, No. CIV-08-469-KEW, 2009 WL 2366112, at *2 (E.D. Okla. July 31, 2009) ("[n]o authority has been cited from a court in Oklahoma specifically adopting the economic loss rule outside of the products liability arena" and finding that "this Court is not prepared to conclude Oklahoma would adopt the economic loss rule in the context of this case."); *Friesen v. Erb*, No. CIV-10-0140-C, 2012 WL 1142901, at *1 (W.D. Okla. Apr. 5, 2012) (holding that the economic loss doctrine does not apply to negligence claims except for product defects, *citing Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649, 653 (Okla. 1990).[7]

---

[7] *See also Dutsch v. Sea Ray Boats, Inc*., 845 P.2d 187, 194 (Okla. 1992) ("[W]e decline to extend *Waggoner* [i.e., the economic loss doctrine] beyond those situations in which a plaintiff suffers damage only to the product itself."); *Gavilon Fertilizer, LLC v. Newbern Fabricating, Inc.*, No. 14-CV-0610-CVE-TLW, 2016 WL 4059251, at *6  (N.D. Okla. July 28, 2016) ("[T]his Court is unprepared to conclude that Oklahoma courts would adopt the 'contractual' economic loss rule in areas of the law beyond products liability.  Oklahoma courts have given no indication . . . that

**F.       The "Innocent Seller" statute does not apply.**

Once again, this argument turns on Defendants' products liability theory. As this Court previously explained: "It is not primarily the product Pharmacies sold that has led to this lawsuit; it is Pharmacies' alleged wrongful conduct in selling that product." *Cherokee Nation v. Mckesson Corp.*, No. CIV-18-056-RAW, 2021 WL 1200093, at *7 (E.D. Okla. Mar. 29, 2021). The Court noted that the innocent seller statute "as a whole is very clearly concerned with defective products and limiting liability arising from such claims—it is titled "Inherently Unsafe Product Liability Limitation." *Id.* Defendants did not "cite a single case supporting the proposition that the innocent seller provision applies to matters unrelated to defective products." *Id.* at *7.

*Hunter* does not limit Plaintiff to a products liability cause of action. If Defendants' sweeping interpretation of *Hunter* were correct, it would mean *Hunter* implicitly overruled several lines of Oklahoma jurisprudence (including prior cases from the Oklahoma supreme court) that are unrelated to public nuisance. It would mean *Hunter* intended to silently but categorically eliminate causes of action that were not at issue in *Hunter*, such as negligence claims against alcohol purveyors and pharmacies. It would be unreasonable to infer that was the court's intent. *See Krieger v. Bausch,* 377 F.2d 398, 401 (10th Cir. 1967) (noting that "[a]n intention to overrule a number of longstanding precedents should be expressed in plain and explicit terms") (quoting 20 Am. Jur.2d, Courts, § 232.). For example, in *Brigance v. Velvet Dove Rest., Inc.*, 725 P.2d 300, 304 (Okla. 1986), the Oklahoma Supreme Court found a common-law cause of action against liquor vendors who overserved drunk patrons. In 2017, several years after the enactment of the "Innocent Seller" statute, the Oklahoma Supreme Court reaffirmed *Brigance* and even extended

Oklahoma courts would extend the reach of this economic loss doctrine to negligent construction claims."); *Agape Flights, Inc. v. Covington Aircraft Engines, Inc.*, No. CIV-09-492-FHS, 2012 WL 2792452, at *3 (E.D. Okla. July 9, 2012) (similar).

18

its holding (to apply to convenience stores and other alcohol sellers). *See Boyle v. ASAP Energy, Inc.*, 408 P.3d 183, 195 (Okla. 2017), *reh'g denied* (Dec. 11, 2017). There is no reasonable interpretation of *Hunter* that overrules *Boyle* and all other cases in which courts have allowed negligence or unjust enrichment claims against any defendant in a supply chain and/or involved with selling products, such that the Innocent Seller statute always applies.[8]

## G.   Plaintiff stated a viable claim for unjust enrichment.

Defendants contend Plaintiff's unjust enrichment is "materially indistinguishable from the public nuisance theory rejected by *Johnson & Johnson*." Mot. 19. In fact, *Johnson & Johnson* is easily distinguishable. It was a public nuisance claim against a manufacturer held liable for abating harms for which there was no evidence it caused. By contrast, Plaintiff is seeking disgorgement of Defendants' ill-gotten profits from their diversion of prescription opioids in Cherokee Nation. Defendants do not dispute that disgorgement is an appropriate remedy for unjust enrichment; in fact, they have previously asserted that Plaintiff is *limited* to that measure of a remedy.

