IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEROKEE NATION,<br><br>*Plaintiff*<br><br>–v–<br><br>CVS PHARMACY, INC.; OKLAHOMA CVS PHARMACY, L.L.C.; WALGREEN CO.; WAL-MART STORES, INC.,<br><br>*Defendants.* | Case No. CIV–18–56–RAW–SPS<br><br>Hon. Ronald A. White |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS**

## Table of Contents

**Table of Authorities** ................................................................................................................................ ii

**Introduction** ................................................................................................................................................ 1

**Argument** .................................................................................................................................................... 1

    I.    The Court May Decide Defendants' Motion for Judgment on the Pleadings Before Ruling on Plaintiff's Motion to Remand. ........................................................................ 1

    II.   Plaintiff's Claim for Negligence Fails After *Johnson & Johnson*. .................................................... 2

        A.   *Johnson & Johnson* Defeats Plaintiff's Theory Of Causation. .................................................. 2

        B.   Plaintiff's Negligence Claim Fails Under Restatement (Third) Section 7. ...................................................................................................................................... 4

        C.   *Johnson & Johnson* Defeats Plaintiff's Theory of Duty. ............................................................ 6

        D.   Under *Johnson & Johnson*, Plaintiff's Remedy Is Limited to Products Liability. .............................................................................................................................................. 7

    III.  *Johnson & Johnson* Forecloses Plaintiff's Unjust Enrichment Claim. ........................................... 8

    IV.  Plaintiff's Claim for Civil Conspiracy Fails for Lack of an Underlying Tort. ........................... 9

**Conclusion** ................................................................................................................................................ 10

## Table of Authorities

**Cases**

*Boyle* v. *ASAP Energy, Inc.*, 2017 OK 82 408 P.3d 183, 2017 OK 82 (Okla. 2017), *reh'g denied* (Dec. 11, 2017) ...................................................................................................... 7

*Brigance* v. *Velvet Dove Rest., Inc.*, 1986 OK 41, 725 P.2d 300 (Okla. 1986) .............................. 7

*Case* v. *Fibreboard Corp.*, 1987 OK 79, 743 P.2d 1062 (Okla. 1987) ............................................. 4

*City of Tulsa* v. *Bank of Okla., N.A.*, 2011 OK 83, 280 P.3d 314 (Okla. 2011) .......................... 8

*CVS Pharmacy, Inc.* v. *Bostwick*, 251 Ariz. 511, 494 P.3d 572 (2021) ............................................. 5

*Ferrell* v. *Cypress Environmental Management-TIR, LLC*, No. 20-5092, 2021 WL 5576677 (10th Cir. Nov. 30, 2021) .................................................................................................. 8

*Graham* v. *Keuchel*, 1993 OK 6, 847 P.2d 342 (Okla. 1993) ....................................................... 10

*Kasok* v. *Catholic Health Initiatives of Colo.*, 2009 WL 3497782 (D. Colo. Oct. 28, 2009) ........................... 2

*Lowery* v. *Echostar Satellite Corp.*, 2007 OK 38, 160 P.3d 959, 2007 OK 38 (Okla. 2007) ......................... 6

*Mountain Bird, Inc.* v. *Goodrich Corp.*, 369 F. App'x 940 (10th Cir. 2010) ...................................... 5

*Oklahoma ex rel. Hunter* v. *Johnson & Johnson*, 2021 OK 54, 2021 WL 5191372 (Okla. Nov. 9, 2021) .......................................................................................................... passim

*Sanders* v. *Crosstown Market, Inc.*, 850 P.2d 1061 (Okla. 1993) .................................................. 7

*Steed* v. *Bain-Holloway*, 2015 OK CIV APP 68, 356 P.3d 62, 66, 2015 OK CIV APP 68 (Okla. Civ. App. 2015) ............................................................................................... 4

*Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83 (1998) ............................................................. 1

*Tomlinson* v. *Love's Country Stores, Inc.*, 1993 OK 83, 854 P.2d 910 (Okla. 1993) ........................ 7

*Tulsa Propulsion Engines, Inc.* v. *Honeywell Int'l, Inc.*, 2007 WL 4345207 (E.D. Okla. Dec. 10, 2007) ............................................................................................................. 5

**Statutes**

Okla. Stat. tit. 12, § 95(A)(3) .......................................................................................................... 4

Okla. Stat. tit. 76, § 57.2(G) .......................................................................................................... 7

**Other Authorities**

Restatement (Second) of Torts § 766C ......................................................................................... 5

Restatement (Third) of Torts § 7 .................................................................................................. 4

Restatement (Third) of Torts § 8...........................................................................................................5

6:18-cv-00056-RAW-SPS   Document 505   Filed in ED/OK on 02/04/22   Page 4 of 17

*iii*

Defendants CVS Pharmacy, Inc., Oklahoma CVS Pharmacy, L.L.C., Walgreen Co., and Walmart, Inc. submit this reply in support of their motion for judgment on the pleadings.