---

[8] With regard to *Carista v. Valuck*, 2016 OK CIV APP 66, ¶¶ 6-7, 394 P.3d 253, 256-57 (Okla. Civ. App. 2016), a negligence and wrongful death case against a pharmacy, Defendants believe *Hunter* should be interpreted to overrule and foreclose *Carista* and all other cases like it (i.e., because it was not a products liability claim). Recognizing the implausibility of their broad interpretation of *Hunter*, Defendants argue a backup that "if this case proceeds, the Court should make clear that the immunity provided by the learned intermediary doctrine [from *Carista*] applies." Mot. for J. on Pleadings, p. 18 fn. 3. The footnote fails to mention that the Court previously analyzed about 20 pages of briefing on *Carista v. Valuck* on Defendants' motion to dismiss. The Court was not convinced the doctrine even applies here. *Cherokee Nation v. Mckesson Corp.*, No. CIV-18-056-RAW, 2021 WL 1200093, at *3 (E.D. Okla. Mar. 29, 2021) ("[t]he court expresses no opinion, at this time, as to whether the learned intermediary doctrine would apply"), *certificate of appealability denied*, 2021 WL 2695353 (E.D. Okla. June 30, 2021). Defendants are effectively asking the Court to revisit the issue and "make clear" the applicability of a doctrine whose applicability the Court previously found was *not* clear. The standard of review is the same, the factual allegations are the same, and the legal authorities are the same on this issue.

Under Oklahoma law, unjust enrichment occurs when a "party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Harvell v. Goodyear Tire & Rubber Co*., 164 P.3d 1028, 1035 (Okla. 2006) (footnote omitted). To state a claim for unjust enrichment, a plaintiff must plausibly allege: "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another." *S. Rock Inc. v. Summers*, No. 6:11-CV-257-RAW, 2012 WL 6722356 (E.D. Okla. Nov. 15, 2012); *see also N.C. Corff P'ship, Ltd. v. OXY USA, Inc*., 929 P.2d 288, 295 (Okla. Civ. App. 1996) (the basis of unjust enrichment is "that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another . . . ." (quotation omitted)).

Plaintiff's claim for unjust enrichment is supported by the allegations. What Defendants call the theory of "negative externalities" pertains to the element of "at the expense of another." *See Summers*. In other words, it is not seriously disputed that Cherokee Nation's complaint pleads that it shouldered expenses from Defendants' conduct (and therefore Defendants' activity was indeed "at the expense of another"). The only dispute was the extent to which the dollars Cherokee Nation expended needed to be the same exact dollars that Defendants received in their cash registers as "profit." There is no Oklahoma law that requires a dollar-for-dollar transactional nexus to state a claim for unjust enrichment. This is clear by the statements of law in the cases cited above. Plaintiff alleged in the complaint:

> 350. Cherokee Nation's expenditures in providing healthcare services to people who use opioids have added to Defendants' wealth. The expenditures by Cherokee Nation have helped sustain Defendants' businesses.

> 351. In this way, Cherokee Nation has conferred a benefit upon Defendants, by paying for what may be called Defendants' externalities—the costs of the harm caused by Defendants' improper sales, distribution, and dispensing practices.

> 352. Defendants made substantial profits from their sale of prescription opioids while fueling the prescription opioid epidemic in Cherokee Nation.

353. Defendants continue to receive considerable profits from the sale, distribution, and dispensing of controlled substances in Cherokee Nation. Defendants are aware of these obvious benefits, and that retention of these benefits is not justified under these circumstances. Defendants have been unjustly enriched by these benefits. It would be inequitable to allow Defendants to retain these benefits.

FAC ¶¶ 350-353. As a remedy under the "Prayer for Relief" section on page 83, Plaintiff claimed as a remedy for unjust enrichment:

i. Award Cherokee Nation restitution of its costs caused by Defendants' actions, including the costs of addressing Defendants' externalities and the costs of prescription opioids paid for by Cherokee Nation;

ii. Disgorge Defendants of all amounts they have unjustly obtained; and

iii. Order such further relief as justice and equity may require.

FAC p. 83. Even an extremely broad reading of *Johnson & Johnson* would not foreclose any of these claims for relief. *Ferrell v. Cypress Env't Mgmt.-TIR, LLC*, No. 20-5092, 2021 WL 5576677, at *3 n.2 (10th Cir. Nov. 30, 2021) ("Because of *Hunter's* specific focus on public nuisance under Oklahoma law, we do not believe it can be appropriately read as rejecting the adoption of any equitable doctrine thus far unrecognized by the Oklahoma Supreme Court"). Indeed, Plaintiff's request in paragraph (i) for "restitution of [Plaintiff's] costs" is expressly limited to costs "*caused* by Defendants' actions." *Johnson & Johnson* was concerned with an entirely different issue. And certainly *Johnson & Johnson* does not foreclose Plaintiff's claim in paragraph (ii) for disgorgement of money that Defendants unjustly obtained. This court, the MDL court, and the trial court in *Johnson & Johnson* all held that this kind of theory is viable under Oklahoma law. The Supreme Court's decision did not change Oklahoma law on unjust enrichment.