## Introduction

Plaintiff Cherokee Nation's reaction to the momentous decision in *Oklahoma ex rel. Hunter* v. *Johnson & Johnson*, 2021 OK 54, 499 P.3d 719, is to accuse *Defendants* of denying the legal "reality around them," which supposedly provides Plaintiff a remedy from pharmacies for alleged amorphous economic losses arising from opioid abuse. *See* ECF No. 499 at 2. But it is Plaintiff who ignores reality. Without any sense of irony, Plaintiff's primary support for its claimed remedy is a recent jury verdict in the federal MDL. Yet that case was tried solely on public nuisance, and Plaintiff has now *moved to dismiss* its own claim for public nuisance *with prejudice*, because *Johnson & Johnson* clearly foreclosed it.

Plaintiff insists that *Johnson & Johnson* does not affect its other claims, despite the Court's sweeping statements about confining liability for damages arising from social problems like prescription opioid abuse. To the contrary: *Johnson & Johnson* is an authoritative pronouncement that Oklahoma law is not in accord with the amorphous theories of liability endorsed by a federal district court in Ohio and by certain other trial-level courts that have followed the MDL's lead. After *Johnson & Johnson*, the law may shift in other jurisdictions. But for *this* jurisdiction, *Johnson & Johnson* makes clear that Defendants are entitled to judgment on *all* counts of Plaintiff's Complaint.

## Argument

**I.     The Court May Decide Defendants' Motion for Judgment on the Pleadings Before Ruling on Plaintiff's Motion to Remand.**

Before addressing the merits, the Nation asserts that the Court *must* decide its remand motion first, because courts have to "determin[e] jurisdiction before proceeding to the merits." Opp'n 5 (quoting *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 98 (1998)). That might be true in cases like *Steel Co.*, where the question is whether the court has jurisdiction at all. But not here. The Cherokee Nation admits that this Court may, "in its discretion," keep the case despite McKesson's departure.

ECF No. 420 at 4. There is thus no danger that this Court would exercise "hypothetical jurisdiction," ECF No. 499 at 5, by first ruling on Defendants' motion for judgment on the pleadings.

The Nation also argues that this Court *should* decide its remand motion before resolving the merits. The "prefer[red]" practice may be to address discretionary jurisdictional questions before the merits. *Id.* But no ironclad rule compels that order of operation. A court confronted with full merits briefing alongside a discretionary motion to remand—the situation here—could easily conclude that it makes more sense to decide the merits rather than send the case back to square one in state court, resolving both motions at once. *See, e.g.*, *Kasok* v. *Catholic Health Initiatives of Colo.*, 2009 WL 3497782, at *7–8 (D. Colo. Oct. 28, 2009) (deciding remaining state law claims to avoid "inevitable delay" and "duplication of effort"). Defendants are content to let this Court manage its own docket.

## II.     Plaintiff's Claim for Negligence Fails After *Johnson & Johnson*.

Much of Plaintiff's argument in support of its negligence claim does not respond to Defendants' motion, which focused on four arguments arising from *Johnson & Johnson*.

### A.     *Johnson & Johnson* Defeats Plaintiff's Theory Of Causation.

Plaintiff's negligence count is simply another form of the public-nuisance theory rejected in *Johnson & Johnson*—that the sale of a lawful product exposes a defendant to expansive liability for governmental losses in responding to an epidemic. Like the public-nuisance theory the Oklahoma Supreme Court rejected, Plaintiff's negligence theory does not plead a causative link between the alleged wrongful conduct of any particular defendant and the economic harm the Nation alleges it incurred. *See* ECF No. 469 at 11–12.