Defendants separately argue that *Hunter* stands for the proposition that their conduct was not "unjust." Mot. 22 (arguing their "'enrichment' was not an 'injustice'"). The only explanation for this argument is that Defendants are not accepting as true the well-pled factual allegations in

21

Plaintiff's complaint. To be clear, the profits at issue in Plaintiff's unjust enrichment claim are ill-gotten profits Defendants gained in Cherokee Nation from violating a set of law specifically enacted to protect people's lives, whose violation caused harm to Cherokee Nation. Defendants are alleged to have routinely distributed prescription opioids based on prescriptions that Defendants *knew* were invalid. Therefore, Defendants' denial of unjust conduct is not consistent with Plaintiff's factual allegations, to say the least.

**H.      Plaintiff properly stated a claim for civil conspiracy, which turns on disputed facts.**

Defendants' civil conspiracy argument can be easily rejected. They contend that: because not *every* act of gross negligence necessarily rises to the level of "intentional" conduct, therefore civil conspiracy can *never* attach to the underlying tort of gross negligence. This argument is not logical. Even if not *every* act of gross negligence is an intentional tort, that just suggests a case-by-case factual determination of whether a gross negligence claim supports a conspiracy claim in any particular case. That cannot be done on the current Rule 12(c) motion.

In any event, this issue has already been briefed and decided. On motions to dismiss, the Distributor Defendants conceded gross negligence is an intentional tort. The Court wrote, "[t]he court notes that Distributors concede gross negligence can satisfy the underlying tort requirement [see Docket No. 146, at 32], but the court also concludes that public nuisance may satisfy it as well. Public nuisance, if committed intentionally, may constitute an intentional tort." Pharmacy Defendants' current attempt to reargue this point fails for three reasons.

*First*, the Pharmacy Defendants incorporated the Distributor Defendants' brief by into their own. *See* ECF No. 147 n.2 ("Pharmacy Defendants also incorporate by reference all applicable arguments set out in Distributor Defendants' Motion to Dismiss"). This was an "applicable argument"—because Pharmacy Defendants did not include *any* of their own arguments about

which torts can support a civil conspiracy claim. They relied entirely on Distributor Defendants to cover this point. The Court previously noted this bit of gamesmanship:

> Pharmacies have sought to "incorporate by reference all applicable arguments set out in Distributor Defendants' Motion to Dismiss." [Docket No. 147, at 4 n.2]. The court rejects those arguments here for the reasons set out in its order addressing distributor Defendants' Motion to Dismiss. The court further discourages such incorporations of arguments in future briefings. By incorporating arguments in this manner, Pharmacies have effectively increased the length of their briefing beyond that granted by the court. If permitted, Defendants in this case could "double-team" the Nation, splitting arguments between their filings, or raising alternative grounds in support of the same arguments, and then incorporating those arguments not raised in their own motions.

Pharmacy Defendants should not be allowed to benefit from now disowning a position they previously adopted in order to gain advantage by "splitting arguments between their filings."

*Second*, regardless of whether Pharmacy Defendants have *conceded* the point, the Court's order denying Distributor Defendants' motion to dismiss seemingly already *held* this point.  The Court wrote "the court also concludes that public nuisance may satisfy it as well"—meaning, as well as gross negligence.

*Third*, regardless of the prior arguments and ruling, it cannot be disputed that gross negligence can be an intentional tort in Oklahoma. *See Graham v. Keuchel*, 847 P.2d 342, 362 (Okla. 1993). Therefore, it can support a civil conspiracy claim in Oklahoma (none of Pharmacy Defendants' cases hold differently). Indeed, the analysis should be exactly the same as this Court's finding that public nuisance can support a civil conspiracy claim because: "Public nuisance, *if committed intentionally*, may constitute an intentional tort." (emphasis added). The same analysis applies to gross negligence: *if committed intentionally*, it may constitute an intentional tort, and therefore support a civil conspiracy claim. At a minimum, the issue cannot be decided on the pleadings.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for judgment on the pleadings should be denied.

Respectfully Submitted,

*/s/ Tyler Ulrich*

Tyler Ulrich (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
tulrich@bsfllp.com
Tel: (305) 539-8400
Fax: (305) 539-1307

William S. Ohlemeyer (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
wohlemeyer@bsfllp.com
Tel: (914) 749-8200
Fax: (914) 749-8300

Michael Burrage; OK #1350
WHITTEN BURRAGE
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
mburrage@whittenburragelaw.com
Tel: (405) 516-7800
Fax: (405) 516-7859

Richard W. Fields (*pro hac vice*)
FIELDS PLLC
1700 K Street, NW, Suite 810
Washington, DC 20006
fields@fieldslawpllc.com
Tel: (917) 297-3610

Attorney General Sara Hill
THE CHEROKEE NATION
P.O. Box 948
Tahlequah, OK 74464

24

Tel: (918) 453-5000
Fax: (918) 458-5099

***Attorneys for Plaintiff***
***Cherokee Nation***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2022, the foregoing document was served on counsel of record for defendants in this action via electronic service through CM-ECF.

*/s/ Tyler Ulrich*
Tyler Ulrich