As Defendants explained, Plaintiff pleaded negligence as an extreme form of market share liability. In opposition, Plaintiff says the "complaint does not commit to 'market share liability,' nor even suggest the theory." ECF No. 499 at 11, ECF No. 503 at 1. Even if the Complaint does not use the phrase "market share liability," it unmistakably relies on the theory. Plaintiff alleges that Defendants

2

breached statutory and common law duties, but *not* that those breaches directly injured the Nation. Rather, Plaintiff alleges that Defendants' conduct "oversuppl[ied] the market on and around Cherokee Nation with highly-addictive prescription opioids." ECF No. 136 ¶ 337.a; *see also id.* ¶ 34. This "oversupply" led to prescription-opioid abuse by the Nation's members. In turn, that abuse led to alleged economic losses by the Nation. As the *only* allegation of (compensatory) damage in Plaintiff's negligence count states: "Defendants' conduct was the cause-in-fact and proximate cause of injuries and damages to Cherokee Nation, including but not limited to the following: increased costs for the healthcare, criminal justice, social services, welfare, and education systems, as well as the cost of lost productivity and lower tax revenues." *Id.* ¶ 344. This theory of liability—an oversupplied market causing abuse of opioids that in turn caused economic loss to those providing services related to opioid abusers—can be proved only by employing a boundless form of market share liability that eliminates the element of causation.

Plaintiff does not even suggest that it will try to prove causation in any recognized manner. In fact, Plaintiff has committed to *not* proving any specific instance of caused harm throughout this case. *See, e.g.,* ECF No. 443 at 8. And for good reason. Establishing a causal chain would require Plaintiff, for instance, to show that a pharmacist working at any one of the four CVS pharmacies within the Cherokee Nation failed to identify a red flag on a given prescription, leading to the diversion of particular opioid pills, which were then abused by a Nation member, who weeks or months later caused economic loss to Plaintiff by straining educational resources or earning less taxable income. To make matters worse for Plaintiff, Plaintiff's allegations establish that between 2006 and 2014, there was less than a 2% chance that any particular opioid pill was distributed by CVS anywhere within the 14 Counties that overlap with the Nation. And there was less than a 3% chance that an opioid pill was dispensed by CVS within that same area. ECF No. 136 at ¶ 33.

3

The decision in *Johnson & Johnson*, when considered alongside bedrock principles of causation described in Oklahoma negligence cases, makes clear that the Nation's attempt to avoid proof of causation no longer is cognizable. As noted, the *Johnson & Johnson* decision relied on cases that rejected market share liability. *See* ECF No. 469 at 11–12. Indeed, Oklahoma law has rejected market share liability since 1987. *See Case* v. *Fibreboard Corp.*, 1987 OK 79, 743 P.2d 1062. Further, the Oklahoma Court of Civil Appeals recently rejected a causation theory identical to the Nation's. *Steed* v. *Bain-Holloway*, 2015 OK CIV APP 68, ¶ 13, 356 P.3d 62 (discussed at ECF No. 469 at 12–13).

The Nation's response is that *Case* and *Steed* are somehow different. ECF No. 499 at 15. The Nation contends that it "has already pled (and intends to prove) that it was directly damaged by each Defendants' [sic] negligent conduct." *Id.* Conspicuously absent, however, is (1) any explanation of *how* the Nation can prove that theory, and (2) more important for this motion, a reference to a single *factual* allegation that would even arguably support it. Because the Complaint is devoid of any factual allegation that could link the wrongful conduct of any specific Defendant to alleged damages in the form of increased costs for amorphous economic expenditures such as social services, Defendants are entitled to judgment on the pleadings.[1]

### B.  Plaintiff's Negligence Claim Fails Under Restatement (Third) Section 7.

Plaintiff's negligence claim contravenes the principle that there is no duty to protect against the unintentional infliction of economic loss to third parties. That principle is set out in section 7 of the Restatement (Third) of Torts. Plaintiff argues that Oklahoma has yet to consider that particular section

---

[1] The causation problem is not "moot[ed]" by Plaintiff's strange suggestion that its allegations support joint and several liability. ECF No. 499 at 13. First, Plaintiff acknowledges that joint and several liability can apply only "to claims that accrued before 2011." *Id.* Negligence claims that "accrued" before 2011 are barred by the two-year statute of limitations. *See* Okla. Stat. tit. 12, § 95(A)(3). Second, joint and several liability against the three defendants here does not solve the policy considerations underpinning *Johnson & Johnson* for a host of reasons, including: (i) Plaintiff claims damages from an oversupplied market for prescription medications, not from some portion of the market allegedly caused by the three Pharmacy Defendants; and (ii) if the Pharmacy Defendants are responsible for an oversupplied market, so too are countless other persons and entities.

4

of the Third Restatement. Small surprise given the Third Restatement's recency. But *Johnson & Johnson* relied on section 8 of the Third Restatement for a related proposition: public nuisance claims are not cognizable when non-purchasers seek solely economic damages from harmful or defective products. The Oklahoma Supreme Court's endorsement of section 8 of the Third Restatement is clear evidence that it would also endorse section 7, which applies the same concept in negligence. Indeed, it would make no sense for the Supreme Court of Oklahoma to denounce the State's theory of liability in *Johnson & Johnson* by *adopting* section 8, but then later welcome that same theory by *rejecting* section 7. The economic loss principles in section 7 and section 8 go hand in hand. And even putting the Restatement aside, another court of last resort has recognized—in the specific context of prescription opioid litigation—the total absence of authority "allowing a negligence claim against a third party for purely economic loss." *CVS Pharmacy, Inc.* v. *Bostwick*, 251 Ariz. 511 ¶ 27, 494 P.3d 572, 580 (2021).

Plaintiff's counterarguments are meritless. There is nothing to suggest that a plaintiff may recover for economic loss allegedly caused by unintentional injuries to third parties. Plaintiff attempts to avoid *CVS Pharmacy* on the sole ground that it was decided under Arizona law. ECF No. 499 at 16 n.6. But this Court already has determined that "both Oklahoma and Arizona" would apply the same economic loss rule. *Tulsa Propulsion Engines, Inc.* v. *Honeywell Int'l, Inc.*, 2007 WL 4345207, at *1 (E.D. Okla. Dec. 10, 2007) (White, J.). The Nation also contends that if the Supreme Court of Oklahoma signaled alignment with Restatement section 7, then it also signaled alignment with Restatement (Second) of Torts section 766C cmt. b—a comment from 1979 stating that "parasitic" economic losses may be recovered for negligent interference with a contractual relation that results in physical harm to the plaintiff. Doc. 499 at 17. Yet Plaintiff has not suffered physical injuries of its own—a point driven home by Plaintiff's own case. *Mountain Bird, Inc.* v. *Goodrich Corp.*, 369 F. App'x 940, 945 (10th Cir. 2010) (denying recovery in tort because it was not plaintiff who suffered personal injuries).

5

Plaintiff's other cited cases, ECF No. 499 at 17, miss that point as well. Again, the relevant rule is that a plaintiff cannot recover for economic loss caused by a defendant's unintentional injury to *a third party*. That is the rule that dooms Plaintiff's claim.

### C. *Johnson & Johnson* Defeats Plaintiff's Theory of Duty.

*Johnson & Johnson* established that Defendants do not owe a duty in tort to the Nation, foreclosing the Nation's claim for negligence. Defendants' motion pointed out that *Johnson & Johnson* clarified the duties of a prescription-opioid seller. In particular, the court held that "[t]here is no common law tort duty to monitor how a consumer uses or misuses a product after it is sold" when the seller lacks control of the product after sale. *See* ECF No. 469, at 16 (citing *Johnson & Johnson*, 2021 OK 54, ¶ 27). Plaintiff does not directly respond to this point, but instead clings to its pre-*Johnson & Johnson* arguments, which focus on purported statutory bases for duty and generalized conceptions of foreseeability.[2] But duty is a question of law in a negligence action, *Lowery* v. *Echostar Satellite Corp.*, 2007 OK 38, ¶ 12, 160 P.3d 959, 964, and Oklahoma's highest court has now stated a rule that eviscerates Plaintiff's prior arguments. It makes no difference that the new rule of law was handed down in a public nuisance case. The Oklahoma Supreme Court's conclusion that no tort duty to a government exists in these circumstances was necessary to the decision and is now the law of Oklahoma. As a result, Plaintiff's negligence theory fails because Defendants owe no duty to protect Plaintiff from the downstream economic effects of opioid abuse.

---

[2] Plaintiff's one direct response is a misleading quote from the *Johnson & Johnson* decision. The Court did not quite observe that "the proper remedy in cases where '[a] seller loses control of its product when they are sold' are 'actions for negligence or breach of warranty rather than a nuisance action.'" ECF No. 499 at 14–15 (quoting *Johnson & Johnson*). Rather, the Court observed that "[a] seller loses control of its products when they are sold and lacks the legal right to abate whatever hazards its products may pose; under these circumstances, the purchaser's proper remedies *are products liability actions* for negligence or breach of warranty rather than a nuisance action." 2021 OK 54 ¶ 27 n.18 (emphasis added) (citation omitted). The Nation continues to assert that it has *not* filed a products liability claim. But as noted (ECF No. 469 17–18), the gravamen of the Complaint sounds in products liability, and that theory is barred by the innocent seller doctrine.

### D. Under *Johnson & Johnson*, Plaintiff's Remedy Is Limited to Products Liability.

Finally, *Johnson & Johnson* made clear that any remedy against a seller of a lawful product like prescription opioids is limited to the realm of products liability, and any such claim would be barred by the innocent seller doctrine. Okla. Stat. tit. 76, § 57.2(G); ECF No. 469 at 17–18. Plaintiff responds that *Johnson & Johnson* cannot be read to eliminate causes of action that were not at issue, "such as negligence claims against alcohol purveyors and pharmacies." ECF No. 499 at 18. Plaintiff cites two dram-shop liability cases for the proposition that the innocent-seller doctrine does not eliminate comparable negligence cases. *Id.* at 18–19 (citing *Brigance* v. *Velvet Dove Rest., Inc.*, 1986 OK 41, 725 P.2d 300, 304 (Okla. 1986), and *Boyle* v. *ASAP Energy, Inc.*, 2017 OK 82 ¶ 33, 408 P.3d 183, 195 (Okla. 2017)). But those dram-shop cases are not on point. Those cases turned on whether the seller knew that the customer was intoxicated at the time of sale, *Brigance*, 725 P.2d at 302; *Boyle*, 2017 OK 82 ¶ 23, or, in the case of unlawful sales to minors, whether the seller knew that the minor intended to drink while driving or riding in a motor vehicle, *Tomlinson* v. *Love's Country Stores, Inc.*, 1993 OK 83, 854 P.2d 910, 916 (Okla. 1993).

By contrast, there is no liability for selling alcoholic beverages to an adult buyer who *later* becomes intoxicated and causes harm, much less to a buyer (including a minor) who later loses, sells, or gives away the beverages to a person who becomes intoxicated. *See Sanders* v. *Crosstown Market, Inc.*, 850 P.2d 1061 (Okla. 1993). Those circumstances are much closer to the Nation's claim. Further, dram-shop liability has an express limit: it exists only when the plaintiff can show that his personal injuries resulted from a specific negligent sale. *See, e.g.*, *Brigance*, 725 P.2d at 304, 305. Plaintiff's claim for boundless *economic* loss, however, does not tie Plaintiff's injuries to any specific prescriptions. It therefore has no such limit—a key concern underlying *Johnson & Johnson*. *See* 2021 OK 54 at ¶ 33.

7

Each of the above four reasons is alone sufficient to warrant judgment on the pleadings in favor of Defendants on Plaintiff's negligence claim (Count Two of the Complaint).[3]

### III.  *Johnson & Johnson* Forecloses Plaintiff's Unjust Enrichment Claim.

Plaintiff does not plausibly deny that the public nuisance claim rejected by *Johnson & Johnson* is indistinguishable from Plaintiff's unjust enrichment claim to the extent that Plaintiff seeks reimbursement of the costs of "negative externalities." (Those costs are what Plaintiff chiefly seeks. *See* ECF No. 136 (First Am. Compl.) ¶ 351, Prayer for Relief ¶ c.i.) Instead, Plaintiff argues that its unjust enrichment claim survives because Plaintiff also seeks disgorgement of "all amounts . . . unjustly obtained" by Defendants for the sale of prescription opioids. *Id.* ¶ c.ii. That argument does not save Plaintiff's claim. Plaintiff's negative externalities allegation is fundamental to its theory of liability, not simply a measure of damages. Plaintiff's claim is not viable after *Johnson & Johnson*.

A claim for unjust enrichment requires pleading and proof of an *unjust* benefit. *City of Tulsa* v. *Bank of Okla., N.A.*, 2011 OK 83 ¶ 19, 280 P.3d 314, 319 (Okla. 2011). Here, Plaintiff contends Defendants' receipt of profits was unjust because Plaintiff paid for the negative externalities of the "opioid epidemic"—not because it paid a particular amount to a particular Defendant for prescription opioids that did not work as intended, or even because it paid a particular amount to a third party for costs caused by a particular Defendant. The distinction is critical. Liability for an "opioid epidemic," untethered to specific harm caused by a specific defendant, is exactly what the Oklahoma Supreme Court rejected in *Johnson & Johnson*. *See, e.g.*, 2021 OK 54 ¶ 26 (no public right to be free from the threat that others may misuse or abuse prescription opioids); *id.* ¶¶ 29–31 (defendant's lack of control after sale counsels against liability); *id.* ¶ 31 (one manufacturer "should not be responsible for the

---

[3] Plaintiff suggests the Tenth Circuit has "already declined" to apply *Johnson & Johnson* outside public nuisance. ECF No. 499 at 1. In *Ferrell* v. *Cypress Env'l Mgmt.-TIR, LLC*, it observed that *Johnson & Johnson* did not upset Oklahoma's "concerted misconduct estoppel" doctrine in arbitration cases. No. 20-5092, 2021 WL 5576677, at *3 & n.2 (10th Cir. Nov. 30, 2021). That is clearly irrelevant here.

8

harms caused by opioids that it never manufactured, marketed, or sold"); *id.* ¶ 33 (noting possibility of endless liability for prescription-opioid manufacturing and concluding that "Oklahoma law has rejected such endless liability in all other traditional tort law theories").

Plaintiff wrongly interprets *Johnson & Johnson* as limited to the situation in which a manufacturer is "held liable for abating harms for which there was no evidence it caused." ECF No. 499 at 19. In fact, there was evidence that Johnson & Johnson had sold 3% of prescription opioids statewide. 2021 OK 54 ¶ 5. That was not the problem. The problem was the State's inability to link any of the prescription opioids that made up that 3% share of the market to alleged *specific* harms. The same problem exists here. Even if Plaintiff is demanding reimbursement or disgorgement, it cannot link any Defendant's conduct to any dollars spent or received. Indeed, the problem is even worse for a disgorgement theory. Not only is Plaintiff unable to link a particular Defendant's unlawfully dispensed opioids to particular costs incurred by Plaintiff, Plaintiff is also unable to distinguish between profits derived from prescription opioids dispensed lawfully and those it alleges were dispensed unlawfully.

What *Johnson & Johnson* establishes beyond doubt is that manufacturers and sellers of prescription opioids are not liable for governmental claims of economic loss arising from prescription opioid abuse. That decision is grounded in considerations equally applicable to claims of unjust enrichment. This Court should reject Plaintiff's argument and enter judgment on the pleadings in favor of Defendants on Plaintiff's unjust enrichment claim (Count Three).

**IV.     Plaintiff's Claim for Civil Conspiracy Fails for Lack of an Underlying Tort.**

The parties now agree that public nuisance, having been dismissed with prejudice, cannot serve as the underlying tort in support of Plaintiff's civil conspiracy claim. Thus, the Court's decision denying the Distributors' motion to dismiss should be revisited at least on that ground. *See* ECF No. 288, at 21. Plaintiff relies on this Court's prior statement that "Distributors concede gross negligence can satisfy the underlying tort requirement [*see* Docket No. 146, at 32]," *id.*, and contends that the

Pharmacy Defendants are bound by that "concession," *id*. What the Distributors' brief said was: "Even assuming *arguendo* that one can conspire to be grossly negligent, that claim fails as a matter of law, *see supra* Part III.C, and the civil conspiracy claim likewise should be dismissed." ECF No. 146 at 32. That statement was *not* a concession. Nor did the Pharmacy Defendants (by seeking to incorporate it) intend it as one. And the Court's decision on the Distributors' motion to dismiss, reasonably construed, did not *hold* that gross negligence can support a claim for civil conspiracy. *See* ECF No. 499 at 23. The Court's reasoning focused on public nuisance, ECF No. 288 at 21, and it did not consider gross negligence beyond its assertion that the Distributors had conceded the point.

In fact, unlike public nuisance, *see id.*, gross negligence cannot be the type of "intentional" tort that supports a claim for civil conspiracy. The notion is borderline oxymoronic—one cannot negligently act intentionally. As Defendants explained, gross negligence in Oklahoma can include some types of intentional conduct or in egregious cases be equated in terms of culpability with intentional torts— but it is not itself an intentional tort. *See* ECF No. 469 at 24. Plaintiff's own case makes this point. *Graham* v. *Keuchel*, 1993 OK 6, 847 P.2d 342, 362 & n.108 (Okla. 1993) (gross negligence in some cases can be so flagrant as to be "transmuted into willful and wanton misconduct"). This point becomes more evident in the conspiracy context. Plaintiff must plead and prove an *agreement* to commit the underlying tort. Two or more persons cannot rationally agree to commit acts constituting gross negligence that a court might later transmute into an intentional act.

Plaintiff fails to distinguish the authority Defendants cited from other jurisdictions. *See* ECF No. 469 at 23–24. The Court should rely on that authority, as well as comparable concepts in Oklahoma law, and enter judgment in Defendants' favor.

## Conclusion

For these reasons and the reasons stated in Defendants' opening memorandum, Defendants' motion for judgment on the pleadings should be granted.

Date: February 4, 2021

/s/ G. Calvin Sharpe
G. Calvin Sharpe
OBA No. 11702
Amy D. White
OBA No. 19255
PHILLIPS MURRAH P.C.
Corporate Tower, 13th Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma 73102
(405) 235-4100
(405) 235-4133 (fax)
gcsharpe@phillipsmurrah.com
adwhite@phillipsmurrah.com

Eric R. Delinsky
(admitted pro hac vice)
Alexandra W. Miller
(admitted pro hac vice)
Paul B. Hynes, Jr.
(admitted pro hac vice)
Margarita K. O'Donnell
(admitted pro hac vice)
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, D.C. 20036
(202) 778-1800
(202) 822-8106 (fax)
edelinsky@zuckerman.com
smiller@zuckerman.com
phynes@zuckerman.com
modonnell@zuckerman.com

Conor B. O'Croinin
(admitted pro hac vice)
William J. Murphy
(admitted pro hac vice)
J. Michael Pardoe
(admitted pro hac vice)
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202-1031
(410) 332-0444
(410) 659-0436 (fax)
cocroinin@zuckerman.com
wmurphy@zuckerman.com

Respectfully submitted,

/s/ Larry D. Ottaway
Larry D. Ottaway
OBA No. 6816
Amy Sherry Fischer
OBA No. 16651
FOLIART HUFF OTTAWAY &
  BOTTOM
201 Robert S Kerr Avenue, 12th Floor
Oklahoma City, Oklahoma 73102
(405) 232-4633
(405) 232-3462 (fax)
larryottaway@oklahomacounsel.com
amyfischer@oklahomacounsel.com

Laura Jane Durfee
Andrew Junker
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
(214) 969-5150
ldurfee@jonesday.com
ajunker@jonesday.com

Jason Varnado
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
(832) 239-3939
(832) 239-3600 (fax)
jvarnado@jonesday.com

Benjamin C. Mizer
Jeffrey R. Johnson
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001
(202) 879-3939
(202) 626-1700 (fax)
bmizer@jonesday.com
jeffreyjohnson@jonesday.com

**Counsel for Defendant Walmart Inc.**

11

mpardoe@zuckerman.com

**Counsel for Defendants
CVS Pharmacy, Inc., and Oklahoma
CVS Pharmacy, L.L.C.**

*/s/ Steven E. Holden*
Steven E. Holden
OBA No. 4289
HOLDEN LITIGATION, HOLDEN P.C.
15 East 5th Street, Suite 3900
Tulsa, Oklahoma 74103
Telephone: (918) 295-8888
Facsimile: (918) 295-8889
steveholden@holdenlitigation.com

*/s/ Robert B. Tannenbaum*
Steven E. Derringer
(admitted *pro hac vice*)
Robert B. Tannenbaum
(admitted *pro hac vice*)
BARLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Telephone: (312) 494-4400
Facsimile: (312) 494-4440
steven.derringer@bartlitbeck.com
robert.tannenbaum@bartlitbeck.com

**Counsel for Defendant Walgreen Co.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2022, the foregoing document was served on all counsel of record in this action via electronic service through CM-ECF.

*/s/ G. Calvin Sharpe*
G. Calvin Sharpe
